UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSE QUEZADA,

                              Plaintiff,

                                                          9:13-CV-00885

v.
                                                          (MAD/TWD)

BRIAN FISCHER, *et al.*,


                              Defendants.

_____

APPEARANCES:                              OF COUNSEL:

JOSE QUEZADA
Plaintiff *pro se*
04-A-3690
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. ERIC T. SCHNEIDERMAN              TIFFINAY M. RUTNICK, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

    This *pro se* action commenced by Plaintiff under 42 U.S.C. § 1983, Title II of the

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131, *et seq*. ("ADA"), and the

Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Rehabilitation Act") has been referred to this

Court for Report and Recommendation by the Hon. Mae A. D'Agostino, United States District

Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).  The matter is now before the

Court on Defendants' motion to dismiss certain of the claims in Plaintiff's second amended complaint (Dkt. No. 111) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 116.) Plaintiff has opposed the motion. (Dkt. Nos. 127, 129.) For the reasons explained herein, the Court recommends that Defendants' Rule 12(b)(6) motion to dismiss be granted in part and denied in part.

## I.    PROCEDURAL HISTORY

On May 7, 2013, Plaintiff filed his original complaint in this action in the Southern District of New York. (Dkt. No. 1.) The complaint named thirty-seven defendants. *Id*. The case was transferred to the Northern District of New York on July 29, 2013. (Dkt. No. 18.) On March 31, 2014, Judge D'Agostino issued a Decision and Order severing and transferring the claims against twenty of the Defendants relating to Green Haven Correctional Facility ("Green Haven") back to the Southern District of New York.[1] (Dkt. No. 38.)

The Defendants against whom the claims remaining in the Northern District of New York have been asserted are Brian Fischer; Karen Bellamy; Richard Roy; Eric Gutwein, incorrectly sued as Cho Gutwein; Donnie C. Riley; Daniel R. King; S. Brown; John Cross; J. Monacelli; Rosanna Lordi; William Chase; Ronald Larocque; Andrew Bouchey; Andrew Streeter; T. Brousseau, incorrectly sued as T. Brousseau; R. Lee; and S. Beaudette. *Id*. at 14. Plaintiff has sued the Defendants in both their official and individual capacities. (Dkt. No. 111 at 1-5 [2].)

_____

[1]  In addition, those claims against Defendant Richard Roy that are related to Green Haven were transferred to the Southern District of New York, while the remaining claim against Roy remains in the Northern District. (Dkt. No. 38 at 13.)

[2]  Unless otherwise noted, page references to documents identified by docket number herein are to the page number assigned by the Court's CM/ECF system. Because the allegations in Plaintiff's second amended complaint (Dkt. No. 111) are not in consecutively numbered

Plaintiff's first amended complaint (Dkt. No. 26) was accepted for filing on March 31, 2014. (Dkt. No. 39.) The Defendants remaining in the Northern District filed a Rule 12(b)(6) motion to dismiss certain of the claims in the amended complaint on August 12, 2014. (Dkt. No. 88.) Plaintiff thereafter moved to amend his previously filed amended complaint. (Dkt. No. 104.) The Court granted the unopposed motion to amend (Dkt. No. 110), and the second amended complaint was filed as the operative pleading. (Dkt. No. 111.) It is the second amended complaint which Defendants now seek to have dismissed in part under Rule 12(b)(6). (Dkt. No. 116.) The second amended complaint is 158 pages long with more than 800 pages of exhibits.[3] (Dkt. No. 111.)

## II.    DEFENDANTS' MOTION TO DISMISS

Plaintiff has alleged claims against Defendants for violation of Title II of the ADA and the Rehabilitation Act, and claims under 42 U.S.C. § 1983 for violation of his rights under his First, Fifth, Eighth, and Fourteenth Amendments to the Constitution. (Dkt. No. 111 at 6-7.) In their Memorandum of Law, Defendants have identified the claims alleged by Plaintiff and identified which of those claims they seek to have dismissed on their Rule 12(b)(6) motion.[4] (Dkt. No. 116-1 at 5-7.) The claims alleged by Plaintiff that remain in the Northern District

---

paragraphs throughout, references herein to the second amended complaint are to the CM/ECF page numbers rather than paragraph numbers in the pleading.

[3] Plaintiff is reminded that Federal Rule of Civil Procedure 8(a)(2) provides that a pleading stating a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

[4] As discussed herein, in their Memorandum of Law, Defendants have failed to address a number of the claims identified as having been included in their motion to dismiss. (Dkt. No. 116-1). The Court has not treated the unaddressed claims as a part of the motion to dismiss.

action involve matters that are claimed to have taken place at Shawangunk Correctional Facility ("Shawangunk"), Upstate Correctional Facility ("Upstate"), during Plaintiff's transport from Upstate to Clinton Correctional Facility ("Clinton"), and at Clinton. *Id*.

## A.    Shawangunk

Defendants seek dismissal of the following claims arising at Shawangunk:

>    1.    Defendant Eric Gutwein ("Gutwein"), as Hearing Officer at a disciplinary hearing held at Shawangunk involving a misbehavior report from Green Haven, violated Plaintiff's Fourteenth Amendment due process rights and retaliated against him for filing grievances and court actions against Department of Corrections and Community Services ("DOCCS") employees; and

>    2.    retired DOCCS Commissioner Brian Fischer ("Fischer") was informed of Gutwein's alleged wrongdoing upon Plaintiff's administrative appeal.

(Dkt. No. 116-1 at 5, 7.)

## B.    Upstate

Defendants seek dismissal of the following claims arising at Upstate:

>    1.    Defendants Upstate Sergeants William Chase ("Chase") and J. Monacelli ("Monacelli"), and Corrections Officer Ronald Larocque ("Larocque") harassed him;

>    2.    Defendant Upstate Sergeant Donnie C. Riley ("Riley") harassed Plaintiff and did not stop an assault on Plaintiff by Defendants Larocque and Monacelli and unnamed DOCCS employees[5];

>    3.    Defendant Upstate Nurse Rosanna Lordi ("Lordi") denied Plaintiff medical care after he had been beaten by

---

[5]  Defendants have not included a harassment claim against Defendant Riley in the list of Plaintiff's claims set forth in their Memorandum of Law.  (Dkt. No. 116-1 at 5.)  They have, however, included a harassment claim against Riley in their legal argument.  *Id.* at 22.

corrections officers in violation of his Eighth Amendment right to adequate medical care; and

4.     Lordi conspired with other DOCCS employees to cover up the assault on Plaintiff by Monacelli and Larocque.

(Dkt. No. 116-1 at 5, 7.)

### C.     Transport from Upstate to Clinton

Defendants seek dismissal of Plaintiff's claim that Defendants Upstate Corrections Officers Andrew Streeter ("Streeter") and Andrew Bouchey ("Bouchey"), and Sergeant Daniel R. King ("King") denied him use of a medical device and threatened, verbally harassed, and assaulted Plaintiff during transport from Upstate to Clinton Mental Health Unit.  *Id.*

### D.     Clinton

Defendants seek dismissal of the following claims arising at Clinton:

1.     Defendant T. Brousseau ("Brousseau"), Clinton Inmate Grievance Supervisor, failed to respond to Plaintiff's complaint/grievance/appeal concerning an alleged assault by Defendants Street, Bouchey, and King because he was covering up staff misconduct and denying him access to court; verbally harassed Plaintiff; destroyed Plaintiff's grievances in retaliation for complaints made to Defendant Karen Bellamy ("Bellamy"), DOCCS Director of the Inmate Grievance Program; and refused to accept a grievance by Plaintiff regarding his request for a transfer to federal prison or a prison in another state;

2.     Defendant Fischer failed to respond to Plaintiff's letter requesting an investigation of Defendants Brousseau and DOCCS Inspector General Richard Roy ("Roy");

3.     Defendants Roy and Bellamy failed to respond to Plaintiff's complaints about Brousseau;

4.     Defendant Fischer ignored Plaintiff's request to be transferred to a federal prison or a prison in another state;

5

5.  Defendant S. Brown ("Brown"), Clinton Deputy Superintendent, retaliated against Plaintiff for complaining to the Inspector General and filing grievances regarding the denial of requests for accommodations for Plaintiff's disabilities and discriminated against him[6];

6.  Defendant Clinton Corrections Officer R. Lee ("Lee") verbally harassed Plaintiff;

7.  Defendant Clinton Corrections Officer S. Beaudette ("Beaudette") threw Plaintiff's property in the garbage, verbally harassed him, and denied Plaintiff soap and razors in retaliation for filing grievances; and

8.  Defendant Clinton Sergeant Supervisor John Cross ("Cross") violated Plaintiff's rights under Title II of the ADA and the Rehabilitation Act by denying his requests for reasonable accommodations, including special headphones, a shake alarm, a visual smoke detector, the use of a shower chair, something on which to place his knee and back brace during showers, and a chair in his cell so that he could sit when putting on his leg brace; and by posting a memorandum stating Plaintiff was required to sit on the floor while putting on his knee brace.

(Dkt. No. 116-1 at 6-7.)

Defendants also seek dismissal of § 1983 claims for money damages against Defendants sued in their official capacities on Eleventh Amendment grounds and dismissal of Plaintiff's claims for injunctive and declaratory relief.[7]  *Id*. at 12-13, 24.

---

[6]  Although Defendants have identified a claim against Brown for harassing Plaintiff in their list of Plaintiff's claims, they have not included that claim among those they seek to have dismissed.  (Dkt. No. 116-1 at 6-7.)  Because Defendants have addressed a harassment claim against Brown in their Memorandum of Law, *id*. at 22-23, the Court will consider it herein.

[7]  Given the number of Defendants and the number of varied claims being asserted by Plaintiff, the Court finds determination of whether Plaintiff can seek injunctive and declaratory relief on his claims to be premature.

## III.    FACTUAL BACKGROUND

Plaintiff's supporting allegations cover numerous, disparate issues.  To avoid unnecessary repetition, the facts pertinent to claims Defendants seek to have dismissed will be set forth with the Court's analysis of the claim.

## IV.    LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6).  The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972).  Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged    but it has not shown    that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*. 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an

unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[8] *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent

---

[8] If documents attached to a complaint contradict the allegations in the complaint, the Court need not accept the allegations as true. *See Hill v. Napoli*, No. 6:09-CV-6546-MAT, 2014 WL 1322476, at *8, 2014 U.S. Dist. LEXIS 44018, at *23 (W.D.N.Y. March 31, 2014) (where documents incorporated into plaintiff's complaint contradict his allegations, the court need not accept them as true.); *Rapoport v. Asia Electronics Holding Corp.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (same).

with the allegations of the plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26-27 and n.41 (N.D.N.Y. Oct. 22, 2008)[9] (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss). The Court has taken judicial notice of papers filed in other litigation involving Plaintiff and has considered documents in Plaintiff's submissions in opposition to the extent they are consistent with the allegations in Plaintiff's Amended Complaint.

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe pro se complaints liberally even after *Twombly*).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not

---

[9] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

required where "the problem with [the plaintiff's] causes of action is substantive" such that a "better pleading will not cure it." *Id.* (citation omitted).

## V.     ANALYSIS

### A.     Official Capacity Claims for Money Damages

Plaintiff has sued all of the Defendants for money damages under § 1983 in both their individual and official capacities. (Dkt. No. 111 at 2-5, 157.) Defendants seek dismissal of the § 1983 claims for money damages against them in their official capacities on the grounds that the claims are barred by the Eleventh Amendment. (Dkt. No. 116-1 at 12-13.)

The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities, including the DOCCS Defendants herein. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (an inmate plaintiff's claims for damages against individual DOCCS employees sued in their official capacities are considered claims against New York and are thus barred by the state's Eleventh Amendment immunity).

Therefore, the Court recommends that all of Plaintiff's § 1983 claims for money damages against Defendants in their official capacities be dismissed with prejudice on Eleventh Amendment grounds.

**B.      Gutwein**

On May 16, 2011, while he was still at Green Haven, a Misbehavior Report was issued against Plaintiff arising out of an incident in which Plaintiff was alleged to have attacked a corrections officer with a razor blade.  (Dkt. Nos. 111 at 47; 111-2 at 10.)  Plaintiff's disciplinary hearing was held before Defendant Hearing Officer Gutwein following his transfer to Shawangunk.  (Dkt. Nos. 111 at 47-54; 111-7 at 2.)  Gutwein issued a written disposition on June 17, 2011, finding Plaintiff guilty on all charges and sentenced him to five years in the Special Housing Unit ("SHU") and five years loss of good time and privileges.  (Dkt. No. 111 at 53.) The charges on which Plaintiff was found guilty included 104.11 violent conduct, 100.11 assault on staff, 113.10 weapon, 107.10 interference with employee, and 106.10 refusing direct order. (Dkt. No. 111-2 at 131.)

Plaintiff appealed to Defendant Fischer on the grounds that: (1) none of his witnesses had been called; (2) Defendants retaliated and fabricated charges against Plaintiff for pursuing grievances and lawsuits against them; (3) Plaintiff's right to assistance was violated as a result of his assistant's failure to provide and produce documents related to his retaliation defense and failure to inform Plaintiff of the investigation results and to interview witnesses; (4) he was given insufficient written notice of the charges; (5) Defendants showed deliberate indifference to Plaintiff in failing to protect him from harm; and (6) Plaintiff was deprived of the opportunity to fully and fairly litigate his claim before a neutral hearing officer because of Hearing Officer Gutwein's bias and refusal to consider the merits of Plaintiff's defense.  (Dkt. No. 111 at 53-54.)

Defendants seek dismissal of claims against Gutwein for violation of Plaintiff's

Fourteenth Amendment due process rights in the hearing which resulted in his being placed in SHU, and First Amendment retaliation claim for grievances and legal actions commenced by him. *Id*. at 47-54; Dkt. No. 116-1 at 13-16.

        1.     <u>Due Process Claim</u>

In his second amended complaint and opposition papers, Plaintiff claims that Gutwein violated his due process rights in his role as Hearing Officer at Plaintiff's disciplinary hearing by failing to provide Plaintiff with his hearing aid for the hearing; refusing to call witnesses requested by Plaintiff; failing to produce requested documents needed for Plaintiff's defense; failing to inform Plaintiff of investigation results; acting in a biased manner and refusing to consider the merits of Plaintiff's defense; denying Plaintiff the right to assistance because his assistant never reported back with the necessary and available documentary evidence for his defense or the results of her investigation; and placing Plaintiff in SHU for sixty months and taking away sixty months of good time. (Dkt. Nos. 111 at 48-54; 129 at ¶ 6.) Gutwein seeks dismissal of Plaintiff's Fourteenth Amendment due process claim against him on collateral estoppel grounds based upon the Appellate Division Third Department judgment in Plaintiff's Article 78 proceeding challenging the hearing determination. (Dkt. No. 116-1 at 13-15.) *See Quezada v. Fischer*, 979 N.Y.S.2d 426 (3d Dep't 2014).

Pursuant to the Full Faith and Credit Clause, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ*., 465 U.S. 75, 81 (1984). The rule applies to actions brought pursuant to § 1983. *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996).

Under New York law, collateral estoppel or issue preclusion bars relitigation of an issue when (1) the issues in both proceedings are identical; (2) the issue of law or fact was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citations omitted). Collateral estoppel will apply "only if it is quite clear that the requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (citation and internal quotation marks omitted).

The party seeking to invoke collateral estoppel bears the burden of demonstrating that the nature of the issues is identical, and "they were necessarily decided in the prior action." *Kulak v. City of N.Y.*, 88 F.3d 63, 72 (2d Cir. 1996). The burden of demonstrating that the prior action did not afford a full and fair opportunity to litigate the issue rests with the party opposing application of the doctrine. *Id*. Issues not raised in the previous Article 78 proceeding cannot be barred by collateral estoppel. *Colon*, 58 F.3d at 870.

Dismissal under Rule 12(b)(6) on collateral estoppel grounds is appropriate where it is clear from the face of the complaint and matters of which the court may take judicial notice that a plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86-87 (2d Cir. 2000). The applicability of collateral estoppel to Plaintiff's due process claim against Gutwein is not clear from the second amended complaint. Furthermore, because Defendants have not submitted Plaintiff's Article 78 petition or the briefs filed by the parties in that proceeding, the Court has only the Third Department Opinion in the Article 78 for consideration

13

in assessing whether Gutwein is entitled to dismissal of Plaintiff's due process claim on collateral estoppel grounds. Having reviewed the Opinion, the Court concludes that it does not provide sufficient information to determine the applicability of the doctrine.

The Appellate Division confirmed the affirmance on administrative appeal of the finding of guilt following Plaintiff's Tier III disciplinary hearing before Gutwein. *Quezada v. Fischer*, 979 N.Y.S.2d at 427. The Appellate Division concluded that "the misbehavior report and related documentation, together with the testimony adduced at the hearing, provide[d] substantial evidence supporting the determination of guilt." *Id*. The Court also found that (1) Plaintiff's argument that the misbehavior report was prepared in retaliation for grievances and complaints filed by him against staff, and that the correction officer inflicted injuries to himself and it was Plaintiff who was injured, had presented a credibility issue for resolution by the Hearing Officer; (2) the misbehavior report was sufficiently detailed to provide Plaintiff with adequate notice of the charges to enable him to prepare a defense; and (3) Plaintiff's argument that he was denied a fair hearing was "unavailing given that there [was] no indication that the Hearing Officer was biased or that the determination flowed from any alleged bias." *Id*. at 427-28.

The Appellate Division acknowledged that Plaintiff had raised other arguments in his Article 78 but did not identify or specifically address any of those arguments. Instead the Appellate Division wrote that "[t]o the extent that they are properly before us, we have considered petitioner's many remaining contentions, including his challenge to the penalty, and we find them unpersuasive." *Id*. at 428.

Under *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974), the procedural due process protections to which a prison inmate is entitled include: (1) written notice of the charges; (2) the

opportunity to appear and be heard at a disciplinary hearing and to present witnesses and evidence subject to legitimate safety and penological concerns; (3) a limited right to assistance in preparing a defense; and (4) a written statement from the hearing officer explaining his or her decision, and the reasons for the actions taken. A prison inmate is also entitled to a fair and impartial hearing officer, *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004), and a determination that is supported by "some evidence" in the record. *Superintendent v. Hill*, 472 U.S. 445 (1985).

In this action, Plaintiff has alleged that his procedural due process rights were denied by, among other things: (1) his being denied his hearing aid at the hearing, which arguably impacted negatively on his right to appear and be heard; (2) Gutwein's refusal to call witnesses requested by Plaintiff and provide him with documents needed for his defense; and (3) denial of his right to adequate assistance. (Dkt. No. 129 at ¶ 6.) Because the Court cannot tell from the Appellate Division opinion whether those alleged denials of due process, all of which arguably fall under *Wolff,* were actually litigated and decided in the Article 78, it recommends that Defendants' motion to dismiss the due process violation claims against Gutwein on collateral estoppel grounds be denied at this time without prejudice.

## 2. Retaliation

To prevail on a First Amendment retaliation claim, an inmate must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech [or conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*,

*Swierkiewicz v. Sorema,* 534 U.S. 506, 508 (2002)). "Adverse action" for purposes of a retaliation claim has been defined objectively as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Pidlypchak*, 389 F.3d at 381.

Defendants have construed Plaintiff's second amended complaint to allege a retaliation claim against Gutwein in connection with the disciplinary hearing at which he was the Hearing Officer. (Dkt. No. 116-1 at 5, 15.) According to Defendants, Plaintiff has accused Gutwein of retaliating against him for grievances and legal proceedings he had commenced. *Id.* at 15. Defendants have failed to provide a specific citation to Plaintiff's second amended complaint with reference to the retaliation claim, instead referring generally to paragraphs 132-156. *Id*. at 5.

The Court has found no allegations supporting a retaliation claim against Gutwein with respect to the manner in which he conducted the disciplinary hearing, his decision, or the penalty imposed. The sole reference to retaliation in paragraphs 132-156 of the second amended complaint (Dkt. No. 111 at 47-54) appears to be retaliation by Corrections Officer Macisaac, who had filed the Misbehavior Report that was the subject of the hearing. *Id*. at ¶ 147. There are no factual allegations identifying specific grievances or legal actions constituting protected conduct by Plaintiff, and there are no factual allegations plausibly showing that Gutwein's allegedly wrongful actions in connection with the disciplinary hearing were causally related to specific protected activity by Plaintiff. Furthermore, Plaintiff 's opposition to Gutwein's motion to dismiss appears to be limited to his procedural due process violation claim. (Dkt. Nos. 127 at 4; 129 at ¶¶ 6-7.)

In light of the foregoing, the Court recommends that to the extent Plaintiff may have

intended to allege a retaliation claim against Gutwein that the claim be dismissed without prejudice.

### C.    Chase, Monacelli, Larocque, and Riley

Plaintiff has alleged that when he was transferred to Upstate on July 21, 2011, Defendant Chase harassed him by asking him during processing how long it had been since he had assaulted Corrections Officer Macisaac and deliberately threatening him with physical harm.  (Dkt. No. 111 at 55.)  In addition, Plaintiff has alleged that Chase instigated and encouraged corrections officers to physically assault and cause serious harm to Plaintiff by informing them in a strong, audible voice that Plaintiff has assaulted a corrections officer and letting them know that they were going to make sure Plaintiff received a lesson.  *Id*.  Chase allegedly informed Defendant Monacelli that Plaintiff had assaulted an officer who needed twenty stitches, and in response Monacelli threatened Plaintiff.  *Id*. at 56-57.  Chase then told Monacelli that he had assigned Plaintiff a single cell, to which Monacelli responded that Plaintiff would be by himself with no witnesses.  *Id.*

Chase, Monacelli, and Defendant Larocque escorted Plaintiff to his housing unit.  *Id*. at 57.  When they arrived, Chase and Monacelli told Defendant Riley that Plaintiff was the prisoner who had assaulted the officer, and Riley told Plaintiff "you know you are famous around here," but we are going to take care of you.  *Id*.  Plaintiff was thereafter taken to the clinic by Monacelli, Larocque, Riley, and other officers to be placed in a room so that his mental health history could be obtained by the staff.  *Id*.

Once Plaintiff was in a room at the clinic, Monacelli directed him to remove his clothes and, along with Larocque and non-defendants, assaulted Plaintiff by violently and repeatedly

punching and elbowing him and kicking him all over his body, including his face, back, and head. (Dkt. No. 1. at 58-59.) They slammed his head against the wall repeatedly and kicked him in his testicles. *Id*. After assaulting Plaintiff, Monacelli and Larocque verbally humiliated him by laughing and joking while they commented on his naked form. *Id*.

As a result of the beating by Monacelli and Larocque, Plaintiff suffered serious injuries to his face, shoulder, back, and ribs, including a big bump on his forehead. *Id*. at 59. He was in pain all over his body and head and was very dizzy. *Id*. Plaintiff requested medical assistance from the Defendants, including Larocque, who denied him assistance and told him to "shut up." *Id*. Plaintiff has alleged that Larocque falsified the log book by stating that Plaintiff had injured himself by banging his head against the wall to cover up the assault. *Id*.

Plaintiff called out to Defendant Riley several times during the beating, but Riley just watched and did nothing to prevent or stop it, despite having a realistic possibility of being able to prevent or end the assault. *Id*. at 58-59. Riley is also alleged to have been involved in falsifying the log book with regard to the assault on Plaintiff. *Id*. at 59.

1. Harassment Claims Against Monacelli and Larocque

Defendants Monacelli and Larocque seek dismissal of Plaintiff's claims of harassment against them. (Dkt. No. 116-1 at 22-23.) "[Verbal harassment or profanity alone, unaccompanied by any injury no matter now inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (citation and internal quotation marks omitted); *see also Tafari v. McCarthy,* 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010) ("[Verbal harassment itself does not rise to the level

18

of a constitutional violation[,]" and "verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations"); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) (allegations of threats or verbal harassment and profanity do not violate an inmate's constitutional rights); *Germiston v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.")

The alleged harassment and threats by Monacelli and Larocque are directly related to the alleged assault of Plaintiff in the clinic, which occurred in close proximity and is alleged to have resulted in serious injury to him.[10] (Dkt. No. 111 at 57-59.) Therefore, the Court finds that Plaintiff's claims of harassment and threats by Monacelli and Larocque are actionable as a part of his Eighth Amendment excessive force claim and recommends that their motion to dismiss the harassment claims be denied. *See Aziz Zarif Shabazz,* 994 F. Supp. at 474 (distinguishing claims of harassment and threats unaccompanied by injury from those involving injury).

### 2. Harassment Claim Against Chase

Defendant Chase also seeks dismissal of Plaintiff's harassment claim against him. (Dkt. No. 116-1 at 22-23.) The Court finds that Plaintiff has stated a claim under the Eighth Amendment against Chase, who allegedly harassed and threatened Plaintiff by informing other corrections officers about Plaintiff's assault on a corrections officer and encouraging them to physically assault him. (Dkt. No. 111 at 55-56.) One of those corrections officers was Monacelli, who responded by threatening Plaintiff with assault and allegedly making good on the

---

[10]  Defendants Monacelli and Larocque are not seeking dismissal of Plaintiff's Eighth Amendment excessive force claims against them arising out of the assault that allegedly occurred in the clinic. (Dkt. No. 116-1 at 5, 7.)

threat a short time later.  (Dkt. No. 111 56-59.)

Courts in this Circuit have long recognized that a prisoner can state a claim under the Eighth Amendment against a corrections officer who spreads malicious rumors about him, such as calling him a "snitch" or a "rat" if the rumors "incited other inmates to assault [the plaintiff] . . ., thereby placing him at grave risk of physical harm."  *See Bouknight v. Shaw*, No. 08 Civ. 5187 (P.C.), 2009 WL 969932, at *4, 2009 U.S. Dist. LEXIS 35402, at *10 (S.D.N.Y. April 6, 2009); *Campbell v. Gardiner*, No. 12-CV-6003P, 2014 WL 906160, at *4, 2014 U.S. Dist. LEXIS 30024, at *10-11 (W.D.N.Y. March 7, 2014) (recognizing an Eighth Amendment claim for deliberate indifference to the safety of an inmate where a corrections officer identifies an inmate as a snitch or informant in front of other inmates, and the inmate faces actual or imminent harm).

The Court finds the allegation that Chase instigated and encouraged corrections officers, including Monacelli, to physically assault and cause serious harm to Plaintiff, followed closely by an assault on Plaintiff by Monacelli that resulted in physical injuries to Plaintiff, to be analogous to spreading malicious rumors that result in an assault on an inmate.  Therefore, the Court recommends that Defendants' motion to dismiss Plaintiff's harassment claim against Chase be denied.

### 3.     Harassment and Failure to Intervene Claims Against Riley

Defendant Riley seeks dismissal of Plaintiff's harassment claim against him.  (Dkt. No. 116-1 at 5, 7.)  The sole allegation of harassment against Riley in Plaintiff's second amended complaint is that he told Plaintiff "you know you are famous around here," but we are going to take care of you.  (Dkt. No. 111 at 57.)

Plaintiff has also alleged a claim against Riley for failure to intervene to prevent or stop Monacelli and Larocque from assaulting him in the clinic, despite Plaintiff calling out to him several times during the beating. (Dkt. No. 111 at 58-59.) Although Defendants have identified the failure to intervene claim against Riley as one they seek to have dismissed on their Rule 12(b)(6) motion (Dkt. No. 116-1 at 5, 7), they have not included any argument in support of dismissal in their Memorandum of Law. (Dkt. No. 116-1.) Therefore, the Court does not consider the failure to intervene claim to be a part of Defendants' motion to dismiss.

The Court finds that the threatening comment made to Plaintiff by Riley would not by itself reach the level of a constitutional violation. *See Tafari* 714 F. Supp. 2d at 364. Given, however, that the comment closely preceded the assault by Monacelli and Larocque, who were present when the comment was made, as well as Riley's presence during the assault and alleged failure to intervene, the Court recommends that Riley's motion to dismiss the harassment claim be denied, and that the harassment claim be considered in conjunction with the Plaintiff's Eighth Amendment failure to intervene claim against Riley which the Court does not consider on this motion.

### D. Lordi

The day following the assault, Plaintiff, who had yet to receive medical care, was lying in his clinic room when Lordi, a Nurse at Upstate, walked into the clinic and stopped outside the room of another inmate. (Dkt. No. 111 at 60-61.) Plaintiff overheard Lordi asking about him. *Id*. Lordi was told about Plaintiff cutting an officer at Green Haven and was also informed that Plaintiff had been banging his head on the wall. *Id*. Without approaching Plaintiff's room, Lordi asked him if he needed medical assistance. *Id*. Plaintiff told her that he needed to see a doctor

because he had a lot of pain, could not move his head, and was dizzy as the result of a beating. (Dkt. No. 111 at 60-61.) Plaintiff also told Lordi that his whole face was swollen, and that he had not seen a doctor. *Id.* Lordi never approached Plaintiff's room to evaluate his injuries and went back to her conversation with a corrections officer, with whom she was whispering. *Id.* She yelled to Plaintiff from outside his room, "I don't see nothing, you don't need nothing." *Id.*

Plaintiff continued to try to impress upon Lordi the seriousness of his injuries and need to see a doctor to no avail. *Id.* Lordi, after looking at the log book, again told Plaintiff he did not need medical attention. *Id.* Plaintiff claims that Lordi conspired with Larocque and Monacelli to cover up the beating and injuries he had sustained. *Id.* at 62-63.

### 1. Indifference to Plaintiff's Serious Medical Needs

Plaintiff has alleged that Lordi violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs. (Dkt. No. 111 at 60-63.) Lordi seeks dismissal of the claim on the grounds that Plaintiff has failed to allege facts showing that she had the requisite mental state for an actionable medical indifference claim. (Dkt. No. 116-1 at 23-24.)

Claims that prison officials have intentionally disregarded an inmate's serious medical needs fall under the Eighth Amendment umbrella of protection from the imposition of cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials must ensure that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A claim that a prison official has intentionally disregarded an inmate's serious medical needs has both objective and subjective elements. *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "The plaintiff must show that she or he had a serious medical condition

and that it was met with deliberate indifference." *Caiozzo*, 581 F.3d at 72 (citation and internal quotation marks omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted). "[Not every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when the two requirements are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citation and internal quotation marks omitted).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted); *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, *i.e.*, an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Id*. at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm."

*Hathaway*, 37 F.3d at 66.

Lordi does not claim that Plaintiff has failed to make a plausible showing that he had a serious medical condition, (Dkt. No. 116-1 at 23-24), and the Court finds that for purposes of this motion he has made the requisite showing by alleging that as a result of the assault by Monacelli and Larocque, he suffered serious injuries to his face, shoulder, back, and ribs, had a large bump on his forehead, was in pain all over his body and head, and that he was very dizzy. (Dkt. No. 111 at 59.)

Instead, Lordi claims that Plaintiff failed to plausibly allege that she had the requisite mental state to support a medical indifference claim. (Dkt. No. 116-1 at 23-24.) The Court disagrees. The allegations in the second amended complaint reveal that the morning after the assault, Plaintiff informed Lordi of his pain and told her he could not move his head, that his whole face was swollen, that he was dizzy, and that he had not seen a doctor. (Dkt. No. 111 at 60-61.) Plaintiff has alleged that despite being given that information, Lordi told him that he did not need medical attention without ever approaching Plaintiff's room to evaluate his injuries. *Id*. at 62-63. Instead, she remained in the hall engaged in conversation with a corrections officer. *Id*.

The Court finds that for purposes of Defendants' motion to dismiss, the allegations in Plaintiff's complaint make a plausible showing of deliberate indifference to Plaintiff's serious medical condition by Lordi and recommends that her motion to dismiss Plaintiff's Eighth Amendment medical indifference claim be denied.

  2. <u>Conspiracy Claim</u>

Defendants have construed Plaintiff's complaint as alleging a claim that Lordi engaged in

a conspiracy with Monacelli and Larocque to avoid creating any records of Plaintiff's injuries in order to cover up the assault by Monacelli and Larocque. (Dkt. No. 116-1 at 24.) Lordi has moved to dismiss the conspiracy claim as against her under the intracorporate conspiracy doctrine. *Id*. at 5, 7, 24.

The intracorporate conspiracy doctrine "posits that officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Toliver v. Fischer*, No. 9:12-CV-00077 (MAD/ATB), 2015 WL 403133, at *8, 2015 U.S. Dist. LEXIS 10139, at *19 (N.D.N.Y. Jan. 29, 2015) (citation and internal quotation marks omitted). The Second Circuit has yet to issue a decision specifically addressing the use of the intracorporate conspiracy doctrine in prisoner civil rights cases brought under § 1983. District courts within the Circuit have applied the doctrine to § 1983 prisoner civil rights claims on a number of occasions. *See, e.g.*, *Toliver*, 2015 WL 403133, at * 3; *Richard v. Dignean*, No. 6:11-CV-6013 (EAW), 2015 WL 5175758, at *3, 2015 U.S. Dist. LEXIS 118536, at *7-8 (W.D.N.Y. Sept. 3, 2015) (collecting cases and, finding the reasoning of district courts applying the intracorporate conspiracy doctrine in prisoner civil rights cases to be persuasive, applying the doctrine); *Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (conspiracy claims against DOCCS employees barred by the intracorporate conspiracy doctrine). An exception to the intracorporate conspiracy doctrine has been recognized "when individuals pursue personal interests wholly separate and apart from the entity." *Id*. at 204-05; *Richard v. Fischer*, 38 F. Supp. 3d 340, 354 (W.D.N.Y. 2014) (same).

The Court finds the reasoning of the district courts applying the intracorporate conspiracy

doctrine to prisoner civil rights cases under § 1983 to be persuasive and concludes that there are no allegations in the second amended complaint plausibly suggesting that Lordi was pursuing her own personal interests separate and apart from DOCCS in attempting to cover up the assault by Monacelli and Larocque by failing to document Plaintiff's injuries.  Therefore, the Court recommends that Plaintiff's conspiracy claim against Lordi be dismissed under the intracorporate conspiracy doctrine and that the dismissal be without prejudice solely to the extent that Plaintiff can allege facts plausibly showing that Lordi was pursuing her own personal interests separate and apart from those of DOCCS.[11]

### E.    Streeter, Bouchey, and King

On July 22, 2011, Defendants Streeter and Bouchey transported Plaintiff from Upstate to Clinton.  (Dkt. No. 111 at 64-67)  They came to his room in the clinic and threw his clothes in his face, refused Plaintiff's request for his wedding band, eye glasses, knee brace, hearing aid, and cane, ordered him to get dressed, and ordered him to walk to the exit.  *Id*. at 64.  As Plaintiff was approaching the van, one of the Defendants pushed him inside, and he landed on his stomach. *Id*.

---

[11]  The allegations in Plaintiff's second amended complaint fail to support a § 1983 conspiracy claim against Lordi in any event.  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).  Plaintiff's second amended complaint construed most liberally contains, at best, conclusory allegations of an agreement among Lordi and other DOCCS employees.  (Dkt. No. 111 at 62-63.)  "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (citations and internal quotation marks omitted).

According to Plaintiff, during the trip, Streeter or Bouchey struck Plaintiff's head, back, face, and all over his body and said "I should kill you. You like to assault officers, you fucking nigger." (Dkt. No. 111 at 64-65.) While punching Plaintiff, Street or Bouchey began calling him a "nigger," "coward," and "bitch" and repeatedly demanded that Plaintiff repeat the phrases "I love the white man. I love the white officers and I fucked up." *Id*. at 64-66. Plaintiff appears to allege that King was involved in the assault. *Id.* Before they arrived at Clinton, Streeter, Bouchey, and King all threatened to kill Plaintiff when he returned to Upstate if he reported being assaulted during transport to the doctor or nurse at Clinton. *Id*. at 66-67. When they arrived at Clinton, Defendant King told the gate officer that Plaintiff had "cut and assaulted an officer." *Id.* Plaintiff was asked by the nurse at Clinton if he had any medical problems, and Street, Bouchey, and King, who were present, looked Plaintiff in the face, intimidating him so that he would not report the assault. *Id*.

Defendants have identified Plaintiff's Eighth Amendment claims for excessive force, harassment, and denial of the use of medical devices against Defendants Streeter, Bouchey, and King as included in their Rule 12(b)(6) motion to dismiss. (Dkt. No. 116-1 at 5, 7.) The only claim addressed in their Memorandum of Law, however, is Plaintiff's harassment claim against Streeter, Bouchey, and King. *Id*. at 22-23. Therefore, the Court does not consider Plaintiff's excessive force and denial of the use of medical devices claims to be a part of Defendants' motion to dismiss.

Because Plaintiff has alleged that the Defendants' alleged harassment was accompanied by the injuries sustained by him as a result being assaulted by Streeter, Bouchey, and King, the

Court recommends that their motion to dismiss Plaintiff's harassment claim be denied. *See Aziz Zarif Shabazz*, 994 F. Supp. 2d at 474 (unless accompanied by a physical injury, verbal harassment alone does not constitute the violation of any federally protected right).

### F. Brousseau

Defendant Brousseau was the Inmate Grievance Procedure ("IGP") Supervisor at Upstate when Plaintiff filed a grievance on August 8, 2011, for assault and battery against Upstate staff. (Dkt. No. 111 at 70.)  While the grievance does not identify the individuals against whom it was made, it describes the assaults that involved Monacelli, Larocque, Riley, Streeter, Bouchey, and King.  (Dkt. Nos. 111-2 at 157-68; 111-3 at 1-2.)  Plaintiff wrote letters to Brousseau requesting status updates on August 31, 2011, and September 5, 2011, and did not receive a response to either letter.  (Dkt. No. 111 at 70-71.)

On September 9, 2011, Plaintiff wrote an appeal of the August 8, 2011, grievance to Brousseau due to a lack of response and requested that the appeal be sent to the Superintendent. *Id*. at 71; Dkt. No. 111-4 at 2.  On September 15, 2011, Plaintiff wrote to Defendant Fischer requesting an investigation of Defendant Richard Roy ("Roy") and Brousseau for refusing to respond to his grievance.  (Dkt. No. 111 at 71.)

On October 20, 1011, Brousseau sent Plaintiff written notice that there was no record of a grievance having been filed concerning an alleged assault at Upstate. *Id*.; Dkt. No. 111-4 at 3. On October 23, 2011, Plaintiff wrote to Roy regarding Brousseau's cover-up of staff misconduct, refusal to file Plaintiff's grievance, destruction of the grievance, and refusal to file Plaintiff's appeal.  (Dkt. Nos. 111 at 72; 111-4 at 5-16.)  Plaintiff also refiled the grievance on October 23,

2011.  (Dkt. No. 111 at 72.)

On November 9, 2011, Plaintiff filed a complaint against Brousseau with the Clinton Superintendent alleging harassment, destruction of Plaintiff's grievances, denying Plaintiff access to court, and covering up staff misconduct.  *Id.*  On November 21, 2011, Plaintiff wrote a letter to Defendant Fischer requesting an investigation of his August 8, 2011, grievance, and a letter to Defendant Bellamy complaining that Brousseau had destroyed his grievances and refused to file his appeal for the sole purpose of covering up official misconduct.  *Id.* at 73; Dkt. 111-4 at 18-22.  Bellamy responded by letter of November 30, 2011, in which she advised Plaintiff that contact with Upstate administration revealed that he had filed no grievances, and that he should address his grievance concerns with the IGP Supervisor.  (Dkt. No. 111-4 at 24.)

On November 26, 2011, Plaintiff filed a grievance requesting to be transferred to another state or to federal custody for security reasons.  (Dkt. Nos. 111 at 74; 111-4 at 27-29.)  The grievance was rejected by Brousseau as untimely.  (Dkt. No. 111 at 74.)  Plaintiff refiled the grievance on December 12, 2011, and sent a letter to Brousseau asking that the grievance be filed.  *Id.*

On December 22, 2011, Plaintiff filed a complaint against Brousseau with the Superintendent for repeatedly refusing to file his grievances, harassment, and retaliation while acting in concert with others to cover up misconduct by destroying Plaintiff's grievances.  *Id.* at 75.  Plaintiff received no response from the administration at Clinton.  *Id.*

In January of 2012, Brousseau came to Plaintiff's cell in SHU and told him he wanted to speak with him about all of the letters and complaints he had sent the Superintendent about him.

(Dkt. No. 111. at 76.)  According to Plaintiff, Brousseau told him that he had processed every grievance that came through his office.  *Id*.  Brousseau also made reference to Plaintiff's assault with a razor blade on a corrections officer and told Plaintiff "what' go (sic) around come around," and informed Plaintiff he answered grievances when he wanted to, and if Plaintiff did not like it to stop filing grievances.  *Id*. at 76-77.

### 1. Claim for Harassment

Brousseau seeks dismissal of Plaintiff's harassment claim against him.  Inasmuch as "[Verbal harassment itself does not rise to the level of a constitutional violation," *Tafari,* 714 F. Supp. 2d at 364, and there are no allegations that Brousseau's alleged harassment was accompanied by physical injury, the Court recommends that the claim be dismissed with prejudice.

### 2. Violation of Grievance Procedures

The law is well-settled that inmates do not have a constitutional right to state grievance procedures.  *See Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do not give rise to a cognizable § 1983 claim").  "[C]omplaints that prison officials tampered with, failed to investigate, or improperly processed grievances, without more, do not give rise to liability under § 1983." *Celestin v. Premo*, No. 9:12-cv-301 (GLS/RFT), 2014 WL 272443, at *3, 2014 U.S. Dist. LEXIS 8790, at *6 (N.D.N.Y. Jan. 24, 2014) (citing *Irvis v. Seally*, No. 9:09-cv-543 (GLS/ATB), 2011 WL 454792, at * 2, 2011 U.S. Dist. LEXIS 11095, at *5 (N.D.N.Y. Feb. 4, 2011) ("Thus, regardless

of whether and to what extent defendants followed their grievance procedures in investigating or failing to investigate [plaintiff's] complaints, his claims must fail as a matter of law as they are not actionable under § 1983.")); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (an inmate's right of access to the courts is not compromised by the refusal to entertain an inmate's grievance because if prison officials ignore a grievance that raises constitutional issues, an inmate can directly petition the government for redress); *Shell*, 365 F. Supp. 2d at 369-70.

Therefore, the Court recommends that Brousseau's motion to dismiss Plaintiff's claim that he violated the DOCCS grievance procedures by failing to respond to Plaintiff's grievances to cover up for staff, be dismissed with prejudice.

### 3. Retaliation

Defendants have acknowledged that Plaintiff has alleged a claim against Brousseau for retaliation in connection with destruction of his grievances.[12] (Dkt. No. 116-1 at 5.) Moreover, they identify the claim as one which they seek to have dismissed on their Rule 12(b)(6) motion. (Dkt. No. 116-1 at 7.) Defendants' Memorandum of Law, however, has addressed only Plaintiff's harassment and violation of the DOCCS grievance procedure claims, not the retaliation claim, which is a separate claim from the grievance procedure violation claim. *See, e.g., Adams v. Rock*, No. 9:12-cv-1400 (GLS/ATB), 2015 WL 1312738, at *13, 2015 U.S. Dist. LEXIS 183061, at *22 (N.D.N.Y. March 24, 2015) (addressing a claim for retaliation for failure to file grievances as distinct from violation of DOCCS grievance procedure claim). As a result

---

[12] Plaintiff has alleged that Brousseau destroyed Plaintiff's grievances in retaliation for Plaintiff's complaints to Fischer and Bellamy regarding his handling of Plaintiff's grievances. (Dkt. No. 111 at 78.)

of the Defendants' failure to address the retaliation claim in their Memorandum of Law, the Court does not consider the retaliation claim to be a part of Defendants' motion to dismiss.

### G.    Brown

Defendants have identified the claims alleged by Plaintiff against Defendant Brown, Deputy Superintendent for Security, as verbal harassment and threats; retaliation for complaining to the Inspector General and filing grievances by denying requests for accommodations for Plaintiff's disabilities; discrimination; and ignoring Plaintiff's complaints about Brousseau. (Dkt. No. 116-1 at 6.)  Defendants have identified Plaintiff's claims against Brown for retaliation and discrimination as the only two claims they seek to have dismissed on their Rule 12(b)(6) motion.  *Id*. at 6-7.  Because neither of those claims has been addressed in Defendants' Memorandum of Law, neither is considered by the Court to be a part of Defendants' Rule 12(b)(6) motion.  (*See* Dkt. No. 116-1.)

Plaintiff's claim against Brown for verbal harassment and threats has not been included among the list of claims Defendants seek to have dismissed.  *Id* at 6-7.  The claim has, however, been addressed in their Memorandum of Law.  *Id*. at 22-23.  Because it is clear from Defendants' Memorandum of Law that they are seeking dismissal of the verbal harassment and threats claim against Brown, and Plaintiff has addressed the claim in his opposition (Dkt. No. 127 at 6), the Court finds that consideration of the claim on Defendants' Rule 12(b)(6) motion will not be prejudicial to Plaintiff.

Plaintiff has alleged that Brown came to his cell on January 20, 2012, and told Plaintiff that he was going to have a problem with him if he did not stop filing grievances, and he would

never be moved to four gallery as an accommodation for his disability. (Dkt. No. 111 at 81.) Plaintiff became fearful because Brown was screaming at him, and he was concerned if he filed a grievance, it would impact negatively on his request to move to four gallery. *Id.* at 82.

Although verbal threats or abuse are indefensible and unprofessional, in the absence of physical injury, they are not sufficient to state a constitutional violation cognizable under § 1983. *Aziz Zarif Shabazz*, 994 F. Supp. 2d at 474; *Germiston,* 878 F. Supp. at 449. Plaintiff has not alleged that the threats resulted in physical injury. Therefore, the Court recommends that Plaintiff's claim that he was verbally harassed and threatened by Brown be dismissed with prejudice.

### H.      Lee

Defendants have moved for dismissal of Plaintiff's harassment claim against Defendant Lee. (Dkt. No. 116-1 at 6-7, 22-23.) Plaintiff has alleged that while he was in his cell, he asked Lee to correct documents to reflect that he had three, not two bags. (Dkt. No. 111 at 89.) Lee replied in an aggressive and profane manner that the paper work had three bags listed and told Plaintiff he could start packing his things because he was not going to be in the cell long. Lee also made reference to a letter Plaintiff had written to Captain Lucia which resulted in Lee being ordered to give Plaintiff his legal work. *Id*.

On June 27, 2012, while escorting Plaintiff to the yard, Lee and another officer told Plaintiff "I don't fucking care if you walk on one leg, you're going to be moved to another company, and I don't care what the Sergeant said. You're lucky that unit 14 has so may cameras up here. You think you're (sic) lawyer can protect you? I'm going to see to that." *Id*. On July 2,

2012, Lee told Plaintiff he was going to make sure he never got out of SHU, and that if he did Lee would make sure to take care of him. (Dkt. No. 111 at 93-94.) On August 13, 2012, while handing out the mail, Lee screamed to Plaintiff, "Don't make noise or scream when I'm on the Company!" *Id.* at 94. He also told Plaintiff to stop talking to himself. *Id.*

Because Lee's harassing and threatening comments are not, in absence of physical injury, sufficient to state a constitutional violation cognizable under § 1983, the Court recommends that Plaintiff's claim that he was verbally harassed and threatened by Lee be dismissed with prejudice. *See Aziz Zarif Shabazz*, 994 F. Supp. 2d at 474.

## I.    Beaudette

According to Defendants' Memorandum of Law, they are seeking dismissal of Plaintiff's claims against Defendant Corrections Officer Beaudette for cutting Plaintiff's showers short and making the water too hot; throwing Plaintiff's property in the garbage; verbally harassing Plaintiff; and denying Plaintiff soap and razors in retaliation for filing grievances. (Dkt. No. 116-1 at 6-7.) The only claim addressed in Defendants' Memorandum of Law, however, is Plaintiff's claim that Beaudette destroyed his property, although it appears that the omission of Beaudette's name from the harassment claim argument in Defendants' Memorandum of Law was almost certainly inadvertent and will be construed as such by the Court. *Id*. at 22-23, 26-27. Therefore, the Court deems Plaintiff's harassment and destruction of property claims to be the sole claims against Beaudette that Defendants seek to have dismissed on their Rule 12(b)(6) motion.

Plaintiff has alleged that on December 17, 2012, while he was being taken to the clinic, Beaudette entered his cell, searched his property, and threw Plaintiff's sheet, lotion, shampoo,

and the rest of the property Plaintiff had on the floor in the garbage. (Dkt. No. 111 at 96.) In his Affirmation and Memorandum of Law in Opposition, Plaintiff contends that Beaudette had destroyed Plaintiff's property, including his legal papers, in retaliation for filing grievances. (Dkt. Nos. 127 at 8; 129 at 13.) Therefore, the Court construes Plaintiff's claim regarding the destruction of his property as both a Fourteenth Amendment due process claim and a First Amendment retaliation claim.

### 1. Destruction of Property in Violation of Due Process Rights

It is well settled that "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation hearing." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003); *see also Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (only post-deprivation remedy was required following intentional destruction of an inmate's personal property by a prison guard, because the state was not "in a position to provide for predeprivation process.") The Second Circuit has held that New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996). Therefore, the Court recommends that Plaintiff's Fourteenth Amendment claim for destruction of property be dismissed with prejudice.

### 2. Retaliation

The filing of an inmate grievance is protected First Amendment activity for purposes of a retaliation claim. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("the filing of prison grievances is a constitutionally protected activity" for purposes of a retaliation claim).

Furthermore, the retaliatory destruction of a prisoner's personal property can in some instances be sufficient to establish an adverse action. *McFadden v. Friedman*, No. 9:12-CV-0685 (GTS/CFH), 2015 WL 5603433, at *13, 2015 U.S. Dist. LEXIS 128314, at *29 (N.D.N.Y. Sept. 23, 2015). Nonetheless, the Court finds that in this case Plaintiff has failed to state a plausible claim for retaliation.

Because of the relative ease with which claims of retaliation can be incanted, courts have scrutinized retaliation claims with particular care. *Flaherty v. Coughlin*, 713 F.3d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz*, 534 U.S. at 506. Accordingly, claims of retaliation must be supported by specific facts; conclusory statements are not sufficient. *Id.* Plaintiff has failed to identify the grievances against which Beaudette was allegedly retaliating and failed to allege facts plausibly showing that there was a causal connection between the grievances and Beaudette's actions.

In addition, the only items of personal property specifically described by Plaintiff in this complaint were a sheet, lotion, and shampoo. In his opposition papers, Plaintiff has alleged that legal papers were also thrown away but has provided no information regarding the papers or their significance to any legal matters in which he was involved. Although confiscation or destruction of an inmate's property may constitute an adverse action for purposes of a retaliation claim, that is not always the case. *See McFadden*, 2015 WL 5603433, at *12 (confiscation of plaintiff's fan would "not [deter] a similarly situated individual of ordinary firmness from exercising his constitutional rights," and is "not substantial enough to deter legitimate grievances against prison officers") (citations and internal quotation marks omitted); *see also Smith v. City of New York*,

No. 03 Civ. 7576 (NRB), 2005 WL 1026551, at *3, 2005 U.S. Dist. LEXIS 7903, at *2 (S.D.N.Y. May 3, 2005) (finding adverse action where prison officials destroyed multiple legal papers and nine hundred dollars worth of personal property).  The Court finds that putting Plaintiff's sheet, lotion, and shampoo in the garbage is not in and enough itself sufficient to constitute an adverse action.

An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (I) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation.  *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 873).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action."  *Id.*  A showing of temporal proximity, without more, has been found insufficient to survive summary judgment.  *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (citations omitted).

Plaintiff has failed to allege facts plausibly showing that grievances he filed were a motivating factor in Beaudette's alleged destruction of Plaintiff's personal property.  The failure results at least in part from the absence of specific facts regarding the grievances Plaintiff filed and Beaudette's connection, if any, to those grievances.  *See, e.g., Wright v. Goord*, 554 F.3d

255, 274 (2d Cir. 2009) (dismissing retaliation claim against a correction officer when the only alleged basis for retaliation was a complaint about an incident involving another corrections officer), *Roseboro,*791 F. Supp. 2d at 369 (failure by plaintiff to provide any basis to believe corrections counselor would retaliate for a grievance in which she was not personally named).

Based upon the foregoing, the Court recommends that Plaintiff's retaliation claim against Beaudette involving the alleged destruction of his personal property and legal papers be dismissed without prejudice for failure to state a claim.

### 3.   Harassment

On May 25, 2013, after Plaintiff had placed his name on the list for a haircut and was awaiting his turn, Beaudette approached his cell and asked if he wanted a haircut. (Dkt. No. 111 at 116-17. Beaudette then told Plaintiff that the only way he would get a haircut was if he showed Beaudette his dick and cut his beard. *Id.* The comments attributed by Plaintiff to Beaudette, while crude and unprofessional, do not constitute the violation of any constitutional right. *See Aziz Zarif Shabazz*, 994 F. Supp. 2d at 474. Therefore, the Court recommends that Plaintiff's harassment complaint against Beaudette be dismissed with prejudice.

### J.    Fischer, Roy, and Bellamy

Defendants seek dismissal of the claims against DOCCS officials Defendants Fischer, Roy, and Bellamy. (Dkt. No. 116.)

### 1.   Personal Involvement Requirement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in

the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful

acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[13]

### 2. Fischer[14]

#### a. Denial of Due Process Claim Regarding Appeal

Plaintiff has alleged that he appealed Gutwein's decision in his disciplinary hearing to Fischer. (Dkt. No. 111 at 53-54.) The guilty finding was affirmed on appeal. *See Quezada v. Fischer*, 979 N.Y.S.2d 426, 427 (3d Dep't 2014) (noting that the determination of guilt following his Tier III disciplinary hearing was affirmed on administrative appeal). Although Fischer's actual involvement, if any, in the affirmance, is not clear from allegations in Plaintiff's second amended complaint (Dkt. No. 111 at 53-54), in his Memorandum in Opposition, Plaintiff claims that Fischer "at all time (sic) condoned all the wrongdoing and and (sic) constitutional violations by all the defendants from span of more than eighth (sic) years in particular he was alerted to the Gutwein wrongdoing and entertainer (sic) plaintiff (sic) appeal in which [he] affirmed and denied

---

[13] The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

[14] Plaintiff has alleged four distinct claims against Fischer in his second amended complaint. (Dkt. No. 111 at 53-54, 71, 73-74.) Those claims are addressed herein. In addition, in catch all paragraphs 308 and 309, Plaintiff has complained generally and in wholly conclusory fashion that between 2006 and 2013, he wrote Fischer multiple letters and filed numerous grievances and complaints regarding assaults by DOCCS staff, and Fischer failed to correct the wrongs or protect Plaintiff from Fischer's subordinates. (Dkt. No. 111 at 122-23.) Given the generalized and wholly conclusory nature of the allegations against Fischer in paragraphs 308 and 309, *id*. at 122-23, and the length of the time period involved, the Court has not treated the allegations in the paragraphs as a distinct claim separate and apart from the specific claims asserted against him that are addressed herein.

plaintiff due process." (Dkt. No. 127 at 4.)

"Merely affirming the denial of an inmate's appeal of a disciplinary sanction . . . is insufficient, on its own, to establish personal involvement." *Shepherd v. Fischer*, No. 9:10-CV-1524 (TJM/DEP), 2015 WL 1246049, at *13, 2015 U.S. Dist. LEXIS 34238, at *42 (N.D.N.Y. Feb. 23, 2015); *see also Tafari,* 714 F. Supp. 2d at 383 ("The affirming of a disciplinary conviction does not constitute personal involvement."). Therefore, the Court recommends that Plaintiff's Fourteenth Amendment due process claim against Fischer for affirming Gutwein's guilty determination in Plaintiff's disciplinary hearing be dismissed with prejudice.[15]

> b. September 15, 2011, Letter Requesting an Investigation of Defendants Brousseau and Roy

Plaintiff has alleged that on September 15, 2011, he wrote to Fischer requesting an investigation of Roy and Brousseau for failing to respond to his grievance complaint filed on August 8, 2011. (Dkt. No. 111 at 71.) Plaintiff acknowledges receiving a response to the letter from Deputy Commissioner Lucien J. LeClaire on September 29, 2011, advising Plaintiff that the complaint was currently being investigated at the facility level. *Id.*

Because by Plaintiff's own admission, his letter to Fischer was referred to the Deputy Commissioner, who responded to Plaintiff, the Court finds that Plaintiff has failed to plausibly allege personal involvement by Fischer with respect to the September 15, 2011, letter requesting an investigation of Roy and Brousseau and recommends that the claim be dismissed with

---

[15] If the Court had recommended that Defendants' motion to dismiss the due process claim against Gutwein on collateral estoppel grounds be granted, the same recommendation would have been made with respect to the due process claim against Fischer.

prejudice.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (prison official who received a letter from an inmate and forwarded it to a subordinate for investigation and response was not personally involved in depriving inmate of constitutional right); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (no personal involvement by DOCCS Commissioner where he referred prisoner's complaint letters to a subordinate for handling); *Garvin v. Goord*, 212 F. Supp. 2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action.").

c.   November 21, 2011, Letter to Fischer Regarding a FOIL Request

On November 21, 2011, Plaintiff wrote to Fischer seeking his help with regard to the FOIL officer's refusal to respond to his request under FOIL (as codified in N.Y. Pub. Off. Law §§ 84-90) for a copy of the recording done while Plaintiff was being transported to an outside hospital.  (Dkt. Nos. 111 at 73-74.)  The Court finds that Plaintiff has failed to state a § 1983 claim for violation of his constitutional rights with regard to his FOIL request.  *See* Pub. Off. Law § 89(4)(b) (providing that a person may appeal the denial of access to a record via an Article 78 proceeding); *Jaegly v. Couch*, 168 F. App'x 480, 482 (2d Cir. 2006) (due process is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy, such as an Article 78 proceeding).

Therefore, the Court recommends that to the extent Plaintiff intends to assert a due process claim against Fischer with regard to the FOIL request, the claim be dismissed with prejudice.

d.    November 30, 2011, Letter Requesting Transfer to
Federal Prison

On November 30, 2011, Plaintiff wrote to Fischer advising him that he was in constant

danger as the result of numerous physical assaults from corrections officers and supervisors from

2006 through 2011.  (Dkt. Nos. 111 at 74; 111-4 at 31-32.)  Plaintiff requested that Fischer

arrange for him to be transferred to a federal prison or a prison in another state.  *Id*.  Plaintiff

claims in his opposition papers that despite the risks to Plaintiff's safety, Fischer refused to

transfer him to federal custody.  (Dkt. No. 127 at ¶ 18.)

It is well settled that a prisoner has no constitutional right to serve his sentence in any

particular institution or to be transferred from one facility to another.  *See Olim v. Wakinekona*,

461 U.S. 238, 249-50 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Prins v.*

*Coughlin*, 76 F.3d 504, 507 (2d Cir. 1997).  The Supreme Court recognized in *Turner v. Safley*,

482 U.S. 78, 84-85 (1987), that the placement and transfer of inmates are examples of

"inordinately difficult" undertakings as to which the courts "accord deference to the appropriate

prison authorities."  Therefore, "prison officials have broad discretion to transfer prisoners."

*Meriwether v. Coughlin*, 879 F.2d 1037, 1045 (2d Cir. 1989).

Inasmuch as Plaintiff has no constitutional right to be transferred to a federal prison or to

an out of state facility, the Court recommends dismissal with prejudice of Plaintiff's claim

against Fischer for failing to comply with the transfer request in his November 30, 2011, letter.

3.    Roy

Plaintiff has asserted claims against Defendant Roy that relate to his incarceration in both

Green Haven and Clinton in his second amended complaint.  (Dkt. No. 111 at 20, 34, 38,44-46,

72.)  The claims against Roy that arose out of events that occurred at Green Haven were transferred to the Southern District of New York by Judge D'Agostino.  (Dkt. No. 38.) Defendants moved to dismiss Plaintiff's claims against Roy in the Southern District of New York action for failure to allege personal involvement, and the motion was granted.  *See Quezada v. Roy*, No. 14 Civ. 4056(CM), 2015 WL 5547277, at *9, 2015 U.S. Dist. LEXIS 126665, at *21-22 (S.D.N.Y. Sept. 18, 2015).

Plaintiff had alleged in his amended complaint in the Southern District that he sent grievances and letters to Roy on several occasions asserting that his life was in danger and asking to be transferred out of Green Haven because of fears for his safety.  *Quezada*, 2015 WL 554277, at *9.  The Hon. Colleen McMahon, United States District Judge, granted Roy's motion to dismiss on the grounds that Roy's position as Inspector General was not high enough in the DOCCS hierarchy to hold him liable for the actions of others, the fact that Plaintiff sent grievances to Roy was not enough to hold him liable, and a prison official's failure to investigate a prisoner's grievances or complaints is not actionable under § 1983.  *Id*.

In his second amended complaint, Plaintiff has alleged that he wrote to Roy on October 23, 2011, to notify him of Brousseau's misconduct in refusing to file and in destroying Plaintiff's grievance, and in refusing to file an appeal.  (Dkt. No. 111 at 72.)  In his letter to Roy, Plaintiff indicated that he was writing to let him know that he had received a letter from Brousseau informing him that there was no record of Plaintiff's August 8, 2011, grievance on file.  (Dkt. No. 111-4 at 14.)  Plaintiff informed Roy that he had written to the Superintendent requesting an investigation, and that the Superintendent had responded that the letter had been sent to Roy.  *Id*.

Plaintiff told Roy that he has also sent a letter to Fischer. *Id.* Plaintiff enclosed copies of the referenced letters as well as his grievance. *Id.* Plaintiff also provided Roy with a copy of the grievance. *Id.* at 15.

As discussed above, inmates do not have a constitutional right to state grievance procedures and violation of the procedures does not give rise to a cognizable claim under § 1983. *Shell,* 365 F. Supp. 2d at 369-70. Because Brousseau's actions with regard to Plaintiff's grievance do not give rise to liability under § 1983 for violation of Plaintiff's constitutional rights, even if Roy were high enough in the DOCCS hierarchy to be held liable for the actions of others, he has no liability to Plaintiff for violation of § 1983 with respect to Brousseau's actions under any of the *Colon* factors. *See Colon*, 58 F.3d at 873. Therefore, the Court recommends that Plaintiff's supervisory liability claim against Roy be dismissed with prejudice.

### 4. Bellamy

On November 21, 2011, Plaintiff wrote to Bellamy complaining that Brousseau had violated DOCCS Directive 4040 by refusing to file grievances of inmates in SHU. (Dkt. Nos. 111 at 73;111-4 at 21.) Plaintiff informed Bellamy that he had filed several grievances and when he requested information from Brousseau about the grievances he did not respond. (Dkt. No. 111-4 at 21.) Plaintiff identified one of the grievances as an August 1, 2011, grievance against Upstate officers for assault.[16] *Id.* Plaintiff told Bellamy that when he wrote to Brousseau regarding the grievance, he did not respond, but that after Plaintiff wrote to the Superintendent, Brousseau sent Plaintiff a letter informing him that no grievances had been filed. (Dkt. No. 111-

_____

[16] It appears that Plaintiff may have been referring to his August 8, 2011, grievance.

4 at 21-22.) Bellamy responded in writing on November 30, 2011, informing Plaintiff that contact with the administration at Upstate revealed that Plaintiff had not filed any grievances, and contact with the administration at Clinton revealed that he had filed five grievances to date.[17] *Id.* at 24.

Because Brousseau's actions in allegedly refusing to file Plaintiff's grievance do not give rise to liability under § 1983 for violation of Plaintiff's constitutional rights, *see Shell,* 365 F. Supp. 2d at 369-70, Bellamy can not be held liable to Plaintiff for violation of § 1983 under any of the *Colon* factors. *Colon*, 58 F.3d at 873. Therefore, the Court recommends that Plaintiff's supervisory liability claim against Bellamy be dismissed with prejudice.

### K. Claims Against Defendant Cross Under Title II of the ADA and the Rehabilitation Act

Defendant Cross seeks dismissal of Plaintiff's claim that he violated Plaintiff's rights under Title II of the ADA and the Rehabilitation Act by denying Plaintiff's requests for reasonable accommodations for his physical disabilities including special headphones, a shake alarm, a visual smoke detector, the use of a shower chair, implements to place his knee and back

---

[17] As with Fischer, Plaintiff has included catch all allegations in paragraphs 314 through 317 complaining in wholly conclusory fashion that since 2006, Bellamy has personally participated in constitutional violations by her subordinates in relation to destruction of grievances that Plaintiff filed against staff, by protecting her subordinates even after she was advised of their wrongdoing in multiple letters, reports, and complaints from Plaintiff; and that Bellamy was grossly negligent in supervising her subordinates who committed unlawful acts. (Dkt. No. 111 at 125-28.) Given the generalized and wholly conclusory nature of the allegations against Bellamy in paragraphs 314 through 317, the Court has not treated those allegations as a distinct claim or claims separate from the specific claim arising out of Plaintiff's November 21, 2011, letter to Bellamy that is addressed herein.

braces on while he was in the shower, and a chair in the back of his cell to sit on while putting on his leg brace.

    1.   <u>Disabilities</u>

        a.   <u>Hearing Impairment</u>

Plaintiff has suffered from a hearing impairment since childhood and wears hearing aids in both ears.  (Dkt. Nos. 127 at 4; 127-1 at 13.)   In or about January of 2013, Plaintiff's request for a reasonable accommodation under Title II of the ADA, which included special headphones, a shake alarm, and a visual smoke detector was denied.  (Dkt. Nos. 111 at 96; 111-5 at 68-70.) Plaintiff's grievance from the denial was also denied.  (Dkt. No. 111-5 at 104-15.)

On May 28, 2013, Jack Young ("Young"), a staff attorney from Prisoners' Legal Services of New York, wrote to the Clinton Superintendent requesting a review of the denial of Plaintiff's request for reasonable accommodations.  (Dkt. No. 127-1 at 13.)  According to Young, because Plaintiff has hearing aids that are placed in the ear canal in both ears so he cannot use the earbud style earphones available to SHU inmates, which are also placed in the ear canal.  *Id.*  In his letter, Young indicates that Plaintiff's most recent grievance regarding his request for headphones was denied by the Superintendent on March 5, 2013, because the audiologist noted that Plaintiff's hearing aids were functioning within normal limits.  *Id.*; Dkt. No. 111-5 at 69-70. However, as pointed out by Young, Plaintiff is still unable to use earbuds because his hearing aids are in the ear canal.  *Id.*  Young also noted that because sleeping with hearing aids in is uncomfortable and would place Plaintiff at increased risk for an infection, he cannot use an auditory alarm.  *Id.*

b.     <u>Knee and Back Disabilities</u>

In addition to his hearing impairment, Plaintiff has had three surgeries for injuries to his knee alleged to have been sustained when he was thrown off a two story building in 1999. (Dkt. Nos. 111-6 at 2-59; 127 at 3-4.) The surgeries appear to have been of limited success, leaving Plaintiff with an unstable knee on which he has to wear a brace. *Id*.; Dkt. No. 111-4 at 77. Plaintiff also has back problems resulting from a fall from his top bunk in 2005 for which he wears a back brace. (Dkt. Nos. 111-4 at 77; 127 at 4.)

According to Plaintiff, from early February 2013 until early May 2013, Cross refused to allow him to sit on his bed to put his knee brace on and insisted he sit on the floor in the back of his cell. (Dkt. Nos. 111 at 271-83; 129 at ¶¶ 39-49.) Even after Plaintiff informed Cross that putting the knee brace on while sitting on the floor caused him excruciating back pain, Cross continued to refuse to allow Plaintiff to sit on the bed. (Dkt. No. 129 at ¶¶ 41-42.) As a result of not being able to sit on the bed to put on his brace, Plaintiff was often required to go to the recreation cage without his brace, and on those occasions could do nothing more than stand in the corner. *Id*. at ¶¶ 41-44. When Cross learned that other officers were allowing Plaintiff to sit on the bed to put on his leg brace, he posted a memorandum stating that Plaintiff's knee brace was only for out of cell use, the brace was to be kept in the back of his cell, and Plaintiff could stand or sit on the floor to put the brace on and did not need to sit on the bed or on a stool in the back of his cell to put it on. *Id*. at ¶ 47.

On May 6, 2013, one of the days on which Plaintiff was required to go to recreation without his brace because Cross would not let him sit on the bed to put it on, Plaintiff slipped and

fell on a wet spot in front of the shower on the way back from recreation when his knee gave out. (Dkt. No. 129 at ¶ 49.)  Plaintiff twisted his knee and back.  *Id*.  The same day, a memorandum ordered by Defendant Brown was issued advising staff that a five gallon bucket was to be placed in the back of Plaintiff's cell so that he could sit on it to put on his knee brace.  *Id*. at ¶ 52; Dkt. No. 111 at 111.

According to Plaintiff, Cross also denied him the use of a shower chair, forcing him to sit on the unsanitary, dirty, slippery shower floor.  (Dkt. No. 129 at ¶ 37.)  In addition, Plaintiff was required to place his hearing aids and knee and back braces on the dirty floor during his shower because Cross would not provide an off the floor surface on which they could be placed.  *Id*.

        2.        Title II of the ADA and the Rehabilitation Act[18]

Title II of the ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A "disability" is defined as a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  In general, plaintiffs who seek to state a claim for disability under the ADA "must demonstrate that (1) they are 'qualified individuals' with a disability[19]; (2) that the defendants are subject to the ADA; and

---

[18]  The elements of claims under Title II of the ADA and the Rehabilitation Act are essentially the same and are treated as such in the Court's analysis.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

[19]  Under the ADA, the term "disability" with respect to an individual means "a physical or mental impairment that substantially limits one or more major life activities of such individual"; "a record of such impairment"; or "being regarded as having such an impairment." 42 U.S.C. §12102(1).  For purposes of "being regarded as having such as impairment," an

(3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272-73 (2d Cir. 2003).

"The purpose of [Title II of the ADA] is to 'eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and able-bodied.'" *Maccharulo v. New York State Dept. of Corr. Servs.*, No. 08 Civ 301 (LTS), 2010 WL 2899751, at *2, 2010 U.S. Dist. LEXIS 73312, at *7 (S.D.N.Y. July 21, 2010) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). Under Title II of the ADA, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual "to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir 2004), *opinion corrected on other grounds at* 511 F.3d 238 (2d Cir. 2004); *Disabled In Action v. Board of Elections of New York,* 752 F.3d 189, 197 (2d Cir. 2014) ("A public entity discriminates against a qualified individual with a disability when it fails to provide 'meaningful access' to its benefits, programs, or service.") (citation omitted).

The Supreme Court has held that state prisons "fall squarely within the statutory definition of 'public entity'" in Title II of the ADA, and state inmates may maintain ADA claims. *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Hilton v.*

---

individual need only establish "that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairments limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

*Wright*, 673 F.3d 120, 128 (2d Cir. 2012) (DOCCS treated as a public entity under Title II of the ADA).

### 3. Individual Capacity Claims under Title II of the ADA and the Rehabilitation Act

Neither Title II of the ADA nor the Rehabilitation Act provides for individual capacity suits against state officials. *Garcia v. State of N.Y. Health Scis Ctr*., 280 F.3d 98, 109-10 (2d Cir. 2001). Therefore, the Court recommends that Plaintiff's ADA and Rehabilitation Act claims against Cross in his individual capacity be dismissed with prejudice.

### 4. Official Capacity Claims under Title II of the ADA and the Rehabilitation Act

#### a. Money Damages

The Eleventh Amendment bars claims for money damages against a state and its officials acting in their official capacity in federal court unless the state has waived its sovereign immunity or it has been abrogated by Congress. *Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009). In *Garcia,* 280 F.3d at 109-10, the Second Circuit found that in enacting Title II of the ADA, Congress had exceeded its authority under Section 5 of the Fourteenth Amendment in broadly abrogating Eleventh Amendment sovereign immunity. The Court found that sovereign immunity could still be abrogated under Title II of the ADA if a plaintiff could establish "that the Title II violation was motivated by discriminatory animus or ill will based on plaintiff's disability." *Id*. at 111.

After *Garcia*, the Supreme Court reaffirmed that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth

Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546

U.S. 151, 159 (2006) (emphasis in original).  Thereafter, in *Bolmer v. Oliveira*, 594 F.3d 134,

146-48 (2d Cir. 2010), the Second Circuit clarified that *Garcia* and its discriminatory animus

requirement were based on Congress's enforcement of the Equal Protection Clause.  *Id*. at 146.

The Court held in *Bolmer* that the *Garcia* requirement of an additional showing of

discriminatory animus or ill will based on plaintiff's disability is not applicable when abrogation

is supported by the enforcement of due process rights.[20]  *Id*. at 147-48.  In *Georgia*, 546 U.S. at

157-58, the Supreme Court concluded that because the Due Process Clause of the Fourteenth

Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual

punishment, a state prison inmate may sue the state or one of its officials in his official capacity,

for money damages under Title II of the ADA if the alleged Title II violations also independently

violate the Eighth Amendment.

b.      Injunctive Relief

The Second Circuit has held that under the doctrine set forth in *Ex Parte Young*, 209 U.S.

123, 155-56 (1908), claims for prospective injunctive relief may be pursued against individual

---

[20]  In *Bolmer*, the Second Circuit specifically declined to reach the question of whether *Garcia* survives *Georgia*.  *Id*. at148.  Recently, in *Dean v. University of Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178 (2d Cir. 2015), the Second Circuit acknowledged that the Supreme Court decision in *Georgia* had called *Garcia's* validity into question and led to a divergence in the approaches adopted by district courts in the Circuit in their assessment of sovereign immunity under Title II, but again did not decide the issue.  *Dean*, 804 F.3d at 194-95.  Because the Second Circuit has yet to rule on the question of *Garcia's* continued validity, the Court will follow *Garcia* on the issue of the availability of monetary damages against State officials acting in their official capacities.

state officers in their official capacities under Title II of the ADA and the Rehabilitation Act. *See Henrietta D.*, 331 F.3d at 287-88 (Eleventh Amendment does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law); *Harris v. Mills*, 572 F.3d 66, 72-73 (2d Cir. 2009) (following *Henrietta*).

 5. <u>Analysis of Plaintiff's Title II of the ADA and Rehabilitation Act Claims Against Defendant Cross</u>

 The Court finds that for purposes of this motion to dismiss, Plaintiff has made a plausible showing that he is a qualified individual with a disability for purposes of his Title II of the ADA and the Rehabilitation Act given his hearing impairment, unstable knee requiring a brace, and back problem requiring a brace. Furthermore, as noted above, it is well settled that DOCCS and its officials are subject to the ADA.

 The Court also finds that for purposes of this motion Plaintiff has made a plausible showing that he was denied the opportunity to participate in or benefit from the DOCCS services, programs, activities and was discriminated against by reason of his disabilities. Plaintiff has alleged that he requested special headphones because the Clinton Inmate Orientation Manual for SHU provided that "[e]arphones will be issued after 30 days post adjustment period or on box to box transfer of prisoners." (Dkt. No. 111 at 96.) Since Plaintiff cannot use earbuds because of his hearing aids, he is arguably deprived of an activity afforded other inmates, i.e., listening to music or other media with earphones, and is discriminated against as a result of his hearing impairment and need to have hearing aids in his ear canals. Furthermore, it is unclear whether inmates are generally provided with alarm clocks. If that is the case, denying Plaintiff a shake alarm because he does not wear his hearing aids when sleeping is arguably denial of a service

53

provided to other inmates based upon his handicap.

Plaintiff has likewise made a plausible showing that he was denied the recreational activities afforded other inmates by not being allowed to sit on his bed to put on his knee brace. When Plaintiff was unable to put on his brace, he was limited to standing in the corner of the recreation cage. (Dkt. No. 129 at ¶¶ 41-44.) Plaintiff was arguably discriminated against in taking a shower because, unlike other inmates, he was required to sit on the unsanitary dirty shower floor as a result of being unable to stand in the shower and was denied a shower chair. *Id*. at ¶ 37.)

In addition, the Court finds solely for purposes of this motion that Plaintiff has made a plausible showing of the violation of his Fourteenth Amendment rights inasmuch as Cross has not sought dismissal of Plaintiff's Eighth Amendment claim arising out of his having to sit on the floor in the shower. Thus, the Court finds that Plaintiff has stated a plausible claim for money damages against Cross in his official capacity. *See Georgia*, 546 U.S. at 157-58. While Defendants are seeking dismissal of Plaintiff's claims for injunctive relief because the second amended complaint does not allege ongoing violations, the Court finds it premature to assess the continued viability of Plaintiff's claims for injunctive relief under Title II of the ADA and Rehabilitation at this point in the litigation.

In light of the foregoing, the Court recommends that Plaintiff's Title II of the ADA and Rehabilitation Act claims against Cross in his individual capacity be dismissed with prejudice, and that Defendants' motion to dismiss Plaintiff's Title II of the ADA and Rehabilitation Act claims against Cross in his official capacity be denied.

**VI.    CLAIMS IDENTIFIED BY DEFENDANTS AND NOT ADDRESSED ON DEFENDANTS' RULE 12(b)(6) MOTION**

In their Memorandum of Law, Defendants listed the claims they believe Plaintiff to have alleged in his second amended complaint.  (Dkt. No. 116 at 5-7.)  As noted above, Defendants identified a number of those claims as being included in their Rule 12(b)(6) motion but failed to address those claims in their Memorandum of Law.  Those unaddressed claims, which the Court did not consider on Defendants' motion are: (1) Eighth Amendment failure to intervene claim against Defendant Riley; (2) Eighth Amendment claims for excessive force and denial of a medical device to Plaintiff against Defendants Streeter, Bouchey, and King; (3) First Amendment retaliation claim against Defendant Brousseau; (4) First Amendment retaliation claim and discrimination claim against Defendant Brown; and (5) Eighth Amendment claim for making Plaintiff's showers too short and the water too hot, and First Amendment retaliation claim for the adverse action denying Plaintiff razors and soap against Beaudette.

The claims identified by Defendants which they have not included in their Rule 12(b)(6) motion are: (1) excessive force and possibly a §1983 conspiracy by Defendants Monacelli and Larocque to cover up use of excessive force on Plaintiff; (2) Defendant Brown ignoring complaints about Defendant Brousseau; (3) Defendant Lee planting a weapon in Plaintiff's cell; retaliating against Plaintiff for turning in the weapon by denying him supplies for legal work and filing a false misbehavior report; and sexually assaulting him; (4) Defendant Cross retaliating against Plaintiff for filing grievances by moving Plaintiff to an unsanitary cell; moving him five times in less than eight months; denying Plaintiff's request to sit on the bed while putting on his knee brace; denying Plaintiff recreation; denying Plaintiff a shower chair; destroying Plaintiff's

legal papers and personal property; and violating Plaintiff's Eighth Amendment rights by forcing him to sit on the floor to put on his leg brace; (5) Defendants Brown, Cross, and Lee's negligence in connection with Plaintiff's because they had actual notice of a dangerous condition; and (6) Defendants Brown and Cross for destruction of videotape evidence of Plaintiff's fall. (Dkt. No. 116 at 5-7.)

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss certain claims in Plaintiff's second amended complaint (Dkt. No. 116) for failure to state a claim be **GRANTED** in part and **DENIED** in part; and it is further

**RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** as to the following claims and that the **DISMISSAL OF THOSE CLAIMS BE WITH PREJUDICE**: (1) all claims for money damages against Defendants in their official capacities on Eleventh Amendment grounds; (2) Eighth Amendment harassment claim and First Amendment claim for violation of DOCCS inmate grievance procedures against Defendant Brousseau; (3) Eighth Amendment harassment claim against Defendant Brown; (4) Eighth Amendment harassment claim against Defendant Lee; (5) Eighth Amendment harassment claim and Fourteenth Amendment claim against Defendant Beaudette for destruction of personal property; (6) supervisory liability claim against Defendant Fischer; (7) supervisory liability claim against Defendant Roy; (8) supervisory liability claim against Defendant Bellamy; and (9) individual capacity claims against Defendant Cross for violation of Title II of the ADA and the Rehabilitation Act; and it is further

**RECOMMENDED** that Defendants motion to dismiss be **GRANTED** as to the following claims and that the **DISMISSAL OF THOSE CLAIMS BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**: (1) Section 1983 conspiracy claim against Defendant Lordi (with leave to amend solely to the extent Plaintiff can allege facts plausibly showing that Lordi was pursuing her own personal interests separate and apart from DOCCS); (2) First Amendment retaliation claim against Defendant Gutwein; and (3) First Amendment retaliation claim against Defendant Beaudette; and it is further

**RECOMMENDED** that Defendants' motion to dismiss be **DENIED** as to the following claims: (1) Fourteenth Amendment due process claim against Defendant Gutwein on collateral estoppel grounds (without prejudice); (2) Eighth Amendment harassment claim against Defendant Monacelli; (3) Eighth Amendment harassment claim against Defendant Larocque; (4) Eighth Amendment harassment claim against Defendant Chase; (5) Eighth Amendment harassment claim against Defendant Riley; (6) Eighth Amendment denial of adequate medical care claim against Defendant Lordi; (7) Eighth Amendment harassment claim against Defendant Streeter; (8) Eighth Amendment harassment claim against Defendant Bouchey; ( 9) Eighth Amendment harassment claim against Defendant King; and (10) Title II of the ADA and Rehabilitation Act claims asserted against Defendant Cross in his official capacity; and it is further

**RECOMMENDED** that the case be **DISMISSED** against Defendants Fischer, Roy, and Bellamy; and it is further

**RECOMMENDED** that Plaintiff be directed that any amended complaint submitted by

him in response to the District Court's Order on this Court's Report-Recommendation: (1) shall supersede and replace in its entirety the second amended complaint, and therefore must be a complete pleading which sets forth all of the claims that Plaintiff wants the District Court to consider as a basis for awarding relief herein, including all claims that are not dismissed as a result of the District Court's Order; (2) must set forth a short and plain statement of the facts Plaintiff relies on in support of his claims, and which names one or more individuals who engaged in acts of misconduct or wrongdoing which violated his constitutional rights; and (3) must contain a brief description in the body of the amended complaint of each exhibit annexed thereto, referencing the exhibit with its designated exhibit number or letter therein; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:   February 16, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

58

2015 WL 1312738
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Damien ADAMS, Plaintiff,
v.
Superintendent D. ROCK et al., Defendants.

No. 9:12–cv–1400 (GLS/ATB).
|
Signed March 24, 2015.

**Attorneys and Law Firms**

Damien Adams, Elmira, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, The Capitol, Joshua E. Mcmahon, Assistant
Attorney General, of Counsel, Albany, NY, for the
Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

 **\*1** *Plaintiff pro se* Damien Adams commenced this action
against defendants A. Lashway, D. Rock, T. Zerniak, R.
Bishop, Traver, Cromp, R. Winston, Mitchee,[1] and Orzech,
pursuant to 42 U.S.C. § 1983, alleging violations of the
First, Eighth, and Fourteenth Amendments.[2] (*See generally*
Compl., Dkt. No. 1.)

On March 7, 2014, defendants moved for summary judgment.
(Dkt. No. 47.) In a Report–Recommendation (R & R) issued
on December 9, 2014, Magistrate Judge Andrew T. Baxter
recommended that defendants' motion for summary judgment
be granted in its entirety, and Adams' complaint be dismissed.
(Dkt. No. 55.) Pending are Adams' objections to the R &
R. (Dkt. No. 56.) For the reasons that follow, the R & R is
adopted in its entirety.

### II. *Background*

Adams is an inmate currently in the custody of the New
York State Department of Corrections and Community
Supervision, and, during the time period relevant to his
claims, was housed at Upstate Correctional Facility. (Defs.'
Statement of Material Facts (SMF) ¶¶ 1–2, Dkt. No. 47,
Attach. 1.) Shortly after he arrived at Upstate, Adams
prepared a grievance about the condition of his cell. (*Id.* ¶ 2.)
On May 15, 2012, Adams put his grievance in the mail, which
was collected by Mitchell. (*Id.* ¶¶ 3, 5–6.) Later that same
day, Winston issued a misbehavior report to Adams for failing
to return his food tray and disobeying a direct order. (*Id.* ¶
11.) Adams alleges that this misbehavior report was issued in
retaliation for his submission of a grievance earlier that day.
(Compl. at 5.) At the time Winston issued the misbehavior
report, he had no knowledge of Adams' grievance. (Defs.'
SMF ¶ 12 .)

Adams alleges that, in anticipation of his disciplinary hearing,
he "was placed on a Pre–Hearing Restricted Diet for seven
days total," which caused him to feel ill. (Compl. at 6.)
According to Adams, Traver and Lashway ignored his
complaints and his efforts to secure medical treatment. (*Id.*
at 6, 8.) Adams alleges that he submitted two additional
grievances in June 2012, in which he complained about the
false misbehavior report and the lack of medical attention
provided to him in response to his complaints. (*Id.* at 8–9.) He
contends that these grievances were never properly processed
by the grievance investigator, Cromp, "in retaliation for filing
them at this point."(*Id.*) Upstate does not have any record of
these grievances ever being filed. (Defs.' SMF ¶ 23.)

### III. *Standard of Review*

Before entering final judgment, this court reviews report and
recommendation orders in cases it has referred to a magistrate
judge. If a party properly objects to a specific element
of the magistrate judge's findings and recommendations,
this court reviews those findings and recommendations *de
novo.See Almonte v. N.Y. State Div. of Parole,* No. Civ.
904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y.
Jan. 18, 2006). In those cases where no party has filed an
objection, only vague or general objections are made, or
a party resubmits the same papers and arguments already
considered by the magistrate judge, this court reviews the
findings and recommendations of the magistrate judge for
clear error. *See id.* at *45.

## IV. *Discussion*

**\*2** In his R & R, Judge Baxter recommended that defendants' motion for summary judgment be granted and all of Adams' claims dismissed. (Dkt. No. 55.) First, with respect to Adams' claim regarding being placed on a restricted diet, Judge Baxter recommended that it be dismissed, noting the caselaw precedent within the Second Circuit dismissing Eighth Amendment claims premised on the imposition of similar dietary restrictions, as not alleging a sufficiently serious deprivation to constitute cruel and unusual punishment. (*Id.* at 5–7 (citing, *inter alia, McEachin v. McGuinnis,* 357 F.3d 197, 199–200 (2d Cir.2004).) Next, with respect to Adams' medical indifference claim, Judge Baxter recommended dismissal because Adams' allegations were not supported by any facts in the record, and because the issues of which Adams complained—constipation and minor bleeding during bowel movements—were not sufficiently serious to satisfy the objective component of an Eighth Amendment deliberate indifference claim. (*Id.* at 8–13.) Further, Judge Baxter noted that Adams' claim was based merely on his subjective "disagreement with the medical staff's judgment as to appropriate treatment[, which] does not rise to the level of deliberate indifference."(*Id.* at 15 (citing *Black v. Fischer,* No. 9:08–CV–0232, 2010 WL 2985081, at *11 (N.D.N.Y. July 1, 2010).)

Judge Baxter also recommended dismissing Adams' First Amendment retaliation claim because he could not establish a causal connection between his protected conduct—filing grievances—and any adverse action on the part of the defendants against whom this claim is alleged. (*Id.* at 16–26.) Specifically, Adams failed to demonstrate that either Mitchell or Winston, who were alleged to have filed a misbehavior report against him in retaliation for his filing of grievances, even knew about the grievances he had filed. (*Id.* at 19–23.) Further, Adams could not prove that Cromp declined to process two particular grievances filed by Adams, in retaliation for his filing of those same grievances, because there was no record evidence that Adams ever submitted such grievances, and, in any event, " 'the refusal to process a small number of grievances does not constitute an adverse action' required to support a First Amendment retaliation claim."(*Id.* at 23 (quoting *Hill v. Laird,* No. 06–CV–126, 2014 WL 1315226, at *10 (E.D.N.Y. Mar. 31, 2014).) Finally, as to Rock, Adams failed to demonstrate personal involvement in any of the alleged constitutional violations. (*Id.* at 25–26.)

Here, in his objections, Adams utterly fails to identify errors with any specific portion of the R & R. (*See generally* Dkt. No. 56 .) Instead, he simply states, in a single sentence, that he "wish[es] at this time to make a[n] objection to the decision render[ed] on the date of December 9, 2014."(*Id.*) This "objection" is not sufficient to trigger *de novo* review. Accordingly, consistent with the standards set forth in *Almonte,* 2006 WL 149049, at *3–5, the court has carefully reviewed the record, found no clear error in the R & R, and adopts it in its entirety.

## V. *Conclusion*

**\*3 WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Andrew T. Baxter's December 9, 2014 Report–Recommendation (Dkt. No. 55) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 47) is **GRANTED;** and it is further

**ORDERED** that Adams' complaint (Dkt. No. 1) is **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

Presently before the court is the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 (Dkt.Nos.47, 50), to which plaintiff has responded (Dkt. No. 51). This matter was referred for Report and Recommendation on March 7, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

### *BACKGROUND*

Plaintiff filed this civil rights action alleging various violations of his federal constitutional rights while confined by the New York Department of Corrections and Community Supervision ("DOCCS") at the Upstate Correctional Facility ("Upstate") between May and July 2012. (Compl., Dkt. No. 1). By Decision and Order dated January 4, 2013, Chief Judge Sharpe dismissed, sua sponte, some of plaintiff's claims and some of the defendants named in the complaint. (Dkt. No. 14 at 13–14). [1] Plaintiff's surviving claims are: (1) an Eighth Amendment claim alleging that defendants Rock, Bishop, and Lashway subjected plaintiff to cruel and unusual punishment by placing him on a restricted diet for seven days pending a disciplinary hearing; (2) a claim that defendants Lashway, Travers, and Rock violated the Eighth Amendment by their deliberate indifference to plaintiff's serious medical needs, involving constipation and related issues; and (3) First Amendment claims that defendants Winston and Mitchell [2] filed a false misbehavior report against plaintiff in retaliation for a grievance that plaintiff submitted, and that defendants Cromp and Rock retaliated against plaintiff for filing two later grievances by failing to process those grievances.

Defendants have moved for summary judgment, arguing that placing plaintiff on a restricted diet for seven days could not constitute cruel and unusual punishment under the Eighth Amendment. Defendants further contend that plaintiff's medical conditions were not sufficiently serious to support his deliberate indifference claims. Finally, defendants argue that plaintiff's retaliation claims should be dismissed because no reasonable fact finder could conclude that there was an adequate causal connection between any protected activity on plaintiff's part and any adverse action by the defendants. (Def.s' Mem. of Law at 1, Dkt. No. 47–9). For these, and other reasons, the court recommends that plaintiff's remaining claims be dismissed. [3]

### OVERVIEW OF FACTS

**\*4** Plaintiff was transferred to Upstate on May 14, 2012, where he was confined in a Special Housing Unit ("SHU"). (Compl., Dkt. No. 1 at 5). [4] The next morning, he and his cell mate submitted grievances complaining about the "filthy" conditions in their cell. (Dkt. No. 47–7 at 5). Defendant Mitchell picked up the mail that morning, including plaintiff's grievance. (Dkt. No. 1 at 5). Later on May 15th, defendant Winston issued a misbehavior report, witnessed by defendant Mitchell, alleging that plaintiff refused to return his "feed up

tray." (Winston Decl., Ex. A, Dkt. No. 47–2 at 4). Plaintiff alleges the misbehavior report was false and was issued to retaliate for plaintiff's submission of a grievance earlier that same day. (Dkt. No. 1 at 5).

Pending plaintiff's disciplinary hearing, defendants Rock, Bishop, and Lashway placed plaintiff on a restricted diet for seven days. (Dkt. No. 1 at 6). Plaintiff claims that the restricted diet left him "weak and dizzy" and that Nurse Travers ignored his efforts to get medical attention. (Id.). He further alleges that Nurse Practitioner Lashway ignored plaintiff's complaints, starting in late June, about constipation and rectal bleeding. (Dkt. No. 1 at 8). On July 23, 2012, shortly after being transferred from Upstate, plaintiff was taken to a hospital emergency room to address his complaints of pain and anal bleeding. He was diagnosed with an anal fissure and prescribed sitz baths and topical lidocaine. (Dkt. No. 50 at 55–57).

Plaintiff alleges that he submitted two grievances, one dated June 20, 2012, and the other date June 21st, complaining about the allegedly false and retaliatory misbehavior report filed against him, the lack of medical attention he received while on the restricted diet, and irregularities in the subsequent disciplinary proceeding, at which plaintiff was not present. (Dkt. No. 47–7 at 12–15). Plaintiff claims that Grievance Investigator Cromp met with plaintiff about these grievances on June 27, 2012, but never processed the grievances in retaliation for plaintiff's submission of them. (Dkt. No. 1 at 8–9).

Defendants' Memorandum of Law (at 2–5) summarizes the facts they offer by affidavit to oppose plaintiff's surviving claims. Rather than further discussing these facts at the outset, the court will address the details below to the extent they are necessary to address the issue raised in defendants' summary judgment motion.

### DISCUSSION

#### I. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Salahuddin v. Goord, 467 F.3d 263, 272–73 (2d Cir.2006)."Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment."*Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).* It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir.1994).*

**\*5** The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).* If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord, 467 F.3d at 273.* In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).* However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc ., 369 U.S. 654, 655 (1962); Salahuddin v. Goord, 467 F.3d at 272.*

## II. Eighth Amendment Claim Regarding Restricted Diet

Following the filing of the misbehavior report against plaintiff on May 15, 2012 for refusing to return his feed-up tray, Lt. Bishop recommended that plaintiff be placed on a restricted diet for seven days. (Bishop Decl. ¶¶ 3–6 & Ex. A, Dkt. No. 474). DOCCS regulations provide that an inmate in SHU may be placed on a restricted diet for up to seven days pending the outcome of a disciplinary hearing regarding, *inter alia,* a refusal to obey a direct order to return a food container or utensil at the conclusion of a meal. 7 N.Y. Comp.Codes R. & Regs. § 304.2. After Nurse Practitioner Lashway gave medical approval for plaintiff to be placed on the restricted diet, Supt. Rock approved the imposition of a pre-hearing restricted diet for a period of seven days. (Bishop Decl. ¶¶ 8–9; Lashway Decl. ¶¶ 3–9, Dkt. No. 47–5). The restricted diet, which is required to be "wholesome and nutritious," includes a portion of raw cabbage and a 2″ by 6″ loaf consisting of bread ingredients, milk, carrots, and potatoes, served three times per day. (Lashway Decl. ¶¶ 5–6).

The Eighth Amendment's protection of prisoners from "cruel and unusual punishment" includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan, 511 U.S. 825, 837 (1994).* Conditions imposed by a prison official violate the Eighth Amendment only when a plaintiff establishes that (1) he was confined under conditions that exposed him to a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *Id. at 834.*

With respect to the first prong, "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension."*Robles v. Coughlin, 725 F.2d 12, 15–16 (2d Cir.1983)* (citations omitted). For instance, " 'the Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served nutritionally adequate food ... [that does not] present an immediate danger to health and well being of the inmates who consume it.' " *Id. at 15* (citation omitted). With respect to the second prong, deliberate indifference to inmate health or safety may be shown where a prison official knew that a diet was inadequate and likely to cause pain. *See Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir.2002).*

**\*6** Courts in this circuit routinely have dismissed Eighth Amendment claims based on the imposition of a pre-hearing restricted diet for seven days, or similar dietary restrictions, finding that the inmates failed to establish sufficiently "serious" deprivations. *See, e.g., McEachin v. McGuinnis, 357 F.3d 197, 199–200 (2d Cir.2004)* (affirming district court's dismissal of Eighth Amendment claim alleging, *inter alia,* that inmate was placed on a restricted diet consisting of "loaf" for seven days pending a disciplinary hearing); *Smith v. Burge,* No. 9:03–CV–955 (LEK/GHL), 2006 WL 2805242, at \*1, 11 & n. 78 (N.D.N.Y. Sept. 28, 2006) ("[a]t most, Plaintiff was deprived of food that tasted good for a period of seven days") (collecting cases); *Willey v. Kirkpatrick,* No. 07–CV–6484, 2013 WL 434188, at \*10 (W.D.N.Y. Feb. 4, 2013). Moreover, as discussed further below, no rational fact finder would conclude that defendants Lashway and Travers were deliberately indifferent to any serious medical risk to plaintiff while he was on the restricted diet. Accordingly, this court recommends that plaintiff's Eighth Amendment claim based the seven-day period during which he was on a restricted diet should be dismissed. [5]

## III. Eighth Amendment Claim Regarding Medical Care

### A. Applicable Law

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."*Estelle v. Gamble, 429 U.S. 97, 106 (1976).* There are two elements to the deliberate indifference standard. *Smith v. Carpenter, 316 F.3d 178, 183–84 (2d Cir.2003).*

The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184.

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'" *Bellotto v. County of Orange,* 248 F. App'x 232, 236 (2d Cir.2007). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter,* 316 F.3d at 185–86. When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone."*Id.* at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto,* 248 F. App'x at 236.

**\*7** The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."*Farmer v. Brennan,* 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id.* at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or nonexistent." *Id.* at 844. Thus, the Second Circuit has stated that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable."*Salahuddin v. Goord,* 467 F.3d 263, 281 (2d Cir.2006).

A difference of opinion between an inmate and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998). Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F.Supp.2d 303, 311 (S.D.N.Y.2001) (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan,* 511 U.S. at 835. Any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly,* 784 F.Supp. 35, 44–45 (W.D.N.Y.), *aff'd,*970 F.2d 896 (2d Cir.1992) (table).

**B. Analysis**

As noted above, Nurse Practitioner Lashway determined that plaintiff was medically eligible before he was placed on a restricted diet. (Lashway Decl. ¶¶ 7–9). On May 16 and 17, 2012, plaintiff made sick call requests, but was not standing by the door with the light on in his cell, as required to be seen by the medical staff. (Travers Decl. ¶¶ 6–7, Dkt. No. 47–6; Ambulatory Health Records ("AHR"), Dkt. No. 50 at 3839). Plaintiff alleges that Nurse Travers took advantage of the policy created by Upstate Superintendent Rock, that SHU inmates were required to have their cell lights on to be seen on sick call, by falsely claiming that plaintiff's cell light was not on to avoid treating plaintiff. (Dkt. No. 1 at 6–7). Plaintiff claims that, although he was weak and dizzy from the restricted diet, he was discouraged by Nurse Travers's efforts to avoid giving him medical attention; so he decided to wait for his disciplinary hearing to address his issues. (*Id.*). However, plaintiff produced, in discovery, medical records confirming that, between and including May 18 and 21, 2012, he was evaluated by other medical staff at Upstate, and displayed no evident medical problems relating to his diet. On two of those days, plaintiff explicitly denied that he had any medical complaints. (Scott Decl. ¶ 3 & Ex. A, Dkt. No. 47–7 at 1, 31–34).

**\*8** Plaintiff also alleges that defendant Lashway ignored his written complaint, on June 22, 2012, of constipation and rectal bleeding when he went to the bathroom. (Dkt. No. 1 at 8, 16–17). Plaintiff's letter to Nurse Practitioner Lashway acknowledges that he was treated for constipation, with a stool softener, by the Upstate Medical staff on June 21st. (Dkt. No. 47–7 at 16; AHR, Dkt. No. 50 at 38; Travers Decl. ¶ 8). Plaintiff's medical records also indicate that he was treated by Nurse Travers and others, based on further complaints of constipation and hard stools (but not rectal bleeding), on

June 25th and 28th. (AHR, Dkt. No. 50 at 36–37). On July 29th, plaintiff wrote a letter to DOCCS Chief Medical Officer, Lester Wright, complaining that Nurse Practitioner Lashway should not have approved him for a restricted diet given his history of serious constipation, and that the treatment of his constipation and rectal bleeding with stool softeners by the Upstate medical staff was not working. (Dkt. No. 47–7 at 20). [6]

Plaintiff claims that Nurse Travers saw evidence of plaintiff's rectal bleeding on July 22, 2102, the day before he was transferred out of Upstate; but there are no medical records to corroborate that claim. (Dkt. No. 1 at 13; AHR, Dkt. No. 50 at 3536). In fact, the last entry in plaintiff's medical records from Upstate, made on July 19th by a nurse not named as a defendant in this action, noted that plaintiff had no acute medical problems. (AHR, Dkt. No. 50 at 35).

After his arrival at Coxsackie Correctional Facility on July 23rd, plaintiff was found shaking on the floor of his cell and taken to a hospital emergency room. (AHR, Dkt. No. 50 at 33–34). Plaintiff was found to have an anal fissure, [7] but had normal stools, and no fever, chills, nausea, and vomiting. (Dkt. No. 50 at 55–56). He was prescribed sitz baths and topical lidocaine and released back to DOCCS custody. (Dkt. No. 50 at 32–33, 55–56). Subsequent DOCCS medical records, through January 2013, indicated that plaintiff had recurring issues with constipation, hemorrhoids, minor rectal bleeding, and blood in his stool; but not more serious medical issues. (No. 50 at 9–19, 22–23, 25–28). Plaintiff periodically received treatment for these conditions from DOCCS, including stool softeners and hemorrhoid creams and suppositories. (Id.).

A noted above, the medical records indicate that plaintiff did not complain of constipation or associated bleeding until June 21 and 22, 2012–well after he completed the seven-day restricted diet. Constipation and minor bleeding while having bowel movements do not constitute "serious" medical conditions necessary to establish the objective component of an Eighth Amendment medical care claim. *See, e.g., Black v. Fischer,* No. 9:08–CV–232 (FJS/DEP), 2010 WL 2985081, at *10 (N.D.N.Y. July 1, 2010) (constipation and an external hemorrhoid for a period of less than one month, during which plaintiff experienced typical symptoms, including discomfort and minor bleeding, without more, are not sufficiently serious to establish an Eighth Amendment claim) (collecting cases); *McGee v. Pallito,* 1:10–CV–11, 2014 WL 360289, at *7 (D.Vt. Feb. 3, 2014) (constipation,

even with some associated bleeding, has been held to be insufficient for Eighth Amendment purposes).*See also Young–Flynn v. Wright,* No. 05 Civ.1488, 2007 WL 241332, at *18 (S.D.N.Y. Jan. 26, 2007) (in the absence of evidence that rectal bleeding proved to be symptomatic of a more serious condition, such as colon cancer, it was not sufficiently serious to support an Eighth Amendment claim).

**\*9** It is highly unlikely that a rational fact-finder would conclude that Nurse Travers intentionally avoided giving plaintiff medical attention for a serious medical condition on May 16 and 17, as plaintiff alleges. Medical records show that plaintiff made no complaints of health problems to other Upstate medical staff in the following days, and did not complain of constipation until a month later. [8] In any event, even if there was a brief delay in providing plaintiff medical attention for constipation, the delay did not pose any serious risk to plaintiff's health. [9]

Plaintiff could not persuade a rational fact finder that defendant Lashway acted with deliberate indifference to his serious medical needs. Plaintiff argues that he should not have been placed on a restricted diet given his history of constipation. (Dkt. No. 1 at 17). Nurse Practitioner Lashway stated that constipation was not a disqualifying medical condition for placing an inmate on the restricted diet, and that the fiber in the loaf, with proper water intake would help address constipation. (Lashway Decl. ¶¶ 6–9). As plaintiff implicitly acknowledges in his complaint, he did not complain of constipation to the medical staff until June 21, 2012, a month after he completed the restricted diet. (Dkt. No. 1 at 8; Travers Decl. ¶ 8). Even if plaintiff's allegations are accepted as true, he is stating, in essence, that he disagrees with Nurse Practitioner Lashway's medical judgment that he was medically fit to be placed on a restricted diet. Even if defendant Lashway's decision reflected medical malpractice, that would not support plaintiff's claim that she was deliberately indifferent to his serious medical needs.

Plaintiff's June 2012 letters to Nurse Practitioner Lashway and Dr. Wright argue that he needed a high-fiber diet, and that stool softeners prescribed by the Upstate medical staff were not meeting his needs. (Dkt. No. 47–7 at 16, 20). Plaintiff's disagreement with the medical staff's judgment as to appropriate treatment does not rise to the level of deliberate indifference. *See, e.g., Black v. Fischer,* 2010 WL 2985081, at *11 ('[p]laintiff's obvious dissatisfaction or disagreement with treatment that he received for his hemorrhoid is patently

insufficient to establish an Eighth Amendment violation") (citations omitted).

Plaintiff was diagnosed with an anal fissure shortly after he was transferred from Upstate. The medical records do not support plaintiff's claim that Nurse Travers was aware that plaintiff was suffering from rectal bleeding or severe pain just before his transfer, as plaintiff claims. Even if someone missed a diagnostic clue that plaintiff was suffering from an anal fissure before his transfer, that would be, at most, malpractice and not deliberate indifference. In any event, although plaintiff made a dramatic show of pain prior to being taken to the emergency room, his anal fissure was apparently resolved with conservative treatment of topical lidocaine and sitz baths, suggesting that it was not a sufficiently serious condition to support a claim that any defendant was deliberately indifferent to a serious medical need. [10]

## IV. Retaliation/Personal Involvement

### A. Applicable Law

#### 1. Retaliation

**\*10** In order to establish a claim of retaliation for the exercise of a First Amendment right, plaintiff must show that he engaged in constitutionally protected speech or conduct, and that the protected activity was a substantial motivating factor for "adverse action" taken against him by defendants.*Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *see also Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (citation omitted). This objective test applies whether or not the plaintiff was himself subjectively deterred from exercising his rights. *Id.* Participation in the grievance process by an inmate is clearly protected conduct in the context of a retaliation claim.*Roseboro v. Gillespie,* 791 F.Supp.2d 353, 367 & n. 21 (S.D.N.Y.2011) (collecting cases).

To establish retaliation, the plaintiff must also demonstrate a causal connection between the protected speech or conduct and the adverse action.*Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004). Although a " 'plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action[,]'"[s]uch circumstantial evidence of retaliation, ... without more,

is insufficient to survive summary judgment."*Roseboro v. Gillespie,* 791 F.Supp.2d at 370 (citations omitted).

Even if plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.* at 371. "Regardless of the presence of retaliatory motive, ... a defendant may be entitled to summary judgment if he can show ... that even without the improper motivation the alleged retaliatory action would have occurred."*Scott v. Coughlin,* 344 F.3d 282, 287–88 (2d Cir.2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett,* 343 F.3d at 137. Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.' " *Smith v. Woods,* 9:03–CV–480 (DNH/GHL), 2006 WL 1133247, at \*3 & n. 11 (N.D.N.Y. Apr. 24, 2006) (quoting *Jeffreys v. City of New York,* 426 F.3d 549, 554–55 (2d Cir.2005)). To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint "must, among other things, be based 'on personal knowledge.' " *Id.,* 2006 WL 1133247, at \*3 & n. 7 (collecting cases); Fed.R.Civ.P. 56(c)(4).

**\*11** A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights may be implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–90 (2d Cir.1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

## 2. Personal Involvement

For retaliation claims, as for other section 1983 claims, a plaintiff "must show some tangible connection between the constitutional violation alleged and [a] particular defendant."*Toole v. Connell,* 9:04–CV–724 (LEK/DEP), 2008 WL 4186334, at *6 (N.D.N.Y. Sept. 10, 2008). Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). In *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability: (1) if the supervisor directly participated in the infraction; (2) if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) if the official created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or (4) if he or she were grossly negligent in managing subordinates who caused the unlawful condition. *Id.*

## B. Analysis

Defense counsel argues, *inter alia,* that the retaliation claims should be dismissed because there was no causal connection between plaintiff's protected conduct and the alleged adverse actions against him; and it appears that at least one defendants was not personally involved in any adverse action against plaintiff. Thus, my analysis requires a close examination of the record regarding each defendant. *Toole v. Connell,* 2008 WL 4186334, at *6 (analysis of retaliation claims requires careful, case-specific, consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two).

## 1. Defendants Mitchell and Winston

Plaintiff alleges that he mailed the grievance regarding the condition of his SHU cell on May 15, 2014, the day after he arrived at Upstate. (Dkt. No. 1 at 5). Defendant Mitchell collected the mail from plaintiff, and between 250 and 300 other inmates on the morning of May 15th, placing it in a locked box at the security desk for pick-up and delivery by others. Although Correction Officer ("C.O.") Mitchell is required to check that inmates properly identify themselves

on the return address of each envelope, he was "not mindful" of whether plaintiff submitted a grievance on that morning. (Mitchell Decl. ¶¶ 5–9, Dkt. No. 47–3). Plaintiff's grievance was not investigated at Upstate until June 5, 2012. (Cromp Decl. ¶ 5 & Ex. B, Dkt. No. 47–8 at 2, 7).

**\*12** Defendant Winston, assisted by defendant Mitchell, conducted "feed-up" on plaintiff's cell block on May 15th. C.O. Winston issued plaintiff a misbehavior report for failing to return his feed-up tray and disobeying a direct order; C.O. Mitchell witnessed the misbehavior report. (Winston Decl. ¶¶ 4–5; Mitchell Decl. ¶¶ 11–12). Defendant Winston states that he had no knowledge that plaintiff had submitted a grievance earlier that day, and issued the misbehavior report because plaintiff refused to return his feed-up tray. (Winston Decl. ¶¶ 4–6).

In his response to the summary judgment motion, plaintiff "agree[s]" with the factual allegations of defendants Winston and Mitchell, but states that he "truly believe[s]" that the defendants issued the report in retaliation for plaintiff's filing of a grievance earlier that day. (Dkt. No. 51 at 8, 14). In the absence of any objective corroboration, plaintiff's speculation regarding the retaliatory motivation of defendant Mitchell and Winston is not sufficient to establish a causal connection between plaintiff's grievance and the misbehavior report issued by the defendants. First of all, plaintiff provides no evidentiary support to overcome the sworn statement of the defendants that they did not know that plaintiff had filed a grievance before they issued the misbehavior report. Obviously, there could be no causal connection between plaintiff's grievance and the misbehavior report if the defendants were not aware of the grievance when they initiated disciplinary charges. *See Roseboro v. Gillespie,* 791 F.Supp. at 368–69 (plaintiff's unsupported speculation that C.O. Wingate learned of plaintiff's grievance by speaking to C.O. Gillespie before Wingate initiated an adverse action against plaintiff is not sufficient to establish the required causal connection to overcome a summary judgment motion).

In addressing the requirement of a causal connection between the protected speech and the alleged adverse actions in the context of a summary judgment motion, a court may consider: "(1) any statements made by the defendant concerning his motivation for his conduct; (2) the temporal proximity between the protected activity and the alleged adverse action; (3) the plaintiff's prior good disciplinary record; and (4) whether the plaintiff was vindicated at the subsequent disciplinary hearing."*Roseboro v. Gillespie,* 791 F.Supp.2d

at 366, 369 (collecting cases). Even assuming the defendants had knowledge of plaintiff's grievance at the time they issued the misbehavior report, the temporal proximity between the two would not, by itself, suffice to establish causation. *Id.* at 370. It is improbable that either defendant would retaliate against plaintiff for a grievance that did not name either of them. *See, e.g., Hare v. Hayden,* 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer); *Roseboro v. Gillespie,* 791 F.Supp.2d at 369 (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in). Moreover, plaintiff does not claim that either defendant made a statement reflecting a retaliatory intent for initiating disciplinary charges against him.

**\*13** Plaintiff was transferred to Upstate because of disciplinary problems, and did not have a good disciplinary record. (Bishop Dec. ¶ 5; Scott Decl. ¶ 6 & Ex. C, Dkt. No. 47–7 at 2, 154–58). Defendants' documentary evidence indicates that plaintiff declined to attend his disciplinary hearing after acknowledging that he was guilty. (Bishop Decl., Ex. B, Dkt. No. 47–4 at 12, 20–21). While plaintiff alleges that he did not attend his disciplinary hearing because he was misled into thinking the charges against him had been dismissed (Dkt. No. 1 at 7–8; Dkt. No. 47–7 at 14), he can offer no corroboration for his claim that the disciplinary charges against him were false.[11] Accordingly, this court concludes that no rational fact finder could conclude that defendants Mitchell and Winston issued a misbehavior report against plaintiff in retaliation for plaintiff's submission of a grievance.

## 2. Defendant Cromp

Plaintiff claims that, after interviewing plaintiff on June 27, 2012, with respect to two grievances plaintiff submitted earlier that month, Grievance Investigator Cromp never processed those grievances, in retaliation for plaintiff's submission of them. (Dkt. No. 1 at 8–9).[12] Defendant Cromp states that there is no record that plaintiff ever submitted the two grievances dated June 21st and 22nd; and he has no recollection of investigating any such grievances. (Cromp Decl. ¶ 8). In any event, even assuming the truth of

plaintiff's allegations, "the refusal to process a small number of grievances does not constitute an adverse action" required to support a First Amendment retaliation claim. *Hill v. Laird,* No. 06–CV–126, 2014 WL 1315226, at *10 (E.D.N.Y. Mar. 31, 2014) (*citing Ross v. Westchester,* No. 10–CV–3937, 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012)).

Moreover, other than the temporal proximity between the alleged filing of the two grievances and defendant Cromp's purported failure to process them, plaintiff offers no evidence to corroborate his claim that Inv. Cromp acted with a retaliatory intent. Based on the authority cited above, the fact that the grievances allegedly submitted to defendant Cromp did not implicate him in any wrongdoing contradicts plaintiff's speculation that Inv. Cromp retaliated against plaintiff because of the grievances. It is particularly unlikely that defendant Cromp would retaliate against an inmate for filing a grievance because his job primarily involved the investigation of grievances.[13] Plaintiff alleges that Inv. Cromp unsuccessfully tried to persuade plaintiff to combine his two grievances because they both complained of the same conduct, but otherwise cites no statements by this defendant that would suggest he harbored a retaliatory intent. (Dkt. No. 1 at 9). Plaintiff's unsupported and speculative conclusion that defendant Cromp's alleged actions were taken to retaliate because plaintiff filed grievances are not sufficient to overcome defendant Cromp's sworn declaration that he never retaliated against an inmate for using the grievance process. (Cromp Decl. ¶ 9). This court concludes that no rational juror would conclude that, even if defendant Cromp failed to process two of plaintiff's grievances, that conduct constituted an "adverse action" or that this defendant acted with a retaliatory intent.[14]

## 3. Defendant Rock

**\*14** Plaintiff has named Supt. Rock in his retaliation claim involving defendant Cromp's alleged failure to process plaintiff's two grievances in June 2006. Plaintiff alleges that he twice wrote defendant Rock complaining that his grievances had not been processed, and Supt. Rock took no action, but instead directed plaintiff to submit any inquiries to the IGP office. (Dkt. No. 1 at 10, 12, 20; Dkt. No. 47–7 at 40–42). Given this court's conclusion that plaintiff's constitutional rights were not violated even if defendant Cromp failed to process plaintiff's two grievances, defendant Rock cannot be vicariously liable on plaintiff's retaliation claim. In any event, defendant Rock's failure to follow up on plaintiff's complaint about the handling of his grievances,

and the fact that he directed plaintiff to address his complaint to the IGP, would not be sufficient to establish Supt. Rock's personal involvement even if there had been a violation of plaintiff's constitutional rights by defendant Cromp. *See, e.g., Harnett v. Barr,* 538 F.Supp.2d 511, 525 (N.D.N.Y.2008) (Superintend Woods' referral of plaintiff's letters back to the grievance supervisor or to other staff members for investigation does not make him personally responsible for the alleged violations in those letters); *Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006) (the failure of a supervisory official to respond to a letter of complaint is insufficient to create personal responsibility); *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoners to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official).

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 47) be **GRANTED,** and that plaintiff's complaint be **DISMISSED** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Filed Dec. 9, 2014.

**All Citations**

Slip Copy, 2015 WL 1312738

Footnotes

1    Although named in the complaint as "Mitchee," it appears that the party's proper name is Mitchell. (Dkt. No. 55 at 2 n. 2.) The court will thus refer to him as such.

2    By Decision and Order dated January 4, 2013, this court sua sponte dismissed Adams' due process, interference-with-grievance, and equal protection claims, and thus also dismissed Zerniak and Orzech as defendants in this action. (Dkt. No. 14.)

1    Some of plaintiff's claims were denied without prejudice, with leave to amend. Plaintiff, however, did not move to amend his complaint.

2    The complaint spells defendant Mitchell's last name as "Mitchee." The court will use the correct spelling provided in the defense motion papers.

3    Defendants also argue that plaintiff's claims should be dismissed for failure to exhaust administrative remedies because the grievances allegedly submitted regarding the incidents relevant to this action were not filed within the time period required by applicable regulations. Because I find that plaintiff's claims are subject to dismissal for other reasons, I need not address the exhaustion issue.

4    Because the complaint does not have consistent, consecutive page or paragraph numbers, the court will reference the page number assigned in the header created by our CM–ECF electronic docketing system.

5    To the extent the plaintiff is asserting a due process claim against defendants Rock, Bishop, and Lashway, based on the imposition of a restricted diet for seven days before a disciplinary hearing, that claim should also be dismissed based on the reasoning in Chief Judge Sharpe's January 4, 2013 Decision and Order. (Dkt. No. 14 at 5). Plaintiff was found guilty of the misbehavior report, but was sentenced to a seven-day restricted diet, which plaintiff had, by that time, already served. (Bishop Decl. ¶ 11 & Ex. B, Dkt. No. 47–4 at 2, 7–9). To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."Chief Judge Sharpe dismissed the due process claim against former defendant Zerniak relating to the disciplinary proceedings against the

plaintiff because the imposition of a restricted diet for seven days did not create an " 'atypical and significant hardship' sufficient to implicate due process rights. (*Id*.). The same rationale would preclude a due process claim against anyone involved with the pre-hearing imposition of the restricted diet for seven days. *See, e.g., Smith v. Burge,* 2006 WL 2805242, at *1, 12–14 & n. 88 (dismissing substantive and procedural due process claims relating to a pre-hearing imposition of a restricted diet for seven days) (*citing, inter alia, McEachin v. McGuinnis,* 357 F.3d at 199, 200, 201).

6   Plaintiff's letter indicates that he copied "Nurse Practitioner" but it is not clear whether defendant Lashway ever received a copy.

7   "An anal fissure ... is a small, oval shaped tear in skin that lines the opening of the anus. Fissures typically cause severe pain and bleeding with bowel movements. Fissures are quite common in the general population, but are often confused with other causes of pain and bleeding, such as hemorrhoids." http:// www.fascrs.org/patients/conditions/analfissure/ (website of the American Society of Colon and Rectal Surgeons).

8   *See, e.g., Brown v. White,* 9:08–CV–200, 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular date is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record); *Benitez v. Pecenco,* 92 Civ. 7670, 1995 WL 444352 at n. 5, (S.D.N.Y. July 27, 1995) (conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")).

9   *See, e.g., Evans v. Manos,* 336 F.Supp.2d 255, 262 (W.D.N.Y.2004) ("Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where 'the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.' ")

10   Plaintiff also includes Superintendent Rock in his deliberate indifference claim, asserting that he established the policy regarding SITU sick call procedures which allowed Nurse Travers to ignore plaintiff's requests for medical attention on May 16 and 17, 2012. Given that the court found that defendant Travers did not demonstrate deliberate indifference to any serious medical need of plaintiff, defendant Rock could not be vicariously liable because no Eighth Amendment violation could be established.

11   Defendants argue that, based on the outcome of the disciplinary hearing, it is clear that the defendants would have filed the misbehavior report against plaintiff even if they had known about his grievance. (Def.s' Mem. of Law at 3, 18–19). See, e .g., *Lowrance v. Achtyl,* 20 F.3d 529, 534–35 (2d Cir.1994) (defendants met their burden of showing that they would have disciplined the plaintiff even in the absence of the protected conduct because the plaintiff had admitted to engaging in the misconduct that formed the basis of the misbehavior report; plaintiff's retaliation claim was properly dismissed under *Mt. Healthy* and its progeny). Plaintiff's allegations that he was denied the opportunity to attend the disciplinary hearing arguably creates an issue of fact with respect to this issue. Accordingly, this court will not rely on this line of argument to recommend a grant of summary judgment in defendants' favor.

12   Chief Judge Sharpe dismissed plaintiff's claim that defendant Cromp violated plaintiff's procedural due process rights by failing to process plaintiff's two grievances. (Dkt. No. 14 at 6 (*citing, inter alia,Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W .D.N.Y.2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim")). Chief Judge Sharpe, however, declined to dismiss plaintiff's retaliation claim against defendant Cromp *sua sponte,* based on the standards for dismissal under 28 U.S.C. §§ 1915(e) & 1915A and Fed.R.Crim.P. 12(b)(6), which are clearly more favorable to plaintiff than the summary judgment standards under Rule 56 that must be applied here. (Dkt. No. 14 at 3–4, 6–7, 9 ("the Court expresses no opinion as to whether plaintiff's [surviving] claims can withstand a properly filed motion to dismiss or for summary judgment")).

13   Indeed, if an inmate could base a retaliation claim for a correction official's failure to process a grievance merely on the fact that the inmate submitted a grievance, that would completely circumvent the clear authority that state-law grievance procedures do not create constitutionally protected due process rights. *See, e.g., Cancel v. Goord,* No. 00. CIV.2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983").

14   Defense counsel also argues that, even if Inv. Cromp failed to process plaintiff's two grievances, he has a defense under *Mount Healthy* and its progeny because the grievances would have been subject to denial as untimely under DOCCS rules. (Def.s' Mem. of Law at 19).7 N.Y. Comp.Codes R. & Regs. § 701.5(a)(1) provides that "An inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form (form

# 2131)." However, that same regulation provides the Inmate Grievance Program ("IGP") Supervisor has the power to make exceptions to such time limit. *See, id.*("Exceptions to this time limit or any appeal time limits may be approved by the IGP supervisor under section 701.6(g) of this Part."). If, in fact, defendant Cromp failed to process plaintiff's untimely grievances, he deprived plaintiff of an opportunity to persuade an IGP supervisor to consider the grievance. *Smith v. Haag,* No. 08–CV–6360, 2011 WL 6012606, at \*5 (W.D.N.Y. Dec. 1, 2011). Accordingly, this court will not rely on *Mount Healthy* in recommending dismissal of the retaliation claim against defendant Cromp.

**End of Document**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 969932
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Vincent BOUKNIGHT, Plaintiff,
v.
Warden Robert SHAW, Officer
Rivera, Captain Matthew, Defendants.

No. 08 Civ. 5187(PKC).
|
April 6, 2009.

### *MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Vincent Bouknight brings this action *pro se* under 42 U.S.C. § 1983, seeking monetary damages for violations of his constitutional rights. Defendants move to dismiss under Rule 12(b) (6), Fed.R.Civ.P., for failure to state a claim. For the reasons explained below, the motion is granted.

### BACKGROUND

**A.** *Facts*
The following facts, taken from plaintiff's Amended Complaint ("A.C."), are accepted as true for the purposes of this motion. [1]

At the time of the events at issue here, plaintiff was a pre-trial detainee at Riker's Island. (A.C. at 1.) On April 7, 2007, at or about 10:50 p.m., defendant Officer Rivera began spreading rumors to inmates who were "active gang members of the Latin Kings and Bloods."(*Id.*) Officer Rivera told these inmates that plaintiff was "a rat, snitch and a homosexual."(*Id.*) Officer Rivera allegedly intended to "incite[ ] such gang members to get [plaintiff] out of the housing area, because of [Officer Rivera's] personal dislike[ ] of homosexuals, and snitches."(*Id.*) That night, plaintiff endured about three and a half hours of inmates calling him a snitch and a homosexual. (*Id.*) During the remainder of the week, inmates continued to "tortur[e] [plaintiff] with such abusive words, stating and calling [him] a snitch."(*Id.*) This

incident led plaintiff to write to defendant Warden Shaw and to file a grievance. (*Id.* at 1–2.)Neither Mr. Shaw nor the grievance committee responded. (*Id.* at 2.)

In May, plaintiff was moved to a different housing unit and was "hired as house gang." (*Id.*) On or about July 14, 2007, Officer Rivera remarked that she "can't have snitches and homosexuals working in my house."(*Id.*) About two days later, plaintiff was fired by Officer Rivera from his working assignment. (*Id.*) During these two days and for the remainder of the week, Officer Rivera "prolonged the torture and told inmates[ ] that she didn't like me being in her house because I was a homosexual and a snitch."(*Id.*) On or about July 30, 2007, plaintiff filed a grievance. (*Id.*) The grievance committee responded that Mr. Shaw would review plaintiff's grievance "because of the lack of jurisdiction regarding a harassment issue."(*Id.*) Also on July 30, Officer Rivera wrote plaintiff up for an infraction. (*Id .*) As she was writing plaintiff up, she was saying, "If the inmates didn't get you out of the house, I will get you out, you snitch gay, homosexual."(*Id.*) Officer Rivera "guarante[d] ... that [plaintiff] will be going to the box (lock up)."(*Id.*)Plaintiff was found guilty of the infraction and was sentenced to twenty days in lock up. (*Id.*) Defendant Captain Matthew threatened to tamper with plaintiff's food when plaintiff entered lock up. (*Id.* at 3.)

On August 2, 2007, plaintiff wrote to Warden Shaw regarding Officer Rivera.(*Id.* at 2.) Plaintiff received no response. (*Id.*) When plaintiff attempted to speak to Mr. Shaw upon seeing him at plaintiff's housing area, Mr. Shaw did not make himself available. (*Id.*) On August 30, 2007, Officer Rivera locked plaintiff in his cell for the day and did not let him out.(*Id.* at 2–3.)

**B.** *Procedural History*
**\*2** Plaintiff filed his complaint on June 6, 2008. In an Order dated the same day ("June 6 Order"), Chief Judge Kimba M. Wood granted plaintiff's request to proceed *in forma pauperis* and directed plaintiff to submit an amended complaint within sixty days to cure several defects in his original pleading. The court held that "[p]laintiff's present allegations of harassment, threats and the spreading of rumors regarding his sexuality and snitching are insufficient to sustain a claim under § 1983" because "threats or profanity alone do not constitute a violation of any federally protected right."June 6 Order at 2. The court explained that "in order to state a claim for incitement in violation of his rights, [plaintiff] must allege facts showing that prison officials were deliberately indifferent because they knew and disregarded an excessive

risk to his safety or created an environment that subjected him to a significant risk of injury."*Id.* at 2–3.The court also held that plaintiff's allegation of retaliation was "conclusory" and that "the issuance of the misbehavior report, without more, fails to state a retaliation claim."*Id.* at 3. Rather, "[i]n order to establish a retaliation claim," the court instructed that "plaintiff must show that prison officials retaliated against him for engaging in protected conduct."*Id.* at 4. The court explained that "[t]he amended complaint must be specific and must provide a nexus between each named defendant, plaintiff's exercising of his [constitutional] right and the resulting retaliation."*Id.*

Plaintiff filed an Amended Complaint on July 2, 2008 and defendants thereafter moved to dismiss. In an order dated February 18, 2009, the Court extended plaintiff's time to respond to March 31, 2009. (Doc. # 20.) To date, the Court has received no response from plaintiff.

## DISCUSSION

### A. *Rule 12(b)(6)*

A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner.* 404 U.S. 519, 520 (1972) (per curiam). Plaintiffs' *pro se* pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

Rule 8(a) (2), Fed.R.Civ.P., requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, ____, 127 S.Ct. 1955, 1964 (2007) (quotation omitted) (alteration in original). When a defendant tests the sufficiency of a complaint by a motion under Rule 12(b)(6), "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1965) (footnote omitted). The complaint is measured against a "flexible 'plausibility standard,' " which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157–

58 (2d Cir.2007) (emphasis in original), *cert. granted,*128 S.Ct. 2931 (2008). This "does not require heightened fact pleading of specifics, [but] it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig .,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1974) (footnote omitted); *see also Erickson v. Pardus.* 551 U .S. 89, ____, 127 S.Ct. 2197, 2200 (2007) (per curiam).

### B. *Section 1983*

**\*3** To state a claim for the violation of civil rights under 42 U.S.C. § 1983, plaintiff must allege "that state officials, acting under color of state law, deprived [him] of a right guaranteed [to him] by the Constitution or laws of the United States. Moreover, defendants' actions at that time must have been objectively unreasonable in light of clearly established federal law; otherwise, those actors are entitled to qualified immunity."*Rodriguez v. Phillips,* 66 F.3d 470, 473 (2d Cir.1995). For the reasons explained below, plaintiff's Amended Complaint, construed liberally to raise the strongest arguments it suggests, fails to state a claim under § 1983. Thus, the Court need not address qualified immunity.

### 1. *Verbal Harassment*

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam); *Aziz Zarif Shabazz v. Pico.* 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord,* 119 F.Supp.2d 327, 342 (S.D.N.Y.2000) (collecting cases). Plaintiff alleges that Officer Rivera verbally harassed him by calling him "a rat, snitch and a homosexual."(A.C. at 1.) Plaintiff also alleges that Captain Matthew threatened to tamper with plaintiff's food while plaintiff was in lock up. (*Id* at 3.) These instances of verbal harassment, standing alone, are insufficient as a matter of law to state a claim for relief under § 1983.

### 2. *Failure to Protect / Excessive Force*

Construing the Amended Complaint liberally, it can also be read to allege an infliction of cruel and unusual punishment. Where, as here, the prisoner was a pre-trial detainee,

"the relevant constitutional provision is not the Eighth Amendment but is, instead, the Due Process Clause" because the Eighth Amendment only applies where there has been a "formal adjudication of guilt." *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983). The Second Circuit has held that an "unconvicted detainee's rights are at least as great as those of a convicted prisoner." *Weyant v. Okst.* 101 F.3d 845, 856 (2d Cir.1996). Thus, the analysis is the same under the Due Process Clause as it would be under the Eighth Amendment. *See Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 552 (E .D.N .Y.2004).

The Eighth Amendment imposes duties on prison officials, who must provide "humane conditions of confinement," including taking "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quotation omitted). Not "every injury suffered by one prisoner at the hands of another," however, "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A prisoner establishes a violation of the Eighth Amendment only if he satisfies two requirements. First, the plaintiff must establish that his injury has been "objectively, sufficiently serious" to have denied him "the minimal civilized measure of life's necessities." *Id.* (quotation omitted). Second, the prison official must have had " 'a sufficiently culpable state of mind' amounting to at least deliberate indifference." *Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir.2001) (quoting *Farmer,* 511 U.S. at 834), *overruled on other grounds, Swierkiewicz v. Sorema N .A.,* 534 U.S. 506 (2002). Deliberate indifference exists when the prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.

**\*4** "[T]he spreading of rumors [by a corrections officer] alone does not amount to a constitutional violation." *Williams v. Mullen* 98 Civ. 5204(BSJ), 2001 WL 936297, at \*4 (S.D.N.Y. Aug. 17, 2001). But a prisoner can state a claim under the Eighth Amendment against a corrections officer who spreads malicious rumors about him if the rumors "incited other inmates to assault [the plaintiff] ..., thereby placing him at grave risk of physical harm." *Young v. Coughlin,* 93 Civ. 262(DLC), 1998 WL 32518, at \*7 (S.D.N.Y. Jan. 29, 1998). However, if the plaintiff fails to allege—with concrete facts, not conclusory assertions—that he has suffered an objectively "sufficiently serious" injury or that the corrections officer acted with a "sufficiently culpable state of mind," then the claim must be dismissed. *See, e.g., Dawes,* 239 F.3d at 493 ("[Plaintiff] does nothing more

than state in conclusory terms that the references to him as an 'informant' and a 'rat' ... opened him up to assault from his fellow inmates .... Absent some factual showing that the comments by the prison officials actually risked inciting other inmates against [plaintiff], we are unwilling simply to assume that prison inmates would be incited ... to attack 'one of their own' who was labeled an 'informant' and a 'rat' "); *Young,* 1998 WL 32518, at \*6–\*8 (dismissing claim that corrections officer "directed other inmates to sexually harass and 'jump' [plaintiff]" because the officer's "comments were not 'objectively, sufficiently serious' to state an Eighth Amendment violation" and plaintiff had failed to "allege harm of federal constitutional magnitude"); *Brewster,* 349 F.Supp.2d at 552–53 (dismissing for failure to state a claim complaint alleging that corrections officers "subjected [plaintiff] to 'abusive language, gestures, taunts, jeers, laughter, and harassment,' and spread false rumors among other inmates that [plaintiff] is a homosexual, thief, or rapist"); *Walsh v. Goord,* 07 Civ. 0246(CGS), 2007 WL 1572146, at \* 10 (W.D.N.Y. May 23, 2007) (holding that prisoner failed to state a claim where he "allege[d] that he was identified [by corrections officers] as a snitch and a child molester and that, as a result, he was subjected to assaults and rape at the hands of other inmates"; but granting leave to replead).

Plaintiff's allegations fail to meet either the objective or subjective standards necessary to state a claim under the Eighth Amendment against Officer Rivera. To satisfy the objective prong, plaintiff must "establish the deprivation of a basic human need such as reasonable safety," *Benjamin v. Fraser,* 343 F.3d 35, 51 n. 17 (2d Cir.2003) (quoting *Lewis v. Casey,* 518 U.S. 343, 350 (1996)), due to Officer Rivera's creation of "a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. Here, plaintiff has alleged only that, one night, he endured about three and a half hours of inmates calling him a snitch and a homosexual, and that during the remainder of the week, inmates continued to "tortur[e] [plaintiff] with such abusive words, stating and calling [him] a snitch." (A.C. at 1.) Plaintiff has not alleged any facts that, if proven, would establish that he ever faced actual or imminent harm. The Court is "unwilling simply to assume" that such a risk existed merely because Officer Rivera spread rumors about him. *Dawes,* 239 F.3d at 493. Thus, plaintiff has failed to allege an injury that was sufficiently serious by objective standards.

**\*5** To satisfy the subjective prong, plaintiff must allege that Officer Rivera acted "maliciously and sadistically to cause harm" or, at least, was deliberately indifferent to "an

excessive risk to inmate health or safety."*See Trammell v. Keane,* 338 F.3d 155, 162–63 (2d Cir.2003); *Phelps v. Kapnolas,* 308 F.3d 180, 185–86 (2d Cir.2002). As Chief Judge Wood explained, plaintiff's mere allegation that Officer Rivera spread rumors about him was insufficient to show that she had the requisite culpable state of mind. *See* June 6 Order at 2–3. Plaintiff's Amended Complaint is similarly insufficient because he has not "ampli[fied] [his] claim with some factual allegations ... needed to render the claim *plausible.*" *Iqbal,* 490 F.3d at 157–58 (emphasis in original). Plaintiff alleges that "Officer Rivera incited such gang members to get me out of the housing area, because of her personal dislike[ ] of homosexuals, and snitches."(A.C. at 1.) But none of plaintiff's allegations, if proven, would establish that Officer Rivera intended to incite inmates to harm plaintiff physically. Nor has plaintiff alleged that Officer Rivera knew and disregarded the fact that her comments had created an environment that subjected plaintiff to a significant risk of injury. Thus, plaintiff has failed to allege that Officer Rivera acted with the requisite culpable state of mind.

To the extent that the Amended Complaint can be construed liberally to allege claims under the Eighth Amendment against Warden Shaw and Captain Matthew, these claims must also be dismissed. Plaintiff has failed to allege any objectively "sufficiently serious" injury that resulted from Captain Matthew's threat that he would tamper with plaintiff's food (A.C. at 3) or Warden Shaw's refusal to speak with plaintiff (*id.* at 2). Plaintiff also has not alleged sufficient facts to make out a plausible claim that Warden Shaw was deliberately indifferent to an excessive risk of harm faced by plaintiff. Plaintiff alleges that after he wrote to Warden Shaw regarding Officer Rivera's verbal harassment, plaintiff was transferred to a different housing unit.(*Id.*) This indicates that Warden Shaw responded to his grievance. Thus, the allegations in the Amended Complaint fail to state a claim under the Eighth Amendment.

**3.** *Retaliation*

The Amended Complaint may be construed liberally to allege that Officer Rivera retaliated against plaintiff in violation of his rights under the First Amendment. After plaintiff filed a grievance against Officer Rivera, she wrote up plaintiff for an infraction. (*Id.* at 2.) Plaintiff alleges that "she wrote me up for revenge."(*Id.* at 16.)A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."*Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)."There must be

more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie v. Schnieder.* 105 F.3d 857, 862 (2d Cir.1997). In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials."*Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). Thus, there must be "a causal connection between the protected speech and the adverse action."*Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (quotation omitted). Prisoners' claims of retaliation must be examined with "skepticism and particular care," *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995), because they are " 'Prone to abuse' since prisoners can claim retaliation for every decision they dislike."*Graham,* 89 F.3d at 79 (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

**\*6** Plaintiff has failed to allege the requisite causal connection between his filing of a grievance and Officer Rivera's writing him up for an infraction. As Chief Judge Wood explained, plaintiff's assertion that Officer Rivera "wrote me up for revenge" (A.C. at 16) is conclusory. June 16 Order at 3. Plaintiff has not alleged any facts that would establish that Officer Rivera was motivated by plaintiff's filing of a grievance against her. Plaintiff's mere speculation is insufficient. In fact, plaintiff alleges that as Officer Rivera was writing him up, she was saying, "If the inmates didn't get you out of the house, I will get you out, you snitch gay, homosexual."(*Id.* at 2.) This tends to show that Officer Rivera was motivated by her personal dislike of plaintiff, not that she was reacting to his filing of a grievance. Indeed, Officer Rivera had exhibited verbal hostility toward plaintiff since April 2007, before he ever filed a grievance. (*Id.* at 1.) Thus, plaintiff has failed to allege facts sufficient to state a plausible claim of retaliation in violation of his rights under the First Amendment.

**C.** *PLRA*

There is an independent basis for dismissing plaintiff's claims seeking compensatory damages for mental and emotional injuries. The Prison Litigation Reform Act of 1995 ("PLRA") states in relevant part: "No Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."42 U.S.C. § 1997e(e). In the section of his Amended Complaint titled "Injuries," plaintiff states: "she infliction [sic] of emotional distress and pain and suffering compensatory damages punitive damages."(A.C. at 16.) And in the section seeking relief, plaintiff "request[s] ... as

follows[:] mental damages, compensatory damages, punitive damages, emotional distress, award me in the amount of $1,000,000.00 dollars."(*Id.* at 18.)Because plaintiff has not alleged that he suffered any physical injury in connection with defendants' alleged infliction of emotional distress, his claims seeking compensatory damages for mental or emotional injuries must be dismissed under the PLRA,

Complaint raises state law claims, the Court declines to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c)(3). The Clerk shall enter judgment for defendants. Defendants are directed to provide plaintiff with copies of all unpublished opinions cited herein.

SO ORDERED.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for failure to state a claim is granted. To the extent the Amended

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 969932

Footnotes

1    Because the pages of plaintiff's Amended Complaint are not numbered, the Court will refer to the page numbers inserted on the copy submitted by defendants. *See* Chestnov Decl. ex. A.

**End of Document**                                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 906160
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Christopher O. CAMPBELL, Plaintiff,

v.

Sheriff Deputy GARDINER, Defendant.

No. 12–CV–6003P.
|
Signed March 7, 2014.

**Attorneys and Law Firms**

Christopher O. Campbell, McRae, GA, pro se.

Jeremy J. Hourihan, Hiscock & Barclay LLP, Elmira, NY, for
Defendant.

### *DECISION & ORDER*

MARIAN W. PAYSON, United States Magistrate Judge.

### *PRELIMINARY STATEMENT*

**\*1** Plaintiff Christopher Campbell ("Campbell") has
initiated this action under 42 U.S.C. § 1983 against defendant
Shawn Gardiner ("Gardiner"), asserting violations of his First
and Eighth Amendment rights arising out of an incident
that occurred while he was incarcerated at the Steuben
County Jail. (Docket # 1). Currently before the Court is
Gardiner's motion to dismiss or, in the alternative, for
summary judgment. (Docket # 15). Also pending before the
Court is Campbell's motion to compel. (Docket # 11).

Pursuant to 28 U.S.C. § 636(c), the parties have consented
to the disposition of this case by a magistrate judge. (Docket
# 5). For the reasons discussed below, Gardiner's motion to
dismiss is granted, and Campbell's motion to compel is denied
as moot.

### *FACTUAL BACKGROUND*

Campbell alleges the following facts, which are accepted
as true for purposes of considering the pending motion to
dismiss. On November 28, 2011, Campbell was incarcerated

at the Steuben County Jail. (Docket # 1). On that date,
Gardiner escorted Campbell and other inmates from the law
library. (*Id.* at 5). During the escort, Gardiner stated that he
had spoken with Campbell's co-defendant who had informed
Gardiner that Campbell had "snitch[ed] on him." (*Id.*).
Campbell alleges that Gardiner's act of labeling him a "snitch"
in the presence of the other inmates "put [Campbell's] safety
at risk." (*Id.*).

Campbell contends that Gardiner's act constituted a "failure
to protect," which this Court interprets as a claim under
the Eighth Amendment. (*Id.*). Campbell also asserts that
Gardiner's act violated Campbell's "First Amendment
Rights." (*Id.*). Campbell seeks "monetary damages for fear of
[his] life, and [his] family's li[ves], stress and anxiety."(*Id.* at
6). In addition, Campbell seeks injunctive relief, namely, an
order compelling the "Steuben County staff and its officers
to implement training regarding [the] proper way of handling
inmates and their personal information."(*Id.*).

Gardiner seeks dismissal of Campbell's complaint in its
entirety under 42 U.S.C. § 1997e(e) on the grounds that
he has failed to allege a physical injury. (Docket # 15–
8 at 2–5). In addition, Gardiner contends that Campbell's
allegations are insufficient to state an Eighth Amendment
constitutional claim. (*Id.* at 3–5). Gardiner further contends
that Campbell's First Amendment claim is wholly conclusory
and lacks the factual detail necessary to state a constitutional
claim for retaliation. (*Id.* at 5–6). Finally, Gardiner contends
that Campbell's claim for injunctive relief should be denied as
moot because Steuben County is not a party to the action and,
in any event, Gardiner has been transferred from the Steuben
County Jail.[1] (*Id.* at 6–7).

In the alternative, Gardiner contends that he is entitled to
summary judgment on all claims. According to Gardiner,
even if the Court determines that the complaint adequately
states a claim, Campbell's Eighth Amendment claim must
nonetheless be dismissed because no evidence exists that he
indeed suffered any injury. (*Id.* at 8). In addition, Gardiner
contends that he is entitled to summary judgment on the
grounds of qualified immunity. (*Id.* at 9–10).

**\*2** Gardiner has not supported his summary judgment
motion with affidavits of any individuals with personal
knowledge of the material events alleged in Campbell's
complaint. Rather, Gardiner has submitted an affidavit from
Christopher Lian ("Lian"), the former Superintendent for
the Steuben County Jail. (Docket # 15–6). The factual

assertions in Lian's affidavit relate to the grievance process for Campbell's claim and to Gardiner's training, both prior and subsequent to the incident alleged in the complaint. (*Id.*). Campbell has not opposed Gardiner's pending dispositive motion.

## *DISCUSSION*

### I. *Motion to Dismiss the Complaint*

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief."*Zucco v. Auto Zone, Inc.,* 800 F.Supp.2d 473, 475 (W.D.N.Y.2011)."To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

The plausibility standard applies to claims brought by *pro se* litigants.*Zucco v. Auto Zone, Inc.,* 800 F.Supp.2d at 475. "At the same time, ... a 'document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"*Id.* at 476 (quoting *Boykin v. KeyCorp,* 521 F.3d 202, 214 (2d Cir.2008))."A court must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights due to [his] lack of legal training."*Forbes v. State Univ. of New York at Stony Brook,* 259 F.Supp.2d 227, 232 (E.D.N.Y.2003). Thus, a court must construe *pro se* pleadings liberally and "interpret them 'to raise the strongest arguments that they suggest.'"*McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994))."Nevertheless, all pleadings, *pro se* or otherwise, must contain enough factual allegations to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"*Zucco,* 800 F.Supp.2d at 476 (omission in original) (quoting *Boykin v. KeyCorp,* 521 F.3d at 214).

### A. *Claim for Injunctive Relief*

I turn first to that portion of Gardiner's motion that seeks dismissal of Campbell's claim for injunctive relief on the grounds that the claim has been mooted by Campbell's transfer from the Steuben County Jail. According to the Second Circuit, "[i]t is settled ... that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."*Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996). Accordingly, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."*Kearney v. N.Y.S.D.O.C.S.,* 2012 WL 5931399, \*2 (N.D.N.Y.2012) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006)).

**\*3** Gardiner contends that Campbell's claim for injunctive relief should be dismissed because Campbell is no longer incarcerated at the Steuben County Jail. (Docket # 15–8 at 6–7). Although Gardiner has not submitted any evidence in support of this assertion, the docket for this action reflects that Campbell is currently incarcerated in the McRae Correctional Institution located in McRae, Georgia. Moreover, Campbell has not opposed the motion and thus has not controverted defendant's assertion that Campbell has been transferred.[2] Accordingly, I conclude that Campbell's claim for injunctive relief should be dismissed as moot.

### B. *Eighth Amendment Claim*

Although Campbell's transfer to another facility moots any claim for injunctive relief, his claim for monetary damages is not affected by the transfer. *See Prins v. Coughlin,* 76 F.3d at 506 (transfer does not moot claim seeking compensatory damages). Accordingly, I turn next to that portion of Gardiner's motion that seeks dismissal of Campbell's Eighth Amendment claim on the grounds that Campbell's failure to allege a physical injury mandates dismissal. (Docket # 15–8 at 2–6).

Under the Eighth Amendment, inmates are protected from punishments that "involve the unnecessary and wanton infliction of pain,"*Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,*513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995), which include actions that "transgress today's 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency,' "*Hutto v. Finney,* 437 U.S. 678, 685, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (quoting *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Eighth Amendment further requires prison officials to take reasonable measures to guarantee the safety

of inmates in their custody. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Prison officials may be liable under Section 1983 "for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (quoting *Morales v. New York State Dep't of Corr.,* 842 F.2d 27, 30 (2d Cir.1988)). Determining whether a prison official's actions rise to the level of deliberate indifference requires consideration of a two-part test:

> First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hawkins v. Nassau Cnty. Corr. Facility,* 781 F.Supp.2d 107, 112 (E.D.N.Y.2011) (quoting *Hayes v. New York City Dep't of Corr.,* 84 F.3d at 620); *see also Phelps v. Kapnolas,* 308 F.3d 180, 185–86 (2d Cir.2002).

**\*4** As to the first prong, a claim for deliberate indifference may lie where a corrections officer identifies an inmate as being an informant or "snitch" in front of other inmates. *See Hamilton v. Fischer,* 2013 WL 3784153, \*15 (W.D.N.Y.2013) ("[c]ourts have recognized that being labeled a snitch in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment") (internal quotations and citations omitted); *Snyder v. McGinnis,* 2004 WL 1949472, \*11 (W.D.N.Y.2004) ( "[d]ecisions in this Circuit have recognized that an inmate may incur the risk of physical harm at the hands of other inmates if he is labeled a 'snitch' "); *Allah v. Juchnewioz,* 1999 WL 562100, \*3 (S.D.N.Y.1999) ("[m]any courts have recognized, ... in the context of Eighth Amendment analysis, the dangers a prisoner faces from his fellow inmates when labeled a snitch or informant"); *Young v. Coughlin,* 1998 WL 32518, \*7 n. 9

(S.D.N.Y.1998) ("calling a prisoner a 'snitch' in front of other prisoners with wanton disregard for the inmate's safety may constitute an Eighth Amendment violation"), *aff'd,* 182 F.3d 902 (2d Cir.1999); *Watson v. McGinnis,* 964 F.Supp. 127, 132 (S.D.N.Y.1997) ("a guard's intentionally calling a prisoner a snitch in order to cause him harm by other inmates states an Eighth Amendment excessive force claim"). To state a cognizable claim, however, a plaintiff must also allege "facts that, if proven, would establish that he ... faced actual or imminent harm" as a result of the identification. *Hamilton v. Fisher,* 2013 WL 3784153 at \*15; *see Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir.2001) ("[plaintiff's] complaint is devoid of factual allegations that give rise to an inference that he actually faced a serious threat" as a result of the conduct of defendants), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Generally, a cognizable claim under these circumstances requires a factual allegation that a plaintiff suffered actual physical harm. *See Bouknight v. Shaw,* 2009 WL 969932, \*3 (S.D.N.Y.2009) (allegations that officer called plaintiff a "rat, snitch and a homosexual" failed to state a claim; "[v]erbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983"); *Abney v. Jopp,* 655 F.Supp.2d 231, 233–34 (W.D.N.Y.2009) ("in general prison officials will not be liable for [referring to an inmate as a 'snitch'] absent a showing that the inmate suffered actual harm as a result"); *Green v. City of New York Dep't of Corr.,* 2008 WL 2485402, \*7 (S.D.N.Y.2008) ("[i]n the cases cited by [p]laintiff in which courts found viable Eighth Amendment claims premised on being labeled a 'snitch,' there were allegations or proffered evidence of actual physical harm"); *Lawrence v. Goord,* 2000 WL 1448672, \*3 (N.D.N.Y.2000) ("[plaintiff] alleges that several defendants ... put him at risk of physical harm from other prisoners by openly referring to him as, *inter alia,* a 'snitch'[,] [but] does not allege that he suffered any injury as a result of this alleged harassment [;][t]hus his claims for verbal harassment are dismissed"). At a minimum, the complaint must allege facts from which it may be inferred that the plaintiff suffered physical injury or that the threat of such injury was imminent; conclusory assertions are insufficient. *See Dawes v. Walker,* 239 F.3d at 494 (plaintiff failed to state an Eighth Amendment claim where he did not allege that he was assaulted, threatened with assault or that there were credible rumors of an intended assault); *Hamilton,* 2013 WL 3784153 at \*15 ("[a]t a minimum, the plaintiff-inmate must show that the defendant's actions gave rise to an excessive

risk to [his] safety") (internal quotation omitted); *Nji v. Heath,* 2013 WL 6250298, *10 (S.D.N.Y.2013) (plaintiff failed to state an Eighth Amendment claim based upon defendant's rumor where "[p]laintiff [did] not allege that he was ever actually threatened with harm as a result, or that he or other inmates had been harmed as a result of this rumor"); *Abney v. Jopp,* 655 F.Supp.2d at 233–34 ("[a]t the very least, a plaintiff must show that the defendant's actions gave rise to an excessive risk to the inmate's safety"); *Gill v. Calescibetta,* 2009 WL 890661, *13 (N.D.N.Y.2009) (summary judgment dismissing plaintiff's claim granted where plaintiff claimed "in markedly conclusory terms, that his 'life, safety and well-being' were in 'grave danger' " as a result of defendant's conduct that could have led inmates to believe that plaintiff was an informant, but where "the record [was] devoid of any evidence that defendants' actions actually prompted other inmates to harm [plaintiff]").

 **\*5** Campbell's complaint asserts in conclusory fashion that Gardiner's statement "put [his] safety at risk." Campbell does not assert any facts to support an inference that he faced actual or imminent harm as a result of Gardiner's conduct. For this reason, I conclude that Campbell has failed to state an Eighth Amendment claim. *See Dawes,* 239 F.3d at 493–94 ("[a]bsent some factual showing that the comments by the prison officials actually risked inciting other inmates against [plaintiff], we are unwilling simply to assume that prison inmates would be incited, without more, to attack 'one of their own' who was labeled an 'informant' and a 'rat' for complaining to prison supervisors about a prison guard's conduct"); *Hamilton,* 2013 WL 3784153 at *17 (dismissing Eighth Amendment claim premised on allegations that corrections officers called plaintiff a 'snitch' in front of other inmates where plaintiff failed to allege any facts suggesting that he faced actual or imminent harm); *Bouknight v. Shaw,* 2009 WL 969932 at *4 ("[p]laintiff has not alleged any facts that, if proven, would establish that he ever faced actual or imminent harm[;][t]he Court is unwilling simply to assume that such a risk existed merely because [defendant] spread rumors about him") (internal quotation omitted). Accordingly, Campbell's Eighth Amendment claim must be dismissed.

## C. *First Amendment Claim*

Courts examine prisoner retaliation claims "with skepticism and particular care" because they are easily fabricated. [3] *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003); *Smith v. Napoli,* 2007 WL 4180708, *3 (W.D.N.Y.2007). To establish a First Amendment retaliation claim, a plaintiff must demonstrate that (1) the conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and, (3) there was a causal connection between the protected activity and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004).

Gardiner seeks dismissal of any First Amendment claim contained in Campbell's complaint on the grounds that any such claim is insufficiently pled. I agree. The sole reference to the First Amendment contained in the complaint is an allegation that Gardiner's conduct was "in violation of [Campbell's] First Amendment Rights."(Docket # 1 at 5). Even liberally construed, Campbell's complaint contains no facts to state a claim under the First Amendment. Nowhere in the complaint does Campbell allege that he was engaged in protected conduct. Because Campbell has not alleged protected activity, he likewise has not alleged any causal connection between such activity and Gardiner's conduct. Having concluded that Campbell has not sufficiently pled either protected conduct or a causal connection, I need not resolve whether the conduct attributed to Gardiner in the complaint may be considered an "adverse action" in the absence of any allegations of actual or imminent harm flowing from the conduct. *See Dawes,* 239 F.3d at 493 ("[plaintiff] does nothing more than state in conclusory terms that the references to him as an 'informant' and a 'rat' ... opened him up to assault from his fellow inmates, and that this alone was sufficient to deter a reasonable prisoner in the exercise of his constitutional rights[;][w]e disagree"). Accordingly, I conclude that any purported First Amendment claim asserted in the complaint should be dismissed.

## D. *Physical Injury Requirement of 42 U.S.C. § 1997e(e)*

 **\*6** Section 1997e(e) of Title 42 limits a prisoner's ability to recover damages for mental and emotional injuries. Specifically, it provides:

> No [f]ederal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).Section 1997e(e) applies to all federal civil actions, including actions asserting constitutional violations. *See Thompson v. Carter,* 284 F.3d 411, 417 (2d Cir.2002) ("Section 1997e(e) applies to claims in which a

plaintiff alleges constitutional violations so that the plaintiff cannot recover compensation for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury"). Although Section 1997e(e) prohibits a claim for compensatory damages for emotional injury where there is no physical injury, "it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Id.* at 416; *see also Lee v. DelFavero,* 2005 WL 2387820, *6 (N.D.N.Y.2005)* ("[t]he absence of physical injury does not totally bar claims by inmates ... [because] [S]ection 1997e(e) does not preclude claims for nominal damages, punitive damages, or declaratory or injunctive relief").

In his complaint, Campbell seeks monetary damages for stress and anxiety arising from the fear that he allegedly experienced as a result of Gardiner's disclosure. (Docket # 1 at 6). I agree with the defendant that, in the absence of an allegation of physical injury, Section 1997e(e) bars his claim for compensatory damages for emotional distress. *See Howard,* 2012 WL 5816976 at *5 (dismissing claim for monetary damages where complaint sought "damages for emotional distress, humiliation, and embarrassment"); *see Brown v. Napoli,* 687 F.Supp.2d 295, 297, 299 (W.D.N.Y.2009) (dismissing claims under Section 1997e(e) where plaintiff only sought "money damages for 'personal humiliation and mental anguish' "). Indeed, courts in this district have dismissed claims under Section 1997e(e) arising from a prison official's conduct of labeling an inmate a "snitch" in the absence of allegations of resulting physical injury. *See Brown v. Napoli,* 687 F.Supp.2d at 297, 299 (dismissing complaint alleging that corrections officer "labeled plaintiff a 'snitch' where "[p]laintiff [did] not allege that he ha[d] been subjected to any physical harm as a result of defendants' actions, but [sought] money damages for 'personal humiliation and mental anguish' "); *Snyder v. McGinnis,* 2004 WL 1949472 at *11 ("[p]risoners are not entitled under § 1983 to sue for mental or emotional harm unrelated to physical injury, and therefore, given the facts as alleged, plaintiff's claim against [defendant] premised on [defendant] calling him a snitch and a child molester must be dismissed") (citing 42 U.S.C. § 1997e(e)).

**E.** *Leave to Amend*
  *7  "Dismissals without leave to amend are generally disfavored, and *pro se* plaintiffs typically should be afforded an opportunity to amend their complaints." *McCracken v. Brookhaven Sci. Assocs. LLC,* 376 F. App'x 138, 139 (2d

Cir.2010), *cert. denied,*—— U.S. ——, 131 S.Ct. 914, 178 L.Ed.2d 764 (2011). Accordingly, courts "should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se* ] complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (per curiam) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

Although Campbell's complaint as currently pled does not adequately state any claims for relief, it is unclear whether Campbell, if given the opportunity, would be able to allege facts to state any constitutional claims. For this reason, dismissal of the amended complaint is without prejudice to Campbell's repleading the claims, other than his injunctive relief claim.[4]

If Campbell wishes to file an amended complaint, he must do so by no later than **April 15, 2014.**His amended complaint should encompass all of the claims he wishes to assert and all of the allegations he wishes to include in support of those claims. Campbell is cautioned that only the allegations contained in that amended complaint will be considered.

**II.** *Remaining Motions*
Having granted Gardiner's motion to dismiss the complaint for failure to state a claim, the Court does not address his alternative motion for summary judgment.[5] Further, Campbell's motion to compel is denied as moot in view of this dismissal order.

*CONCLUSION*

For the reasons discussed above, Gardiner's motion to dismiss **(Docket # 15)** is **GRANTED.**Campbell is granted leave to file an amended complaint by no later than **April 15, 2014.**Campbell's motion to compel **(Docket # 11)** is **DENIED AS MOOT.**

The Clerk of the Court is directed to close this case subject to reopening if the plaintiff files an amended complaint on or before April 15, 2014.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2014 WL 906160

## Footnotes

1 Gardiner also argues that the claim should be dismissed because he has submitted evidence establishing that he successfully completed training as a result of this incident. (Docket # 15–8 at 7). Such information, which lies outside the four corners of the pleadings, may not be considered in connection with his motion to dismiss, although it may be considered in connection with his summary judgment motion.

2 Courts in this district have recognized that whether an inmate has been transferred is a factual matter that may only be resolved by reference to material outside the four corners of the complaint. *See, e.g., Howard v. City of New York*, 2012 WL 5816976, *6 (S.D.N.Y.2012) ( "[defendant] cannot introduce [evidence of transfer] on a motion to dismiss pursuant to Rule 12(b)(6)"). Some courts have interpreted this issue as jurisdictional, permitting resolution by resort to extrinsic evidence. *See Rosales v. Wright*, 2012 WL 87123, *1 n. 1 (W.D.N.Y.2012) ("[o]n a motion to dismiss under Rule 12(b) (1), a court may consider materials outside the pleadings"). Others have allowed the plaintiff an opportunity to submit controverting evidence. *See Howard v. City of New York*, 2012 WL 5816976 at *6–7 (converting motion to dismiss to motion for summary judgment and allowing plaintiff opportunity to explain why "judgment dismissing their claims for injunctive relief" should not be granted). In this case, Campbell has been provided notice and an opportunity to challenge Gardiner's assertion that Campbell has been transferred. Indeed, in accordance with Rule 56(b) of the Local Rules for the Western District of New York, Gardiner's motion contained a form *Notice to Pro Se Litigants* advising Campbell of the need to oppose the motion with an affidavit. (Docket # 15–9).

3 Given the paucity of allegations in Campbell's complaint, the basis for Campbell's First Amendment claim is difficult to discern. The Court assumes that Campbell seeks to assert a First Amendment retaliation claim.

4 As discussed above, the claim for injunctive relief is moot as a result of Campbell's transfer from the Steuben County Jail; accordingly, that claim is dismissed *with prejudice.*

5 Gardiner is reminded of the need to support factual assertions upon which he requests the Court to rely with affidavits from individuals with personal knowledge or other evidence in the record and to support his Rule 56 Statement of Undisputed Material Facts with citations to admissible evidence. *See* Fed.R.Civ.P. 56(c) and Rule 56(a)(3) of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York.

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 272443
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Clives CELESTIN, Plaintiff,

v.

Jeffrey PREMO, Correction Officer, Upstate
Correctional Facility, et al., Defendants.

Civil Action No. 9:12–cv–301 (GLS/RFT).
|
Jan. 24, 2014.

**Attorneys and Law Firms**

Clives Celestin, Attica, NY, pro se.

Hon. Eric Schneiderman, Office of the Attorney General,
State of New York, Michael G. McCartin, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for the
Defendant.

### *ORDER*

GARY L. SHARPE, Chief Judge.

 **\*1** The above-captioned matter comes to this court
following a Report–Recommendation by Magistrate Judge
Randolph F. Treece, duly filed December 9, 2013. Following
fourteen (14) days from the service thereof, the Clerk has sent
the file, including any and all objections filed by the parties
herein.

No objections having been filed and the court having
reviewed the Magistrate Judge's Report–Recommendation
for clear error, it is hereby

ORDERED that the Report–Recommendation of Magistrate
Judge Randolph F. Treece filed December 9, 2013 (Dkt. No.
68) is ACCEPTED in its entirety for the reasons state therein;
and it is further

ORDERED that defendants' motion for partial summary
judgment (Dkt. No. 62) is GRANTED; and it is further

ORDERED that defendants Rock, Fischer and Carver are
DISMISSED; and it is further

ORDERED that the case is deemed trial ready as to plaintiff's
claims against defendants Premo, Tulip and Traux; and it is
further

ORDERED that the case has been moved to the court's trial
ready list; and it is further

ORDERED that the Clerk of the Court is to mail copies of the
Order to the parties in accordance with the court's local rules.

IT IS SO ORDERED.

**CLIVENS CELESTIN,**

Plaintiff,

-v-

**JEFFREY PREMO,***Correction Officer, Upstate
Correctional Facility,***STANLEY TULIP,***Correction
Officer, Upstate Correctional Facility,***BRUCE
TRAUX,***Correction Officer, Upstate Correctional
Facility,***D. ROCK,***Prison Superintendent, Upstate
Correctional Facility***BRIAN FISCHER,***Commissioner of
Dept. of Corrections,***MRS. J. CARVER,***Director of Inmate
Classification and Movement, New York State Dept. of
Corrections,*

Defendants.

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Clivens Celestin brings this civil rights
action, pursuant to 42 U.S.C. § 1983, alleging that Defendants
used excessive force, tampered with his grievances, failed to
provide adequate medical care, and failed to protect him from
other officers in contravention of the Eighth and Fourteenth
Amendments. *See generally* Dkt. No. 1, Compl. Defendants
move for Partial Summary Judgment seeking the dismissal of
Defendants Rock, Fischer, and Carver. Dkt. No. 62. Plaintiff
opposes the Motion. Dkt. No. 67. For the reasons that follow,
we recommend that Defendants' Motion be **GRANTED.**

### I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))."When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."*Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

**\*2** To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.*Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998)."[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."*Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore,

where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest."*Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

## II. DISCUSSION

### A. Background

According to Plaintiff, on October 26, 1999, while incarcerated at Upstate Correctional Facility ("UCF"), Plaintiff stabbed Corrections Officer Defendant Premo in the arm with a pen. Dkt. No. 62–3, Ex. A, Clivens Celestin Dep., dated Mar. 11, 2013, at pp. 34–38; Dkt. No. 67–1, Pl.'s Opp'n at ¶ G. Disciplinary charges were filed, and after a hearing was held, Plaintiff was found guilty and transferred to Clinton Correctional Facility. Celestin Dep. at pp. 36–38.Over the next several years, Plaintiff was transferred to various correctional facilities throughout New York State. *Id.* at pp. 38–40.

In April or May of 2009, Plaintiff was transferred back to UCF from Green Haven. [1] *Id.* at ¶ 40.Plaintiff alleges that on October 29, 2010, while awaiting transportation from UCF to an outside hospital for a minor surgical procedure, he was attacked and beaten by multiple guards, including Defendant Premo who was still employed as a corrections officer at UCF. Plaintiff claims that as a result of the assault he was sore and swollen and suffered bruises on his shoulder, lower back, knee, and thigh, as well as bruised and fractured ribs. *Id.* at pp. 7, 17, 24–26, & 30;*see also* Compl. at pp. 6–7. [2] Plaintiff further alleges that during the altercation, Defendant Premo called him a "nigger," told him it was "payback time," and asked him if he remembered Defendant Premo "from ten years ago." Celestin Dep. at pp. 33–34.

### B. Interference with Grievances

**\*3** Plaintiff alleges that Defendant Rock, UCF's Superintendent:

CONCEAL[ED] SERIOUS FACILITY COMPLAINTS BY EXPLOITING [THE PRISON LITIGATION AND REFORM ACT] AND DISCARDING MY GRIEVANCES AND APPEALS BY FINDING THE RELEVANT FACTS WITHOUT MERIT. THE SUPERINTENDENT AND EXECUTIVE TEAM ENGAGES IN NON–INVESTIGATIVE TECH[NIQUES] THAT ULTIMATELY GETS GRIEVANCES DISMISSED. AT TIMES GRIEVANCES AGAINST OFFICERS FOR SERIOUS VIOLATIONS ARE NOT FILED PROPERLY & WITHOUT IMPLEMENTATION OF A RECEIPT SYSTEM IT FURTHER COMPLICATES INMATES ABILITY TO REMAIN DILIGENT ON THEIR ISSUES. WHICH ALSO CONTRADICTS THE FOURTEENTH AMENDMENT, AND A RIGHT TO SUBSTANTIVE DUE PROCESS FOR INMATES. NOT TO MENTION NEW YORK STATE LAWS WITHIN THE FACILITY LEVEL.

Compl. at pp. 8–9.

Defendants move to dismiss this claim on the grounds that it does not state a claim under § 1983. Dkt. No. 62–8, Defs.' Mem. of Law, at p. 9.

Even when construed liberally, complaints that prison officials tampered with, failed to investigate, or improperly processed grievances, without more, do not give rise to liability under § 1983. *See Irvis v. Seally,* 2011 WL 454792, at *2 (N.D.N.Y. Feb.4, 2011) (Sharpe, J.) ("Thus, regardless of whether and to what extent defendants followed their grievance procedures in investigating or failing to investigate Irvis's complaints, his claims must fail as a matter of law as they are not actionable under § 1983."). Therefore, we recommend Defendants' Motion be **GRANTED** and Plaintiff's claim that Defendant Rock tampered with or failed to follow proper grievance procedures be dismissed.

## C. Supervisory Liability

Defendants have not moved for Summary Judgment on Plaintiff's excessive force claims; therefore, we do not discuss the merits of this claim. However, Defendants move for Summary Judgment as against Plaintiff's allegations that Defendant Fischer, the Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), and Defendant Rock, UCF's Superintendent, were liable in their supervisory capacities for the alleged excessive use of force perpetrated by Defendant Premo and other corrections officers at UCF. The entirety of Plaintiff's allegations in this regard are as follows:

THE AFOREMENTIONED ASSAULT AND BATTERY AND FAILURE TO PROTECT WAS A PRODUCT PROXIMATE CAUSE OF CUSTOMARY WIDE SPREAD [SIC][ ]ABUSE THROUGHOUT THE NEW YORK STATE DEPARTMENT OF CORRECTIONS AND THE UPSTATE CORRECTIONAL FACILITY IN CONJUNCTION WITH GROSS NEGLIGENCE AND OR DELIBERATE INDIFFERENCE. NEW YORK STATE HAS GAPING HOLES REG[ ]ARDING TRAINING, MONITORING, SUPERVISING, SURV [EILLANCE], INVESTIGATING, AND DISCIPLINING/FIRING THEIR PERSON[N]EL FOR WRONGFUL ACTS [DEFENDANTS FISCHER AND ROCK] KNOWS OF [SIC], AND SHOULD KNOW OF OR CONDONES OR FAIL TO INTERVENE.

Compl. at pp. 10–11.

An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

**\*4** The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted); *see also Selah v. Fischer,* 2013 WL 5603866, at *2 (N.D.N.Y. Oct.11, 2013) (Sharpe, C.J.) (citing *Colon v. Coughlin).*

Even if we assume for the sake of argument that excessive force was used on October 29, 2010, Plaintiff's claim that Defendants Rock and Fischer were liable in their supervisory capacity must fail. Beyond conclusory allegations, Plaintiff fails to allege, much less provide any documentary or record evidence to support, a single fact from which it could be inferred that either Defendant was personally involved in the alleged assault at UCF. Indeed, Plaintiff conceded as much in his Deposition. When asked why he sued Defendant Rock, Plaintiff responded that "I added him to the suit because [ ] he is the head of it, I mean, he runs the stuff, so I figured I would put him in there."Celestin. Dep. at pp. 45–46.When asked if that was the only reason that he named Defendant Rock Plaintiff responded, "[y]es; I felt he was responsible, too, even though he wasn't at the incident."*Id.* at p.. 46.When asked if "the only reason that you sued [Defendant Fischer] is because he is the boss of the entire department," Plaintiff responded in the affirmative. *Id.* And, he further admitted that Defendant Fischer was neither at the facility at the time of the assault nor physically involved in any way. *Id.* Although Plaintiff alluded, in his Complaint and Deposition, that Defendant Fischer was liable in his capacity as DOCCS' chief policy maker, he fails to identify, with any specificity, which, if any, of the policies he purportedly created or countenanced was responsible for the alleged use of excessive force which spurred the instant action. *Id.*

It is clear that mere linkage in the chain of command is insufficient to establish liability under § 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). Likewise, given Plaintiff's failure to identify any particular policy as having caused the alleged assault, Plaintiff cannot raise a triable issue of material fact as to whether either Defendant had "actual or constructive notice of the unconstitutional practices ..., [or that they] demonstrate[d] gross negligence or deliberate indifference by failing to act" in response to that knowledge. *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989) (internal quotation omitted). Thus, Plaintiff has failed to raise a triable issue of fact with regard to whether Defendants Fisher and Rock were personally involved in the alleged excessive use of force on October 26, 2010.

**\*5** Therefore, we recommend that Defendants' Motion be **GRANTED** with regard to Plaintiff's claim that Defendants Fischer and Rock were personally involved, *via* a theory of supervisory liability, in the alleged excessive use of force perpetrated by Defendant Premo and others.

### D. Failure to Protect

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."*Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) ("[P]rison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.,* 1998 WL 146280, at *3 (N.D.N.Y. Mar.27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him[.]"*Hendricks v. Coughlin,* 942 F.2d 109, 113 (2d Cir.1991). A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (cited in *Hendricks v. Coughlin,* 942 F.2d

at 113). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan,* 511 U.S. at 836. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety."*Id.* at 837 (cited in *Ramirez v. Mantello,* 1998 WL 146246, at *2 (N.D.N.Y. Mar.24, 1998))."[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference."*Id.* (emphasis added); *see also Rigano v. Cnty. of Sullivan,* 486 F.Supp.2d 244, 255 (S.D.N.Y.2007) (citing *Farmer v. Brennan,* 511 U.S. at 842–43 n. 8; *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006); & *Candelaria v. Coughlin,* 1997 WL 171256, at *10–11 (S.D.N.Y. Apr.10, 1997) for the proposition that "[b]y now, it is well-established that to defeat a motion for summary judgment on an Eighth Amendment claim, there must be genuine issues as to whether the corrections officers were aware that the plaintiff faced a substantial risk of serious danger.").

Evidence that " 'a substantial risk of inmate attacks [which were] 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past' " is sufficient to establish the existence of a significant risk of harm. *Walters v. Gardner,* 2012 WL 1029658, at *4 (N.D.N.Y. Feb.15, 2012) (quoting *Coronol v. Le Fevre,* 886 F.Supp. 220, 224 (N.D.N.Y.1995)).

**\*6** Plaintiff claims that Defendant J. Carver, the Director of Inmate Classification and Movement for the New York State Department of Corrections and Community Supervision ("DOCCS"), and her subordinates are

> RESPONSIBLE TO ASSURE THE PROTECTION OF INMATE FROM DOCUMENTED CIRCUMSTANCES AGAINST OTHER INMATES OR SECURITY STAFF ... [HOWEVER, HERE THEY] FAILED TO PROPERLY SCREEN OR DELIBERATELY TRANSFERRED PLAINTIFF TO UPSTATE FACILITY WHILE HAVING DIRECT KNOWLEDGE OF THE INCIDENT BETWEEN OFFICER (PREMO) AND PLAINTIFF IN (OCTOBER 26, 1999)[ ] FILES. MRS CARVER

> AND SUBORDINATE FAILED IN THEIR DUTY TO REASONABLY PROTECT THE PLAINTIFF BY TRANSFER[R]ING THE PLAINTIFF BACK TO UPSTATE CORRECTION FACILITY ... [WHERE] A SERIOUS INMATE/ OFFICER INCIDENT OCCUR [R]ED CREAT[ING] A HIGH PERCENTAGE [RISK THAT] ASSAULT AND BATTERY RETALIATION ... [WOULD] OCCUR BETWEEN THE OFFICERS AND INMATE.

Pl.'s Opp'n at ¶ G; *see also* Compl. at pp. 9–10.

Here, the record is devoid of any evidence, direct or circumstantial, that Defendant Carver was or should have been aware that by transferring Plaintiff to UCF in April or May of 2009 he faced a specific threat of harm from Defendant Premo or any other significant risk of being harmed generally.

To begin with, it is uncontroverted [3] that in her capacity as Director of Movement and Classification, Defendant Carver was responsible for overseeing nine subordinates, and the movement and classification of 50,000 inmates amongst sixty different correctional facilities. Dkt. No. 62–6, Joyce Carver Decl., dated Aug. 1, 2013, at ¶ 2. Defendant Carver was not personaly involved "in determining where Plaintiff Clivens Celestin ... would have been housed in the 2009 and 2010 time period. This would have been decided by one of [her] subordinates."*Id.* at ¶¶ 3–4.Moreover, nothing in the record indicates that Defendant Carver was aware of the fact that Plaintiff had stabbed Defendant Premo in October of 1999, nor that he was subsequently found guilty of the same at a disciplinary hearing. *See id.* at ¶ 5. For one thing, Defendant Carver did not become the Director of Classification and Movement until December of 2007; thus, there is no indication that she would have learned of Plaintiff's initial transfer out of UCF in 1999 or the circumstances surrounding that transfer when it occurred. *See id.* at ¶ 1.

Likewise, the record lacks any indication that Defendant Carver should have known Plaintiff would be subjected to a significant risk of harm. Critically, more than a year transpired between the time Plaintiff was transferred to UCF in April or May of 2009 and when Plaintiff was allegedly assaulted by Defendant Premo in October of 2010. Yet, there

is no evidence that Plaintiff ever complained of any risk to his safety, either before being transferred back to UCF, or during the year between being transferred and the alleged assault. Nor has Plaintiff provided any evidence that such attacks were widespread or commonplace at UCF. Plaintiff's wholly conclusory and unsupported allegations to the contrary are insufficient as a matter of law to raise a genuine issue of material fact as to the issue of whether Defendant Carver knew or should have known that transferring Plaintiff to UCF placed him at a significant risk of harm. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

**\*7** Moreover, to the extent that Plaintiff has alleged that Defendant Carver should be held liable because she negligently failed to screen for inmate/guard conflicts before transferring him to UCF in 2009, such a claim, even if true, does not state a cause of action under § 1983. *See Whitley v. Albers,* 475 U.S. at 319;*see also Shell v. Brun,* 585 F.Supp.2d 465, 470 (W.D.N.Y.2008); *cf. Abdul–Matiyn v. New York State Dep't of Corr. Servs.,* 871 F.Supp. 1542, 1547 (N.D.N.Y.1994) (citing *Morales v. New York State Dep't of Corr.,* 842 F.2d 27, 30 (2d Cir.1988) for the proposition that "section 1983 does not provide [a] cause of action for negligent failure of prison officials to protect an inmate from injury at hands of another inmate").

Likewise, Plaintiff's conclusory and unsupported allegation that one of Defendant Carver's subordinates was responsible for the alleged constitutional deprivation is also insufficient to raise a genuine issue of material fact as to whether Defendant Carver could be found liable in her supervisory capacity. *See Bennett v. Fischer,* 2010 U.S. Dist. LEXIS 139587, at \*35–36, 2010 WL 5525368 (N.D.N.Y Aug. 17, 2010) (citing *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) for the proposition that "[i]t is well settled that vague and conclusory allegations that a supervisor has failed to properly manage a subordinate do not suffice to establish the requisite personal involvement and support a finding of liability."). Indeed, nothing in the record suggests that Defendant Carver had any reason to suspect that one of her subordinates would violate Plaintiff's rights. *See Pettus v. Morgenthau,* 554 F.3d at 300 citing *Poe v. Leonard,* 282 F.3d 123, 140 (2d. Cir.2002) & *Iqbal v. Hasty,* 490 F.3d 143, 166 (2d Cir.)*cert. granted sub nom. Ashcroft v. Iqbal,* 554U.S. 902 (2008), for the proposition that "[t]o the extent that the complaint attempts to assert a failure-to-supervise claim, ... it lacks any hint that [defendant] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."); *see also Poe v. Leonard,* 282 F.3d

at 140 n. 14 ("We have often equated gross negligence with recklessness, and have defined it as the 'kind of conduct [ ] where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'") (quoting *Bryant v. Maffucci,* 923 F.2d 979, 985 (2d Cir.1991)).

Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's failure to protect claim against Defendant Carver and she be **DISMISSED** from this action.

### E. Qualified Immunity

Defendants have also argued that Defendant Carver was entitled to qualified immunity. Defs.' Mem. of Law at p. 15.However, as we have found no evidence that Defendant Carver was personally involved in any constitutional wrongdoing, the issue of qualified immunity is moot. *See Cathedral Church of The Intercessor v. Inc. Vill. of Malverne,* 353 F.Supp.2d 375, 391 (E.D.N.Y.2005) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

### III. CONCLUSION

**\*8** For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion for Partial Summary Judgment (Dkt. No. 62) be **GRANTED;** and it is further

**RECOMMENDED,** that Defendants Rock, Fischer, and Carver be **DISMISSED;** and it is further

**ORDERED,** that if the above Recommendation is adopted, this case is deemed trial ready as to Plaintiff's claims against Defendants Premo, Tulip, and Traux; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT***

*WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Sec'y of Health and Human Servs. ., 892 F.2d 15 (2d Cir.1989)*); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2014 WL 272443

Footnotes

1   The exact date Plaintiff was transferred back to UCF in 2009 is unclear.

2   The pages of Plaintiff's Complaint are unnumbered; therefore, all references to Plaintiff's Complaint are to the page numbers automatically assigned by the Court's Electronic Case Filing system.

3   Despite receiving Notice of the potential consequences of failing to properly respond to Defendants' Motion for Partial Summary Judgment, including the potential that his claims might be dismissed, Plaintiff provided only terse single sentence admissions or denials in response to Defendants' Statement of Material Fact Pursuant to Local Rule 7.1 ("7.1 Statement"). Moreover, despite having had the benefit of engaging in discovery, Plaintiff failed to submit a single document, affidavit, or declaration in support of his claims. *See* Dkt. Nos. 62–1, Notice of Consequences, & 67, Pl.'s 7.1 Statement; *see also* Pl.'s Opp'n. Defendants, on the other hand, submitted a proper 7.1 Statement supported, in pertinent part, by the sworn Declaration of Defendant Carver, and Plaintiff's Deposition. Dkt. No. 62–6, Joyce Carver Decl., dated Aug. 1, 2013; Celestin Dep. Consequently, given Plaintiff's lapse, we apply Local Rule 7.1(a)(3), and accept as true Defendants' version of the facts as established in their 7.1 Statement. *See Van Loan v. Hartford Acc. & Indent. Co., 2006 WL 3782709, at *2–3 (N.D.N.Y. Dec.22, 2006)* (reaching a similar conclusion and citing cases to support that holding).

**End of Document**                                         © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

***MEMORANDUM DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"), against
numerous employees of New York State or the Central
New York Psychiatric Center ("Defendants"), are Plaintiff's
motion to proceed *in forma pauperis,* his motion for a
temporary restraining order and preliminary injunction, and
his motion for appointment of counsel. (Dkt.Nos.2, 3, 4.) [1]
For the reasons set forth below, Plaintiff's motion to proceed
*in forma pauperis* is granted; his motion for a preliminary
injunction is denied; his motion for appointment of counsel
is denied; Plaintiff's claims of deliberate indifference to his
mental health needs against Defendants Bill, Carver, and
DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's
claims against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged personal
involvement in the August 8, 2011 assault are *sua sponte*
dismissed without prejudice and with leave to amend in this

action in accordance with [Fed.R.Civ.P. 15](); Sgt. Sweet is *sua
sponte* dismissed without prejudice as a Defendant in this
action; the Clerk is directed to issue summonses, and the U.S.
Marshal is directed to effect service of process on Defendants
Davis, Sill, and Nicolette.

## I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.*(Dkt. Nos.1, 2.) [2]
Liberally construed, Plaintiff's Complaint alleges that the
following constitutional violations against him occurred
during his confinement at Central New York Psychiatric
Center ("CNYPC"): (1) Defendants Davis and Sill used
excessive force against him under the Eighth and/or
Fourteenth Amendments; (2) Defendant Nicolette knew of
and failed to take action to protect Plaintiff from the
assault under the Eighth and/or Fourteenth Amendments;
(3) Defendants Bill, Carver, and DeBroize were deliberately
indifferent to his mental health needs under the Eighth and/
or Fourteenth Amendments; and (4) Defendants Bill, Carver,
DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed
to "adequately train the staff under their supervision" and
to take appropriate action in response to the incident. (*See
generally*Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this action
*in forma pauperis.*(Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of [28 U.S.C. § 1915(e)(2)(B)](). This is
because [Section 1915(e)(2)(B)]() directs that, when a plaintiff
seeks to proceed *in forma pauperis,*"(2) ... the court shall
dismiss the case at any time if the court determines that—...
(B) the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."[28
U.S.C. § 1915(e)(2)(B)](). [3]

## A. Governing Legal Standard

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."*Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74.The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965.More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Iqbal,* 129 S.Ct. at 1949."[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."*Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully,"*id.,* it "does not impose a probability requirement."*Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."*Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.

*Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted).Rule 8"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."*Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,*"all normal rules of pleading are not absolutely suspended."*Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

### B. Analysis of Plaintiff's Complaint

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners."*Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions."*Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard."*Groves v. Patterson,* 09–CV–1002,

Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

### 1. Excessive Force Claims Against Defendants Davis, Still and Nicolette

**\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]."(*Id.*)As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff."(*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the

assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

## 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated."(*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.)The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs."*Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)."[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,*970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,*513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently

serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."*Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind."*Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105– 06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and

Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold."(Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.)Plaintiff does

not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement in these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a)(4).

*\*7* Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally*Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

### IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter."*Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted)."The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an

opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction.*Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

 **\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order."(Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an

"Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.)Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

### V. MOTION FOR APPOINTMENT OF COUNSEL
 **\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent

party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is ***GRANTED;*** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is ***DENIED*** without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte***DISMISSED** with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte***DISMISSED** without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte***DISMISSED** without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .**Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.**All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

**Footnotes**

1   This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ). The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2   At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3   The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief."28 U.S.C. § 1915A(b).

4   *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5   *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6   It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a) (2).*Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must

still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**7** *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at \*8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at \*10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

**8** Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain."*Chance,* 143 F.3d at 702.

**9** Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference.*Harrison,* 219 F.3d at 138.

**10** The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile.*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994).*John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."*Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

**11** *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

**12** *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at \*7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability."[internal quotation marks and brackets omitted] ); *Greenwald v. Coughlin,* 93–CV–6551, 1995 WL 232736, at \*4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at \*5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

**13** *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials."[internal quotation marks, brackets and ellipsis omitted] ).

**14** For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

**Appeal Filed by** HILL v. NAPOLI, 2nd Cir., May 16, 2014

2014 WL 1322476
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Michael HILL, Plaintiff,

v.

David F. NAPOLI, et al., Defendants.

No. 6:09–CV–6546–MAT.
|
Signed March 31, 2014.

**Attorneys and Law Firms**

Michael Hill, Pine City, NY, pro se.

J. Richard Benitez, Nys Attorney General's Office, Rochester, NY, for Defendants.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 **\*1** Michael Hill ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brought this *pro se* action pursuant to 42 U.S.C. §§ 1983 and 1985 against Defendants for alleged violations of his First, Eighth, and Fourteenth Amendment rights. *See* Complaint ("Compl.") (Dkt # 1). Currently before the Court are Plaintiff's Motions to Compel Discovery (Dkt # 51) and Motion for Summary Judgment (Dkt # 26). Defendants have opposed both of Plaintiff's motions, and have cross-moved for dismissal of the Complaint (47, 53) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

**II. Preliminary Matters**

**A. Treatment of Defendants' Cross–Motion**
Plaintiff's undated and unsigned Motion for Summary Judgment (Dkt # 26) was received by the Court on November 16, 2010. In it, Plaintiff requested judgment in his favor "as the record itself illustrates Defendants acted with the sort of

criminally reckless mental state necessary to be found liable for each cause of action alleged in the Complaint."Dkt # 26, p. 1 of 69.

On December 4, 2012, the Court (Siragusa, D.J.) issued an order stating that Plaintiff's Motion for Summary Judgment would consist of the Statement of Facts attached to his Complaint (Dkt # 1), the summary judgment motion (Dkt # 26), and the materials docketed as the Supplement to Motion for Summary Judgment (Dkt # 40). Judge Siragusa also ordered Defendants to file and serve a response to Plaintiff's summary judgment motion and his motion to supplement the Complaint, along with any cross-motion for summary judgment, on or before January 4, 2013. Defendants sought and obtained an extension of time until January 23, 2013, to file their responsive pleadings.

In their Memorandum (Dkt # 47) filed January 23, 2013, in response to Plaintiff's summary judgment motion, Defendants state that they are "mov[ing] to dismiss [Plaintiff's] causes of action for failure to state a claim upon which relief can be granted as a matter of law and as for [sic] a response to plaintiff's motion for summary judgment."Dkt # 47 at 1. The legal standards cited by Defendants pertain only to Rule 12(b)(6) and Rule 12(c).*See id.* at 2–3.Likewise, in their Notice of Motion (Dkt # 47–3), Defendants state they are moving to dismiss "pursuant to Fed.R.Civ.P. 12(b)(6) and (c), as well as such other and further relief as this Court may deem just and proper."Dkt # 47–3 at 1. However, Defendants go on to state, "ATTACHED HERETO IS AN IRBY NOTICE FOR YOUR ATTENTION AND REVIEW", and they attach the form *Irby* [1] notice utilized by the Attorney General's Office when moving for summary judgment against a *pro se* litigant. *See* Dkt # 47–3 at 2–3 (capitals in orignal). Defendants also have submitted various documents and records (e.g., copies of grievance determinations and the transcript of the disciplinary hearing) that pertain to Plaintiff's claims. Plaintiff did not file responsive pleadings to Defendants' motion.

 **\*2** After reviewing the parties' submissions, the Court determines that it is proper to treat Defendants' motion to dismiss as a cross-motion for summary judgment. Given that Defendants' attached an *Irby* notice and various documents to their motions, the Court presumes that Defendants intended to cross-move for summary judgment. The Court finds that Plaintiff will not be prejudiced by this for several reasons: First, Plaintiff was expressly given the notice required under Second Circuit law by means of the *Irby* notice attached to Defendants' papers. Second, in his moving papers, Plaintiff

clearly requested summary judgment based on the existing record. Given Plaintiff's wealth of experiencing litigating § 1983 actions in this Court, there is no question that he should understand the import of an *Irby* notice.

## B. Plaintiff's Attempt to Assert New Claims

Plaintiff's experience litigating civil rights actions in federal court raises the issue of whether the Court should lessen the degree solicitude normally afforded to *pro se* litigants. The Second Circuit has noted that "[i]n some circumstances, such as when a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience," *Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir.2010), it may be "appropriate to charge [him] with knowledge of ... particular requirements," *Sledge v. Kooi,* 564 F.3d 105, 109 (2d Cir.2009) (*per curiam* ). The Court declines to impose a "general withdrawal of solicitude" here, but finds it appropriate to impose a limited withdrawal of solicitude in relation to the procedural requirements for asserting new causes of action. Specifically, Plaintiff has attempted to plead new causes of action in his motion for summary judgment. For instance, Plaintiff newly asserts that Corrections Officer Timothy Harvey ("C.O.Harvey") utilized excessive force against him. In the Complaint, however, Plaintiff did not assert an excessive force claim against C.O. Harvey, although he did include various allegations against him. The Court will not countenance Plaintiff's attempt to make an end-run around Judge Siragusa's December 4, 2012 Order (Dkt # 43) denying his motion for leave to amend his Complaint. Therefore, the Court strikes all allegations in Plaintiff's summary judgment motion purporting to assert a cause of action not already pled in his Complaint.

## C. Plaintiff's Motion to Compel Discovery

In his motion dated March 4, 2013 (Dkt.# 51), Plaintiff asserts that he is entitled to additional discovery in the form of records and information relating to pest extermination efforts at Southport for purposes of developing his conditions of confinement claim, set forth as the fifth cause of action in the Complaint. *See* Compl., ¶¶ 71–77. Defendants have opposed Plaintiff's motion as untimely. *See* Declaration of J. Richard Benitez, Esq. (Dkt # 53).

Pursuant to the Court's Rule 16(b) scheduling order (Dkt # 11), the deadline for discovery was December 31, 2010. By the time Plaintiff filed his motion to compel discovery on March 4, 2013, more than three years had passed since the expiration of that deadline. To allow further discovery

at this late date requires a showing of "good cause" and leave of the Court. *See* FED. R. CIV. P. 16(b); *see also, e.g., Carnrite v. Granada Hosp. Group,* 175 F.R.D. 439, 446 (W.D.N.Y.1997). Plaintiff did not seek leave of court for the instant motion, as required by Rule 16(b). With regard to the "good cause" requirement, Plaintiff must show "that scheduling deadlines cannot be met despite [his] diligence." *Carnrite,* 175 F.R.D. at 446 (citing 6A Wright, Miller and Kane, FEDERAL PRACTICE AND PROCEDURE § 1522.1 at 231 (2nd ed.1990)). Plaintiff has not attempted to excuse his late filing, and "good cause" for the more than three-year delay is patently missing from the record. Therefore, Plaintiff's motion to compel discovery is denied with prejudice.

## III. Factual Background

**\*3** In accordance with the rules governing the review of motions to dismiss pursuant to Rule 12(b)(6), the Court accepts the factual allegations set forth in Plaintiff's complaint as true. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006) (citation omitted). The following facts are taken from Plaintiff's Complaint (Dkt # 1), which consists of a 30–page "Verified Complaint," a 13–page "Statement of Material Facts," and 96 pages of exhibits.

## A. Parties

At all times relevant to the instant action, Plaintiff was an inmate in the custody of DOCCS, incarcerated at Southport Correctional Facility ("Southport"). All Defendants in this action are or were employees of DOCCS: Corrections Officer Roger Held ("C.O.Held"), Corrections Officer John Rogers ("C.O.Rogers"), Corrections Sergeant Timothy Allison ("Sgt.Allison"), C.O. Harvey, Inmate Assistant Jacqueline Mackey ("Asst.Mackey"), Hearing Officer James Esgrow ("H.O.Esgrow"), Director of Special Housing Inmate Disciplinary Hearing Program Norman Bezio ("Dir.Bezio"), Corrections Sergeant Randy Hurt ("Sgt .Hurt"), Inmate Grievance Supervisor William Abrunzo ("IGP Supr. Abrunzo"), Nurse Angie Gorg ("Nurse Gorg"), Nurse Administrator Cathy Felker ("Nurse Adminr. Felker") and Southport Superintendent David Napoli ("Supt.Napoli").

## B. Plaintiff's Allegations

## 1. The Misbehavior Report and Deprivation of Plaintiff's Property

On April 5, 2009, Plaintiff was moved to C–Block 8–Company from C–Block 1–Company at Southport. Immediately following this transfer, he was confronted by C.O. Held, the supervisor of that housing unit. Plaintiff requested his Level 2 property from C.O. Held, who denied him access to his property until two days later on the basis that Plaintiff allegedly was a member of the "Blood" gang and because there was no porter available in the unit.[2]

On April 14, 2009, upon Plaintiff's return from a pre-trial teleconference for one of this other federal lawsuits, C.O. Held became belligerent, stating, "[Y]ou better not be suing anyone I know."Statement ("Stmt."), ¶ 15 (Dkt # 1).

On June 5, 2009, Plaintiff was transferred to Attica Correctional Facility on a writ of *habeas corpus* ad *testificandum* so that he could appear at a trial beginning on June 8, 2009. He was returned to the same unit at Southport on June 23, 2009, where C.O. Held again made threats toward him.

Shortly thereafter, a conflict on Plaintiff's housing unit arose when the inmate unit porter quit his job, and C.O. Held permitted an unpopular and problematic inmate to serve in that position. According to Plaintiff, C.O. Held's supervisors repeatedly instructed him not to permit this particular inmate out of his cell, and other inmates complained that this inmate had contaminated their food and performed inappropriate sexual acts on the unit. This new unit porter, who has not been identified here, refused to pick up certain inmates' food trays and then reported to the guards that those inmates refused to hand in their trays. The new porter was fired, and two inmates in C–Block 8–Company were moved to Level 1 housing unit under "false pretenses". Plaintiff does not identify who these inmates were, but the Court presumes, based on later statements in the Complaint, that Plaintiff was one of those adversely affected inmates.

**\*4** According to Plaintiff, C.O. Held did not listen to the inmates' complaints about the unit porter, stated that "no Blood was going to run his company," and proceeded to write a false misbehavior report against Plaintiff alleging the following disciplinary rule violations: Threats (102.10), Area Takeover (104.10), and Lead Others to Participate in Detrimental Action to Facility (104.12). Charge 104.10 eventually was stricken, however. Plaintiff also implicates Sgt. Allison in the writing of this report.

In addition to demoting Plaintiff to Level 1 status and placing him in full restraints (handcuffs, waist chain, and leg irons) during the move, Plaintiff was issued a deprivation order restricting his access to showers, exercise, cell clean-up, and haircuts. Furthermore, Sgt. Allison ordered the escorting guards to destroy Plaintiff's legal paperwork.

On July 13, 2009 at approximately 3:20 p.m., Plaintiff was escorted down B–Block 1–Company by C.O. Harvey and another guard in connection with the misbehavior report. C.O. Harvey returned ten minutes later with some of Plaintiff's Level 1 property, at which time he told Plaintiff, "I read your trial transcripts from that lawsuit and if you expose yourself on my unit I'm going to hurt you ... and as for your property, you [sic] lucky you got what you [sic] getting now."Compl., ¶ 39; Stmt., ¶ 15.

To protest the false report, Plaintiff filed two grievances, forwarded complaints to Assistant Attorney General In Charge Debra A. Martin and the Commissioner of DOCCS, and spoke with Supt. Napoli during his rounds. On July 13 or 14, 2009, Supt. Napoli "treated Plaintiff as a nuisance ... rolled his eyes and said Plaintiff's problem was nothing and for him to stop writing grievance complaints ."Stmt., ¶ 17. On August 3, 2009, Plaintiff again addressed Supt. Napoli about his grievances concerning the unlawful destruction of his personal and legal property. Supt. Napoli replied, "[M]y officers wouldn't do that, and if they did, just file a claim ... I'm tired of investigating and dealing with complaints from you ... you know where you went wrong Hill, you called me Dave, that's where you went wrong."Stmt., ¶ 18. Supt. Napoli thereafter allegedly instructed C.O. Harvey to deprive Plaintiff of his shower and feed-up.

**2. The Tier III Hearing**
At Plaintiff's request, Asst. Mackey was selected as one of his Tier Assistants. According to Plaintiff, she refused to interview his witnesses and obtain certain documents for him, and also instructed Plaintiff to claim that another inmate made the threats and not to argue that the misbehavior report was false and retaliatory.

H.O. Esgrow, the Tier III Hearing Officer, then improperly obtained an extension to continue Plaintiff's hearing; did not allow Plaintiff to put relevant facts on the record which would have exonerated him, and improperly denied witness testimony on the basis that it was redundant. H.O. Esgrow conducted an off-the-record investigation by taking notes during the hearing, and, when confronted about it, refused to

read into the record the contents of his notes. Finally, H.O. Esgrow conferred with Supt. Napoli regarding the hearing, and they "deliberately prevented Plaintiff from proving his innocence by showing the ongoing pattern of abuse" by C.O. Held and Sgt. Allison in issuing false misbehavior reports and threatening inmates. Stmt., ¶ 29.

**\*5** At the conclusion of the hearing on August 17, 2009, H.O. Esgrow found Plaintiff guilty of Demonstration (104.12) and Threats (102.10), and imposed a penalty of six months in SHU starting January 27, 2010. There was a lesser penalty imposed for three months, but the Court cannot discern it because H.O. Esgrow's handwriting is illegible. On September 17, 2009, Dir. Bezio affirmed H.O. Esgrow's determination, and on September 30, 2009, he denied reconsideration. According to Plaintiff, Dir. Bezio refused to correct numerous procedural errors.

### 3. Unclean Cell Conditions

Plaintiff was forced to move into an unsanitary cell that had ants crawling on it, a dirty floor, and a toilet that "reeked of stale urine." Compl., ¶ 74. He was unable to clean the cell, and he complained of being sick every day. However, the nurses only claimed to have received one sick call slip from him. *Id.,* Ex. F.

### 4. Interference With Grievance Procedure

IGP Supr. Abrunzo deliberately prevented Plaintiff's grievances and appeals from being processed so as to interfere with Plaintiff's efforts to exhaust his remedies against DOCCS employees.

### 5. Denial of Adequate Medical Treatment

Nurse Gorg deliberately refused to properly assess his skin condition so that a doctor or physician's assistant could be notified and be able to assess him. Further, Nurse Gorg denied Plaintiff sick call by refusing to examine his skin rash and provide him with adequate medical treatment. When he complained, she threatened to write a false misbehavior report against him.

After Plaintiff filed a grievance against Nurse Gorg, she "immediately attacked" him by attempting to give him a tuberculosis ("TB") vaccination. Nurse Gorg did not have him quarantined as a result of his refusal to be vaccinated, and instead placed him in the same housing unit as other inmates. She instructed the guards to deny him all privileges and liberties until he allowed her to administer the TB shot.

Nurse Adminr. Felker deliberately caused Plaintiff to go untreated for his skin rash (which he claimed was eczema) and caused other skin treatments to be delayed. Nurse Adminr. Felker refused to access Plaintiff's medical records and did not examine Plaintiff herself before agreeing with the facility nurses that he did not have eczema. Nurse Adminr. Felker allowed Nurse Gorg to retaliate against Plaintiff by causing him to be denied visits, recreation, a job as a unit porter, and other activities.

## IV. Relevant Legal Standards

### A. 42 U.S.C. § 1983

To prevail in a Section 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See* 42 U.S.C. § 1983; see *also, e.g., West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).Section 1983 itself, however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."*Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied,*512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994)."[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."*Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010).

### B. Rule 12(b)(6) Motions to Dismiss

**\*6** In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the United States Supreme Court clarified the standard to be applied to a 12(b)(6) motion, noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).*Twombly,* 550 U.S. at 555. Although for the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true, it "[is] not bound to accept as true a legal conclusion couched as a factual allegation."*Id.*

When presented with a Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either

in the plaintiff's possession or that the plaintiff knew of and relied on when bringing suit, or matters of which judicial notice may be taken. *E.g., Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002) (citations omitted). A court considering a motion to dismiss a *pro se* complaint "must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests."*Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000). However, a *pro se* party opposing a motion to dismiss still must come forward with factual allegations that are enough to raise a right to relief "above the speculative level." *Twombly,* 550 U.S. at 555. Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."*Id.*

### C. Rule 56(c) Motions for Summary Judgment

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson,* 477 U.S. at 248.

The court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (citing *Anderson,* 477 U.S. at 255). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."*Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citations omitted).

To survive a Rule 56(c) motion, the nonmovant must come forward with " 'specific facts showing that there is a *genuine issue for trial.* ' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED. R. CIV. P. 56(e) (italics in original)). Summary judgment is not defeated by "[c]onclusory allegations, conjecture, and speculation[,]" *Kerzer v. Kingly Mfg. .,* 156 F.3d 396, 400 (2d Cir.1998), or the "mere existence of a scintilla of evidence [,]" *Anderson,* 477 U.S. at 252, supporting the non-movant's case.

## V. Discussion of Plaintiff's Claims

### A. Retaliation

**\*7** Plaintiff first alleges that one of his previous federal lawsuits, *Hill v. Washburn, et al.,* No. 6:08–CV–6285 (W.D.N.Y.), is the motivating factor behind for Defendants' adverse acts against him, including C.O. Held's false misbehavior report; unauthorized cell searches; and the destruction of his property. Compl., ¶¶ 33–42.

In order to state a valid retaliation claim, Plaintiff must allege that his actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials."*Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted)."A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.' " *Anderson v. Lapolt,* No. 07–CV–1184, 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting *Friedl v. City of N.Y.,* 210 F.3d 79, 85–86 (2d Cir.2000)). The Second Circuit has cautioned that, "because prisoner retaliation claims are easily fabricated," courts must be "careful to require non-conclusory allegations." *Bennett,* 343 F.3d at 137 (quotation omitted).

The filing of a § 1983 lawsuit is considered a constitutionally protected activity. *Bounds v. Smith,* 430 U.S. 817, 821–32, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The issuance of a false misbehavior report and the destruction of an inmate's personal property can constitute "adverse actions" for retaliation purposes. *See Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004) (misbehavior report); *Smith v. City of N.Y.,* No. 03 Civ. 7576(NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (destruction of property). However, Plaintiff has failed to allege a sufficient "causal connection between the protected speech and the adverse action[,]"*Gill,* 389 F.3d at 380 (citation omitted). Plaintiff's 2008 lawsuit did not involve any of the defendants named in this action. Moreover, the events alleged in that lawsuit predated C.O. Held's conduct by two years and involved conduct (the alleged mishandling of Plaintiff's mail) wholly unrelated to the conduct complained of here. Accordingly, Plaintiff has failed to make sufficient allegations regarding the "nexus" element of a retaliation claim. *See, e.g., Burkybile v. Board of Educ. of Hastings–On–Hudson Union Free Sch. Dist.,* 411 F.3d 306, 314 (2d Cir.2005) (in employment discrimination case, plaintiff failed to establish "causal nexus" because more than a year passed between the protected activity and the adverse employment action).

Defendant's motion to dismiss this cause of action for failure to state a retaliation claim is granted. Plaintiff's motion for summary judgment with regard to this claim necessarily is denied.

## B. Violations of Due Process

### 1. Destruction of Property

Plaintiff asserts that his personal property and legal papers were deliberately destroyed when he was transferred to PIMS Level 1. With regard to the personal property and legal papers, even the intentional destruction of an inmate's belongings by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). because New York state law provides him with an adequate post-deprivation remedy under Section 9 of the New York Court of Claims Act, Plaintiff has not stated an actionable due process claim. *Reyes v. Koehler,* 815 F.Supp. 109, 114 (S.D.N.Y.1993) (collecting cases); *see also Richardson v. Coughlin,* 101 F.Supp.2d 127, 133 (W.D.N.Y.2000).

**\*8** Although Plaintiff asserts that his due process rights were violated in regards to the alleged destruction of his legal papers, this claim more properly is analyzed under the First Amendment. "The active interference of prison officials in the preparation or filing of legal documents may constitute denial of access" to the courts. *Toliver v. City of N.Y.,* No. 10 Civ. 5806(SHS)(JCF), 2013 WL 6476791, at * (S.D.N.Y. Dec. 10, 2013) (citing *Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). However, Plaintiff merely states that C.O. Harvey read his trial transcripts and destroyed a "large portion" of his legal papers. Compl., ¶ 29. He does not allege that his ability to pursue some criminal or civil case was hindered by C.O. Harvey's alleged actions. Therefore, Plaintiff cannot state a First Amendment denial of access claim. *See Lewis,* 518 U.S. at 349 (noting the requirement of an "actual injury" for a right-of-access claim); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (actual injury occurs only when the loss of the inmate's pleadings prejudiced his ability to pursue a legal claim; mere delay is not enough) (citations omitted).

Defendant's motion to dismiss this cause of action for failure to state a claim in regards to the destruction of his property and legal papers is granted. Plaintiff's motion for summary judgment with regard to this claim necessarily is denied.

### 2. Mechanical Restraints

Plaintiff alleges that Defendants violated his due process rights by placing him in mechanical restraints during his transfer to Level 1. *See* Compl., ¶¶ 48–49. To state a cognizable due process claim, he must allege that (1) he possessed a liberty interest, and (2) Defendants deprived him of that interest without sufficient process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001). Even assuming that an inmate has a liberty interest in being free from bodily restraints while incarcerated, *cf. Callender,* 956 N.Y.S.2d at 794 (varying gradations of deprivation to which inmate was subjected based on Southport's classification system regarding such matters as restraints, possessions, and number of showers, were not "significant" for due process purposes), Plaintiff does not allege facts to support the claim that he was restrained without due process by being placed him in full restraints following the issuance of the July 13, 2009 misbehavior report.

The exhibits attached to his Complaint indicate that a restraint order was entered on July 13, 2009, when Plaintiff was issued a misbehavior report for attempting to "usurp the authority of the facility". The restraint order was reviewed and renewed every six days until August 9, 2009. Plaintiff also had the ability to file a grievance, write to the Deputy Superintendent of Security, and file a proceeding pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Article 78 in connection with the restraint order. In light of review he received and the legal avenues available to him, Plaintiff was afforded sufficient process. *Black v. Goord,* 03–CV–6155, 2007 WL 3076998, at \*5 (W.D.N.Y. Oct.19, 2007). Because the documents incorporated into Plaintiff's Complaint contradict his allegations, the Court need not accept them as true. *E.g., Sazerac Co. v. Falk,* 861 F.Supp. 253, 257 (S.D.N.Y.1994) (citing *Feick v. Fleener,* 653 F.2d 69, 75 & n. 4 (2d Cir.1981)).

**\*9** Defendants's motion to dismiss Plaintiff's due process claim regarding the mechanical restraint order is granted, and Plaintiff's motion for summary judgment on this claim is denied.

### 3. Deprivation Order

Plaintiff asserts that he was deprived of a liberty interest with regard to the deprivation order commencing July 13, 2009, restricting his access to haircuts, cell clean-up, shower, and recreation. Based on the documents attached to Plaintiff's

Complaint, the deprivation orders were limited in time. For instance, cell clean-up privileges were restored on July 19, 2009; and shower privileges were restored on July 31, 2009. Courts in this Circuit have held that the types of deprivations complained of here do not constitute protected liberty interests. *See, e.g., Pettus v. Geaver,* No. 04–CV–228, 2007 WL 295313, at *2 (N.D.N.Y. Jan.10, 2007) ("[A]lthough [plaintiff] contends that he was deprived of shower[s], recreation, toothbrush and toothpaste for 21 days, he has failed to demonstrate that given the limited period of deprivation, these conditions gave rise to a protected liberty interest.") (citations and internal quotations omitted; alteration in original).

Defendants' motion to dismiss Plaintiff's due process claim based on the deprivation is granted, and Plaintiff's motion for summary judgment on that claim is denied.

## C. Constitutional Violations at Tier III Hearing

In the third cause of action, Plaintiff alleges that he was denied due process in various ways at the Tier III Hearing relating to the July 13, 2009 misbehavior report issued by C.O. Held. Compl., ¶¶ 54–60.

### 1. False Misbehavior Report

The filing of baseless or false charges against an inmate does not, in and of itself, give rise to a constitutional violation. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986) (An inmate "has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest."). Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, the inmate must be able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right. *See Freeman,* 808 F.2d at 951–53 (reasoning that the filing of false charges is not a constitutional violation, as long as the prisoner is granted a hearing and given an opportunity to rebut the charges); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988) (reversing grant of summary judgment where prisoner claimed that false disciplinary charges were filed against him as retaliation for his cooperation with a state investigation into alleged inmate abuse).

Here, Plaintiff has alleged both that the misbehavior report was retaliatory and that he was denied due process at the Tier III hearing. However, as discussed above, the Court has found

that Plaintiff fails to state a claim of retaliation. The Court thus will assess whether Plaintiff alleges a viable due process claim arising out of the Tier III hearing.

### 2. Due Process at Tier III Hearing

 **\*10** Plaintiff asserts that (1) H.O. Esgrow failed to return to the disciplinary hearing following an adjournment and filed an extension under false pretenses; (2) H.O. Esgrow failed to call employee witnesses at Plaintiff's hearing; (3) H.O. Esgrow did not permit testimony from an inmate witness; (5) H.O. Esgrow interfered with Asst. Mackey so as to prevent Plaintiff from presenting a defense; (6) Asst. Mackey refused to provide certain materials relevant to Plaintiff's defense; and (7) Asst. Mackey advised Plaintiff to "inform on another inmate".*See* Compl., ¶¶ 55–61.

Due process under the Fourteenth Amendment requires that an inmate charged with a disciplinary violation be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the hearing officer as to the evidence relied on for his decision, and the reasons for the disciplinary action taken. *Freeman,* 808 F.2d at 953 (citing *Wolff v. McDonnell,* 418 U.S. 539, 564–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

#### a. Adjournments

Plaintiff asserts that H.O. Esgrow did not comply with New York regulations when he requested adjournments for the Tier III hearing. The Second Circuit has made clear that the seven-day period established by New York State regulations is not controlling for purposes of an inmate's due process claim. *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir.1990). Plaintiff's claim is not cognizable in a § 1983 action. *Hyman v. Holder,* No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar.15, 2001) (citing, *inter alia, Doe v. Connecticut Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990)); *see also Loving v. Selsky,* 2009 WL 87452, at *4 (W.D.N.Y. Jan.12, 2009).

#### b. Failure to Call Witnesses

According to Plaintiff, H.O. Esgrow improperly failed to call employee witnesses at Plaintiff's hearing and did not permit testimony inmate Deatrick Marshall to testify. The Second Circuit has stated that " 'a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity.' " *Scott v. Kelly,* 962 F.2d 145, 147 (2d Cir.1992) (quoting

*Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991) (citing *Ponte v. Real,* 471 U.S. 491, 496, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (quotation omitted)).

The transcript of the Tier hearing, produced by Defendants in response to Plaintiff's summary judgment motion, refutes his claim. Plaintiff admitted that two of the employee witnesses, Sgt. Butler and Sgt. Shope, were not on the gallery at the time of the incident; another employee, named Sandroni, was not even working that day. Three of Plaintiff's inmate witnesses (Williams, Perkins, Holyfield) testified favorably for his defense. Plaintiff admitted that the uncalled witness, Deatrick Marshall, would not have provided any testimony different from that already provided by Williams, Perkins, and Holyfield, and H.O. Esgrow determined that Marshall's testimony would be cumulative. With regard to each of the uncalled witnesses, H.O. Esgrow properly provided legitimate reasons, in writing and at the time of the hearing, for his decision not to have them appear. H.O. Esgrow thus fully complied with federal constitutional requirements in regard to Plaintiff's right to call witnesses. Cf. *Ponte,* 471 U.S. at 495–500 (prison officials not required to justify exclusion of witnesses at the time of disciplinary hearing, but may give reasons at later court challenge).

#### c. Inmate Legal Assistance

**\*11** Under the due process clause of Fourteenth Amendment, a corrections officer assigned to assist a prisoner who, by reason of his confinement in a segregated housing unit, is impeded in preparing his defense, has obligation to perform the investigatory tasks which inmate, were he able, could perform for himself. *Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir.1988). However, an inmate's right to assistance, which derives from the Due Process clause, is significantly less than the right to counsel guaranteed by the Sixth Amendment to criminal defendants. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993) (*per curiam*).

Again, the documents submitted by both Plaintiff and Defendants refute Plaintiff's complaints about Asst. Mackey, who verified in writing to H.O. Esgrow that she interviewed all of Plaintiff's requested witnesses, and that they all agreed to testify that Plaintiff never made any threats about the food trays or porters. With regard to his claim that she failed to provide him the log book entries for several months prior to the incident, for purposes of showing that C.O. Held had a history of issuing similar false misbehavior reports, this information was not relevant to the issues to be determined at the hearing, i.e., whether or not Plaintiff

made threats. *See Johnson v. Scully,* 194 A.D.2d 605, 606, 599 N.Y.S.2d 69 (2d Dep't 1993) (rejecting claim that employee assistant deprived inmate of due process in failing to provide documents where inmate was charged with possessing contraband and interfering with the search of his cell, and requested information would have, according to the petitioner, helped determine whether the correction Officer who searched his cell did so in retaliation for prior events"; the motivation for the search had no bearing on the issues at the hearing, i.e., whether the inmate possessed the contraband and interfered with the search) (citing 7 N.Y.C.R.R. 254.6(c); *Matter of Irby v. Kelly,* 161 A.D.2d 860, 556 N.Y.S.2d 409). Thus, Plaintiff "was not prejudiced by the alleged omissions of his assistant or deprived of due process[.]" *Id.* (collecting cases)).

#### d. Tier Hearing In Compliance With Due Process Requirements

If, as the Court has found, the *Wolff* due process requirements have been met, the disciplinary finding will be upheld if there is *"some* evidence" to support it. *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 453–55, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (emphasis added)). The *Hill* standard is not demanding, and it is satisfied if "there is *any* evidence in the record that supports" the decision. *Id.* (emphasis in original). The Constitution "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." 472 U.S. at 455.

Plaintiff has attached H.O. Esgrow's written findings to his Complaint, which indicate that H.O. Esgrow relied on the misbehavior report, which contained the allegation that Plaintiff yelled, "[T]hat fucker in 20 cell ain't coming out, I'll make sure no one returns their trays if he's out. You people don't pick who the porter is, we will tell you who'll come out," in addition to the eyewitness testimony of C.O. Held. Compl., Exs. K & P. "New York State courts have found that a misbehavior report, together with the eyewitness testimony of its author, meets the state law standard of 'substantial evidence' to support a determination of guilt in the prison disciplinary context." *Faulk v. Fisher,* No. 09–CV–6377(MAT), 2012 WL 2953229, at \*6 (W.D.N.Y. July 19, 2012) (citations omitted). District courts in this Circuit have found that proof sufficient to satisfy the "substantial evidence" standard imposed by New York State law necessarily satisfies *Hill's* less demanding "some evidence" test. *Id.* (collecting cases). Thus, Plaintiff's due process claim fails as a matter of law. *Id.*

### e. Errors on Administrative Appeal

**\*12** Plaintiff alleges that Dir. Bezio erroneously refused to expunge or reverse H.O. Esgrow's adverse disciplinary finding. Since, as discussed above, Plaintiff has failed to show that his rights were violated during the disciplinary proceeding conducted by H.O. Esgrow, there is no legal basis for his claim against Dir. Bezio. *Clyde v. Schoellkopf,* 714 F.Supp.2d 432, 439 (W.D.N.Y.2010) (citing, *inter alia, Black v. Selsky,* 15 F.Supp.2d 311, 318 (W.D.N.Y.1998)).

### D. Conspiracy

The fourth cause of action in the Complaint alleges that Defendants, acting together, "condoned, encouraged, directed and assisted the actions of the others in a deliberate effort to single out Plaintiff for harsh, arbitrary, and discriminatory treatment" because of Plaintiff's status as a Hebrew Israelite. Compl., ¶¶ 63–64. The alleged conspiracy claims are brought pursuant to 42 U.S.C. §§ 1983 and 1985.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culberson,* 200 F.3d 65, 72 (2d Cir.1999). "[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997).

Plaintiff does not allege sufficient facts to establish any element of a § 1983 conspiracy claim. Rather, he merely recites each Defendant's allegedly improper actions and omissions which, taken individually or together, fail to state a constitutional violation, as discussed elsewhere in this Decision and Order. *See Droz v. McCadden,* 580 F.3d 106, 109 (2d Cir.2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); other citation omitted); *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363–64 (S.D.N.Y.2000) (similar) (citations omitted). Further, Plaintiff's allegation that the Defendants acted in concert and at the behest of Supt. Napoli is entirely conclusory and cannot survive Defendants' motion to dismiss. *See Boddie,* 105 F.3d at 862 (where inmate's claim that the officers conspired to retaliate against him was " 'unsupported, speculative, and conclusory' ", it could be dismissed on the pleadings) (quotation and citations omitted).

To sustain a cause of action for conspiracy under § 1985(3), a plaintiff must allege and demonstrate that the defendants acted with racial or other class-based animus in conspiring to deprive him of equal protection of the laws or equal privileges and immunities secured by law. *E.g., Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994) (citing 42 U.S.C. § 1985(3)); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). Although a plaintiff need not offer proof of an explicit agreement, *e.g., United States v. Rubin,* 844 F.2d 979, 984 (2d Cir.1988), he nevertheless must make more than "conclusory, vague, or general allegations of conspiracy." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (*per curiam* ).

**\*13** Here, Plaintiff's allegations of a conspiracy based on § 1985(3) are no less vague and conclusory as those offered in support of his § 1983 claim, and they fail to state claim upon which relief may be granted. Defendants' motion to dismiss the conspiracy claims is granted, and Plaintiff's motion for summary judgment is denied.

### E. Conditions of Confinement

Plaintiff contends he was placed in a cell that was dirty, infested with ants, and smelled of urine, and that these conditions violated his Eighth Amendment rights. Compl., ¶¶ 70–77. He asserts he suffered from "sickness stomach pain diarrhea vomiting for days...." *Id.,* ¶ 75. He also asserts that he was deprived of meals for 72 hours, although he does not specify when this allegedly occurred.

### 1. Cell Conditions

An Eighth Amendment claim based on the physical condition of a correctional facility requires both a showing that the plaintiff lacked "the minimal civilized measure of life's necessities" while confined, and that the person responsible for this deprivation acted with knowledge and deliberate indifference to a substantial risk to his health or safety. *Wilson v. Seiter,* 501 U.S. 294, 298, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002). Plaintiff has not alleged that Defendants deprived him of any of his basic human needs or exposed him to conditions that unreasonably posed a substantial risk of harm to his future health. General allegations of uncleanliness, such as Plaintiff's here, are insufficient to state an Eighth Amendment claim. *Williams v. Carbello,* 666 F.Supp.2d 373, 379 (S.D.N.Y.2009).

Although the Second Circuit has found that "[c]ausing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted[,]" *LaReau v. MacDougall,* 473 F.2d 974, 978 (2d Cir.1972), Plaintiff merely has alleged that the cell in which he was housed for a period of time "smelled of urine." *Contrast with LaReau,* 473 F.3d at 978 (inmate spent five days in a cell that contained only a grate-covered hole in floor that could only be flushed from outside was deprived of Eighth Amendment rights). With regard to the ants allegedly "crawling around the floor," Plaintiff has not alleged that he was objectively exposed to a grave risk of harm, or that any particular defendant acted with a sufficiently culpable state of mind. "A Section 1983 claim will not lie for prison conditions that are merely unpleasant." *Ortiz v. Department of Corr.,* 08 Civ. 2195, 2011 WL 2638137, at *6 (S.D.N.Y. Apr.29, 2011), *report & recommendation adopted,* 2011 WL 2638140 (S.D.N.Y. July 5, 2011).

With regard to his claim that the cell conditions caused him to be ill and that Defendants allowed his condition to remain untreated, his allegations are contradicted by his annexed exhibits, and the Court declines to accept them as true. In particular, Plaintiff references a Captain's Office Memorandum from C. Yehl to Plaintiff dated July 31, 2009, noting that "according to the Facility Medical Department, [Plaintiff] [has] been seen by a nurse for sick call several times since the complaint was submitted." Ex. F (Dkt # 1). *See Rapoport v. Asia Electronics Holding Co.,* 88 F.Supp.2d 179, 184 (S.D.N.Y.2000) (holding that where documents relied on in drafting the complaint contradict the complaint, "the documents control and this Court need not accept as true the allegations of the amended complaint").

## 2. Deprivation of Meals

 **\*14** Plaintiff also alleges, without further specificity, that prison guards were "deliberately not feeding him any food for 72 hours." Compl., ¶ 77. Plaintiff does not mention the alleged deprivation of food elsewhere in his Complaint, including his statement of material facts.

"While no court has explicitly held that denial of food is a *per se* violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (internal and other citations omitted). The Complaint does not state how many meals Plaintiff allegedly was denied, by whom, or for what reason-it only posits

that the unnamed guards did so upon the orders of Supt. Napoli. Compl., ¶ 77. These conclusory allegations fail to state a plausible claim against Supt. Napoli or the unidentified guards under Section 1983. *See Dorsey v. Fisher,* No. 9:09–CV–1011 (GLS)(DEP), 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010) ("Dorsey alleges that defendant Racette is the 'son of Past Clinton Warden' and like his father, lets officers beat and kill inmates and then covers it up. These conclusory allegations fail to state a plausible claim against Racette pursuant to Section 1983.") (internal citation to record omitted).

## F. Improper Handling of Grievances

Plaintiff advances a claim that IGP Supr. Abrunzo conducted inadequate investigations into his complaints and interfered with his grievances. Compl., ¶¶ 78–82. "[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Avent v. Doe,* No. 05–CV–1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008) (citing *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (collecting cases)). Thus, even if IGP Supr. Abrunzo's investigation of Plaintiff's grievances was in some way inadequate or deficient, that would not give rise to a constitutional claim. *e.g., Green v. Herbert,* 677 F.Supp.2d 633, 639 (W.D.N.Y.2010) (inmate's allegation that officer who was assigned to investigate his grievance conducted a biased, unfair investigation "fails because an inmate 'has no constitutional right to have his grievances processed or investigated in any particular manner' ") (quoting *Shell v. Brzezniak,* 365 F.Supp.2d 362, 379 (W.D.N.Y.2005)).

In any event, Plaintiff's exhibits contradict his assertion that IGP Supr. Abrunzo did not process Grievance No. SPT–47701–09. Rather, his submissions indicate that the grievance was processed and dismissed (Compl., Ex. V). Thus, the Court need not accept his assertions that IGP Supr. Abrunzo failed to process his grievances. *See Rapoport,* 88 F.Supp.2d at 184.

## G. Deliberate Indifference to Medical Needs

Plaintiff's seventh and final cause of action contains the following allegations regarding his medical care at Southport: (1) Nurse Gorg failed to adequately assess his medical condition and failed to provide adequate medical care for his skin rash, resulting in pain and mental anguish from open sores and skin lesions; (2) Nurse Gorg harassed Plaintiff by attempting to administer a TB vaccination; (3)

Nurse Gorg threatened to write a false misbehavior report against Plaintiff; (4) Nurse Gorg failed to notify Plaintiff of the consequences of refusing a TB vaccination; (5) Nurse Adminr. Felker condoned Nurse Gorg's conduct; (6) Nurse Adminr. Felker instructed the Plaintiff not be placed in quarantine after Plaintiff refused the TB shot; (7) when Nurse Adminr. Felker began working at Southport, the nurses were instructed to stop providing treatment for inmates' skin rashes; (8) Nurse Adminr. Felker denied Plaintiff medication, treatment, and examination by a physician; and (9) N.A. Felker denied Plaintiff medical treatment due to state budget cuts. Compl., ¶¶ 83–98.

**\*15** "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) (citations omitted).

To satisfy the objective element, a prisoner must show a serious illness or injury resulting in the infliction of unnecessary pain and suffering. *Smith,* 316 F.3d at 184 (citing *Estelle,* 429 U .S. at 105). With regard to the subjective element, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,' " *Chance,* 143 F.3d at 702 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), a state of mind "equivalent to the familiar standard of 'recklessness' as used in criminal law." *Phelps,* 308 F.3d at 186 (citation omitted). The Supreme Court has cautioned that "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith,* 316 F.3d at 184 (citing *Estelle,* 429 U.S. at 105–06; other citation omitted).

Plaintiff's complaint fails to set forth sufficient facts to plead a plausible claim of deliberate indifference to serious medical needs. As an initial matter, Plaintiff has not established that he actually suffered from eczema; the documents submitted by Defendants indicate that DOCCS' medical staff determined that a diagnosis of eczema was not warranted. Even assuming that Plaintiff did have eczema, it was not sufficiently serious that a failure to treat it could be expected to lead to substantial and unnecessary suffering, injury, or death. *See Sledge v. Kooi,* 564 F.3d 105 (2d Cir.2009) (alleged eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need" on which to premise an Eighth Amendment claim of deliberate medical indifference); *Samuels v. Jackson,* No. 97 Civ. 2420, 1999 WL 92617, at \* 1–3 (S.D.N.Y. Feb. 22, 1999) (prisoner's "[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not constitute a sufficiently "serious medical need" for purposes of Eighth Amendment); *Tsakonas v. Cicchi,* 308 F. App'x. 628, 632 (3d Cir.2009) (unpublished opn.) (affirming the dismissal of an Eighth Amendment claim premised upon a denial of treatment for "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" on the basis that the prisoner had failed to allege a serious medical condition).

**\*16** Folded into Plaintiff's deliberate indifference claim is a claim that the circumstances surrounding the TB vaccination caused him to suffer unconstitutional conditions of confinement. Plaintiff asserts that he was "left ... in the same housing unit in a position to contaminate others" after refusing the TB vaccine. However, this allegation is belied by his own submissions, which indicate that he was placed on "TB Hold" based on his denial of the TB vaccination. Compl., Exs. T & V. In any event, the conditions of confinement imposed by DOCCS' TB hold policy "do not result in a serious deprivation of basic human needs, and therefore TB hold meets Eighth Amendment standards."*Giles v. Coughlin,* No. 95 Civ. 3033, 1997 WL 433437, at \*9 (S.D.N.Y. Aug.1, 1997) (citations omitted).

Moreover, Plaintiff's allegation that he was "not instruct[ed] to be placed in quarantine," Compl., ¶ 90, is not only implausible, it is too vague and conclusory to state a claim for relief under any Constitutional provision. Assuming Plaintiff actually seeks to challenge his confinement in keeplock pursuant to TB hold, he does not allege any facts other than the loss of movement afforded him while in general population and loss of privileges. See Compl., ¶ 88. Because Plaintiff does not allege any condition to which he was subjected that resulted in the deprivation of a basic human need, he cannot maintain a conditions of confinement claim on these facts. *SeeDelisser v. Goord,* No. 02CV0073, 2003 WL 133271, at \*6 (N.D.N.Y. Jan.15, 2003) (rejecting inmate's claim being placed in medical keeplock for his

refusal to take the TB test and TB medication was cruel and unusual punishment).

Plaintiff's complaint concerning Nurse Gorg's advice to purchase his own cosmetic supplies from commissary for his alleged eczema, see Compl., Ex. T, amounts to nothing more than a disagreement over treatment, which does not present a cognizable medical indifference claim. *See Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").

Finally, with respect to Plaintiff's claim that Nurse Adminr. Felker created a policy of denying inmates treatment for skin rashes with the exception of over-the-counter creams, see Compl., ¶ 93, his attached exhibits again contradict the assertions in the complaint. *See* Compl., Ex. T (Sick Call Response dated 12/9/08, stating, "You need to buy your own cosmetic supplies at commissary. You must have eczema, xerosis, or ichthyosis in order to receive medical [sic] ordered emollients."). As noted earlier, such allegations cannot survive a motion to dismiss where they are contradicted by Plaintiffs' own exhibits. *Rapoport,* 88 F.Supp.2d at 182 (citing, *inter alia, Feick v. Fleener,* 653 F.2d 69, 75 (2d Cir.1981) (citations omitted).

**VI. Conclusion**

For the reasons discussed above, Plaintiff's Motion to Compel Discovery (Dkt # 51) is denied with prejudice; Plaintiff's Motion for Summary Judgment (Dkt # 26) is denied with prejudice; Defendants' Motion to Dismiss/Cross–Motion for Summary Judgment (Dkt # 47), is granted. The Complaint is dismissed in its entirety with prejudice.

**\*17** The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal in *forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of the Court is requested to close this case.

**SO ORDERED.**

**All Citations**

Slip Copy, 2014 WL 1322476

Footnotes

1    *Irby v. New York City Trans. Auth.,* 262 F.3d 412, 414 (2d Cir.2001) (When a party moves for summary judgment against a *pro* se litigant, either the movant or the district court must provide the *pro* se litigant with notice of the consequences of failing to respond to the motion.).

2    Although Plaintiff does not make specific reference in his Complaint to his definition of "level," the Court has determined that Plaintiff is referring to his Progressive Inmate Movement System ("PIMS") level, a program employed at Southport by which Special Housing Unit ("SHU") inmates may achieve designated privileges based on improvements in, and maintenance of, acceptable behavior. *E.g., Callender v. State,* 38 Misc.3d 651, 956 N.Y.S.2d 792, 794 (N.Y.Ct.Cl.2012).

2011 WL 454792
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Barry D. IRVIS, Plaintiff,

v.

Greg SEALLY, Sheriff, Greene County Sheriff's
Office; Richard Hussy, Former Sheriff, Greene
County; Michael Spitz, Superintendent, Greene
County Jail; Kenneth Liese, Sgt., Greene County
Jail; Edward Voorhese, Sgt., Greene County Jail; Ed
Warga, Sgt. and Grievance Coordinator at Greene
County Jail; Don Rivenburg, Former Sgt., Greene
County Jail; Aaron Beo Jenkins, former C.O.,
Greene County Jail; Hulbiki, Dr., Greene County
Jail; Donna Juliano, Nurse, Greene County Jail;
Robert Cuttita, Correctional Facility Specialist #
2; Deborah Clark, Correction Review Specialist;
and Carol D. Stevens, Attorney, Defendants.

No. 9:09–cv–543 (GLS/ATB).
|
Feb. 4, 2011.

**Attorneys and Law Firms**

Kevin Sheils, Malone, NY, pro se.

Goldberg, Segalla Law Firm, Albert J. D'Aquino, Esq.,
Jonathan M. Bernstein, Esq., William J. Greagan, Esq., of
Counsel, Albany, NY, for the County Defendants.

Hon. Eric T. Schneiderman, New York State Attorney
General, Megan M. Brown, Assistant Attorney General, of
Counsel, Albany, NY, for the State Defendants.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, District Judge.

**I.** *Introduction*

 **\*1** Pro se plaintiff Barry D. Irvis brings this action under
42 U.S.C. § 1983 regarding incidents that occurred during
his incarceration at Greene County Jail. (Dkt. No. 1) In
a Report–Recommendation (R & R) filed September 2,

2010, Magistrate Judge Andrew T. Baxter recommended that
defendants' motion to dismiss be granted and Irvis's complaint
be dismissed. [1] (Dkt. No. 62.) Pending are Irvis's objections
to the R & R. (Dkt. No. 64.) For the reasons that follow, the
R & R is adopted in its entirety.

**II.** *Standard of Review*

Before entering final judgment, this court routinely reviews
all report and recommendation orders in cases it has
referred to a magistrate judge. If a party has objected to
specific elements of the magistrate judge's findings and
recommendations, this court reviews those findings and
recommendations de novo. *See Almonte v. N.Y. State Div. of
Parole*, No. 04–cv–484, 2006 WL 149049, at *6–7 (N.D.N.Y.
Jan. 18, 2006). In those cases where no party has filed an
objection, or only a vague or general objection has been filed,
this court reviews the findings and recommendations of a
magistrate judge for clear error. *See id.*

**III.** *Discussion*

**A.** *Harassment*

The first three of Irvis's fourteen causes of action are based on
incidents of inappropriate touching by defendant Beojakian
that allegedly occurred during three strip searches. (*See*
Compl. at 4–5, Dkt. No. 1.) In recommending the dismissal
of these claims, Judge Baxter correctly observed that while
"isolated episodes of harassment and touching," such as the
three incidents alleged by Irvis, "are despicable and ... may
potentially be the basis of state tort actions ... they do not
involve a harm of federal constitutional proportions." (R &
R at 10–11, Dkt. No. 62 (quoting *Boddie v. Schneider*, 105
F.3d 857, 861 (2d Cir.1997)).) Other than generally objecting
to this conclusion and highlighting the specific instances of
alleged inappropriate touching already acknowledged and
addressed in the R & R, Irvis fails to offer any sufficient
basis to undermine Judge Baxter's findings or ultimate
recommendation. [2] Accordingly, the court adopts the portion
of the R & R recommending the dismissal of Irvis's first three
causes of action.

Irvis's fourth cause of action is based on alleged racial
slurs and threats made on August 25, 2007. Judge Baxter
recommended dismissal of this claim because Irvis "did not
assert, nor does the record support, any allegations of physical

injury related to the verbal harassment, however inappropriate it might have been." (R & R at 11–12, Dkt. No. 62 (relying on, inter alia, *Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y.1998)) ("[V]erbal harassment ... unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under ... § 1983.") (citations and internal quotation marks omitted)).) Absent any apparent objection to this portion of the R & R, and discerning no error in its conclusion or the findings supporting it, the court adopts Judge Baxter's recommendation to dismiss Irvis's fourth cause of action.

### B. *Grievances and Investigations*

**\*2** Irvis's fifth, tenth, and twelfth causes of action pertain to the grievances and complaints made by Irvis in relation to the alleged harassment and defendants' alleged failure to respond or investigate them. (*See* Compl. at 6, 8–9, Dkt. No. 1.) In objecting to Judge Baxter's recommendation to dismiss these claims, Irvis takes issue with Judge Baxter's finding that the record "indicates that an investigation was [indeed] conducted," (R & R at 13, Dkt. No. 62), and devotes a good deal of his submission highlighting his belief that defendants failed to follow their own grievance procedures with respect to his complaints. (Objections at 20–25, Dkt. No. 64.) These objections miss the point. As Judge Baxter correctly explained, "inmates do not have a constitutional right to grievance procedures," (R & R at 12, Dkt. No. 1 (citing, inter alia, *Torres v.. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.N.Y.2003)), and a "violation of the inmate grievance procedures does not give rise to a claim under [§ ] 1983," (*id.* (citing *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001)). Thus, regardless of whether and to what extent defendants followed their grievance procedures in investigating or failing to investigate Irvis's complaints, his claims must fail as a matter of law as they are not actionable under § 1983. Accordingly, the court adopts the portion of the R & R recommending the dismissal of Irvis's fifth, tenth, and twelfth causes of action.

### C. *Mail Tampering and Access to Courts*

Irvis's sixth, seventh, eighth, and ninth causes of action allege that his access to the courts was hindered due to the alleged inadequacy of the law library at the Greene County Jail, and because he was not permitted to contact his public defender as much as he would have liked. (*See* Compl. at 7–8, Dkt. No. 1.) And as to his mail tampering claim, Irvis alleges in his thirteenth cause of action that defendants "did something" to

his notice of intention related to a claim he filed in the New York Court of Claims. (*See id.* at 9.) Irvis's objections to Judge Baxter's recommendation that these claims be dismissed are far from clear.

However, the court has nonetheless reviewed the relevant portion of the R & R de novo and, for the reasons articulated by Judge Baxter, (*see* R & R at 14–17, Dkt. No. 16), concurs that these claims should be dismissed.

### D. *Medical Indifference*

Irvis's eleventh cause of action is one for medical indifference and alleges that defendants Doctor Hulbiki and Nurse Juliano were deliberately indifferent to his medical needs because they did not treat him properly. (*See* Compl. at 8, Dkt. No. 1.) More specifically, Irvis challenges defendants' decision to put him on a diet to treat his sleep apnea, alleging that the reduced-calorie diet "starved" him. (*See* Pl. Mem. of Law at 15, Dkt. No. 49.) Irvis further faults defendants for failing to inform him of the side effects of his antidepressant medication. (*See* Compl. at 10–11, Dkt. No. 1.) The court concurs with Judge Baxter that these allegations fail to state a medical indifference claim for which relief may be granted.

**\*3** As explained in the R & R, even assuming Irvis had a serious medical need, it is clear from the doctor's notes attached to his complaint that he simply disagreed with the defendants about his treatment. (*See* R & R at 21, Dkt. No. 62.) Mere disagreement with prescribed treatment, however, does not give rise to a constitutional violation, *see Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 311 (S.D.N.Y.2001), and an inmate does not have the right to the treatment of his choice, *see Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986). Thus, the court concurs with Judge Baxter's conclusion that "the fact that Irvis might have preferred an alternative treatment, or believes that he did not get the medical attention he desired, does not rise to the level of a constitutional violation." (R & R at 22, Dkt. No. 62.) And as to Irvis's allegation that defendants failed to inform him of his antidepressant medication's side effects, the court likewise agrees with Judge Baxter that Irvis is, "at worst, ... alleging negligence in defendants' care," (*id.*), which, as Judge Baxter explained, fails to state a claim under the Eighth Amendment. *See Sonds*, 151 F.Supp.2d at 312 (explaining that negligence, even to the point of malpractice, does not amount to a constitutional violation). Irvis's objections to these findings and conclusions again take issue with the form of treatment he received and the fact that doctors Hulibiki and Juliano did not conform that treatment to his preferences.

For the reasons just explained, however, such disagreement cannot form the basis of a deliberate indifference claim and his objections lack merit. Accordingly, the court adopts Judge Baxter's recommendation to dismiss Irvis's eleventh cause of action.

### E. *FOIL Request*

Irvis's fourteenth cause of action complains of the response (or lack thereof) to a certain Freedom of Information Law (FOIL) request he had made, contending that defendants were " 'trying to cover up the [defendants'] misconduct.' " (*See* Compl. at 9, Dkt. No. 1.) Explaining that Irvis "has no property interest in obtaining FOIL documents," *Lawrence v. Antonucci,* No. 04–CV–3565, 2005 WL 643457, at *3 (W.D.N.Y. Mar 16, 2005) (citations and internal quotation marks omitted), and that the "failure to provide the requested [FOIL] documents does not amount to a constitutional violation," *Blount v. Brown,* No. 10–CV–01548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) (citation omitted), Judge Baxter correctly concluded that Irvis's FOIL allegation "failed to establish any constitutional violation," (R & R at 23, Dkt. No. 62). Accordingly, the court adopts Judge Baxter's recommendation that Irvis's fourteenth cause of action be dismissed.

### IV. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Andrew T. Baxter's September 2, 2010 Report–Recommendation (Dkt. No. 62) is **ADOPTED** in its entirety; and it is further

 **\*4 ORDERED** that state defendants' motion to dismiss (Dkt. No. 14) is **GRANTED;** and it is further

**ORDERED** that county defendants' motion to dismiss (Dkt. No. 39) is **GRANTED,** and plaintiff's claim be **DISMISSED IN ITS ENTIRETY** as to all defendants; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 454792

### Footnotes

1    The Clerk is directed to append the R & R to this decision, and familiarity therewith is presumed.

2    Seemingly in an effort to avoid the conclusion that the alleged abuse was "isolated," Irvis's objections refer to being subjected to "months of abuse" and "7½ months of [abuse]." (Objections at 13, Dkt. No. 64.) However, as Judge Baxter highlighted, Irvis alleged only three specific instances of inappropriate touching occurring on February 2, 2007, June 8, 2007, and August 25, 2007. (*See* Compl. at 4–5, Dkt. No. 1.) While it may be that defendant Beojakian was not arrested until months after the incidents or Irvis's complaints, which is what Irvis appears to be highlighting, that fact does not transform the three alleged incidents into "months of abuse."

---

**End of Document**      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Maccharulo v. New York State Dept. of Correctional Services, Not Reported in...

2010 WL 2899751

2010 WL 2899751
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Joy MACCHARULO et al., Plaintiffs,
v.
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES et al., Defendants.

No. 08 Civ. 301(LTS).
|
July 21, 2010.

West KeySummary

1    **Civil Rights**
👉 Medical Care and Treatment

Contention that prison denied mentally ill prisoner access to level one services while in a level two facility failed under the ADA as it was a challenge to the adequacy of the mental health services received. Prisoner failed to allege disparate treatment as a result of mental illness. Further, prisoner was at all relevant times provided with mental health services in an effort to accommodate his particular mental health disability. Americans with Disabilities Act of 1990, § 2, 42 U.S.C.A. § 12101.

Cases that cite this headnote

*MEMORANDUM OPINION AND ORDER*

LAURA TAYLOR SWAIN, District Judge.

**\*1** This action arises out of the alleged denial of access to a particular mental health services program to Plaintiffs' decedent Frank Kucharczyk ("Decedent"), a mentally ill person who was at all relevant times incarcerated in the New York State prison system. Plaintiffs Joy Maccharulo and Dolores Kucharczyk ("Plaintiffs"), Co–Administrators of Decedent's estate, assert claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et*

*seq.* ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"). In their Second Amended Complaint ("SAC"), Plaintiffs name as defendants the New York State Department of Correctional Services ("DOCS"), the New York State Office of Mental Health ("OMH"), and the Central New York Psychiatric Center ("CNYPC") (collectively, "Defendants"). The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1331. Defendants have moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered thoroughly the parties' submissions. For the following reasons, Defendants' motion is granted in its entirety.

*BACKGROUND*

Plaintiffs' Second Amended Complaint asserts claims under ADA Title II and Section 504 of the Rehabilitation Act against DOCS, OMH, and CNYPC. (SAC ¶¶ 8–11.) The following facts are alleged in the SAC and are taken as true for purposes of this motion practice. *See Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007). Decedent, at the time of his death in 2004, was a 44–year–old man who suffered from paranoid schizophrenia. Symptoms of paranoid schizophrenia include a limited ability to communicate, control impulses, and interact appropriately with others. (SAC ¶¶ 14–15.)

On October 31, 2002, Decedent was sentenced to a term of seven years of incarceration after pleading guilty to attempted robbery and assault. (SAC ¶ 16.) Prior to being assigned to a prison facility, Decedent underwent a mental health screening conducted by CNYPC for an OMH classification and service level designation, which would be relied upon to place him appropriately in the correctional system. The OMH classification system ranks each subject on a scale from level one to level five, with level one subjects requiring and receiving the most intensive mental health treatment. (SAC ¶¶ 17, 19.)

CNYPC concluded that Decedent required psychiatric treatment for a major mental health disorder and classified him as OMH level two. (SAC ¶¶ 17, 19.) Accordingly, he was assigned to Fishkill Correctional Facility ("Fishkill"), a level two facility, on or about January 26, 2003. (SAC ¶¶ 20, 25.) While he was incarcerated at Fishkill, Decedent's mental health deteriorated significantly. Specifically, Decedent experienced an increased number of auditory hallucinations and severe paranoia. (SAC ¶ 25.) Additionally, Decedent

demonstrated poor judgment and impulse control as a result of his disability and was disciplined for that behavior. For example, on one occasion, Decedent failed to follow an order to return to his desk while participating in Fishkill's pre-GED program. On another occasion, Decedent cursed at a correctional officer. (SAC ¶ 27.) Pursuant to the facility's regular disciplinary measures, Decedent was removed from his pre-GED program and was sent to the Special Housing Unit ("SHU"). (SAC ¶ 27.) Placement in the SHU exacerbated Decedent's mental health problems. (SAC ¶ 23.) In June 2003, the Fishkill staff reclassified Decedent as level one and, accordingly, he was transferred later that month to Auburn Correctional Facility ("Auburn"), a level one facility. While receiving level one treatment at Auburn, Decedent's mental health improved significantly. He was able to attain his GED and to work. (SAC ¶¶ 25, 41–42.)

**\*2** In July 2004, prison employees initiated a request to transfer Decedent back to a level two facility. Decedent wrote a letter requesting that he not be transferred. (SAC ¶¶ 43–44.) However, after spending approximately thirteen months at Auburn, on August 4, 2004, Decedent was transferred back to Fishkill. (SAC ¶ 49.) At Fishkill, Decedent's mental health deteriorated again. He experienced increased paranoia, auditory hallucinations, insomnia, and restlessness. Decedent again began demonstrating poor judgment and impulse control, which led to disciplinary problems. He was punished for his behavior by being placed in the SHU. (SAC ¶ 51–52.) On September 23, 2004, an employee of OMH noted that Decedent's classification would be changed to level one and that he should not be transferred to a level two facility when his condition improved. (SAC ¶ 35.) Three weeks later, Decedent was transferred to a level one facility. On the day of his transfer, Decedent died of a prescription drug overdose. (SAC ¶ 35–36.)

### DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007); *see also Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)."To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

The ADA is intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."42 U.S.C.A. § 12101(b)(1) (West 2005); *see Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."42 U.S.C.A. § 12132 (West 2005).Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."29 U.S.C.A. § 794(a) (West 2008). The purpose of both statutes is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied."*Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998).Neither the ADA nor the Rehabilitation Act, however, applies to claims regarding the quality of mental health services, *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1232 (S.D.N.Y.2003), nor do the statutes "create a remedy for medical malpractice,"*Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (applying the ADA).

**\*3** Courts generally apply the same legal standards when adjudicating claims arising under ADA Title II and ones arising under the Rehabilitation Act.*Harris v. Mills,* 572 F.3d 66, 73 (2d Cir.2009). Although there are some differences between the statutes, "unless one of those subtle distinctions is pertinent to a particular case, [the Court] treat[s] claims under the two statutes identically."*Henrietta D.,* 331 F.3d at 272. To state a claim under ADA Title II, plaintiffs must allege that: "(1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities."*Id.* (quoting 42 U.S.C.A § 12132); *see also Harris,* 572 F.3d at 73–74. In addition, to state a claim under the Rehabilitation Act, plaintiffs

must demonstrate that the entity defendant receives federal funding. *Id.* Here, there is no dispute that Plaintiffs have adequately alleged that Decedent falls under the protection of ADA Title II and the Rehabilitation Act (SAC ¶¶ 14) and that Defendants are subject to the provisions of the ADA and the Rehabilitation Act (SAC ¶¶ 38–39).

Under the ADA, public entities are obligated to make reasonable accommodations for disabled individuals to ensure that they have meaningful access to public benefits. *See Henrietta D., 331 F.3d at 273.* Similarly, the Rehabilitation Act requires that qualified disabled individuals "receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations."*Powell v. National Bd. of Medical Examiners, 364 F.3d 79, 85 (2d Cir.2004).* The purpose of these requirements is to ensure that services provided to non-disabled individuals are not denied to disabled individuals because of their disability.*Pfrommer, 148 F.3d at 83.* Therefore, when there is no allegation of "disparate treatment," *Atkins, 251 F.Supp.2d at 1232,* between disabled and non-disabled individuals, the plaintiff has not stated a claim under the ADA or the Rehabilitation Act. *Id.; see Pfrommer, 148 F.3d at 83.* Moreover, neither the ADA nor the Rehabilitation Act requires that all disabled individuals who are receiving public services be provided with identical benefits. *Flight v. Gloeckler, 68 F.3d 61, 63 (2d Cir.1995).* Thus, a claim that challenges the adequacy, *Pfrommer, 148 F.3d at 82,* or the substance, *id. at 84,* of services that are being provided to a disabled individual is not a valid claim under either the ADA or the Rehabilitation Act. *See Atkins, 251 F.Supp.2d at 1232.*

Plaintiffs' Amended Complaint is one that challenges the adequacy of services rather than the denial to disabled persons of access to programs or services provided to non-disabled individuals. Specifically, Plaintiffs argue that Decedent was denied the opportunity to receive level one services on account of his schizophrenia. Plaintiffs allege that the specific nature of schizophrenia is such that, when treated properly (as it was when Decedent was incarcerated at Auburn and receiving level one services), its symptoms recede. Because Decedent did not manifest the symptoms of his disability while at Auburn, Defendants transferred him back to a level two facility and removed his access to level one services —despite the fact that Plaintiff continued to require those services. Plaintiffs argue that Defendants denied Decedent access to level one services because of the particular nature of his disability, that is, because he suffered from a disability

whose symptoms would lie dormant while he was in receipt of proper care (SAC ¶¶ 3–4), and that Defendants' decision to transfer Decedent out of the level one program despite his latent schizophrenia violated the ADA and the Rehabilitation Act.

**\*4** Plaintiffs also allege that, while Decedent was at Fishkill, Defendants disciplined Decedent by placing him in the SHU. Plaintiffs allege that Defendants should have recognized that Decedent's misbehavior owed to the inadequacy of the level two services and they should have responded by providing him with level one services rather than by imposing disciplinary measures. (SAC ¶ 4.) Plaintiffs do not allege, however, that Decedent was denied the level two services that he otherwise received at Fishkill while he was in the SHU.

Defendants contend that Plaintiffs have not stated a claim that Decedent was excluded from participating in a prison program, benefit, service, or activity by reason of his disability. Rather, Plaintiffs' allegations regarding Decedent's placement in a level two facility and his disciplinary relegation to the SHU challenge the adequacy of the mental health treatment that Decedent received but do not allege the type of denial of services that is required to state a claim under the ADA or the Rehabilitation Act.

ADA Title II and the Rehabilitation Act require that public entities and entities that receive federal funding make "reasonable accommodations" for disabled individuals to enable them to participate in programs, and secure services, offered to the non-disabled population. *Powell, 364 F.3d at 84–85.* Read in the light most favorable to Plaintiffs, the Second Amended Complaint pleads that Decedent was at all relevant times provided with mental health services in an effort to accommodate his particular mental health disability and that he was specifically provided with level one services at various times throughout his incarceration. Plaintiffs' complaint regarding the failure to provide consistent access to the level one treatment program is, on its face, one having to do with a program provided to persons with disabilities, rather than one provided to non-disabled persons. Plaintiffs' complaint thus is a challenge to the adequacy and the nature of the mental health services Decedent was receiving rather than a claim that Decedent was wrongfully denied a public service. A challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons, is not a valid claim under the ADA or the Rehabilitation Act. *See Pfrommer, 148 F.3d at 82; Atkins, 251 F.Supp.2d at 1231.*

Plaintiffs' argument that Defendants violated ADA Title II and the Rehabilitation Act by placing Decedent in the SHU rather than providing him with level one services when he manifested poor impulse control as a result of his disability also fails to state an actionable claim under the ADA or the Rehabilitation Act. Plaintiffs do not plead facts demonstrating that Decedent was treated differently from non-disabled individuals exhibiting the same behavior. Rather, their assertion is that Decedent could, with different and more intensive treatment for his particular disability, have been enabled to avoid the offending behavior. Like that of the plaintiffs in *Atkins v. County of Orange* (discussed below), their complaint falls outside the purview of the ADA and the Rehabilitation Act. 251 F.Supp.2d at 1232.

**\*5** In *Atkins v. County of Orange,* mentally ill inmates asserted claims under ADA Title II and the Rehabilitation Act, alleging that the defendants discriminated against them by placing them in keeplock isolation as punishment for demonstrating symptoms of their mental illness. *Atkins,* 251 F.Supp.2d at 1231. The *Atkins* Court held that the plaintiffs had not stated an actionable claim under either the ADA or the Rehabilitation Act because they were not alleging "that the mentally disabled are the only prisoners subjected to this procedure while the non-mentally disabled prisoners are excluded therefrom."*Id.* at 1232.Rather, prison procedures mandated that any inmate who "presents risk of danger to self or others" would be placed in keeplock isolation. *Id.* Therefore the placement of individuals in keeplock isolation applied equally to all inmates who demonstrated dangerous behavior and did not reflect discrimination against any particular group on account of their disability. *Id.* Similarly, Plaintiffs here do not allege that only mentally disabled prisoners are punished by being placed in the SHU, or that prisoners who are not disabled are provided with more appropriate alternatives to the SHU. As in *Atkins,* there

are no allegations in Plaintiffs' pleading to support any inference other than that Prisoners who misbehave similarly are disciplined similarly. Because the purpose of the ADA and the Rehabilitation Act is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied,"*Pfrommer,* 148 F.3d at 82, a claim that does not allege such discriminatory treatment is not a viable claim under either statute. *See Atkins,* 251 F.Supp.2d 1232.

In sum, Plaintiffs' contentions that Decedent was inappropriately denied level one services while in a level two facility and while placed in the SHU are challenges to the adequacy of the mental health services that Decedent received. The unfortunate circumstances alleged here notwithstanding, neither the ADA nor the Rehabilitation Act provides a cause of action for challenges to the quality of mental health services provided or for allegations of negligent medical malpractice. *Bryant,* 84 F.3d at 249; *Atkins,* 251 F.Supp.2d at 1232. Therefore, Plaintiff have not stated a claim upon which relief can be granted under ADA Title II or the Rehabilitation Act.

### *CONCLUSION*

For the foregoing reasons, Plaintiffs' ADA Title II and Rehabilitation Act claims against DOCS, OMH, and CNYPC are dismissed. This Order Resolves docket entry no. 29. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2899751

---

2015 WL 5603433
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Reggie McFADDEN, Plaintiff,

v.

J. FRIEDMAN, Corr. Officer; Eastern Corr. Facility;
B. Leifeld, Sergeant, Eastern Corr. Facility; Geisler,
Corr. Officer, Eastern Corr. Facility; Filkins,
Corr. Officer, Eastern Corr. Facility; William
Brown, Superintendent, Eastern Corr. Facility;
and Brian Fischer, Comm'r, Doccs, Defendants.

No. 9:12–CV–0685 (GTS/CFH).
|
Signed Sept. 23, 2015.

**Attorneys and Law Firms**

Reggie Mcfadden, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Ryan W. Hickey, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* prisoner
civil rights action filed by Reggie McFadden ("Plaintiff")
against the six above-captioned New York State correctional
employees ("Defendants") pursuant to 42 U.S.C. § 1983,
are Defendant's motion for summary judgment and United
States Magistrate Judge Christian F. Hummel's Report–
Recommendation recommending that the motion for
summary judgment be granted. (Dkt.Nos.66, 100.) For the
reasons set forth below, the Report–Recommendation is
accepted and adopted in its entirety, and Defendant's motion
for summary judgment is granted.

## I. RELEVANT BACKGROUND

Because this Decision and Order is intended primarily for
the review of the parties, the Court will not summarize
the claims and factual allegations asserted in Plaintiff's
Amended Complaint, which are accurately recited in the
Report–Recommendation. (Dkt. No. 100.) Nor will the Court
summarize the findings and conclusions rendered in the
Report–Recommendation, for the same reason; rather, the
Court will respectfully refer the reader to the Report–
Recommendation. (Dkt. No. 66.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a
magistrate judge's report-recommendation, the Court subjects
that portion of the report-recommendation to a *de novo*
review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To
be "specific," the objection must, with particularity, "identify
[1] the portions of the proposed findings, recommendations,
or report to which it has an objection and [2] the basis for
the objection."N.D.N.Y. L.R. 72.1(c). [1] When performing
such a *de novo* review, "[t]he judge may ... receive further
evidence...." 28 U.S.C. § 636(b)(1). However, a district court
will ordinarily refuse to consider evidentiary material that
could have been, but was not, presented to the magistrate
judge in the first instance. [2] Similarly, a district court will
ordinarily refuse to consider argument that could have been,
but was not, presented to the magistrate judge in the first
instance. *See Zhao v. State Univ. of N.Y.,* 04–CV–0210,
2011 WL 3610717, at *1 (E.D.N.Y. Aug.15, 2011) ("[I]t is
established law that a district judge will not consider new
arguments raised in objections to a magistrate judge's report
and recommendation that could have been raised before the
magistrate but were not.") (internal quotation marks and
citation omitted); *Hubbard v. Kelley,* 752 F.Supp.2d 311,
312–13 (W.D.N.Y.2009) ("In this circuit, it is established law
that a district judge will not consider new arguments raised in
objections to a magistrate judge's report and recommendation
that could have been raised before the magistrate but were
not.") (internal quotation marks omitted).

When only a *general* objection is made to a portion of a
magistrate judge's report-recommendation, the Court subjects
that portion of the report-recommendation to only a *clear
error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b),
Advisory Committee Notes: 1983 Addition; *see also Brown
v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y.
Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without
opinion,*175 F.3d 1007 (2d Cir.1999). Similarly, when an
objection merely reiterates the *same arguments* made by
the objecting party in its original papers submitted to the
magistrate judge, the Court subjects that portion of the
report-recommendation challenged by those arguments to
only a *clear error* review. [3] Finally, when *no* objection is

made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

**\*2** After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

## III. ANALYSIS

In his lengthy Objection to the Report–Recommendation, Plaintiff objects to virtually every finding and conclusion rendered by Magistrate Judge Hummel. (Dkt. No. 101.) The problem is that Plaintiff never states the *basis* for his objections. (*Id.*) As explained above in Part II of this Decision and Order, to lodge a specific objection (sufficient to trigger a *de novo* review), a litigant must not only identify the portion of the Report–Recommendation to which he or she has a objection but the *basis* for that objection. [5] As a result, only a clear-error review of the Report–Recommendation is required under the circumstances.

After carefully reviewing the relevant filings in this action, the Court can find no clear error in the thorough Report–Recommendation: Magistrate Judge Hummel employed the proper legal standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein. (Dkt. No. 100.) To those reasons, the Court adds only three brief points.

First, regarding the findings rendered by Magistrate Judge Hummel on pages 16 and 17 of his Report–Recommendation, the Court notes that it rejects Plaintiff's personal-photographs argument on the alternative ground that any declaration testimony that Plaintiff offers to support his allegation that he possessed personal photographs (that were taken by Defendant Friedman) is at odds with both Defendant Friedman's testimony on the subject and the entirety of the record evidence, thus putting the Court in the inescapable position of having to make a credibility determination, which it does, against Plaintiff based on the evidence. [6]

Second, regarding the findings rendered by Magistrate Judge Hummel on pages 19 through 22 of his Report–Recommendation, the Court concludes that the three injuries Plaintiff allegedly suffered are not substantial enough to constitute an adverse action for purposes of a First Amendment retaliation claim, regardless of whether the Court considers those injuries separately *or together,* which is the standard. [7]

Third, regarding the findings rendered by Magistrate Judge Hummel on page 20 of his Report–Recommendation, the Court acknowledges that, while it may make eminent sense to consider as a factor that Plaintiff indeed filed a grievance immediately after he allegedly suffered adverse action in deciding whether the adverse action would have chilled similarly situated inmates of ordinary firmness (the class of which presumably includes Plaintiff), it is not permissible to do so under Second Circuit precedent. *See, e.g., Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.2004) ("[T]he objective test [that governs a First Amendment retaliation claim] applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."). However, the Court finds, for the other reasons stated by Magistrate Judge Hummel, that Plaintiff has failed to show that Defendant Friedman's alleged taking of his personal fan constituted adverse action for purposes of the First Amendment.

**\*3** **ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Hummel's Report–Recommendation (Dkt. No. 100) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 66) is ***GRANTED;*** and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 38) is ***DISMISSED*** in its entirety; and it is further

**ORDERED** that the Clerk of the Court shall enter Judgment for Defendants and close this action.

## REPORT–RECOMMENDATION AND ORDER [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Reggie McFadden, an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that: (1) defendant Jill Friedman denied him access to the commissary, issued him false misbehavior reports, conducted unauthorized cell searches, and took or destroyed his property, in violation of the First Amendment (Dkt. No. 38 ("Amended Compl.") at 8–11); (2) defendant Berndt Leifeld issued misbehavior reports in retaliation for plaintiff filing grievances, in violation of the First Amendment (*id.* at 12–13); (3) defendant Daniel Geisler issued a false misbehavior report in retaliation for plaintiff's filing grievances, in violation of the First Amendment (*id.* at 14); (4) defendant Keith Filkins harassed and threatened plaintiff by issuing a false misbehavior report to plaintiff in retaliation for plaintiff filing a grievance against defendant Leifeld and other correctional staff, in violation of the First Amendment (*id.* at 14–15); and (5) defendants William Brown and Brian Fischer are liable as supervisors for the misconduct of defendants Friedman, Leifeld, Geisler, and Filkins (*id.* at 19–31, 32–34, 42–53, 55–57).

At all relevant times, plaintiff was an inmate at Eastern Correctional Facility ("Eastern"). Plaintiff commenced this action on April 25, 2012, seeking $2.7 million dollars in compensatory and punitive damages, together with attorneys' fees and costs. Dkt. No. 1 at 20. Plaintiff filed a motion to amend his complaint on August 30, 2013. Dkt. No. 32. The Court granted plaintiff's motion as to some claims, denied the motion as to others, and directed that the amended complaint supersede and replace the previously-filed complaint. Dkt. No. 37 at 16–17. Plaintiff filed an amended complaint on January 17, 2014. Dkt. No. 38. Presently pending is defendants' first motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ .P.") 56(a). Dkt. No. 66. Plaintiff opposed the motion. Dkt. Nos. 78, 85.

## I. Background

### A. July 1, 2009 Commissary Buy

On July 1, 2009, plaintiff was placed on a one-day medical confinement due to a minor medical condition. Amended Compl. at 8. Plaintiff's medical confinement status allowed him to receive meals in his cell and also excused him from attending recreation activities and his assigned program. *Id.* Plaintiff's July 1, 2009 medical excuse permit for did not specify any additional changes or restrictions. *Id.*

**\*4** Defendant Friedman conducted final rounds at the conclusion of her shift on July 1, 2009 at approximately 2:30 p.m. Declaration of Jill Friedman ("Friedman Decl.") ¶ 6. At that time, plaintiff demanded to be taken to the commissary. *Id.* ¶ 7. Friedman states that plaintiff asked if "keep-lock" inmates were allowed to go to the commissary. *Id.* ¶ 9. She informed plaintiff that inmates placed on a disciplinary keep-lock lose their commissary privileges. *Id.* She was not aware at the time that plaintiff was keep-locked on the orders of medical staff. *Id.* Plaintiff alleges that Friedman told him that she was not allowing him to go to the commissary because he had written a grievance complaint on her "home girl," Officer Jamil. [2] Amended Compl. at 9.

An inmate on a medical keep-lock may not leave his cell to go to the commissary, but may request a "make-up" commissary buy for another time. Friedman Decl. ¶¶ 10–11. Plaintiff never requested a "make-up" commissary buy day. *Id.* ¶ 12. Plaintiff filed a grievance complaint against Friedman on July 3, 2009. Amended Compl. at 9. A hearing on the July 3, 2009 grievance complaint took place on July 14, 2009. *Id.* Plaintiff alleges that he appealed the matter to defendant Brown on July 17, 2009 and July 20, 2009. *Id.* at 19–20. Brown responded to plaintiff's appeal on August 25, 2009. *Id.* Plaintiff also claims that he appealed the matter to defendant Fischer on August 20, 2009, and Fischer responded on or about September 23, 2009. *Id.* at 42.

### B. July 14, 2009 Misbehavior Report and Contraband Receipt

On July 14, 2009, defendant Friedman was conducting regular rounds when she heard a radio playing loudly from plaintiff's cell. Friedman Decl. ¶¶ 15–16. Upon inspection, Friedman saw that plaintiff was not in his cell. *Id.* ¶ 16. Eastern's facility policy dictates that inmates must turn off and unplug their radios while they are not present in their cells. *Id.* ¶ 17. Previously, Friedman had counseled plaintiff regarding this policy and had instructed him to turn off his radio when he left his cell. *Id.* ¶ 18. Friedman issued plaintiff a misbehavior report for violation of Standards of Inmate Behavior 104.13 (Creating a Disturbance) and 106.10 (Refusing a Direct Order).*Id.* ¶ 19, Exh. A. Friedman also confiscated plaintiff's radio, issued him a contraband receipt, and placed the radio in the West Wing Court Office. *Id.* ¶¶ 19–20, Exh. B.

Plaintiff claims that Friedman's July 14, 2009 misbehavior report is false because he did not leave his radio playing loudly that day. Amended Compl. at 9–10. He also claims that Friedman stole two of his family photographs from his cell and did not note the photographs on the contraband receipt issued to him. *Id.* at 10. Plaintiff alleges that Friedman issued the false misbehavior report, and confiscated plaintiff's photographs, in retaliation for the grievance complaint that plaintiff filed against her on July 3, 2009. *Id.* at 910. Friedman denies that she confiscated any photographs from plaintiff's cell. Friedman Decl. ¶ 23.

**\*5** Plaintiff was found guilty of violating Standard of Inmate Behavior 104.13 (Creating a Disturbance) at his Tier I Disciplinary Hearing regarding the July 14, 2009 misbehavior report. Friedman Decl. ¶ 22; Declaration of Berndt Leifeld ("Leifeld Decl.") ¶ 32. Leifeld, who served as a hearing officer at plaintiff's disciplinary hearing, counseled and reprimanded plaintiff on Eastern's policy on radio use. Friedman Decl. ¶ 22; Leifeld Decl. ¶ 33, Exh. C. Plaintiff alleges that he appealed this matter to defendant Brown on both July 17, 2009 and July 20, 2009, and Brown responded to the appeals on August 25, 2009. Amended Compl. at 20–21. Plaintiff also alleges that Brown responded to his appeal on July 20, 2009. *Id.* at 23. Plaintiff sent a letter regarding the incident to defendant Fischer on August 20, 2009, and Fischer responded on September 23, 2009. *Id.* at 44.

### C. October 8, 2009 Contraband Receipt

On October 8, 2009, plaintiff alleges that Friedman conducted an "unauthorized search" of plaintiff's cell and "stole" his personal fan. Amended Compl. at 10–11. He also alleges that Friedman vandalized his cell, pouring "soap powder, coffee, sugar, water, and ... mayonnaise all over everything" in his cell. *Id.* at 10. Plaintiff alleges that Friedman acted in retaliation for the grievance complaints he had previously filed against her. *Id.*

Friedman states that she was conducting regular rounds at 1:50 p.m. on October 8, 2009 when she observed a lamp and linens hanging from a clothesline in plaintiff's cell. Friedman Decl. ¶ 26. According to Eastern's facility policy, inmates may not hang their clotheslines until after 4:00 p.m. and may not hang lamps from their clotheslines. *Id.* ¶ 27. Therefore, Friedman confiscated the clotheslines and the linens and issued a contraband receipt to plaintiff. *Id.* ¶ 28. Friedman states that her actions were performed based on "facility

policy and protocol[,]" and that she "did not threaten, harass, or retaliate against Plaintiff in any way at any time."*Id.* ¶ 29. Plaintiff alleges that the contraband receipt is false because he never owned a clothesline during his time at Eastern. Amended Compl. at 11.

Plaintiff alleges that he sent a "grievance letter" to defendant Brown on October 8, 2009, complaining about Friedman's conduct. Amended Compl. at 21. After plaintiff sent the letter to Brown, an investigation took place on October 19, 2009. *Id.* at 22. Plaintiff also alleges that he sent a letter regarding the incident to defendant Fischer on October 8, 2009, and Fischer responded on February 17, 2010. *Id.* at 46. Brown received plaintiff's letter and forwarded it to subordinate staff for investigation. Declaration of William Brown ("Brown Decl.") ¶ 15. On December 31, 2009, Brown's office sent plaintiff a copy of defendant Leifeld's response to the grievance regarding the October 8, 2009 incident. *Id.*

### D. October 20, 2009 Misbehavior Report

**\*6** On October 20, 2009, plaintiff alleges that defendant Leifeld issued a false misbehavior report against him, claiming that Leifeld had searched plaintiff's cell and confiscated a pair of stolen headphones. Amended Compl. at 12. Plaintiff alleges that the misbehavior report is false because Leifeld did not conduct a search and, further, plaintiff did not own any headphones at the time of the alleged search. *Id.*

Leifeld states that, on October 20, 2009, plaintiff gave him a pair of broken headphones and accused another officer of cutting one of the wire leads on the headphones. Leifeld Decl. ¶ 5. Leifeld inspected the headphones, along with facility records, and found that (1) the headphones were the "Unitone digital" brand; (2) the headphones were identical to the type of headphones sold in Eastern's commissary; (3) there was no identification number on the headphones; (4) plaintiff did not have a permit for the headphones; and (5) there were no records of plaintiff's purchase of the headphones from Eastern's commissary. *Id.* ¶¶ 8–11. Inmates must have a property permit for headphones pursuant to Directive 2733. *Id.* ¶ 6. Accordingly, Leifeld determined that plaintiff possessed the headphones illegally and issued him a misbehavior report for violating Standards of Inmate Behavior 116.13 (Possession of Stolen Property).*Id.* ¶ 12. Leifeld also determined that plaintiff's claim that an officer

had damaged the headphones was meritless and placed the headphones in the West Wing Court Contraband Locker. *Id.* ¶¶ 13–14. Leifeld states that his actions were based on "facility policy and protocol." *Id.* ¶ 15.

Plaintiff states that he filed a grievance complaint regarding the headphones incident on October 23, 2009, and sent the grievance complaint to defendants Brown and Fischer. Amended Compl. at 24. Brown assigned Captain L. Pingotti to investigate the incident, and Captain Pingotti issued a memorandum regarding his investigation on December 5, 2009 *Id.* at 24–25. Plaintiff alleges that Brown never responded to plaintiff's October 23, 2009 grievance. *Id.* at 24. Plaintiff also alleges that he appealed the incident to Fischer on December 17, 2009. *Id.* at 48.

Defendant Fischer received a letter regarding this incident on November 3, 2009. Declaration of Brian Fischer ("Fischer Decl.") ¶ 8. The letter was addressed to defendant Brown, with a copy addressed to Fischer. *Id.* ¶ 8, Exh. B. Deputy Commissioner Leclaire responded to the letter on November 12, 2009, referring plaintiff to the grievance office at Eastern to resolve his complaint. *Id.*

### E. December 5, 2009 Misbehavior Report

On December 5, 2009, plaintiff alleges that he dropped "his electrical trimmers[,]" causing the battery from the trimmers to roll outside of his cell. Amended Compl. at 55. He then placed a mirror outside of his cell bars in order to locate the battery. *Id.* Plaintiff alleges that defendant Filkins walked by, "snatch[ed]" the mirror from his hand, called plaintiff a racial slur, threatened him for filing grievances against other officers, and stated, "we skin heads are not going to stand for it."*Id.* at 55–56.

**\*7** Officer Filkins states that, on December 5, 2009, he observed a mirror propped up against a book outside of plaintiff's cell door. Declaration of Keith Filkins ("Filkins Decl.") ¶ 6. According to Standards of Inmate Behavior Rule 116.11, inmates are not allowed to alter their personal property to extend outside of their cell doors. *Id.* ¶ 7. As Filkins approached plaintiff's cell, plaintiff disassembled the mirror and book set-up and moved the mirror inside his cell. *Id.* ¶ 8. Filkins ordered plaintiff to give him the mirror four times, and plaintiff refused. *Id.* ¶¶ 9–10. After the fourth refusal, Filkins told plaintiff that he was keep-locked and gave plaintiff a fifth order directing him to hand over the

mirror. *Id.* ¶ 10. Plaintiff refused again, at which point Filkins told plaintiff that he would continue making his rounds and would return after to confiscate the mirror. *Id.* ¶ 11. As Filkins walked away from plaintiff's cell, plaintiff placed the mirror outside of his cell, and Filkins confiscated it and placed it in the West Wing Court Office. *Id.* ¶ 12.

Filkins notified the Area Sergeant of the incident, and issued plaintiff a misbehavior report for violating Standards of Inmate Behavior Rules 106.10 (Refusal to obey a direct order), 107.10 (Interference with an employee), and 116.11 (Tampering with personal property). Filkins Decl. ¶ 13. Filkins states that he issued the misbehavior report based on "policy and protocol[,]" and denies that he retaliated against plaintiff for grievances filed against other DOCCS staff. *Id.* ¶¶ 14, 16. He also denies threatening or harassing plaintiff. *Id.* At a Tier II disciplinary hearing, plaintiff pleaded guilty to violating Standards of Inmate Behavior Rule 116.11 (Tampering with personal property).*Id.* ¶ 15.

Plaintiff sent a grievance regarding this incident to defendant Brown on or about December 6, 2009. Amended Compl. at 33. Plaintiff also alleges that he appealed the matter to defendant Fischer on January 13, 2010, and Fischer responded on March 3, 2010. *Id.* at 56.

### F. December 27, 2009 Misbehavior Report

On December 27, 2009, plaintiff alleges that defendant Leifeld told him to move to a different area at Eastern without providing him with an institutional pass or an escort officer. Amended Compl. at 12. Plaintiff contends that Leifeld's order violated Eastern's movement regulations and effectively forced plaintiff to disobey the regulations. *Id.* at 12–13. Officer Geisler found plaintiff in the bathroom and issued him a misbehavior report. *Id.* at 14. Plaintiff alleges that Leifeld and Geisler's misbehavior report is false because it states that plaintiff refused to return to his housing unit at Geisler's direction. *Id.* He claims that Leifeld ordered him to a different area of the prison for the purpose of issuing him a false misbehavior report for his movement outside of Eastern's regulations, and that he did not immediately obey Geisler because he was using the bathroom. *Id.* at 13–14. He further claims that Leifeld acted in retaliation for past grievances filed against him and other staff members. *Id.* at 13.

**\*8** Leifeld claims that, on December 27, 2009, he asked Geisler to instruct plaintiff to meet Leifeld in the West Wing Court. Leifeld Decl. ¶ 17. Leifeld states that he asked plaintiff to report to the West Wing Court during an "open movement" period, during which inmates are allowed to move about the facility without passes or escorts. *Id.* ¶¶ 18, 20. On December 27, 2009, there was an open movement period immediately after breakfast, lasting from approximately 8:20 a.m. to 8:35 a.m. *Id.* ¶¶ 19, 22. Plaintiff failed to report to the West Wing Court during the open movement period despite the fact that Mess Hall # 1, where plaintiff ate breakfast, and the West Wing Court "are about a two-minute walk apart."*Id.* ¶¶ 21, 23. After searching other areas of Eastern for plaintiff, Leifeld instructed Geisler to search for plaintiff. *Id.* ¶¶ 23–24. Geisler located plaintiff in the shower area at approximately 8:45 a.m and reported to Leifeld that plaintiff refused to be escorted back to his housing unit, and only complied after Geisler signaled other officers for assistance. *Id* . ¶¶ 24–25. Plaintiff was escorted back to his housing unit and placed on keep-lock status. *Id.* ¶ 26. Leifeld issued plaintiff a misbehavior report for violations of Standards of Inmate Behavior 106.10 (Refusal to obey a direct order); 109.10 (Out of place); 107.10 (Interference); and 109.12 (Staff direction to movement).*Id.* ¶ 27.

Plaintiff alleges that he sent a letter to defendants Brown and Fischer regarding the allegedly false misbehavior report on December 29, 2009. Amended Compl. at 26. Plaintiff claims that neither Brown nor Fischer have responded to that letter. *Id.* Plaintiff also filed a grievance on December 31, 2009. *Id.* at 28. Brown replied to the grievance on January 14, 2010. *Id.*

Following a Tier II disciplinary hearing held on January 14, 2010, plaintiff was found guilty of violating Standard of Inmate Behavior 106.10 (Refusal to obey a direct order). Leifeld Decl. ¶ 28. Brown states that he received both the original grievance and the appeal of the disciplinary hearing determination and forwarded both to the Deputy Superintendent of Security. Brown Decl. ¶¶ 11–14. The Deputy Superintendent of Security affirmed the hearing officer's finding on January 15, 2010. Leifeld Decl. ¶ 29.

## II. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it is supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.FED.R.CIV.P. 56(a),

(c). The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

**\*9** The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223–24 (2d Cir.1994).

Where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. See *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they "suggest,".... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants,"... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law...."

*Id.*(citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191–92 (2d Cir.2008).

## B. First Amendment Retaliation Claims

Plaintiff argues that: (1) defendant Friedman denied plaintiff access to the commissary, issued plaintiff false misbehavior reports, conducted unauthorized cell searches, verbally

threatened plaintiff, and took or destroyed plaintiff's property in retaliation for plaintiff filing grievances in violation of the First Amendment; (2) defendant Leifeld issued plaintiff false misbehavior reports in retaliation for plaintiff's filing grievances, in violation of the First Amendment; (3) defendant Geisler issued plaintiff a false misbehavior report in retaliation for plaintiff's filing grievances, in violation of the First Amendment; and (4) defendant Filkins harassed and threatened plaintiff, and issued a false misbehavior report to plaintiff in retaliation for plaintiff's filing grievances, in violation of the First Amendment. Amended Compl. at 9–15.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]' " *See,* e.g., *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (quoting *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds by* *Swierkiewicz v. Sorema, N. A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *South Cherry St., LLC v. Hennessee Group LLC,* 573 F.3d 98, 110 (2d Cir.2009). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009) (quoting *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir .2004), *overruled on other grounds by* *Swierkiewicz,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *See Barclay v. New York,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007). In order to prove an adverse action, a plaintiff must show that the defendant's " 'retaliatory conduct ... would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.... Otherwise, the retaliatory act is simply *de minimis,* and therefore outside the ambit of constitutional

protection.' " *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 366 (S.D.N.Y.2011) (quoting *Dawes,* 239 F.3d at 292–93).

### 1. Friedman

#### a. July 1, 2009 Commissary Buy

**\*10** Plaintiff claims that, on July 1, 2009, Friedman prevented him from traveling to the commissary on his scheduled day and stated to plaintiff: "this is only the beinning [sic] of your sorrows, because you wrote a grievance complaint on my home girl[.]" Amended Compl. at 9. Where plaintiff refers to Friedman's "home girl," he means corrections officer Jamil. *Id.*

Plaintiff has shown that he engaged in constitutionally protected conduct insofar as he claims to have filed a grievance against Jamil. *See Graham v. Henderson,* 89 F.3d 75, 80 (1996). However, he has failed to show that he suffered an adverse action, and he has also failed to show a causal connection between his protected speech and the alleged adverse action.

At the outset, "it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden,* No. 09 Civ. 3135(RWS), 2011 WL 1453789, at \*4 (S.D.N.Y. Apr.14, 2011) (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009)). Plaintiff must show "a genuine issue of material fact that the protected conduct was a substantial or motivating factor in his discipline." *Graham,* 89 F.3d at 81. Here, plaintiff does not allege that he filed any grievances or complaints against Friedman. Although he claims that Friedman did not allow him to go to the commissary because he had previously filed a grievance against Officer Jamil, Friedman states in her affidavit that July 1, 2009 was the first day she encountered plaintiff, and that she had no knowledge of any previous grievances filed by him against Officer Jamil. Friedman Decl. ¶ 14. As plaintiff has provided no evidence establishing why Friedman would file a false misbehavior report against him on Jamil's behalf beyond a conclusory belief that the two officers are friends, he has failed to present a genuine issue of material fact as to a causal connection between his protected speech and being denied his commissary buy day. *See Ciaprazi v. Goord,* No. 9:02–CV–915 (GLS/DEP), 2005 WL 3531464, at \*9 (N.D.N.Y. Dec.22, 2005) (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against corrections officers other than the officer who

disciplined the plaintiff); *see also Alicea v. Maly,* No. 9:12–cv–203 (MAD/TWD), 2015 WL 4326114, at *14 (N.D.N.Y. July 14, 2015); *Guillory v. Ellis,* No. 9:11–CV–600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug.29, 2014). Even if the Court were to find that a causal connection did exist, plaintiff's claim would still fail because the loss of one visit to the commissary is *de minimis* and does not amount to an adverse action. *See Gantt v. Lape,* No. 9:10–CV–0083 (GTS/TWD), 2012 WL 4033729 (N.D.N.Y. July 31, 2012) (finding no adverse action where the plaintiff lost commissary privileges for thirty days).

Accordingly, there is no genuine issue of material fact as to Friedman's actions on July 1, 2009, and it is recommended that defendants' motion on this ground be granted.

### b. July 14, 2009 Misbehavior Report and Contraband Receipt

**\*11** Plaintiff alleges that he filed a grievance against Friedman on July 3, 2009, in response to her actions on July 1, 2009. Amended Compl. at 10. He claims that Friedman performed an unauthorized search of his cell, stole two photographs, and issued a false misbehavior report and contraband receipt. *Id.*

Plaintiff's grievance against Friedman is constitutionally-protected conduct. *See Graham,* 89 F.3d at 80. As to the second prong, whether the conduct complained of amounts to an adverse action, routine cell searches are "an integral part of prison life[.]"*Jones v. Harris,* 665 F.Supp.2d 384, 394 (S.D.N.Y.2009) (citing *Hudson v. Palmer,* 468 U.S. 517, 527–28, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). As such, "neither the United States Suprem e Court nor the Second Circuit has ever held that a cell search can be the basis of a First Amendment retaliation claim."*Id.* at 398. Further, any property seized during cell searches or disarray caused by the search must be "unusually punitive" or "out of the ordinary" in order to show that a plaintiff has suffered more than a *de minimis* injury. *Id.* at 398. A plaintiff must show that a prison official " 'intentionally' " or " 'deliberately' lost or destroyed his property[.]" *Key v. Toussaint,* 660 F.Supp.2d 518, 525 (S.D.N.Y.2009) (quoting *Gill v. Frawley,* No. 9:02–CV–1380, 2006 WL 1742738, at *5 & nn. 25–26 (N.D.N.Y. June 22, 2006)).

Friedman states that she took a radio from plaintiff's cell because she had discovered the radio playing while

plaintiff was not present in his cell, which is a violation of Eastern's policy. Friedman Decl. ¶¶ 17, 19. She denies taking any personal photographs from plaintiff's cell, *id.* % 23, and plaintiff has not set forth any proof to show that she confiscated the photographs. Plaintiff attaches to his supplemental response to defendants' motion a form listing an inventory of his personal belongings he had upon his arrival at Eastern. Dkt. No. 83 at 28. Although plaintiff claims that the form lists his personal photographs, it does not. *See id.* at 9, 28. As plaintiff failed to show that Friedman intentionally lost or destroyed his photographs, he has failed to show that he suffered an adverse action.

Plaintiff has also failed to allege facts tending to establish a First Amendment retaliation claim based on Friedman's issuance of a misbehavior report based on plaintiff's improper use of his radio. Although plaintiff's filing of a grievance against Friedman is constitutionally-protected speech, plaintiff has failed to show that he suffered an adverse action insofar as he accuses Friedman of issuing a retaliatory false misbehavior.[3] " 'Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes adverse action for a claim fo retaliation.' " *Davis,* 320 F.3d at 353. At his Tier I hearing, plaintiff was "counseled and reprimanded" by the hearing officer. Leifeld Decl. ¶ 33. Plaintiff received no other penalty. *Id.* The penalty received by plaintiff is *de minimis,* and, therefore, is not an "adverse action." *See Monko v. Cusack,* No. 9:11–CV–1218 GTS/TWD, 2013 WL 5441724, at *11 (N.D.N.Y. Sept.27, 2013) (finding that the penalty of "counseling and reprimand" was insufficient to establish adverse action).

**\*12** Because plaintiff has failed to show that he suffered an adverse action on July 14, 2009, the undersigned need not determine whether there is a causal connection between plaintiff's protected conduct and Friedman's actions. Accordingly, there is no genuine issue of material fact as to Friedman's actions on July 14, 2009, and it is recommended that defendants' motion on this ground be granted.

### c. October 8, 2009 Contraband Receipt

Plaintiff alleges that, on October 8, 2009, in retaliation for "a number of grievances" filed against Friedman, Friedman performed an unauthorized search of plaintiff's cell, confiscated plaintiff's personal fan without issuing a contraband receipt, and issued a false contraband receipt

claiming that plaintiff had a lamp hanging from a clothesline in his cell. Amended Compl. at 10–11. Plaintiff denies having a clothesline in his cell, and also alleges that, during Friedman's search of his cell, she "poured soap powder, coffee, sugar, water, and ... mayonnaise all over everything in [his] cell." *Id.* at 10–11. Friedman states that, on October 8, 2009 at approximately 1:50 p.m., while conducting regular rounds, she observed a clothesline in plaintiff's cell with linens and a lamp hanging from it. Friedman Decl. ¶ 26. Pursuant to Eastern's policies, inmates may not hang lamps from clotheslines in their cells and, also, may not hang their clothesline until after 4:00 p.m. *Id.* ¶ 27. Thus, Friedman confiscated the clothesline and the linens and issued plaintiff a contraband receipt for those items. *Id.* ¶ 28.

As to the first prong of plaintiff's retaliation claim, plaintiff engaged in constitutionally protected activity insofar as he alleges that he had previously filed grievances against Friedman. *See Graham,* 89 F.3d at 80. As to the second prong, plaintiff claims that he suffered adverse actions by Friedman insofar as she confiscated his personal fan, vandalized his cell, and issued a false contraband receipt. None of the injuries alleged are substantial enough to amount to an adverse action for purposes of a First Amendment retaliation claim. Each alleged injury is considered in turn below.

As to the alleged confiscation of plaintiff's fan, this injury is not "substantial enough to deter legitimate grievances against prison officers." [4] *Salahuddin v. Mead,* No. 95 Civ. 8581(MBM), 2002 WL 1968329, at *4 (S.D.N.Y. Aug.26, 2002); *c.f. Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995) (finding adverse action where the plaintiff alleged that prison officials had planted contraband in his cell); *Johnson v. Schiff,* No. 9:11–CV–0531 (MAD/TWD), 2013 WL 5466218, at *13 (N.D.N.Y. Sept.13, 2013) (Dancks, M.J.) (finding adverse action where defendants assaulted the plaintiff, denied him medical care and a legal phone call, and falsely accused him of making a verbal threat against an officer); *Smith v. City of New York,* No. 03 Civ. 7576(NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (finding adverse action where prison officials destroyed multiple legal papers and nine hundred dollars worth of the plaintiff's personal property). Moreover, the confiscation of a fan would not "[deter] 'a similarly situated individual of ordinary firmness from exercising his constitutional rights.' " *Davis,* 320 F.3d at 353 (quoting *Dawes,* 239 F.3d at 493). Further, plaintiff's inventory form listing all of the personal items he had upon his arrival to Eastern fails to show that he owned a fan. *See* Dkt. No. 83–1 at 28. Upon investigation

of plaintiff's claim that Friedman had issued a contraband receipt without listing the fan allegedly seized, defendant Leifeld responded that, after a full investigation, he found plaintiff's letter contained "unsupported statements and embellishments. Brown Decl. Exh. E. Leifeld also cited plaintiff's "continue[d] disregard for [Eastern's] simple rules and regulations[.]" *Id.*Superintendent Brown responded to plaintiff's complaint letter stating that there was "no tangible evidence to support [plaintiff's] allegations or employee misconduct ." *Id.* Failure to issue a contraband receipt does not amount to a *per se* constitutional violation, as long as the disciplinary hearing that follows complies with due process. *See generally Cook v. Terwillegar,* No. 89 Civ. 0036(KTD), 1990 WL 303592, at *3–4 (S.D.N.Y. Jan.3, 1990) (finding that the plaintiff "was given adequate opportunity" to state the reasons why he thought a contraband receipt was falsified). Plaintiff's claim that Friedman confiscated his personal fan without issuing a contraband receipt was fully investigated within the facility and that claim was found to lack merit. Further, Friedman's alleged confiscation of plaintiff's fan did not chill plaintiff's First Amendment rights, as he filed a grievance against Friedman that same day. As such, he has failed to show that he suffered an adverse action sufficient to amount to a constitutional violation insofar as he claims that Friedman took his personal fan in retaliation for grievances filed against her.

**\*13** As to Friedman's vandalizing of plaintiff's cell, prisoners are to understand that, as part of a cell search, there may be "trashing" of their cells and seizure of their property. *See Jones,* 665 F.Supp.2d at 398 (finding no adverse action where the plaintiff failed to show that a random cell search, subsequent seizure of personal items, and "trashing" of the plaintiff's cell was not out of the ordinary). Still, the retaliatory destruction of a prisoner's personal property can be sufficient to establish an adverse action, Smith, 2005 WL 1026551, at *3, however, a plaintiff must show that the search was "unusually punitive" and "out of the ordinary." *Jones,* 665 F.Supp.2d at 398.

Plaintiff has shown that he had filed past grievances against Friedman. Amended Compl. at 4. He also claims that, approximately three months prior to the alleged destruction of his property, Friedman stated: "I am going to make you wish you never wrote a grievance on me."*Id.* at 9. He also presents a sworn affidavit from an inmate stating that plaintiff's cell looked as though a "hurricane" has come through and there were "food and clothes ... every where [sic], with stuff poured all over them."Dkt. No. 83–1 at

35. As a result of this alleged conduct, plaintiff filed a grievance against Friedman, and subsequently received a memorandum from defendant Leifeld, dated October 19, 2009, stating that he investigated plaintiff's complaint about Friedman's actions "found no tangible evidence to support [plaintiff's] accusations of employee misconduct." Dkt. No. 83–1 at 54. The memorandum also stated that plaintiff's letter regarding Friedman's actions contained "unsupported statements and embellishments." *Id.* Friedman states that she did not "threaten, harass, or retaliate against Plaintiff in any way" on October 8, 2009. Friedman Decl. ¶ 29. Plaintiff claims that Friedman performed a cell search and left his cell in a state of disarray. Because some level of disorder is to be expected in prison cell searches, plaintiff has failed to allege any facts by a reasonable fact-finder could conclude that Friedman's search was unusually punitive or out of the ordinary. *Cf. Smith,* 2005 WL 1026551, at *1–3 (finding that the plaintiff's claim that his legal papers and personal property were destroyed was sufficient to establish adverse action and defeat a summary judgment motion where "plaintiff lost his copies of numerous motions drafted by his lawyer, along with his copy of his grand jury minutes[,]" along with "nine hundred dollars worth of personal property.").

Finally, addressing plaintiff's allegation that Friedman issued a false contraband receipt relating to the clothesline, plaintiff fails to allege that he received any punishment or reprimand arising out of the seizure of contraband. As such, even if plaintiff were issued a false contraband receipt, the injury is *de minimis* and insufficient to show that he suffered an adverse action. *See Pledger v. Hudson,* No. 99 Civ.2167LTSTHK, 2005 WL 736228, at *5 (S.D.N.Y. Mar.31, 2005). Plaintiff further argues in his supplemental response that Friedman's statement that plaintiff hung his clothesline in a manner not comporting with Eastern's policies is false because Eastern does not have such a policy against hanging clotheslines prior to 4 p.m. Dkt. No. 83 at 16; *see* Friedman Decl. ¶ 27. He also claims that he never owned a clothesline, and that Friedman's issuance of the contraband receipt was merely a pretext for her to search and vandalize his cell. Dkt. No. 83 at 16. Such argument does not change the Court's analysis because the injuries alleged, however frustrating they may be, are *de minimis.*

**\*14** Because the undersigned has determined that plaintiff has failed to show that he suffered an adverse action arising out of Friedman's actions on October 8, 2009, the undersigned need not determine whether there is a causal connection between plaintiff's protected conduct and Friedman's actions.

Accordingly, there is no genuine issue of material fact as to Friedman's cell search and issuance of a contraband receipt on October 8, 2009, and it is recommended that defendants' motion on this ground be granted.

### 2. Leifeld

### a. October 20, 2009 Misbehavior Report

Plaintiff alleges that, on October 20, 2009, Leifeld issued to him a false misbehavior report stating that he found and confiscated a pair of stolen headphones from plaintiff's cell. Amended Compl. at 12. Plaintiff claims that Leifeld issued the false misbehavior report in retaliation for the grievances plaintiff had previously filed against officers Jamil and Friedman. *Id.* Leifeld states that, on October 20, 2009, plaintiff handed him a pair of broken headphones and stated that a corrections officer had broken them. Leifeld Decl. ¶ 5. Upon further investigation, Leifeld determined that the headphones plaintiff handed him were possessed illegally and issued plaintiff a misbehavior report for violating Standard of Inmate Behavior 116.13 (Possession of Stolen Property). *Id.* ¶¶ 6–12. [5]

Plaintiff meets the first prong of this First Amendment retaliation claim. *See Graham,* 89 F.3d at 80. The retaliatory conduct alleged by plaintiff is Leifeld's issuance of a false misbehavior report. Amended Compl. at 12. Plaintiff does not allege that he suffered any penalties or lost any privileges as a result of the misbehavior report. To the contrary, plaintiff provided a hearing disposition form stating that there was insufficient evidence to support the charge against him. Dkt. No. 83–1 at 52. The form also indicates that plaintiff did not receive any penalties. *Id.* at 51. Because plaintiff cannot direct the Court to any penalty or injury he suffered as a result of the misbehavior report, he has not shown that he suffered an adverse action. *See Bartley v. Collins,* No. 95 Civ. 10161(RJH), 2006 WL 1289256, at *7 (S.D.N.Y. May 10, 2006) (finding no adverse action where misbehavior report resulted in a temporary loss of privileges).

Even if the Court were to find that plaintiff suffered an adverse action based on the misbehavior report, he has failed to demonstrate a causal connection between his protected activity and Leifeld's issuance of a misbehavior report. Plaintiff claims that Leifeld retaliated against him for grievances he had previously filed against Officers Jamil

and Friedman. Amended Compl. at 12. As stated, where a prison official's only alleged motive for retaliatory conduct is grievances filed against other officers, it is difficult to establish retaliation. *See Wright,* 554 F.3d at 274; Ciaprazi, 2005 WL 3531464, at *8–9 (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against corrections officers other than the officer who disciplined the plaintiff). Here, plaintiff's conclusory and speculative claims are insufficient to establish that Leifeld had a motive to retaliate against him for complaints filed against Jamil and Friedman.

**\*15** Accordingly, there is no genuine issue of material fact as to Leifeld's alleged violation of plaintiff's First Amendment rights arising out of his issuance of the October 20, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

### b. December 27, 2009 Misbehavior Report

Plaintiff claims that defendants Leifeld and Geisler issued a false misbehavior report on December 27, 2009 in retaliation for past grievances filed against defendant Leifeld and other corrections officers. Amended Compl. at 13.

The crux of plaintiff's retaliation claim against defendant Leifeld is that Leifeld ordered him to travel to a different part of Eastern without an institutional pass or an escort at a time where he would need one, thereby effectively forcing plaintiff to violate Eastern's regulations. Amended Compl. at 12–13. Plaintiff admits that he did not follow Geisler's direction and instead stopped to use the restroom while on his way to obtain an institutional pass. Dkt. No. 66–4 at 18 (Hickey Decl. Exh. A). Geisler found plaintiff in the shower area and issued a misbehavior report for violations of multiple Standards of Inmate Behavior, of which plaintiff was found guilty of only one: Standard of Inmate Behavior 106.10 (Direct Order). Leifeld Decl. ¶ 28. Plaintiff was also placed on keeplock status after Geisler escorted him back to his cell. *Id.* ¶ 26. If plaintiff disagreed with the order given, he "had the opportunity to exercise his First Amendment rights to criticize prison rules through other means than disobeying [the] direct order ..." *Cook, 1990 WL 303592, at \*4* (finding no adverse action where the alleged retaliatory misbehavior report averred that the plaintiff disobeyed a direct order). Because the misbehavior report issued by Leifeld and Geisler was not false, by plaintiff's own admission, it is not an adverse action. *Brewer v. Kamas,* 533 F.Supp.2d 318, 329 (W.D.N.Y.2008) (finding that the plaintiff could not avoid summary judgment where he failed to establish that the misbehavior report issued to him was false).

Because plaintiff has failed to meet the second prong of his First Amendment retaliation claim against Leifeld regarding the December 27, 2009 misbehavior report, the undersigned need not reach the third prong in the analysis. Accordingly, there is no genuine issue of material fact as to Leifeld's alleged violation of plaintiff's First Amendment rights as to the December 27, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

### 4) Filkins

Plaintiff alleges that defendant Filkins subjected him to "harassment and retaliatory treatment" by filing a false misbehavior report against him. Amended Compl. at 15. Plaintiff claims that Filkins acted in retaliation for plaintiff's filing grievances against defendant Leifeld and other staff members. *Id.* at 14–15.

Plaintiff's filing of grievances against defendant Leifeld and other staff members at Eastern is constitutionally-protected conduct, and he therefore meets the first prong of his retaliation claim against Filkins. *See Graham,* 89 F.3d at 80.

**\*16** Plaintiff claims that he suffered an adverse action by Filkins filing a false misbehavior report against him. Amended Compl. at 15. However, plaintiff fails to establish the second and third prongs of his retaliation claim, which requires him to show: (1) that he suffered an adverse action, and (2) a causal connection between the protected conduct and the adverse action, for two reasons. *See Espinal,* 558 F.3d at 128. Where an inmate pleads guilty to the charges against him, he has failed to establish any evidence that the charges brought against him are false. *See Brewer,* 533 F.Supp.2d at 330 (granting summary judgment on retaliation claim where the plaintiff failed to set forth any evidence that the charges in the misbehavior report were false). Plaintiff pleaded guilty to violating Standard of Inmate Behavior 116.11, which prevents inmates from tampering with property. Filkins Decl. ¶ 15. As plaintiff has pleaded guilty to the conduct contained in the misbehavior report, plaintiff has failed to set forth any evidence demonstrating that a false misbehavior report was issued, and, therefore, has failed to establish that he suffered an adverse action. As to the third prong, plaintiff

claims that the reason behind Filkins' issuance of the allegedly false misbehavior report is plaintiff's filing of grievances against Leifeld and other Eastern staff members, not Filkins. Grievances filed against officers other than the disciplining officer, in most circumstances, do not establish the requisite causal connection between the protected conduct and the alleged adverse action. *See Ciaprazi,* 2005 WL 3531464, at *9 (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against corrections officers other than the officer who disciplined the plaintiff). Because plaintiff has not provided any support for his claim that Filkins retaliated against him for his grievances against other officers, he has failed to show that there is a causal connection between his protected conduct and the misbehavior report.

Accordingly, there is no genuine issue of material fact as to Filkins' alleged violation of plaintiff's First Amendment rights as to the December 5, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

### 5) Geisler

Plaintiff claims that defendant Geisler retaliated against him for grievances filed against defendant Leifeld and other staff members at Eastern by filing a false misbehavior report against him. Amended Compl. at 14.

Plaintiff meets the first prong of the analysis. *See Graham,* 89 F.3d at 80. Plaintiff alleges that Geisler performed an adverse action when he co-signed a misbehavior report with Leifeld. Amended Compl. at 14. As stated previously, the December 27, 2009 misbehavior report does not amount to an adverse action. *See* section II.2.b *supra.* Plaintiff also fails to present a genuine issue of material fact as to a causal connection between his filing grievances and Geisler's co-signing of the misbehavior report. In order to prove this third prong, plaintiff must show that his prior filing of grievances was a " 'substantial or motivating factor' " in Geisler's issuance of a misbehavior report. *See Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002), 682 (quoting *Graham,* 89 F.3d at 79). It is difficult to establish a causal connection where the prior grievances cited by plaintiff as protected conduct did not implicate Geisler. *See Ciaprazi,* 2005 WL 3531464, at *9. Here, plaintiff alleges that Geisler acted in retaliation for grievances filed against Leifeld and other staff members at Eastern. Amended Compl. at 14. However, plaintiff provided

no evidence to suggest that Geisler knew of prior grievances filed against Leifeld or other officers, or that there was no legitimate reason for the filing of the misbehavior report. Further, plaintiff admitted during his deposition that he did not have any incidents or problems with Geisler prior to the December 27, 2009 incident. Dkt. No. 66–4 at 19. As such, he has failed to raise a genuine issue of fact as to a causal connection between the past grievances he filed and Geisler's co-signing of the December 27, 2009 misbehavior report. *See Ciaprazi,* 2005 WL 3531464, at *9.

**\*17** Accordingly, there is no genuine issue of material fact as to Geisler's alleged violation of plaintiff's First Amendment rights in connection with the December 27, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

### C. Allegations of Verbal Harassment and Threats

Plaintiff alleges that defendants Friedman and Filkins harassed and threatened him in retaliation for filing grievances. Amended Compl. at 9, 15. Defendants argue that plaintiff's claims of verbal threats and harassment are not actionable. Dkt. No. 66–1 at 21.

Verbal harassment or threats are generally not considered adverse action for the purpose of a First Amendment retaliation claim. *Marrero v. Kirkpatrick,* No. 08–CV–6237 (MAT), 2012 WL 2685143, at *7 (W.D.N.Y. July 6, 2012) (citing *Rosales v. Kikendall,* 677 F.Supp.2d 643, 648 (W.D.N.Y.2010)) (additional citation omitted). Further, verbal harassment and threats are generally not considered conduct " 'that would deter a similarly situation individual of ordinary firmness of exercising constitutional rights.' " *Cabassa v. Smith,* No. 9:08–CV–0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr.30, 2009) (citing *Gill,* 389 F.3d at 380) (additional citation omitted). However, verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific. *Barrington v. New York,* 806 F.Supp.2d 730, 746 (S.D.N.Y.2011); *see also Ford v. Palmer,* 539 F. App'x 5, 5 (2d Cir.2013) (summary order) (finding that a verbal threat constituted adverse action where corrections officer threatened to poison the plaintiff in retaliation for filing his grievances).

Here, Filkins allegedly stated to plaintiff on December 5, 2009, "you are a smart ass nigger, you think that you can

go around and write officers up and nothing is going to happen to you, I don't think so we skin heads are not going to stand for it."Amended Compl. at 15. Such a statement is not sufficiently specific to constitute adverse action. *See Bartley,* 2006 WL 1289256, at *2–4 (finding no adverse action where a corrections officer tells a plaintiff that he is going to "get [him]" for filing a lawsuit); *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) (finding no adverse action where a prison official told an inmate that he would "have to pay the consequences" for filing a grievance against her).

Friedman's statement is similar to Filkins' in that it lacks specificity. On July 14, 2009, two weeks after plaintiff filed a grievance against her, Friedman allegedly called plaintiff a racial slur, and stated, "I am going to make you wish you never wrote a grievance on me."Amended Compl. at 9. This threat is also not sufficiently specific to establish adverse action. *See Bartley,* 2006 WL 1289256, at *2–4.

Accordingly, it is recommended that defendants' motion on this ground be granted.

### D. Supervisor Liability

**\*18** " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 201 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319. 323–24 (2d Cir.1986)).

### 1. Brown

Plaintiff claims that he sent multiple appeals and complaint letters to defendant Brown regarding the actions of defendants Friedman, Leifeld, Geisler, and Filkins, and that defendant Brown has failed to remedy the constitutional violations alleged in the appeals and letters. *See* Dkt. No. 38 at 19–21, 24, 26, 33. Defendants argue that defendant Brown was not personally involved in any of the constitutional violations alleged. Dkt. No. 66–1 at 18.

Writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. *Smart v. Goord,* 441 F.Supp.2d 631, 643 (S.D.N.Y.2006) ("Commissioner ... cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff]...."). Further, where a plaintiff's sole accusation against a superintendent is that the superintendent affirmed the denial of plaintiff's grievance, it "is insufficient to establish personal involvement[.]"*Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002). Also, it is within the purview of a superior officer to delegate responsibility to others. *See Vega v. Artus,* 610 F.Supp.2d 185, 198 (N.D.N.Y.2009) (finding no personal involvement where "the only involvement of the supervisory official was to refer the inmate's complaint to the appropriate staff for investigation.") (citing *Ortiz–Rodriguez v. N.Y. State Dep't of Corr. Servs.,* 491 F.Supp.2d 342, 347 (W.D.N.Y.2007)).

Plaintiff alleges that his complaints regarding the July 1, 2009 and July 14, 2009 incidents with defendant Friedman were consolidated in an appeal sent to Brown on July 17, 2009. Dkt. No. 83 at 39. Brown responded to the appeals on August 13, 2009, finding the grievance to be without merit. Dkt. No. 83–1 at 93. Brown's affirmation of the denial of the grievance is insufficient to establish his personal involvement as to the July 1, 2009 and July 14, 2009 incidents. *See Joyner,* 195 F.Supp.2d at 506. Plaintiff also alleges that he sent a letter of complaint regarding Friedman's actions on October 8, 2009 to Brown. Amended Compl. at 21–22. Brown acknowledges that he received the letter and

"forwarded Plaintiff's complaint to appropriate subordinate staff for investigation."Brown Decl. ¶ 15, Exh. E. Because Brown only forwarded the complaint letter to subordinate staff for investigation, plaintiff has also failed to establish personal involvement for the October 8, 2009 incident. *See Vega,* 610 F.Supp.2d at 198.

**\*19** As to the October 20, 2009 incident with Leifeld, plaintiff claims that he sent a letter to Brown, and that Brown assigned Captain Pingotti, a non-party, to investigate the complaint. Amended Compl. at 25. Plaintiff also argues that defendant Brown has not responded to the complaint; however, this does not establish personal involvement. Brown cannot be found personally involved in the October 20, 2009 incident because he delegated investigation of that incident to a subordinate, as stated in plaintiff's complaint. *See Vega,* 610 F.Supp.2d at 198.

As to the December 5, 2009 incident with defendant Filkins, plaintiff claims that he sent a grievance letter to Brown on December 6, 2009. Amended Compl. at 34. As discussed, Brown's personal involvement cannot be found from plaintiff's sending of a letter, without more. *See Smart,* 441 F.Supp.2d at 643.

Finally, as to the December 27, 2009 incident regarding defendants Leifeld and Geisler, plaintiff argues that he sent a grievance letter to Brown on December 29, 2009 and has not yet received a response. Brown produced, as an exhibit to his declaration, his response to plaintiff's appeal, which accused Leifeld of making false statements on the misbehavior report dated December 27, 2009. *See* Dkt. No. 66–18 at 1, 5–6. The response is dated January 7, 2010. *Id.* at 1. As stated previously, Brown cannot be found personally involved solely by his affirming a grievance determination, without more. *See Joyner,* 195 F.Supp.2d at 506.

Plaintiff also states in his supplemental response that he spoke to Brown in February of 2010 "regarding the grievances filed in his office."Dkt. No. 83 at 37. Plaintiff also claims that Brown told plaintiff that he had spoken to defendant Fischer about "the retaliatory treatment" plaintiff was receiving and that plaintiff would be transferred to a new facility. *Id.* This conversation is also insufficient to establish personal involvement. *See Rosales,* 677 F.Supp.2d at 651–52 (finding no personal involvement where the plaintiff had a conversation with a superintendent regarding alleged constitutional violations and the superintendent stated that he would "look into the matter" but did nothing further).

Accordingly, because Brown was not personally involved in any of the alleged constitutional violations, the defendants' motion on this ground should be granted.

### 2. Fischer

Plaintiff alleges that he sent Fischer multiple letters regarding incidents with defendants Friedman, Leifeld, Geisler, and Filkins. Amended Compl. at 42–53, 55–57. Defendants argue that Fischer was not personally involved in any of the constitutional violations alleged by plaintiff. Dkt. No. 66–1 at 18–20.

As stated, sending letters or grievances to a prison official, without more, is insufficient to establish the personal involvement of the prison official.*Smart,* 441 F.Supp.2d at 643. Further, where an inmate alleges that he sent a letter to a prison official, and the prison official failed to investigate allegations of staff misconduct, the inmate must show more than merely reciting the fact that they sent a letter. *See Colon,* 58 F.3d at 873 (finding that an allegation that an inmate sent a letter to a superintendent is "insufficient to create a triable issue of fact[ ]" where plaintiff fails to specify the contents of the letter)."The bare fact that [the Commissioner] occupies a high position in the New York prison hierarchy is insufficient to sustain [a claim of supervisory liability]."*Id.* at 874.

**\*20** Plaintiff claims that he sent multiple letters to Fischer, and alleges that Fischer responded to those letters. Specifically, plaintiff alleges that Fischer responded to the letters on September 23, 2009, February 17, 2010, and March 3, 2010. Amended Compl. at 44, 46, 56. Plaintiff fails to detail the contents of these letters. Defendant Fischer claims that, as Commissioner, he received thousands of letters each year, and relied upon secretaries to determine the particular division or bureau to which each letter should be forwarded. Declaration of Brian Fischer ("Fischer Decl.") ¶ 3. Fischer states that he received copies of letters plaintiff sent to defendant Brown, Superintendent of Eastern, on July 17, 2009 and November 3, 2009. *Id.* ¶ 6, 8, Exh. A, B. Deputy Commissioner Lucien Leclaire responded to each letter, on August 24, 2009 and November 12, 2009, advising plaintiff that he must participate in the grievance process at Eastern in order to resolve his complaints. *Id.* The only contact between plaintiff and Fischer are the letters plaintiff wrote to defendant Brown on which Fischer was copied, and the responses plaintiff received from Fischer's office. These contacts are

insufficient to establish Fischer's personal involvement. *See Garvin v. Goord,* 212 F.Supp.2d 123, 126 (W.D.N.Y.2002) (finding that the Commissioner was not personally involved where all letters sent by the plaintiff were reviewed by staff and forwarded to a subordinate staff member for investigation and response).

Accordingly, because Fischer was not personally involved in any of the alleged constitutional violations, defendants' motion on this ground should be granted.

### E. Qualified Immunity

Defendants contend that they are all entitled to qualified immunity. Dkt. No. 66–1 at 22. The doctrine of qualified immunity is an affirmative defense which "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."*Pearson v. Callahan,* 555 U.S. 223, 244, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Even if a disciplinary disposition is not supported by "some evidence," prison officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."*Luna,* 356 F.3d at 490 (quoting *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)) (internal quotation marks omitted). This assessment is made " 'in light of the legal rules that were clearly established at the time [the official's action] was taken.' " *Wilson,* 526 U.S. at 614 (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotation marks omitted); *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful." *Phillips v. Wright,* 553 F. App'x 16, 17 (2d Cir.2014) (citing *Gonzalez v. City of Schenectady,* 728 F.3d 149, 154 (2d Cir.2013)).

**\*21** Here, plaintiff has failed to demonstrate a constitutional violation as to any defendant, and, therefore, has failed to meet the first prong.*Phillips,* 553 F. App'x at 17. As to the second prong, inmates possess a clearly-established right to engage in the grievance process without fear of retaliation from prison officials. *Baskerville v. Blot,* 224 F.Supp.2d 723,

738 (S.D.N.Y.2002) (citing *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988)). However, for the reasons established in the sections above, it was objectively reasonable for defendants to act as they did in disciplining plaintiff, confiscating contraband, and searching his cell. *See* sections B–D, *supra.*The misbehavior reports that plaintiff received were issued because defendants observed plaintiff violating one or more Standards of Inmate Behavior Rules. Similarly, the cell searches and subsequent confiscations were performed because defendants observed contraband in plaintiff's cell. For the reasons stated in the previous sections, defendants Friedman, Leifeld, Filkins, Geisler, Brown and Fischer are entitled to qualified immunity because they have shown that it was objectively reasonable to believe that they did not violate plaintiff's rights. *See Hathaway v. Coughlin,* 37 F.3d 63, 69 (2d Cir.1994).

Accordingly, defendants Friedman, Leifeld, Geisler, Filkins, Brown, and Fischer are entitled to qualified immunity, and it is alternatively recommended that defendants' motion on this ground be granted.

### IV. Conclusion

For the reasons stated above, it is hereby:

> **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 66) be **GRANTED** in all respects as to all claims and defendants; and it is further **ORDERED** that plaintiff's requests to preclude evidence of (1) any statement by defendant Friedman alleging that plaintiff disobeyed a direct order to turn his radio off, and (2) any contraband receipt issued to plaintiff by defendant Leifeld on December 5, 2009 for the seizure of headphones are **DENIED;** and it is further **ORDERED** that the Clerk serve a copy of this Report–Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); *see also*28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), 6(e).

Filed Aug. 13, 2015.

**All Citations**

Slip Copy, 2015 WL 5603433

Footnotes

1   *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.'This bare statement, devoid of any reference to specific findings or recommendations to which he objected *and why,* and unsupported by legal authority, was not sufficient to preserve the Title VII claim.") (emphasis added).

2   *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate."); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3   *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

4   *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

5   The Court notes that, on file in the correctional facility in which Plaintiff was incarcerated when he drafted his Objection are copies of the District's Local Rules of Practice and *Pro Se* Handbook, both of which explain this requirement. Furthermore, even if Plaintiff had a valid excuse for not reading those documents, a litigant's *pro se* status does not excuse him having to comply with a court's procedural rules. *Cusamano v. Sobek,* 604 F. Supp .2d 416, 42627 & n. 4 (N.D.N.Y.2009) (Suddaby, J.) (collecting cases).

6   *See Jeffreys v. City of New York,* 426 F.3d 549, 554–55 (2d Cir.2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether ... there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account.... In the circumstances presented in the instant case-where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, ... we hold that the District Court did not err by awarding summary judgment. Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, ... conclude that summary judgment was appropriate.") [internal quotation marks and citations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 42–46 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line [1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present representations); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612–15 (S.D.N.Y.2004) (finding that plaintiff's deposition testimony was insufficient evidence to oppose defendants'

motion for summary judgment where that testimony [1] recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign," and [2] were inconsistent with plaintiff's other statements and claims), *aff'd*, 136 F. App'x 383 (2d Cir.2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

7      *See, e.g., Manon v. Pons,* 12–CV–7360, 2015 WL 5507759, at *8 (S.D.N.Y. Sept.18, 2015) ("Even if every incident allegedly ascribable to Pons is not enough, in itself, to constitute an 'adverse action,' taken together the troubling harassment that Manon alleges would dissuade a person of reasonable firmness from voicing her complaints."); *Dabnet v. Maddock,* 10–CV–0519, 2011 WL 7429164, at *4 (N.D.N.Y. Nov. 29, 2011) (Peebles, M.J.) ("[W]hile in isolation potentially none of those allegations rises to a level sufficient to support a finding of adverse action, collectively they could suffice to constitute adverse action.").

1      This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2      This Court denied plaintiff's motion to amend his complaint to add claims against Officer Jamil, by Decision and Order dated January 17, 2014. Dkt. No. 37. Accordingly, Officer Jamil is not a defendant in this action.

3      Plaintiff also requests that the Court preclude any evidence that Friedman had issued a prior direct order to plaintiff regarding the use of his radio when not in his cell. Dkt. Nos. 83 at 12, 83–1 at 19. He bases this request on the fact that the charge against him for violating Standard of Inmate Behavior 106.10 (Direct Order) was dismissed, yet Friedman states in her declaration that she had previously counseled plaintiff several times regarding proper radio use. *See* Dkt. No. 83–1 at 19; Friedman Decl. ¶ 18. Whether the charges were dismissed following a disciplinary hearing is not dispositive of whether or not Friedman's act of issuing the misbehavior report was retaliatory in nature. Moreover, the Court understands Friedman's reference to prior counseling to refer to previous instances, other than the events of July 14, 2009. Thus, the dismissal of the failure to obey a direct order charge from the July 14, 2009 misbehavior report, and the charge contained within that report, was not based upon earlier instances of radio misuse and resultant counseling. Accordingly, plaintiff's request is denied.

4      Insofar as plaintiff's amended complaint may be read as raising a claim for the confiscated property, in violation of his due process rights, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels v. Williams,* 474 U.S. 327, 335 (1986). Further, it is well-settled that even where deprivation is intentional, there is no remedy available in federal court if there exists an adequate state court remedy. *See Hudson,* 468 U.S. at 533. As "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action pursuant to N.Y. Comp.Codes R. & Regs. tit. 7, § 1700.3(b)(4) [,]" there is no remedy in federal court for plaintiff's property damage. *Davis v. New York,* 311 F. App'x 397, 400 (2d Cir.2009) (citation omitted).

5      Plaintiff requests that the Court preclude the defendants from offering any evidence regarding a contraband receipt issued by Leifeld on October 20, 2009. Dkt. No. 83 at 21. The Court has reviewed defendants' motion papers in detail and defendants do not contend that Leifeld issued a contraband receipt on this date, nor is a contraband receipt referenced anywhere in defendants' motion for summary judgment. As such, plaintiff's request is denied.

2015 WL 5547277
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jose QUEZADA, Plaintiff,

v.

Richard ROY, et al., Defendants.

No. 14 Civ. 4056(CM).
|
Signed Sept. 18, 2015.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

**\*1** Plaintiff Jose Quezada, proceeding *pro se,* brought this action against 21 corrections officers and administrators alleging that they violated his First, Eighth, and Fourteenth Amendment rights. He alleges that they retaliated against him for filing complaints, violated his right of access to the courts, denied him due process, and harassed him during his incarceration at Green Haven Correctional Facility ("Green Haven"). Before the Court is a motion to dismiss for failure to allege personal involvement filed by Defendants Richard Roy, Raymond Koskowski, Edward Burnett, Keith Schmitt, William Lee, Kevin O'Connor, and Stephanie Mryzglod (collectively, the "moving defendants"). [1]

For the reasons stated below, the court grants the motion with respect to Defendants Roy, Koskowski, Burnett, and Schmitt. The court denies the motion with respect to Defendants Lee, O'Connor, and Mryzglod.

## BACKGROUND

Plaintiff alleges that, upon arriving at Green Haven—the complaint is not clear about his arrival date, but it was in or about 2006—he was harassed and retaliated against for having filed a 42 U.S.C. § 1983 lawsuit based on events that occurred at his previous correctional facility.

Plaintiff filed a second § 1983 action in February 2009 against several of the defendants in this case. The present action is about harassment Plaintiff allegedly experienced while he was incarcerated at Green Haven. Plaintiff claims he was insulted, yelled at, made to wait for supplies, denied materials he needed to work on his legal papers, denied a valid ID card, and assaulted in retaliation for having filed the second § 1983 lawsuit.

The moving defendants are corrections officers and administrators who either worked at Green Haven or had some role overseeing operations there. In particular, at the time of the events giving rise to the complaint:

- Richard Roy was the Inspector General for the Department of Corrections and Community Supervision ("DOCCS");

- William Lee was Superintendent of Green Haven;

- Raymond Koskowski was the Deputy Superintendent for Security;

- Edward Burnett was a Captain at Green Haven;

- Keith Schmitt was a Lieutenant at Green Haven;

- Kevin O'Connor was a Sergeant at Green Haven; and

- Stephanie Mryzglod was a nurse at Green Haven.

Many of Plaintiff's allegations are vague, and he does not always provide dates for their purported occurrence. But he does allege several incidents with enough detail to describe below.

### A. Harassment

In May 2009—only a few months after he filed the second § 1983 suit—Plaintiff filed a grievance against Officers Macisaac and Cefaloni "because they threated the Plaintiff with planting a weapon in Plaintiff's cell or in his possession."(Am.Compl., ¶ 8.) Plaintiff says that he told Defendant Lee that the officers' actions constituted retaliation for filing the second lawsuit, and that Lee should not believe any reports accusing Plaintiff of possessing a weapon or otherwise misbehaving. (*Id.* at ¶ 9.) He alleges that Defendant Lee did not conduct "a full and/or complete investigation into this matter."(*Id.* at ¶ 10.)

### B. Denial of Legal Supplies

**\*2** Plaintiff alleges that, at some unspecified time or times, he tried to inform "several courts" that the defendants were denying him access to legal supplies, but that the defendants told him that "his mail never went out or arrived in the Correspondence unit, which means that his mail was destroyed or missing, and the Court or outside agencies never received his mail."(Am.Compl., ¶ 18.) He says this was "all in retaliation." (*Id.*)

Plaintiff also alleges that he lacked the supplies necessary to do his legal work, starting in January 2010. (*Id.* at ¶ 21.)

He says he told Defendant Lee and the Special Housing Unit ("SHU") supervisor that he lacked supplies, but they did not resolve the situation. (*Id.* at ¶ 21–22.) Plaintiff ascribes the lack of supplies to defendants' intentionally denying him supplies in retaliation for having filed the second § 1983 lawsuit. (*Id.*) He alleges that he asked Defendant Lee to investigate the issue. (*Id.*)

Plaintiff further claims that Defendant Lee directed the law library supervisor to refuse to allow him to make copies (of what is not clear) unless Plaintiff provided a court order specifying the number of copies he was supposed to provide the court and opposing counsel. (*Id.* at ¶ 24.)

**C. Safety Fears**
Plaintiff alleges that he informed numerous officials about his safety fears and desire to be placed in protective custody or transferred to a cell block away from Officers Macisaac, Cefaloni, and Michael Mryzglod. (*See* Am. Compl., ¶ 26–27.) For example, he told Defendant Lee that these officers "already threatened Plaintiff with assaulting him again."(*Id.* at ¶ 27 .) He also contacted Defendant Koskowski with his concerns about being placed in the same cell block as the officers. (*Id.* at ¶ 28.) He alleges that he also "made several requests to the administration requesting to be transferred for security reasons."(*Id.* at ¶ 28.) He does not date these requests.

**D. "Snitch" Rumors and Inmate Assault**
On April 1, 2010, Plaintiff was released into the general population from the SHU. (Am.Compl., ¶ 30.) Upon release, he was housed in H–Block despite allegedly asking Defendants Lee and Koskowski, among others, to assign him to E–Block or G–Block upon leaving the SHU. (*Id.* at ¶ 27, 30.)

Once he arrived in H–Block, Plaintiff wrote several letters complaining about his placement to Defendants Lee, Koskowski, Roy, and others. He asserted that his life was in danger because Officers Macissac and Cefaloni, who were defendants in his second lawsuit, worked in H–Block. He asked to be transferred out of Green Haven. (*Id.* at ¶¶ 31–43.)

Defendant Lee denied Plaintiff's transfer request on June 16, 2010. Plaintiff alleges that Lee denied the request out of indifference to Plaintiff's safety at Green Haven. (*Id.* at ¶¶ 44–45.)

On July 28, 2010, Plaintiff informed the Deputy Superintendent of Programs, who is not named as a defendant here, that some of the defendants from his prior lawsuit were spreading rumors that Plaintiff was a "snitch." (*Id.* at ¶ 48.) Plaintiff also filed a complaint with Defendants Lee and Roy against Officers Macissac, Cefaloni, and others, alleging the same thing. (*Id.* at ¶ 49.) Several inmates allegedly questioned Plaintiff about these rumors. (*Id.*)

**\*3** Shortly thereafter, three unidentified inmates assaulted Plaintiff in the prison yard and accused him of being a snitch. (*Id.* at ¶ 50.) Plaintiff alleges that certain of the defendants continued to spread rumors that he was a snitch, while moving him from block to block within Green Haven. (*Id.* at ¶¶ 51–58.)

**E. Diet Card Confiscation**
On October 27, 2010, while Plaintiff was trying to get a therapeutic diet meal, Officer Henschel allegedly warned Plaintiff that he would attack Plaintiff if he made any trouble. (*Id.* at ¶¶ 60–62.) Plaintiff alleges that he was showing his diet card to another officer at the time and made no move to provoke Officer Henschel. (*Id.*)

On November 4, 2010, Plaintiff filed a complaint against Officer Henschel arising out of this incident. (*Id.* at ¶ 60.) Defendant Melville investigated the claim but was unable to substantiate it. (*Id.* at ¶ 62; Melville Investigation Letter, Am. Compl., Ex. 13.)

On December 7, 2010, Officer Henschel allegedly threatened and berated Plaintiff again when he went to check in for his diet meal. (Am.Compl., ¶¶ 63–64.) Plaintiff claims that he informed Defendant Badger, the head cook, about this confrontation, but that she refused to act on the information. (*Id.* at ¶ 64.) Plaintiff complained to Captain Burnett and then

filed a grievance against Officer Henschel and Badger. (*Id.* at ¶¶ 64–65; Grievance GH–70696–10, Am. Compl., Ex. 15.)

Plaintiff alleges that Officer Henschel threatened him a third time, on December 8, 2010. (*Id.* at ¶ 67.) That afternoon, Plaintiff observed Badger and Officer Henschel talking, after which Badger confiscated Plaintiff's diet card. (*Id.* at ¶ 68.) Plaintiff alleges that Badger took the card in retaliation for mentioning her in his prior grievance. Plaintiff filed a subsequent grievance against her on December 23, 2010. (*See* Grievance GH–70764–11, Am. Compl., Ex. 16.) Defendant Lee denied both grievances, and on appeal the Central Office Review Committee ("CORC") upheld his decisions. (*See* Grievance GH–70696–10, Am. Compl., Ex. 15; Grievance GH–70764–11, Am. Compl., Ex. 16.)

**F. Transfer Back to H–Block**
On January 6, 2011, while Plaintiff was housed in F–Block, he was told he would be moving back to H–Block, where Officers Macisaac and Cefaloni worked. (*Id.* at ¶ 73.) Plaintiff refused to transfer and asked either to see his psychologist or to be placed in protective custody, because he feared the defendants working in H–Block. (*Id.* at ¶ 73.) Defendant O'Connor, the HBlock Supervisor, refused to place Plaintiff in protective custody, allegedly because inmates could not be placed in protective custody based upon fear of particular officers. Instead O'Connor escorted Plaintiff to the Mental Health Unit. (*Id.* at ¶¶ 75–76.) After speaking with his psychologists and Defendant O'Connor, Plaintiff claims he was told he would be moved to H–Block for just two days, and that he would be fed in his cell to avoid any problems with Officers Macisaac, Cefaloni, Henschel, and Michael Mryzglod. (*Id.* at ¶ 77.)

**\*4** After Plaintiff was moved to H–Block and locked in his cell, someone allegedly turned off the water and electricity to his cell. (*Id.* at ¶ 79.) Plaintiff also did not receive a footlocker for his belongings. (*Id.*) Plaintiff complained to Officer Macisaac, who allegedly did nothing. (*Id.*) Plaintiff's family allegedly called the facility and complained about his condition. (*Id.*) On January 13, 2011, the water and electricity were restored, but Plaintiff never received a footlocker. (*Id.* at ¶ 80.)

On January 25, 2011, Plaintiff went to Building 12 to interview for transitional services. (*Id.* at ¶ 85.) While there, Officer Henschel allegedly defaced Plaintiff's ID card by scratching off Plaintiff's picture with his keys. (*Id.*)

On February 3, 2011, Plaintiff returned to transitional services and Officer Henschel allegedly defaced Plaintiff's ID card again-this time in front of Plaintiff-and threatened him with a ticket if he tried to retrieve the card before the end of his program. (*Id.* at ¶ 87.) Plaintiff complained to two of the teachers in the room, one of whom was the school supervisor. (*Id.* at ¶ 88.) As Plaintiff did so, Officer Henschel allegedly tried to intimidate him by raising a clenched fist. (*Id* .)

On February 9, 2011, Plaintiff tried to retrieve his ID card after a class, only to have Officer Henschel say that "he didn't know about the Plaintiff's ID card."(*Id.* at ¶ 89.) While one of the teachers went to get Plaintiff a new card, Officer Henschel allegedly told Plaintiff that he would never give the ID card back if Plaintiff kept making complaints. (*Id.*) After Plaintiff returned to his cell, another officer brought Plaintiff his ID card. (*Id.*) Plaintiff later filed a grievance against Officer Henschel for harassment and retaliation. (*See* Grievance GH–71071–11, Am. Compl., Ex. 22.)

On an unidentified day in March 2011, Plaintiff was approached by Defendant Brenda Surber, who allegedly berated him for filing complaints and lawsuits against officers she supervised. (*Id.* at ¶ 90.) Plaintiff tried to leave, but Officers Macisaac and Cefaloni restrained him until Surber told them to let him go. (*Id* . at ¶ 91.)

**G. Missing Property**
On March 22, 2011, Plaintiff was scheduled to go to court. (*Id* . at ¶ 94.) Officer Michael Mryzglod came to his cell to pack his papers for transit, which Plaintiff alleges filled two new draft bags. (*Id.*) When he arrived at Downstate Correctional Facility to await his court appearance, Plaintiff discovered that the bottom of one of the bags had been slashed open and several documents were missing. (*Id.* at ¶ 95.)

On April 5, 2011, while on another trip to court, Plaintiff filed a telephone complaint with the Inspector General's office against Surber, Macisaac, Cefaloni, and Michael Mryzglod. (*Id.* at ¶ 96; 4/5/11 Phone Complaint, Am. Compl., Ex. 25.)

Upon his return to Green Haven on April 8, 2011, Plaintiff did not receive a razor along with his property. (Am.Compl., ¶ 97.) He complained, and, on April 19, 2011, when Plaintiff returned from recreation, he was told that he hadn't received a razor because he was out of his cell. (*Id.* at ¶ 98.) Plaintiff wrote to Defendant Lee to apprise him of the situation so Plaintiff wouldn't "be issued a Misbehavior Report for not having the razor."(*Id.* at ¶ 99.) He received a razor the next

day, but complained to Defendant Lee that he hadn't received a receipt for the razor because the defendants were trying to "get [him] in trouble." (*Id.* at ¶ 100.)

**H. Assault in B–Block**

**\*5** On April 28, 2011, Plaintiff alleges that Sergeant Surber harassed him about his April 5 complaint to the Inspector General and threatened to transfer him to Attica Correctional Facility. (*Id.* at ¶ 103.) Plaintiff immediately filed another complaint against Sergeant Surber. (*Id.* at ¶ 104.) When he tried to give a copy of the complaint to Defendant Lee and the Hub Superintendent, Ada Perez, Sergeant John Conforti allegedly took it from him. (*Id.* at ¶ 105.)

On May 6, 2011, the block officer told Plaintiff he would be moving to B–Block. (*Id.* at ¶ 106.) Plaintiff alleges that another inmate told him that Sergeant Surber had arranged for the move so that she could assault or kill Plaintiff. (*Id.*) Plaintiff informed Defendant O'Connor that he would not move, and said he wanted to see his psychologist. (*Id.* at ¶ 107.) Defendant O'Connor told Plaintiff he could either go to B–Block or to the SHU. (*Id.*)

After he moved to B–Block, Plaintiff asked to be put in protective custody or to see his psychologist, a request that Defendant O'Connor allegedly denied. (*Id.* at ¶ 108.)

On May 16, 2011, Plaintiff was interviewed by Defendant Schmitt regarding his complaint against Surber, Macissac, and Cefaloni. (*Id.* at ¶ 111.)

After this interview, Plaintiff had a visit from his attorney. (*Id.* at ¶ 112.) While plaintiff was waiting to return to his cell, he saw Sergeant Surber enter the building, notice him, and leave. (*Id.* at 113.) Officer Brothers allegedly then told Plaintiff, "I'll see you later." (*Id.*)

Upon returning to his cell, Plaintiff was told that he was in transit-though he did not know if he was being transferred to another facility or in transit for a court appearance. (*Id.* at ¶ 114.) While packing his bags for transit, Plaintiff spoke with Defendant Burnett and told him that he was in transit, whereupon Defendant Burnett left the housing unit. (*Id.*)

Shortly thereafter, Officer Macisaac entered Plaintiff's cell. Plaintiff alleges that Officer Macisaac screamed, "Drop the weapon!" and then cut himself. (*Id.* at ¶ 116.) Officer Matthew Filipponi then entered Plaintiff's cell and allegedly yelled, "Stop resisting!" (*Id.* at ¶ 117.) Officers Macisaac and

Filipponi, along with Officers Corbin, Tokarz, and Brothers, allegedly proceeded to assault and beat Plaintiff. (*Id.* at ¶¶ 118–19.) Sergeant Alexander allegedly watched and did nothing, at one point joining in on the purported assault. (*Id.* at ¶ 119.) Defendants then allegedly took Plaintiff out of his cell and continued to beat him in front of Defendant Melville, who did nothing to stop it. (*Id.* at ¶ 120.) Officer Sonya Rojas allegedly watched as well. (*Id.*)

Sergeant Alexander then told the other defendants to take Plaintiff to the SHU. (*Id.*) On the way, Officers Corbin and Brothers allegedly continued to beat Plaintiff. (*Id.* at ¶ 121 .)

**\*6** When Plaintiff arrived at the SHU, he was examined by Nurse D. Gusattney, who allegedly wrote up Plaintiff's injuries based on Sergeant Alexander's statements and only superficially examined him. (*Id.* at ¶ 122.) He was then examined by Dr. Ventivena, who ordered that Plaintiff be transferred to St. Luke's Hospital. (*Id* .)

While Plaintiff was awaiting transfer, a detective from the State Police interviewed him and told him that two other detectives had found a razor blade in his cell. (*Id.* at ¶ 123.)

Plaintiff was also interviewed by two investigators from the Inspector General's office as he was traveling through Green Haven in transit to the hospital. (*Id.* at ¶¶ 124–25.)

Plaintiff alleges that he suffered "cuts and lacerations on his body, left shoulder, legs and multiple other injuries including a fracture on his back, dislocation in his right shoulder," and other "serious injuries." (*Id.* at ¶ 127.) After he was examined, he was transferred to Shawangunk Correctional Facility. (*Id.* at ¶ 128.)

Plaintiff's remaining allegations concern events that occurred at other correctional facilities outside this district. They are the subject of a second lawsuit in the Northern District of New York.

## PROCEDURAL HISTORY

Plaintiff filed his original complaint in this court on May 7, 2013. (Docket # 3.) This court transferred the action to the Northern District of New York on July 22, 2013. (Docket # 15.) On October 7, 2013, Plaintiff filed an Amended Complaint, which he describes as "virtually identical to the original Complaint ... except that the amended complaint

identified by name three John Doe defendants included in the complaint."(*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss Amended Complaint at 2, Docket # 134.)

On March 31, 2014, the Northern District severed the claims arising out of events at Green Haven from the claims arising out of correctional facilities located in the Northern District, and transferred the Green Haven claims back to this court. (Docket # 38.) The case was given a new docket number, which explains why it is listed as a 2014 case when it was actually filed in 2013.

## DISCUSSION

### A. Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6) ... a complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face."*Mabry v. Neighborhood Defender Svc.,* 769 F.Supp.2d 381, 389 (S.D.N.Y.2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009))."[A] plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)."Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."*Iqbal, 556 U.S. at 678.*

**\*7** In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Iqbal.*First, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Iqbal,* 556 U.S. at 678; *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). Second, "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."*Iqbal, 556 U.S. at 679.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."*Id.*

In an action under 42 U.S.C. § 1983, defendants cannot be held liable under a theory of respondeat superior. *See Monell v. City of New York Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)."Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."*Iqbal,* 556 U.S. at 676. At the supervisory level, a plaintiff must allege that a defendant specifically has a "direct and personal responsibility for the purportedly unlawful conduct of his subordinates."*Black v. United States,* 534 F.2d 524, 527–528 (2d Cir.1976)."*Iqbal* precludes relying on a supervisor's mere knowledge of a subordinate's mental state (i.e., discriminatory or punitive intent) to infer that the supervisor shared that intent. But that is not to say that where the supervisor condones or ratifies a subordinate's discriminatory or punitive actions the supervisor is free of [§ 1983's] reach." *Turkmen v. Hasty,* 789 F.3d 218, 233 (2d Cir.2015) (citations omitted). Indeed, under Second Circuit precedent:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Although Defendants try to evade it, I have already stated elsewhere my belief that, even post-*Iqbal,*"*Colon* remains the standard for establishing personal involvement by supervisory officials under 42 U.S.C. § 1983."*Plunkett v. City of New York,* 2011 WL 4000985, at \*9 (S.D.N.Y. Sept.2, 2011).

**\*8** It is nonetheless well-established that, "Mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."*Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). Broad, conclusory allegations that a high-ranking defendant was informed of an incident are also insufficient. *See, e.g., Hernandez v. Goord,* 312 F.Supp.2d 537, 547 (S.D.N.Y.2004). Receipt of letters or grievances, by itself, does not amount to personal involvement. *See Mateo v. Fischer,* 682 F.Supp.2d 423, 431 (S.D.N.Y.2010); *Warren v. Goord,* 476 F.Supp.2d 407, 413 (S.D.N.Y.2007). But, "A supervisor's detailed, specific response to a plaintiff's complaint suggests that the supervisor has considered the plaintiff's allegations and evaluated possible responses," which suffices to make the supervisor personally involved. *See Mateo,* 682 F.Supp.2d at 430–31.

Because Plaintiff is proceeding *pro se,*"this Court will consider as true facts taken not just from plaintiff's complaint and accompanying exhibits, but also plaintiff's responsive memoranda."*Hernandez,* 312 F.Supp.2d at 542–43. "The court may consider factual allegations made by a *pro se* plaintiff in opposition papers and other additional materials."*Baskerville v. Blot,* 224 F.Supp.2d 723, 728 (S.D.N.Y.2002)."In this regard, the court may treat the *pro se* plaintiff's response to the dismissal motion as a *de facto* amendment to, or clarification of, his complaint."*ColonRodriguez v. New York City Dep't of Correction,* 2009 WL 995181, at *3 (S.D.N.Y. Apr.13, 2009).

The only ground assigned for dismissal in Defendants' motion was lack of personal involvement. In their Reply Brief, the moving defendants finally note what was obvious to the court upon reading the complaint. Some of the allegations in the complaint (those listed as items A and B above) are most likely time barred because they took place more than three years before the original complaint was filed in May of 2013. *See Evans v. Esparra,* 2000 WL 1946822, at *4 (S.D.N.Y. Jan.9, 2000). Plaintiff alleges that he complained to Defendant Lee about the incident of harassment described in Item A, but as pleaded this incident had been time barred for more than a year at the time this action was commenced. Defendant Lee was also allegedly involved in the incident involving the lack of legal supplies in Item B, but Plaintiff pleads that he first lacked supplies (January 11, 2010). Plaintiff must establish that the "supplies" incident involving Defendant Lee occurred after May 7, 2010 for his claim to be timely.

However, since Lee's motion must be denied on the ground that the complaint alleges acts involving him that occurred within the statute of limitations, there is no need to delve further into this issue. It can be properly raised, documented and briefed at a later date.

### B. The Claims Against Roy, Koskowski, Burnett, and Schmitt Are Dismissed

#### 1. Richard Roy

**\*9** Defendant Roy was the DOCCS Inspector General. His position in the DOCCS hierarchy is not enough to hold him liable for the actions of others, and there is no allegation that Roy participated in any of the beatings or other retaliatory acts against Plaintiff. Plaintiff alleges that he sent grievances and complaints to Roy on several occasions, or copied Roy on grievances he submitted to Superintendent Lee. (*See, e.g.,* Am. Compl., Exs. 6–7.) But the fact that Plaintiff sent grievances to Roy is also not enough to hold him liable. *See, e.g, Hernandez,* 312 F.Supp.2d at 547. Nor is a prison official's failure to investigate a prisoner's grievances or complaints actionable under § 1983. *See, e.g., Swift v. Tweddell,* 582 F.Supp.2d 437, 445–46 (W.D.N.Y.2008); *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003).

Plaintiff argues that the fact that he was harassed and assaulted after sending copies of grievances and complaints to Roy means that Roy failed to correct the unconstitutional conduct of which Plaintiff complained. But Plaintiff alleges no facts suggesting that Roy knew about unconstitutional conduct by his subordinates and failed to intervene or was willfully blind to such conduct. In his responsive papers, Plaintiff also states legal conclusions, such as that Roy was grossly negligent in supervising his subordinates or deliberately indifferent to Plaintiff's complaints for help. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation."*Iqbal,* 556 U.S. at 678. Even from a *pro se* plaintiff, reciting legal conclusions is insufficient to state a claim.

The claims against Defendant Roy are dismissed because Plaintiff fails to allege that Roy committed any actionable misconduct.

#### 2. Raymond Koskowski

Defendant Koskowski was the Deputy Superintendent for Security at Green Haven. Plaintiff alleges that he sent numerous complaints to Koskowski, and that Superintendent

Lee forwarded several of Plaintiff's complaints to Koskowski for investigation. (*See, e.g.,* Am. Compl., ¶ 32 and Ex. 1.)

Mere receipt of complaints is not sufficient to establish liability. And, to the extent that Plaintiff alleges a failure to investigate his claims, failure to investigate a prisoner's complaints is not actionable under § 1983. *E.g., Swift,* 582 F.Supp.2d at 445–46; *Torres,* 246 F.Supp.2d at 342.

The claims against Defendant Koskowski are dismissed because Plaintiff fails to allege that Koskowski committed any actionable misconduct.

### 3. Edward Burnett

Defendant Burnett was a Captain at Green Haven. Plaintiff alleges that he complained to Defendant Burnett about his situation on two occasions. First, Plaintiff alleges that he wrote to Burnett about his housing assignment and to request a time-cut. (*See* Am. Compl., ¶ 20.) Second, Plaintiff claims that he complained to Burnett about Henschel's conduct concerning his diet card. (*Id.* at ¶ 64.) Plaintiff also alleges that on the day he was assaulted, he saw Burnett in his cell block and told Burnett that he was in transit. (*Id.* at ¶ 114.)

**\*10** None of these allegations is sufficient to hold Burnett liable.

Plaintiff does not allege that Burnett determined his housing assignment. Nor does he allege that Burnett failed to take action in response to Plaintiff's complaints about Officer Henschel. The fact that Plaintiff complained to Burnett is insufficient, because mere knowledge of subordinates' alleged misconduct is not sufficient to hold Burnett liable for their actions. *See., e.g., Iqbal,* 556 U.S. at 672, 678.

In addition, Burnett's mere presence in Plaintiff's cell block the day Plaintiff was allegedly assaulted is not sufficient to state any claim against Burnett. Plaintiff only alleges that Burnett spoke to him briefly that day and then left. Plaintiff does not allege that Burnett took part in the alleged assault—or, indeed, that he was even aware it occurred.

In Plaintiff's opposition papers, he tries to add factual allegations responding to this argument. He now says Burnett "was already aware that plaintiff w[ould] be assaulte[d]," and that "he directed the assault because plaintiff didn't stopped [*sic* ] filing grievances and complaint[s]." (Plaintiff's Opposition to Defendants' Partial Motion to Dismiss at 35–36, Docket # 134.) But this is pure conjecture. Plaintiff offers

no facts that would support either new contention, so it is not plausible that Burnett was involved. As *Iqbal* cautions, there must be "more than a sheer possibility that a defendant has acted unlawfully" to state a claim. *Iqbal,* 556 U.S. at 678.

The claims against Defendant Burnett are dismissed because Plaintiff fails to allege that Burnett committed any actionable misconduct.

### 4. Keith Schmitt

Defendant Schmitt was a Lieutenant at Green Haven. Plaintiff alleges that Schmitt interviewed him on May 16, 2011 about his complaint against Sergeant Surber, Officer Macisaac, and Officer Cefaloni. (*See* Am. Compl., ¶ 111.) In his opposition papers, Plaintiff claims that during that interview, Schmitt asked Plaintiff to withdraw the complaint.

Failure to process or investigate prisoner complaints it not actionable under § 1983. *Swift,* 582 F.Supp.2d at 445–46.

The claims against Defendant Schmitt are dismissed because Plaintiff fails to allege that Schmitt committed any actionable misconduct.

### C. The Claims Against Lee, O'Connor, and Mryzglod Are Not Dismissed

### 1. William Lee

Defendant Lee was the Superintendent at Green Haven. The majority of Plaintiff's allegations against Defendant Lee relate to Plaintiff's grievances and complaints, but Lee's receipt of these complaints is not sufficient to state a claim against him. To the extent that Plaintiff seeks to hold Lee liable based on rejecting his grievances, the fact that Lee rejected Plaintiff's grievances when they were appealed to him is also insufficient. *See McKenna v. Wright,* 386 F.3d 432, 437 (2d Cir.2004). Nor is forwarding complaints to subordinates for response actionable. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997).

**\*11** But beyond Lee's mere receipt of complaints and grievances, Plaintiff sufficiently alleges Lee's personal involvement. In particular, Plaintiff alleges that he requested a transfer for security reasons, and that Lee "had full knowledge of a risk of physical abuse to the Plaintiff and he failed to act in deliberate indifference to that risk."(Am.Compl., ¶ 45.) He further alleges that Lee "personally participated in the infliction of the Plaintiff's injuries" and "knew that if the

Plaintiff stayed in Greenhaven Correctional Facility he would be exposed to a substantial risk of physical abuse or to be killed in the facility."(*Id.*)

Plaintiff also suggests that Lee responded to several of his complaints in a detailed and specific manner. (*See* Plaintiff's Opposition to Defendants' Partial Motion to Dismiss at 8–9, Docket # 134.) And because "[a] supervisor's detailed, specific response to a plaintiff's complaint suggests that the supervisor has considered the plaintiff's allegations and evaluated possible responses," it suffices to make the supervisor personally involved. *See Mateo v. Fischer,* 682 F.Supp.2d 423, 430–31 (S.D.N.Y.2010).

Such allegations, particularly from a *pro se* plaintiff, are sufficient to allege the personal involvement of Defendant Lee. Because Plaintiff alleges sufficient personal involvement of Defendant Lee, the claims against him are not dismissed.

**2. Kevin O'Connor**
Defendant O'Connor was a Sergeant at Green Haven. Plaintiff initially alleges that Defendant O'Connor "notified Lieutenant Carey that he was present and saw the Plaintiff while he was processed through the H–Gate Corridor, but he covered up the Defendants' misconduct and refused to investigate the incident."(*See* Am. Compl., ¶ 10.) Plaintiff does not describe what alleged incident he is talking about, when that incident took place, or who was involved. Accordingly, there is no basis to find O'Connor liable based on these allegations.

Plaintiff also alleges that, on two occasions, O'Connor refused to put Plaintiff into protective custody despite Plaintiff's suspicions that certain of the defendants intended to harm him. (*Id.* at ¶¶ 74–75, 107–08.) Although it is true that correction officers and prison officials are not required to put prisoners in protective custody simply because they ask for it, *see Veytruba v. Coughlin,* 1984 U.S. Dist. LEXIS 19224, at *4 (S.D.N.Y. Feb. 23, 1984), Plaintiff alleges that O'Connor knew or should have known that Plaintiff needed to be in protective custody and ignored such knowledge, (Am.Compl., ¶ 74). In fact, Plaintiff alleges that he told O'Connor he wanted protection from some of the defendants, and that O'Connor bluntly responded: "prison inmates are not allowed to be placed in Protective Custody against officers because it would be conceding that a problem does exist between the Plaintiff and C.O.s Macisaac, Cefaloni, Mryzglod and Henschel and they have to protect the Plaintiff from the Defendants."(*Id.* at ¶ 175.)

*\*12* Plaintiff also alleges in his opposition papers that O'Connor told Plaintiff that he knew about the "retaliation, harassment, intimidation and other violations, against the plaintiff but this information was off the record because if plaintiff said something O'Connor was going to den[y] the allegation."(*See* Plaintiff's Opposition to Defendants' Partial Motion to Dismiss at 22, Docket # 134.)

Because these statements sufficiently allege personal involvement by Defendant O'Connor, the claims against him are not dismissed.

**3. Stephanie Mryzglod**
Defendant Stephanie Mryzglod, who is married to Defendant Michael Mryzglod, was a nurse at Green Haven. Plaintiff alleges that she was a defendant in his second § 1983 action, the earlier action involving Green Haven personnel. (*See* Am. Compl., p. 3, ¶ 28; p. 5.) Plaintiff also alleges that he told the Medical Director that he had a medical hold improperly put on him by "someone ... to make sure the Plaintiff stayed in Greenhaven Correctional Facility and be assaulted or even killed and because the Defendants were planning to do something to the Plaintiff in conjunction with Defendants (Stephanie Mryzglod and her husband Michael Mrysglod and Macisaac and Cefaloni)."*Id.* at ¶ 40. Such conclusory allegations that "someone" placed a hold on Plaintiff so a group of Defendants could do "something" to him is not enough to allege Mryzglod's personal involvement.

But in Plaintiff's opposition papers, he adds new allegations about Defendant Mryzglod. He alleges that she covered up staff misconduct in retaliation for Plaintiff's naming her in his prior lawsuit. (*See* Plaintiff's Opposition to Defendants' Partial Motion to Dismiss at 28–29, Docket # 134.) He further alleges that "Mryzglod falsified medical records to cover up the beating against the plaintiff and ... participated in the self-inflicted injuries to Macisaac at the clinic on 5/16/11."(*Id* at 29.) Plaintiff claims that another inmate told Plaintiff that he overheard Mryzglod discussing with other nurses and officers how they would falsely accuse Plaintiff of the attack on Officer Macisaac. (*Id.*) According to this inmate, "They then resolved to concoct and fabricate a false report to justif[y] the malicious[ ] physical assault on plaintiff."(*Id.*). Plaintiff alleges that Mryzglod was a part of the conspiracy to assault him and cover it up. (*Id.* at 30.)

Because these statements sufficiently allege Defendant Mryzglod's personal involvement, the claims against her are not dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal involvement is granted with respect to Defendants Richard Roy, Raymond Koskowski, Edward Burnett, and Keith Schmitt, and denied with respect to Defendants William Lee, Kevin O'Connor, and Stephanie Mryzglod.

Defendants Lee, O'Connor, and Mryzglod have made a separate motion for summary judgment on the ground of qualified immunity; I will address that issue in another opinion.

**\*13** The Clerk of the Court is directed to remove Docket # 80 from the Court's list of pending motions.

### All Citations

Slip Copy, 2015 WL 5547277

Footnotes

1    Defendants' motion (Docket # 80) lists Defendant Thomas Melville as one of the movants, but omits Defendant Edward Burnett. The Defendants' memorandum in law in support of the motion (Docket # 81) lists Defendant Burnett, and omits Defendant Melville. I assume the motion is a mistake and treat the motion as if it included Defendant Burnett—and not Defendant Melville—because the Defendants' arguments in the accompanying memorandum relate to Defendant Burnett and not Defendant Melville.

**End of Document**                                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5175758
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

John Willis RICHARD, Plaintiff,

v.

Jennifer DIGNEAN and Thomas Tanea, Defendants.

No. 6:11–CV–6013 EAW.
|
Signed Sept. 3, 2015.

**Synopsis**

**Background:** Multiracial Muslim inmate brought civil rights action alleging that prison employees discriminated against him on basis of race and religion. Inmate moved for reconsideration of District Court's order dismissing the action.

**Holdings:** The District Court, Elizabeth A. Wolford, J., held that:

[1] reconsideration of dismissal order was not warranted, and

[2] inmate failed to demonstrate exceptional circumstances to warranted interlocutory appellate review.

Motion denied.

West Headnotes (13)

[1] **Federal Civil Procedure**
 Motion, complaint or bill

Since the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, such a motion may be construed as a motion to alter or amend judgment. Fed.Rules Civ.Proc.Rules 59(e), 60(b), 28 U.S.C.A.

Cases that cite this headnote

[2] **Federal Civil Procedure**
 Reconsideration

**Federal Civil Procedure**
 Error by court

Standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked, matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. Fed.Rules Civ.Proc.Rules 59(e), 60(b), 28 U.S.C.A.

Cases that cite this headnote

[3] **Federal Civil Procedure**
 Grounds and Factors

Major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice. Fed.Rules Civ.Proc.Rules 59(e), 60(b), 28 U.S.C.A.

Cases that cite this headnote

[4] **Federal Civil Procedure**
 Justice; prevention of injustice

**Federal Civil Procedure**
 Error by court

To justify reconsideration of a decision on basis of a need to correct a clear error or prevent a manifest injustice, court must have a clear conviction of error on a point of law that is certain to recur. Fed.Rules Civ.Proc.Rules 59(e), 60(b), 28 U.S.C.A.

Cases that cite this headnote

[5] **Federal Civil Procedure**
 Reconsideration

**Federal Civil Procedure**
 Further evidence or argument

Criteria for grant of motion for reconsideration are strictly construed against moving party so as to avoid repetitive arguments on issues that have been considered fully by the court. Fed.Rules Civ.Proc.Rules 59(e), 60(b), 28 U.S.C.A.

Cases that cite this headnote

Cases that cite this headnote

**[6] Federal Civil Procedure**

    Grounds and objections

Lack of precedential decisions specifically addressing application of intracorporate conspiracy doctrine in prisoner civil rights cases, did not constitute intervening change in controlling law, new evidence, or a manifest injustice or clear error in need of correction, as could support grant of motion for reconsideration of District Court order dismissing multiracial Muslim inmate's claims against prison employees assigning work positions to inmates for allegedly conspiring to prevent him from obtaining employment outside his cellblock on basis of his race and religion, where previous court decisions dismissed conspiracy claims when all employees were prison employees acting within scope of their employment. Fed.Rules Civ.Proc.Rules 59, 60(b), 28 U.S.C.A.; 42 U.S.C.A. §§ 1983, 1985, 1986.

Cases that cite this headnote

**[7] Federal Civil Procedure**

    Pleading over

Following dismissal of multiracial Muslim inmate's claim that prison employees conspired to discriminate against him on basis of his race and religion by preventing him from obtaining employment outside his cellblock when assigning work positions, inmate would not be permitted to amend his complaint to adequately state intracorporate conspiracy and engage in discovery to substantiate his claims, where four years had passed since original complaint was filed, and amendment would be futile since inmate failed to further elaborate his claims in first amendment to his complaint and there was no indication that a valid claim could be stated since intracorporate conspiracy doctrine could not be asserted against employees who were acting within scope of their employment. Fed.Rules Civ.Proc.Rule 15(a)(2), 28 U.S.C.A.; 42 U.S.C.A. §§ 1983, 1985, 1986.

**[8] Federal Civil Procedure**
    Discretion of Court

While rules of civil procedure provide that leave to amend a complaint should be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend. Fed.Rules Civ.Proc.Rule 15(a)(2), 28 U.S.C.A.

Cases that cite this headnote

**[9] Federal Civil Procedure**
    Complaint

In general, courts should grant pro se plaintiff's leave to amend at least once, when a liberal reading of the complaint gives any indication that a valid claim might be stated. Fed.Rules Civ.Proc.Rule 15(a)(2), 28 U.S.C.A.

Cases that cite this headnote

**[10] Federal Courts**
    Particular Actions and Rulings

Multiracial Muslim inmate failed to demonstrate that exceptional circumstances existed to warrant immediate appellate review, based on application of intracorporate conspiracy doctrine, of dismissal order in action against prison employees for allegedly conspiring to discriminate against him based on his race and religion when assigning work positions to inmates, where no prior decisions applying the doctrine had been reconsidered or overturned. 28 U.S.C.A. § 1292(b).

Cases that cite this headnote

**[11] Federal Courts**
    Particular Actions and Rulings

Multiracial Muslim inmate failed to demonstrate that exceptional circumstances existed to warrant immediate appellate review based on application of New York Correction Law requiring prison officials to post rules relating to inmate misconduct, where it was not apparent that

violation of such law constituted constitutional violation, and the Correction Law did not apply to inmate's challenge to prison employment policies even though policy was unfairly enforced against him due to his race and religion in violation of his equal protection rights. U.S.C.A. Const.Amend. 14; 28 U.S.C.A. § 1292(b); N.Y.McKinney's Correction Law § 138.

Cases that cite this headnote

[12]    **Federal Courts**
👉 Interlocutory and Collateral Orders

Leave to appeal from interlocutory orders should be granted only in exceptional circumstances that overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment. 28 U.S.C.A. § 1292(b).

Cases that cite this headnote

[13]    **Federal Courts**
👉 Interlocutory and Collateral Orders

Interlocutory appeal may not be used as a vehicle to provide early review of difficult rulings in hard cases; only exceptional circumstances will justify a departure from the basic policy of avoiding appellate review until a final decision on the merits. 28 U.S.C.A. § 1292(b).

Cases that cite this headnote

**Attorneys and Law Firms**

John Willis Richard, Malone, NY, pro se.

J. Richard Benitez, NYS Attorney General's Office, Rochester, NY, for Defendants.

### DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

**\*1**   *Pro se* Plaintiff John Willis Richard ("Plaintiff") brought this action against defendants Brian Fischer, Anthony Annucci, John Nuttall, Karen Bellamy, Christopher Lindquist, Albert Prack, Thomas Poole, Sheryl Zenzen, Gerard Guiney, Norman Parrish, Andrew Giannino, Jennifer Dignean, and Thomas Tanea (collectively "Defendants") pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging discrimination based on his race and religion, and retaliation. (Dkt. 1). On August 7, 2014, the Court issued a Decision and Order dismissing all of Plaintiff's claims, except for his equal protection and first amendment retaliation claims against defendants Dignean and Tanea (the "August 7th Decision and Order"). (Dkt. 22). Presently before the Court is Plaintiff's motion for reconsideration of the August 7th Decision and Order. (Dkt. 28). For the following reasons, Plaintiff's motion for reconsideration is denied.

### DISCUSSION

**I. Standard**

[1]   The Federal Rules of Civil Procedure do not recognize a motion for "reconsideration." *See Lopez v. Goodman,* No. 10–CV–6413 CJS, 2013 WL 5309747, at \*1, 2013 U.S. Dist. LEXIS 135046, at \*1 (W.D.N.Y. Sept. 20, 2013) (citing *Hamilton v. Williams,* 147 F.3d 367, 371 n. 10 (5th Cir.1998))."Since the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, such a motion may be construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b)."*Hill v. Washburn,* No. 08–CV6285–CJS, 2013 WL 5962978, at \*1, 2013 U.S. Dist. LEXIS 159731, at \*2 (W.D.N.Y. Nov. 7, 2013) (citing *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989)).Rule 60(b) provides relief from a final order, while Rule 59(e) may be used by a party seeking to "alter or amend a judgment." *Alli v. Warden of R.N.D.C.,* No. 12 Civ. 3947(GBD), 2015 U.S. Dist. LEXIS 32022, at \*2 n. 1 (S.D.N.Y. Mar. 11, 2015).

[2]   [3]   [4]   [5]   As noted by the Second Circuit Court of Appeals, "[t]he standard for granting a [motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."*Shrader v. CSX Transp.,*

*Inc.,* 70 F.3d 255, 257 (2d Cir.1995).“The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.”*Virgin Atl. Airways v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (quotations omitted).“With respect to the third of these criteria, to justify review of a decision, the Court must have ‘a clear conviction of error on a point of law that is certain to recur.’”*Turner v. Vill. of Lakewood,* No. 11–CV–211–A, 2013 WL 5437370, at *3, 2013 U.S. Dist. LEXIS 139674, at *9 (W.D.N.Y. Sept. 27, 2013) (quoting *United States v. Adegbite,* 877 F.2d 174, 178 (2d Cir.1989)).“ ‘These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court.’”*Boyde v. Osborne,* No. 10–CV–6651, 2013 WL 6662862, at *1, 2013 U.S. Dist. LEXIS 177084, at *2–3 (W.D.N.Y. Dec. 16, 2013) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999)).

**\*2** Plaintiff's motion for reconsideration is over 90 pages long, including a 48–page affidavit and a 49–page memorandum of law. (Dkt. 28 & 28–1). Pursuant to this Court's Local Rules of Civil Procedure, memoranda of law in support of or in opposition to any motion may not exceed 25 pages in length, unless a party obtains permission to file an oversized submission. *See* L.R. Civ. P. 7(a)(2)(C). Although the Court could strike Plaintiff's motion on this ground alone, *see Liberati v. Gravelle,* No. 9:12–CV–00795 (MAD/DEP), 2013 U.S. Dist. LEXIS 137826, at *8 (N.D.N.Y. Aug. 9, 2013) (deference owed to *pro se* litigants “does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules”), *adopted,*2013 U.S. Dist. LEXIS 82655 (N.D.N.Y. May 8, 2015), it will nevertheless consider Plaintiff's arguments.

## II. Plaintiff's motion is untimely.

Plaintiff brings his motion pursuant to Fed.R.Civ.P. 59(e) or, if his motion is not timely, pursuant to Fed.R.Civ.P. 60(b). (Dkt. 28 at 7–8).

The Local Rules of Civil Procedure for the Western District of New York state that motions for reconsideration are treated as “falling within the scope of Fed.R.Civ.P. 59(e),” and thus “must be filed and served no later than twenty-eight (28) days after the entry of the challenged judgment, order, or decree and, pursuant to Fed.R.Civ.P. 6(b)(2), no extension of time will be granted.”L.R. Civ. P. 7(d)(3); *see also*Fed.R.Civ.P. 59(e) (“A motion to alter or amend a

judgment must be filed no later than 28 days after the entry of the judgment.”). The Court issued its Decision and Order partially dismissing Plaintiff's claims on August 7, 2014. (Dkt. 22). Defendants filed an answer on August 27, 2014 (Dkt. 23), and the case proceeded to discovery (Dkt. 24 & 26). Plaintiff did not file his motion for reconsideration of the August 7th Decision and Order until January 7, 2015 (Dkt. 28), more than four months after the deadline to file a motion for reconsideration. [1] Accordingly, Plaintiff's motion for reconsideration may be denied as untimely pursuant to L.R. Civ. P. 7(d)(3) and Fed.R.Civ.P. 59(e).

If a Rule 59 motion is not timely filed, the motion may be treated as a Rule 60(b) motion. *United States v. Clark,* 984 F.2d 31, 32 (2d Cir.1993). A motion pursuant to Rule 60(b) must be brought “within a reasonable time” of the final judgment. *See*Fed.R.Civ.P. 60(c)(1). A four-month delay can be considered unreasonable. *See Siemens Westinghouse Power Corp. v. Dick Corp.,* 219 F.R.D. 552, 554 (S.D.N.Y.2004) (“treating the motion as one for reconsideration, the Court concludes that the request, made over three and one-half months after the ... order, is far too late.”); *Gould Entm't Corp. v. Bodo,* 107 F.R.D. 308, 311 (S.D.N.Y.1985) (five-month delay is unreasonable). As a result, it would be well within the Court's discretion to reject Plaintiff's motion as untimely. Nonetheless, the Court will not do so, and instead it will consider the merits of Plaintiff's motion.

## III. Plaintiff has failed to raise an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.

**\*3 [6]** Plaintiffs motion for reconsideration lacks merit. Plaintiff has failed to raise an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice. Plaintiff argues that there is no Second Circuit Court of Appeals precedent supporting the Court's decision to dismiss his conspiracy claims. (Dkt. 28 at 14). Plaintiff also argues that the Court should have given him the opportunity to amend his complaint to adequately state a claim with regard to his conspiracy and first amendment claims, and that he should be permitted to engage in discovery to substantiate his claims. (*Id.* at 2–3).

As to Plaintiff's contention relating to the intracorporate conspiracy doctrine, the Court is cognizant, as it was at

the time it issued the August 7th Decision and Order, that the Second Circuit Court of Appeals has not issued a decision specifically addressing the use of the intracorporate conspiracy doctrine in prisoner civil rights cases. [2] However, Defendants adequately briefed dismissal based on the intracorporate conspiracy doctrine in their motion to dismiss (Dkt. 15 at 6), and this district, as well as others within the Second Circuit, have applied the doctrine to claims against Department of Corrections and Community Supervision ("DOCCS") employees. *See Graham v. Peters,* No. 13–CV705JTC, 2013 WL 5924727, at *5–6, 2013 U.S. Dist. LEXIS 156509, at *15–16 (W.D.N.Y. Oct. 31, 2013); *see also Vega v. Artus,* 610 F.Supp.2d 185, 205–06 (N.D.N.Y.2009) (dismissing Plaintiffs conspiracy claims pursuant to the intracorporate conspiracy doctrine where all of the defendants were DOCCS employees, and all were acting within the scope of their employment); *Liner v. Fischer,* No. 11 Civ. 6711(PAC)(JLC), 2013 WL 3168660, at *11 n. 12, 2013 U.S. Dist. LEXIS 88147, at *36 n. 12 (S.D.N.Y. June 24, 2013) (dismissing § 1983 conspiracy claim where all defendants were DOCCS employees acting within the scope of employment), *adopted,*2013 WL 4405539, 2013 U.S. Dist. LEXIS 11369 (S.D.N.Y. Aug. 7, 2013); *Cole–Hoover v. N.Y. Dep't of Corr. Servs.,* No. 02–CV–00826(M), 2010 WL 2510953, at *3–4, 2010 U.S. Dist. LEXIS 60002, at *12 (W.D.N.Y. June 17, 2010) (declining to reinstate plaintiff's conspiracy claim, which was dismissed as a matter of law based on the intracorporate conspiracy doctrine); *Borrello v. N.Y. State Dep't of Corr. Servs.,* No. 00–CV–177A, 2004 WL 2191565, at *2, 2004 U.S. Dist. LEXIS 19926, at *8 (W.D.N.Y. Sept. 27, 2004) (denying plaintiff's motion to amend her complaint, including her conspiracy claim, because "this Court's previous Decision and Order dismissing plaintiff's conspiracy claim relied in part on the application of the intracorporate conspiracy doctrine. The allegations in the Proposed Amended Complaint pertain to individual defendants all of whom are or were employees of [DOCCS] at the time of the events alleged, and therefore, the Court's prior determination applying the intracorporate conspiracy doctrine is sufficient to deny plaintiff's motion to amend the complaint to reallege the conspiracy claim.").

**\*4** The Court finds the reasoning of these courts persuasive. Plaintiff's argument relating to the application of the intracorporate conspiracy doctrine, or dismissal of his conspiracy claims, does not raise an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.

Accordingly, his motion for reconsideration on this ground is denied.

Plaintiff also argues that the Court should have afforded him the opportunity to amend his complaint and engage in discovery to substantiate his claims. Although Plaintiff's entitlement to discovery and whether he should be permitted to amend his complaint were not briefed by the parties on the motion to dismiss, *see Redd v. N.Y.S. Div. of Parole,* 923 F.Supp.2d 393, 396 (E.D.N.Y.2013) (motions for reconsideration are not meant to give a party a "second bite at the apple," and should not advance new arguments or issues that could have been advanced in the original motion), the Court will address them.

**[7]** **[8]** **[9]** While leave to amend a complaint should be freely given "when justice so requires," Fed.R.Civ.P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend,"*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007). The Court is cognizant that it should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."*Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (internal quotation marks omitted).

Plaintiff was previously granted permission to amend his complaint to alter the caption in March 2011 (Dkt. 10 & 11); accordingly, Plaintiff had the opportunity at that time to further elaborate on his claims. The Court disagrees that Plaintiff should have been afforded another opportunity to amend his complaint almost four years after the original complaint was filed. *See Barboza v. Riverbay Corp.,* No. 15–CV–3128 (JMF), 2015 U.S. Dist. LEXIS 95383, at *4–5 (S.D.N.Y. July 22, 2015) (denying the plaintiff leave to amend his complaint when he was already afforded previous opportunities to do so).

More importantly, as indicated by the August 7th Decision and Order, Plaintiff could not amend his complaint to state a valid claim to relief, and the complaint does not give any indication that a valid claim can be stated. *See McCree v. Messina,* No. 14–CV5201 (JPO), 2015 WL 4299546, at *6, 2015 U.S. Dist. LEXIS 92040, at *14 (S.D.N.Y. July 15, 2015) (denying leave to amend "because the alleged facts do not rise to the level of [a constitutional] violation," and concluding that "[the plaintiff] could not amend his complaint to state a valid claim to relief"); *see also Ashmore v. Prus,* 510 Fed.Appx. 47, 49 (2d Cir.2013) (leave to amend is futile

barriers to relief cannot be surmounted by reframing the complaint), *cert. denied,* —— U.S. ——, 133 S.Ct. 2038, 185 L.Ed.2d 887 (2013); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (denying leave to amend a *pro se* complaint where amendment would be futile). Indeed, in deciding the motion to dismiss, the Court construed the complaint liberally where a valid claim could be stated. (*See* Dkt. 22 at 20 ("Construing Plaintiff's allegations in the light most favorable to him, particularly with regard to Plaintiff's *pro se* status, the Court finds that Plaintiff has sufficiently alleged that he was treated differently than similarly-situated individuals."); *id.* at 25 ("Although pled unartfully, Plaintiff has alleged a nexus between his protected activity and the alleged adverse action to state a claim for retaliation.")).

 **\*5** Although Plaintiff states in his response to the motion to dismiss that he is in need of discovery to substantiate his claims (Dkt. 18 at 21), a request for discovery does not cure an otherwise inadequate pleading. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *S. Cherry St., LLC v. Hennessee Grp., LLC,* 573 F.3d 98, 113–14 (2d Cir.2009) (noting that plaintiff's speculation that discovery would reveal facts to support claims "underscores, rather than cures, the deficiency in the Complaint."); *Johnson v. Cnty. of Nassau,* 411 F.Supp.2d 171, 176 (E.D.N.Y.2006) (finding that plaintiff's request that the court deny motion to dismiss "until he has had an opportunity to conduct further discovery ... puts the cart before the horse and ignores the fact that discovery has to be tied to a pleading which passes muster under Rule 12(b)(6).").

Plaintiff has failed to raise any change of law or new evidence in support of reconsideration. Plaintiffs motion is inadequate to justify reconsideration and is therefore denied.

## IV. Plaintiff's motion for an interlocutory appeal is denied.

 **[10]** **[11]** Plaintiff also requests that he be permitted to submit his conspiracy claim to the Second Circuit Court of Appeals so that he may obtain a decision relating to the application of the intracorporate conspiracy doctrine. (Dkt. 28 at 26). Plaintiff also wishes to submit to the Second Circuit Court of Appeals the applicability of "Correctional Law 138(4)(5)" to his case. (*Id.* at 27).

 **[12]** **[13]** Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal where

"such order involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation...."28 U.S.C. § 1292(b). The standard for granting an interlocutory appeal is strict. "[L]eave to appeal from interlocutory orders should be granted only in exceptional circumstances [that] ... overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment."*Picard v. Estate of Madoff,* 464 B.R. 578, 582–83 (S.D.N.Y.2011) (citation and quotation omitted)."Interlocutory appeals are strongly disfavored in federal practice. Movants cannot invoke the appellate process as a vehicle to provide early review of difficult rulings in hard cases. Only exceptional circumstances will justify a departure from the basic policy of avoiding appellate review until a final decision on the merits."*Glatt v. Fox Searchlight Pictures Inc.,* No. 11 Civ. 6784(WHP), 2013 WL 5405696, at \*1, 2013 U.S. Dist. LEXIS 139594, at \*3 (S.D.N.Y. Sept. 17, 2013) (internal quotations and citations omitted).

Plaintiff has failed to demonstrate the "exceptional circumstances" warranting interlocutory appellate review based on application of the intracorporate conspiracy doctrine. The intercorporate conspiracy doctrine has been applied by this district and others within the Second Circuit Court of Appeals for more than ten years, and those decisions have not been reconsidered or overturned. Plaintiff may appeal this issue to the Second Circuit Court of Appeals at the conclusion of the case.

 **\*6** Further, the August 7th Decision and Order addressed Plaintiffs complaint relating to New York Correction Law § 138, which requires prison officials to post rules relating to inmate misconduct. (Dkt. 22 at 31). As an initial matter, it does not appear that a violation of Correction Law § 138 states a constitutional violation, *see Gill v. Hoadley,* 261 F.Supp.2d 113, 131 n. 12 (N.D.N.Y.2003); *see also Mingo v. Fischer,* No. 9:14–CV–0235 (MAD/TWD), 2014 WL 2918599, at \*6–7, 2014 U.S. Dist. LEXIS 87231, at \*17–18 (N.D.N.Y. June 26, 2014), and there does not appear to be conflicting authority among district courts within the Second Circuit Court of Appeals relating to application of this section.

Further, Correction Law § 138 does not apply here, where Plaintiff is challenging prison employment policies. In the August 7th Decision and Order, the Court found that Plaintiff stated an equal protection claim with regard to the prison

employment policy as being unfairly enforced against him due to his race and religion. (Dkt. 22 at 20). In other words, although Plaintiff is unable to state a claim for enforcement of the policy against him pursuant to Correction Law § 138, he may proceed under an equal protection theory to recover for any alleged injury caused by enforcement of this policy. Because Plaintiff has not raised any exceptional circumstance regarding this issue pertaining to Correction Law § 138, his request for certification on this basis is denied.

*CONCLUSION*

The Court has considered Plaintiff's remaining arguments and finds them to be without merit. For the foregoing reasons, Plaintiff's motion for reconsideration is denied. To the extent the parties believe that the deadlines in the current Scheduling Order (Dkt. 26) need to be extended, they should confer and submit a jointly proposed amended scheduling order to Magistrate Judge Payson.

SO ORDERED.

**All Citations**

--- F.Supp.3d ----, 2015 WL 5175758

---

Footnotes

1    Plaintiff explains that he did not file a timely motion because he "was awaiting the Notice of Entry of this major order as he is familiar with state court motion practice of 'Notice of Entry.' " (Dkt. 28 at 9). Plaintiff's unfamiliarity with the Court's rules relating to Rule 59 motions cannot cure his untimely motion. *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Jonas v. Citibank, N.A.,* 414 F.Supp.2d 411, 417 (S.D.N.Y.2006) (*pro se* status does not excuse failure to comply with procedural rules).

2    After the Court issued the August 7th Decision and Order, the Second Circuit Court of Appeals issued a decision, *Victory v. Pataki,* 609 Fed.Appx. 680 (2d Cir.2015). In *Victory,* the Second Circuit did not expressly address whether the intracorporate conspiracy doctrine should apply to claims by inmates against DOCCS employees, but it affirmed the district court's dismissal of the plaintiff's claims against employees of the Department of Parole based on the intracorporate conspiracy doctrine, which barred his "conspiracy claims arising out of the zealous supervision performed by his parole officers."*Id.* at 689.

---

**End of Document**                                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, David L. Cochran, Esq., of Counsel, New York,
NY, for Defendants.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action, brought pursuant
to 42 U.S.C. § 1983, was referred to the Hon. George
H. Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically, Judge
Lowe recommended that Plaintiff's Fourteenth Amendment
procedural due process claim against Defendant Varkiar
regarding his disciplinary hearing be dismissed if, within
thirty (30) days from the filing of this Final Order, Plaintiff
does not file an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim. It was
recommended that Plaintiff's remaining claims be dismissed
with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made." *See* 28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation of
Magistrate Judge Lowe for the reasons stated in the Report-
Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant
to 42 U.S.C. § 1983, has been referred to me by the Honorable
Thomas J. McAvoy, Senior United States District Judge, for
Report and Recommendation with regard to any dispositive
motions filed, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c). Generally, in his Complaint, Raymond Robles
("Plaintiff") alleges that three employees of the New York
State Department of Correctional Services ("DOCS"), as
well as DOCS itself, violated his rights under the Eighth
and Fourteenth Amendments when they (1) required him to
submit to a random urinalysis test when they knew he was
taking a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished him
with eighty-seven days in a Special Housing Unit for refusing
to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s
Compl.].) Currently pending before the Court is Defendants'
motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31]

However, it is well established that even this liberal notice pleading standard "has its limits."[32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ).[35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality .[40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[43] Of course, an opportunity to amend is not required where "the problem

with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." [49]

### III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any "*person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws .... " [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

*7  For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine

**Sample Given Their Knowledge of His Medications and/ or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation,

but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

*10 Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by *the Constitution and laws,* shall be liable to the party injured ....“ 42 U.S.C. § 1983 [emphasis added]. The term “the Constitution and laws” refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is “merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion,” which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way “issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint”-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary

hearing be **DISMISSED** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be **DISMISSED with prejudice,** and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a) (2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

**Footnotes**

30   *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at \*2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at \*1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4   (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8   (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9   (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10   (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11   (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12   (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17   (*Id.*)

18   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19   (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20   (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22   (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26   *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27   *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6),

that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28  *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29  *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31  *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33  *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34  The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

35  *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ) [emphasis in original].

36   *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37   For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38   *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39   *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40   *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41   "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42   *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43   *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44 *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45 *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46 *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47 *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48 *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49 *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50 *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51 42 U.S.C. § 1983 [emphasis added].

52 *See, supra,* note 44 of this Report-Recommendation.

53 *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he

is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60    *See, supra,* note 44 of this Report-Recommendation.

61    *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19,

2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U. where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two requirements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.*") (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States.*") [emphasis added].

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

**69**   *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

---

**End of Document**      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1246049
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eon SHEPHERD, Plaintiff,
v.
Brian FISCHER, et al., Defendants.

No. 9:10–CV–1524 (TJM/DEP).
|
Signed Feb. 23, 2015.

**Attorneys and Law Firms**

Eon Shepherd, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Cathy Y. Sheehan, Esq. Assistant Attorney General, of Counsel, Albany, NY, for Defendant.

***REPORT AND RECOMMENDATION***

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Eon Shepherd, a New York State prison inmate who has been granted *in forma pauperis* ("IFP") status, has brought this action against the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") and several DOCCS employees, pursuant 42 U.S.C. § 1983, alleging that his civil rights have been violated. [1] Plaintiff's complaint sets forth an amalgamation of seemingly unrelated claims.

Currently pending before the court is a motion filed by the defendants seeking the entry of partial summary judgment dismissing certain of plaintiff's claims on the merits. For the reasons set forth below, I recommend that defendants' motion be granted, in part, and otherwise denied.

**I.** *BACKGROUND* [2]
Plaintiff is an inmate currently in the custody of the DOCCS. *See generally* Dkt. No. 45. At various times relevant to his claims in this action, Shepherd was confined to the Upstate, Clinton, Five Points, Shawangunk, and Green Haven Correctional Facilities. *Dkt. No. 45.*

The claims set forth in plaintiff's complaint, as amended, are predicated upon occurrences falling into several categories, including sexual assault, excessive force, violation of plaintiff's freedom of religion, denial of access to the courts, deprivation of procedural due process, and the denial of adequate medical care. The following accounts, drawn principally from plaintiff's amended complaint, generally describe the events giving rise to his various claims. [3]

**A.** *Sexual Assault*
On November 3, 2007, while being pat frisked by defendant Corrections Officer Jones, plaintiff was subjected to touching in private areas and in a sexual manner. [4] *Dkt. No. 45 at 3.* Defendant Corrections Officer Whipple observed defendant Jones' conduct, told plaintiff that Jones was permitted to search him in that manner, and did nothing to stop Jones' conduct. *Id.* at 4. Plaintiff was exposed to similar conduct, as well as sexual comments, while being pat frisked by defendant Corrections Officer Carlee on April 20, 2010, April 22, 2010, and in May 2010. *Id.* at 4, 5. Plaintiff alleges that during the pat-frisk on April 20, 2010, defendant Sergeant Barber witnessed the assault but did not reprimand defendant Carlee for his conduct. *Id.* at 4. During the pat-frisk by defendant Carlee on April 22, 2010, defendant Corrections Officer Bower allegedly watched the assault but did nothing to stop it. *Id.* Defendant Bower also allegedly grabbed plaintiff's genitals during a pat frisk on April 29, 2010. *Id.* at 4. On June 17, 2010, defendant Corrections Officer Prebalick, while pat frisking the plaintiff in a facility special housing unit ("SHU"), sexually accosted plaintiff in a similar manner. *Id.* at 4. Plaintiff complained to corrections officials concerning those incidents, and was told by defendant Corrections Officer Bower that he would be sexually molested and harassed as long as he continued to write sexual harassment grievances. [5] *Id.* at 4.

**B.** *Excessive Force*
**\*2** On May 6, 2010, while being escorted back to his cell, plaintiff was assaulted by defendant Prebalick, defendants Corrections Officers Cioffa and Evans, and otherwise unidentified individuals. *Dkt. No. 45 at 5.* Plaintiff alleges that defendant Sgt. Jones witnessed the assault but did nothing to intervene or protect him from harm. *Id.* As a result of the incident, plaintiff suffered injuries to his right wrist, shoulder, low back and knees. *Id.* Plaintiff alleges that defendant Prebalick assaulted him out of retaliation for his filing grievances against other corrections officers. *Id.* at 5–6.

On several occasions throughout 2010, several defendants, including defendant Sergeant Maynard and defendants Prebalick, Carlee, Beliow, and Rozell also allegedly applied excessive force in pulling plaintiff's dreadlocks out of his head. *Dkt. No. 45 at 6–10*.

### C. *Interference with Freedom of Religion*

Shepherd, a practicing Rastafarian, recounts several incidents of alleged interference with his right to freely exercise his chosen religion occurring between October 2008 and November 2010. On October 7, 2008, plaintiff was not served a religious meal associated with a religious celebration.[6] *Dkt. No. 45 at 6*. On November 3, 2008, plaintiff's religious meal was served on a tray that was regularly used to serve meat in violation of plaintiff's religious beliefs. *Id.* On May 25, 2009, while Shepherd was confined at Clinton, an unidentified corrections officer sued as "John Doe" ordered plaintiff to dismantle his dreadlocks, which are worn to demonstrate a commitment to the god worshiped by Rastafarians, and then began pulling the dreadlocks. *Id.* According to plaintiff, it is against his religious beliefs to have his dreadlocks touched. *Id.* Similarly, plaintiff alleges that in or about November 2010, defendant Rozell touched plaintiff's dreadlocks in violation of his beliefs, and defendant Sergeant Roew, who witnessed the incident, did nothing to stop it. *Id.* at 10.

Plaintiff further alleges that between May and December 2009, while incarcerated at Clinton and Shawangunk, he was denied the right to attend Rastafarian religious services for various reasons, including because his name was not placed on a call-out lists for religious services, he cannot walk up and down stairs to the area where the services were being held due to a physical impairment, and the facility in which he was housed did not offer Rastafarian services. *Id.* at 7–8. While at Clinton during this period of time, plaintiff informed defendant Superintendent Artus that he was being denied access to services, but he did not receive a response. *Id.* at 8.

Following plaintiff's transfer into Five Points, on or about December 3, 2009, he was verbally harassed regarding his religious preferences and his dreadlocks by unidentified corrections officers. *Dkt. No. 45 at 8*. Plaintiff specifically alleges that in March 2010, defendant Basket verbally harassed him regarding his religion. *Id.* at 9.

**\*3** On or about May 5, 2010, plaintiff was denied a religious meal. *Dkt. No. 45 at 9*. When plaintiff complained to ZenZen,

the deputy superintendent of programs at the facility in which plaintiff was confined, he was told he had not requested a religious meal and was denied access to the standards, policies, and procedures for receiving religious meals. *Id.*

On or about July 23, 2010, while at Upstate, plaintiff was served a religious meal on a tray in which meat is customarily served, in violation of his religious beliefs. *Dkt. No. 45 at 9*. As a result, plaintiff was unable to consume the religious meal. *Id.* On October 7, 2010, plaintiff was again denied a religious meal prepared in celebration of the Rastafarian Negust. *Id.* Plaintiff informed defendant Superintendent Rock about his failure to receive the religious meal, but Rock never responded. *Id.*

### D. *Court Access*

Plaintiff's complaint sets forth two instances of alleged interference with his access to the courts, both involving claims that prison officials lost or misplaced his legal documents. The first incident is alleged to have occurred in December 2009, in connection with plaintiff's transfer from Clinton to Five Points. *Dkt. No. 45 at 11*. Plaintiff alleges that during the course of that transfer one of two draft bags containing legal documents and other property was misplaced and never recovered. *Id.* As a result, plaintiff lost documents pertaining to civil matters pending in the Southern and Northern Districts of New York, transcripts involving criminal matters pending in Kings and Richmond Counties, and documents concerning Article 78 proceedings. *Id.* Plaintiff informed defendant Superintendent Lempke and defendant Deputy Superintendent for Security Colvin of his missing legal papers, but neither of those individuals remedied the problem. *Id.*

The second incident occurred in June 2010, in connection with plaintiff's transfer into another prison facility. *Dkt. No. 45 at 11–12*. Plaintiff completed the necessary paperwork to arrange for a bag of active legal documents to be shipped to the next prison facility. *Id.* at 11–12. The bag was mailed instead to the plaintiff's home, however, and upon its return to the plaintiff, some of the documents were missing. *Id.* at 12. Plaintiff alleges that the missing documents were intentionally destroyed in retaliation for his filing of complaints and grievance while confined at Five Points. *Id.* As a result of the loss of legal documents, plaintiff contends he was unable to appeal a civil matter pending in the Northern District of New York, file Article 78 proceedings pursuant to state law, and file post-conviction motions in Richmond and Kings Counties. *Id.*

**E. _Procedural Due Process_**

Plaintiff's complaint, as amended, alleges two separate instances involving the denial of procedural due process. The first involves a disciplinary hearing conducted on April 26, 2008, by defendant Deputy Superintendent of Programs Cunningham, resulting in a finding of guilt and a penalty of 180 days in disciplinary SHU confinement, with a corresponding loss of packages, telephone, and commissary privileges, and a recommended forfeiture of good time credits. _Dkt. No. 45 at 12–13_. Plaintiff claims that he was deprived of (1) effective assistance in preparation for the hearing, (2) an impartial hearing officer, and (3) access to witnesses and documents. _Id._

**\*4** The second due process violation alleged stems from a misbehavior report issued on January 28, 2010, resulting in a disciplinary hearing commenced by defendant Ramus on February 2, 2010. _Dkt. No. 45 at 14_. At the hearing, plaintiff raised objections to alleged procedural violations and evidence and witnesses presented, and also protested defendant Ramus' refusal to call plaintiff's neurologist as a witness. _Id._ at 13–14. Plaintiff alleges that defendant Ramus' bias is reflected in the guilty determination and resulting penalty that included ten months of disciplinary confinement, a corresponding loss of privileges, and a recommended loss of good time credits. _Id._ at 14. Although defendant Bezio affirmed the determination, it was later administratively reversed on October 28, 2010. _Id._

**F. _Deliberate Medical Indifference_**

The vast majority of plaintiff's amended complaint addresses medical care provided to him at the various facilities in which he was housed at the relevant times. Plaintiff's complaints center upon a chronic lumbar back condition, a right knee condition, chronic migraine headaches, asthma, numbness in his right wrist and shoulder, "blurry double vision," and a urology condition. _Dkt. No. 45 at 14_. Plaintiff claims that at various times during his incarceration, he was (1) denied adequate pain medication, knee and back braces and a cane, (2) confined in a facility requiring him to navigate stairs, and (3) deprived of requested medical care. _Id._ at 14–28.

**II. _PROCEDURAL HISTORY_**

This action has an extensive procedural history. The suit was filed in the Southern District of New York in October 2010, but was subsequently transferred to this district by order issued by Chief District Judge Loretta A. Preska on December 10, 2010. Dkt. Nos. 1, 3. Upon transfer to this district, on May 11, 2011, Senior District Judge Thomas J. McAvoy issued a decision, following an initial review of plaintiff's original complaint, dismissing certain of his claims and otherwise directing service of the summons and complaint. _Dkt. No. 5_. Since that time, plaintiff has filed an amended complaint in the action, which was submitted on August 17, 2011, and accepted for filing by the court in its entirety. Dkt. Nos. 45, 78. In addition, four separate motions for preliminary injunctive relief have been filed by the plaintiff and denied by the court. Dkt. Nos. 49, 78, 159, 161, 163, 168, 189, 192.

In his amended complaint, the currently operative pleading, plaintiff identifies numerous defendants by name and others as "Doe" defendants. _Dkt. No. 45 at 2–3_. Plaintiff's amended complaint asserts the following causes of action: (1) excessive force against defendants Jones, Carlee, Bower, Prebalick, Cioffa, Evans, John Doe, Maynard, Beliow, Rozell, Cambria, Colvin, and Lempke;[7] (2) due process against defendants Cunningham, Ramus, Bezio, and Fischer;[8] (3) verbal harassment against defendants Bower, Prebalick, John Doe, Maynard, and Basket; (4) deliberate medical indifference against defendants Holmes, Parmer, Smith, Weissman, Chesbrough, Bellnier, Rock, Lashaway, John Doe, Cusack, Johnson, Weinstock, Lempke, Colvin, Sgt. Jones, Atkinson, Fairchild, Hawthorne, Roew, Thomas, Perez, Bellamy, Fischer, Wright, Amatucci, Artus, Clemons, Prebalick;[9] (5) retaliation against defendants Prebalick, Lempke, Colvin, Carlee, Atkinson, Chesbrough, Fairchild, Holmes, and Bower;[10] (6) free exercise and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims against defendants John Doe, Evans, Artus, Rock, Bellnier, Fischer, Lempke, Colvin, Maynard, Carlee, Prebalick, Beliow, Rozell, and Basket;[11] and (7) denial of access to the courts against defendants Prebalick, Lempke, and Colvin;[12] (8) failure to protect plaintiff from harm against defendants Whipple, Barber, Bower, Roew, Lempke, Colvin, and Sgt. Jones.[13] As relief plaintiff seeks compensatory and punitive damages in the amounts of $200,000 and $100,000, respectively, from each defendant. _Dkt. No. 45 at 34_.

**\*5** On May 10, 2014, following service of process and completion of discovery, defendants moved for the entry of partial summary judgment.[14] _Dkt. No. 174._ In their motion, defendants argue that (1) the damage claims against the defendants in their official capacities are barred by

the Eleventh Amendment; (2) plaintiff's verbal harassment claims are not cognizable; (3) plaintiff's deliberate medical indifference claims are deficient based upon his failure to meet either the objective or subjective elements of such a claim; (4) plaintiff's denial of access to the courts cause of action is subject to dismissal for failure to allege specific injury resulting from the loss or misplacement of his legal records; (5) plaintiff's due process claims are legally deficient based upon his failure to establish that he was deprived of a cognizable liberty interest; (6) plaintiff's claims against defendants Amatucci, Artus, Bellnier, Colvin, Fischer, Johnson, Lempke, Rock, Jones, and Wright are subject to dismissal based upon lack of personal involvement; and (7) defendants are entitled to qualified immunity from suit with respect to plaintiff's deliberate medical indifference claims. *Id.* Plaintiff has since responded, on May 14, 2014, urging the court to deny defendant's motion in its entirety. [15] *Dkt. No. 179.*

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) (1)(B) and Northern District of New York Local Rule 72.3(c).*See*Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."*Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

**\*6** When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

#### B. *Eleventh Amendment*

Plaintiff's amended complaint recites that the defendants are being sued in both their personal and official capacities. *Dkt. No. 45 at 1.* In their motion, defendants contend that any damage claims brought against them in their official capacities are precluded by the Eleventh Amendment. *Dkt. No. 174–4 at 4–6.*

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury."*Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Ying Jing Gan v. City of N.Y.,* 996 F.2d 522, 529 (2d Cir.1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official."(quoting *Edelman,* 415 U.S. at 663)); *see also Richards v. State of N.Y.App. Div., Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (*citing, inter alia, Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 72 L.Ed.2d 694, (1982))."To the extent that a state official is sued for

damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."*Ying Jing Gan,* 996 F.2d at 529; *see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action against the named defendants in their official capacities are, in reality, claims against the State of New York, and therefore are subject to dismissal. *Daisernia,* 582 F.Supp. at 798–99. Accordingly, I recommend that, to the extent that the damage claims raised in plaintiff's amended complaint are asserted against any of the named defendants in their official capacities, those claims be dismissed with prejudice. [16]

### C. *Claims of Verbal Harassment*

**\*7** Many of the claims set forth in plaintiff's amended complaint appear to be predicated upon allegations of threats and verbal harassment directed toward him by various defendants. [17] To the extent those threats and comments may form the basis for any of plaintiff's claims, defendants seek dismissal of those claims. *Dkt. No. 174–4 at 7.* In response to defendants' motion, plaintiff argues that he is not asserting any cause of action based solely on verbal harassment, threats, or abuse. *Dkt. No. 1791 at 5.* Because it is well-established that claims of verbal abuse or harassment, standing alone, are not cognizable under 42 U.S.C. § 1983, I recommend that plaintiff's claims of verbal harassment, to the extent the amended complaint is construed as asserting them, be dismissed. *See, e.g., Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) (McAvoy, J.) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under [section] 1983."(citing cases)).

### D. *Procedural Due Process*

Defendants next seek dismissal of plaintiff's procedural due process causes of action. *Dkt. No. 174–4 at 17–18.* To establish a claim under 42 U.S.C. § 1983 for the denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient process.*Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998); *Bedoya v. Coughlin,* 91

F.3d 349, 351–52 (2d Cir.1996). While defendants' motion does not address plaintiff's allegations concerning the specific procedural rights that are alleged to have been denied him during the two disciplinary hearings at issue, they contend that, as a threshold matter, plaintiff cannot establish that he possessed and was denied a constitutionally significant interest. [18]

In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."*Sandin,* 515 U.S. at 483–84; *Tellier,* 280 F.3d at 79–80; *Hynes,* 143 F.3d at 658. The prevailing view in this circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See, e.g., LaBounty v. Coombe,* No. 95–CV–2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94–CV–0985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.). Accordingly, to avoid the entry of summary judgment, plaintiff must have proffered evidence from which a reasonable factfinder could conclude that the conditions of his disciplinary confinement rose to the level of an atypical and significant hardship under *Sandin.* [19] *See, e.g., Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) ( "[W]here the nonmoving party bears the burden of proof at trial ... it is [his] burden to come forward to demonstrate that there are issues that must be decided by the factfinder because they may reasonably be decided in favor of either party."(citations omitted)).

**\*8** Atypicality in a *Sandin* inquiry is normally a question of law . [20] *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999). When analyzing the conditions of an inmate's disciplinary confinement, the relevant factors for consideration include " 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed[.]' " *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir.2009) (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)). As to the duration of the disciplinary segregation, restrictive confinement of less than 101 days, on its own, does not

generally rise to the level of an atypical and significant hardship. *Davis,* 576 F.3d at 133 (citing *Colon v. Howard,* 215 F.3d 227 (2d Cir.2000)). Accordingly, when the duration of restrictive confinement is less than 101 days, proof of "conditions more onerous than usual" is required. *Davis,* 576 F.3d at 133 (citing *Colon,* 215 F.3d at 232–33 n. 5). The court must examine "the [actual] conditions of [the plaintiff's] confinement 'in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.' " *Davis,* 576 F.3d at 134 (quoting *Welch v. Bartlett,* 196 F.3d 389, 392–93 (2d Cir.1999)). On the other hand, the Second Circuit has suggested that disciplinary segregation under ordinary conditions of more than 305 days rises to the level of atypicality. *See Colon,* 215 F.3d at 231 ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin.*" ).

The Second Circuit has stated that disputes regarding the conditions of a plaintiff's confinement may not be resolved on summary judgment. *Davis,* 576 F.3d at 134 (quoting *Palmer v. Richards,* 364 F.3d 60, 65 (2d Cir.2004)."Only when the conditions are uncontested may a district court resolve the issue of a typicality of confinement as a matter of law."*Id.*

In this instance, plaintiff's amended complaint, at a minimum, raises a genuine dispute of fact regarding whether he was deprived of a cognizable liberty interest in connection with the two disciplinary hearings at issue. While there is no record evidence disclosing the amount of time he actually spent in disciplinary SHU confinement, the April 26, 2008 hearing resulted in a sanction that included 180 days of SHU confinement, with no indication that the sanction was ever reversed. [21] *Dkt. No. 45 at 13.* The disciplinary hearing conducted by defendant Ramus on February 2, 2010, resulted in a penalty that included ten months of disciplinary SHU confinement. *Dkt. No. 45 at 14.* While the record, once again, does not disclose how much time plaintiff actually served in the SHU as a result of the sanction, defendant Ramus' determination was administratively reversed on October 28, 2010, nearly nine months after the conclusion of the hearing. *Id.* Under these circumstances, when drawing all inferences and resolving any ambiguities in plaintiff's favor, it appears that both of the hearings at issue resulted in SHU confinement of more than 180 days. A genuine dispute of material fact therefore exists with respect to whether plaintiff suffered the

deprivation of a constitutionally significant liberty interest as a result of those two hearings, thereby precluding the entry of summary judgment dismissing plaintiff's due process claims. [22] *See Kalwasinski v. Morse,* 201 F.3d 103, 106–08 (2d Cir.1999) (finding that SHU confinement for 180 days may impose an atypical and significant hardship); *accord, Johnson v. Fernandez,* No. 09–CV–0626, 2011 WL 7629513, at *8 (N.D.N.Y. Mar. 1, 2011) (Baxter, M.J.), report and recommendation adopted by 2012 WL 1033652 (N.D.N.Y. Mar.27, 2012) (Scullin, J.). For that reason, I recommend defendants' motion concerning plaintiff's due process claims be denied.

### E. *Personal Involvement*

**\*9** In their motion, defendants contend that several of them, including defendants Amatucci, Artus, Bellnier, Colvin, Fischer, Johnson, Lempke, Rock, Sgt. Jones, and Wright, are subject to dismissal in this action because they had no personal involvement in any of the constitutional deprivations alleged in plaintiff's amended complaint. *Dkt. No. 174–4 at 18–19.* "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal,* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered ."*Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986)."To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law."*Hendrickson v. U.S. Attorney Gen.,* No. 91–CV–8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan.24, 1994).

Certain of the defendants implicated in this portion of the pending motion served in supervisory roles, including, though not limited to, defendants Fischer, Wright, Lempke, Artus, Rock, and Bellnier. It is well-established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior.*" *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. To establish

responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom.Ashcroft v. Iqbal,* 556 U .S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501. Below, I have addressed the personal involvement of each of the defendants implicated in defendants' motion.

**1.** *Defendant Amatucci* [23]

Plaintiff has asserted a deliberate medical indifference claim against defendant Amatucci, who is referenced in only three paragraphs of plaintiff's amended complaint, recited below. *Dkt. No. 45 at 19,* 26, 31.

> **\*10** 78. My health care provider was able to get approval for the urology nasal medication that was initially denied by defendant Annuci (sic) who prescribed a treatment that was inconsistent with my urology problem. I was also prescribed a more effective pain medication in September 2009, and when I was move[d] to Down State C .F., on or about 10/9/09, where I stayed until 10/13/09, I was denied my asthma, migraine and pain medications as well [as] urology medication. I experienced breathing complaications [sic] as well [as] urology and left in excruciating pain for several days. I made numerous request [s] for medical treatment from the officers (john does) and was denied.

> 103. A consultation form was submitted for plaintiff to receive a new ACL knee brace as well [as] the urology medication (Nasal Spray) by N.P. Lashway, who informed me that defendant Annutice (sic) denied the urology medication and ordered an alarm clock that had nothing to do with my urology problems and the ACL brace was denied as well. Defendant Annutcie (sic) never spoke to, saw or examined me and denied me medical care. I forward Annutcie (sic) a letter dated 6/12/09, informing him that the treatment he (Annutcie) ordered had nothing to do with my urology problems explaining that I was not receiving adequate, meaningful, and effective medical care

for my chronic lower back pain, migraine headaches, and I requested the reason as to why the request for a new ACL brace was denied. Plaintiff never received a response form [sic] Annutcie (sic). Moreover, plaintiff was never examined by Dr. Johnson or N.P. Lashway.

### TWENTIETH CAUSE OF ACTION

The actions/inactions of defendants Dr. Weissman, Dr. Weinstock, Dr. Johnson, Dr. Hawthorne, N.P. Lashway, N.P. Parmer, N.A. Smith, N .A. Clemans, Dr. Annutcie (sic), R.N. Fairchild, R.N. Chesbrough, R.N. Holmes, and R.N. Atkinson, acting alone and/or in conjunction with each other, did aggravate plaintiff's medical conditions (Lower back pain & Spasms, right wrist, elbow & shoulder pain & numbness migraine headaches, light hurting eyes, blurry double vision, right knee ins[t]ability swelling & pain, asthma condition) and were deliberately indifferent to plaintiff's medical needs by practicing a custom of providing low ineffective standard of care less efficacious treatment, causing plaintiff needless suffering.
*Id.*

Liberally construing these allegations, I find they suffice to give rise to a genuine dispute of material fact regarding whether defendant Amatucci was personally involved in the deliberate medical indifference claim asserted by plaintiff. Plaintiff alleges that defendant Amatucci denied him medication, did not examine him, and failed to remedy the continuing problems once he learned of them through a letter from plaintiff dated June 12, 2009. Accordingly, I recommend defendants' motion be denied with respect to the personal involvement of defendant Amatucci.

**2.** *Defendant Artus*

As was described above in Part II. of this report, plaintiff has asserted deliberate medical indifference and free exercise and RLUIPA claims against defendant Artus based on his role as the superintendent in one of the facilities in which plaintiff was confined at the relevant times. His amended complaint references defendant Artus in eleven paragraphs, including paragraphs numbered 3, 31, 104, 105, 108, and 109, as well as the fifth, sixteenth, seventeenth, twenty-eighth, and twenty-ninth identified causes of action. *Dkt. No. 45 at 2,* 7–8, 27, 28, 29, 31, 33.

 **\*11** With respect to plaintiff's free exercise and RLUIPA claims, he alleges that, between October and December 2009,

he verbally notified defendant Artus in person that he was regularly being denied access to religious services and his dreadlocks were being pulled out by corrections officers. *Dkt. No. 45 at 7–8.* Plaintiff contends that defendant Artus responded by advising plaintiff he would look into the matters and report his findings, but plaintiff "never heard anything" in response. *Id.* at 8. Similarly, plaintiff complained directly to defendant Artus while he was making rounds at the prison facility about being denied medical care and his need to not be "housed on a company where [he] ha [s] to walk up and down numerous stairs" due to his physical impairments.*Id.* at 27. According to plaintiff, defendant Artus "took no corrective actions to ensure that [he] received meaningful, adequate, and effective medical care."*Id.* These allegations, which form the basis of plaintiff's claims against defendant Artus, are sufficient under *Colon,* if proven, to establish personal involvement.

### 3. *Defendant Bellnier* [24]

Like defendant Artus, plaintiff has asserted deliberate medical indifference, as well as free religious exercise and RULIPA claims against defendant Bellnier in his capacity as a supervisor. Defendant Bellnier is the subject of allegations contained in paragraphs numbered 3, 25, 72, 104, 108, and 109, as well as the fourth, twenty-eighth, and twenty-ninth causes of action identified in the amended complaint. *Dkt. No. 45 at 6,* 18, 27, 28, 29, 33. Only paragraph 72 sets forth non-conclusory allegations regarding plaintiff's claim of deliberate medical indifference asserted against defendant Bellnier. In that paragraph, plaintiff contends that, on several occasions while defendant Bellnier was making rounds at the prison facility, Shepherd directly informed defendant Bellnier that he was being denied adequate medical care. *Id.* at 18. Plaintiff alleges that the Legal Aid Society also alerted Bellnier concerning his inadequate medical treatment. *Id.* These allegations are sufficient to give rise to a dispute of fact regarding whether defendant Bellnier deprived plaintiff adequate medical care in his capacity as a supervisor.

Otherwise, plaintiff's amended complaint sets forth only vague and conclusory allegations intending to implicate defendant Bellnier in his free exercise and RULIPA claims. By way of example, plaintiff alleges that, "[o]n or about 10/07/08, there was a Negust Religious celebration where a religious meal is served. I never received my religious meal and when defendant Bellinuer (sic) made his rounds, I made him aware that I never received my religious meal. Bellinuer (sic) advised me that the matter would be looked

into."*Dkt. No. 45 at 6.* Even liberally construed, however, this is insufficient to establish the personal involvement of defendant Bellnier in the conduct forming the basis for plaintiff's free exercise and RLUIPA claims because plaintiff does not contend that defendant Bellnier failed to remedy plaintiff's problem. Moreover, there is nothing in the record evidence to suggest that, with respect to plaintiff's religious deprivation claims, defendant Bellnier ignored any of plaintiff's complaints. Accordingly, I recommend that the defendants' motion be granted with respect to the personal involvement of defendant Bellnier in plaintiff's free exercise and RLUIPA claims.

### 4. *Defendant Colvin*

**\*12** Plaintiff has asserted six claims against defendant Colvin, the deputy superintendent of security at one of the prisons in which plaintiff was held at the relevant times, including (1) deliberate medical indifference, (2) retaliation, (3), denial of access to courts, (4) excessive force, (5) deprivation of his rights to free exercise and under the RLUIPA, and (6) failure to protect plaintiff from harm. Defendant Colvin is sued based on his capacity as a supervisor in connection with the deliberate medical indifference, retaliation, denial of access to courts, excessive force, and free exercise and RLUIPA claims. Plaintiff's amended complaint references defendant Colvin in paragraphs numbered 4, 49, 86, 105, and 108, as well as the seventh and sixteenth causes of action listed in plaintiff's amended complaint. *Dkt. No. 45 at 2,* 11, 21–22, 27–28, 29, 31. Only paragraph 86 sets forth sufficient allegations to establish personal involvement in some, but not all, of the claims asserted against defendant Colvin. In particular, plaintiff alleges that "[d]efendant Lempke and Colvin were informed by plaintiff numerous times when they were making their rounds in 'SHU', [sic] that [he] was being denied effective, adequate medical care, and sexually assaulted, religious discrimination, harassment, and retaliation due to [his] filing grievances and complaints against officials, requesting action be taken against the officials who committed the violations, and ... [n]othing was done by defendant Lempke and Colvin to refrain their subordinates from violating his rights[.]"*Id.* at 21–22. Because this allegation suggests defendant Colvin knew about the alleged continuing inadequate medical care, sexual harassment, religious discrimination, and retaliation but did nothing to address those concerns, I find there exists a dispute of fact with respect to the personal involvement of that defendant in connection with plaintiff's claims of deliberate medical indifference, excessive force, free exercise and RLUIPA, and retaliation claims.

Similarly, plaintiff alleges that he informed defendant Colvin regarding his missing legal paperwork, but that Colvin did nothing to help plaintiff. *Dkt. No. 45 at 11.* This is sufficient to implicate Colvin in plaintiff's denial of access to the courts cause of action.

Turning now to the failure to protect claim asserted against Colvin, the only allegation in the plaintiff's complaint related to this cause of action states, "Defendants C.O. Whipple, superintendent Lempke, Sgt. Barber, Colvin, C.O. Bower as well as unidentified officials, failed to stop their subordinates from sexually molesting/assaulting and harassing plaintiff as well [as] failing to ensure their subordinates were properly and adequately trained in pat frisk procedures."*Dkt. No. 45 at 29.* This type of vague and conclusory allegation, however, is not sufficient to satisfy the personal involvement requirement of a section 1983 claim. Moreover, there is nothing in the record, aside from this allegation, to suggest that defendant Colvin failed to protect plaintiff from any use of force. Accordingly, I recommend that defendants' motion be granted to the extent it seeks dismissal of plaintiff's failure to protect claim asserted against defendant Colvin.

**5. *Defendant Fischer***

 **\*13** Plaintiff asserts the following claims against defendant Fischer based on his capacity as a supervisor: (1) excessive force, (2) deprivation of due process, (3) deliberate medical indifference, and (4) free exercise and RLUIPA violations. Defendant Fischer is mentioned throughout the amended complaint, including in paragraphs numbered 2, 27, 98, 99, 100, 101, 105, 107, 108, and 109, as well as in the sixteenth, seventeenth, twenty-eighth, and twenty-ninth identified causes of action. *Dkt. No. 45 at* 2, 6, 25, 26, 27, 28, 30, 31, 33. Plaintiff's claim asserting a due process violation against defendant Fischer arises from the allegation that, although plaintiff appealed the disciplinary determinations by defendants Cunningham and Ramus to defendant Fischer based on the alleged due process violations, Fischer affirmed the determinations. Merely affirming the denial of an inmate's appeal of a disciplinary sanction, however, is insufficient, on its own, to establish personal involvement. *Long v. Crowley,* No. 09–CV–0456, 2010 WL 5129102, at *1 (W.D.N.Y. Dec. 10, 2010); *Tafari v. McCarthy,* 714 F.Supp.2d 317, 383 (N.D.N.Y.2010) (Suddaby, J.). Plaintiff's allegations regarding the other causes of action asserted against defendant Fischer either appear to assert a non-cognizable constitutional claim or are vague and conclusory. *See, e.g., Dkt. No. 45 at 25* ("Supervisor Bellamy and defendant Fischer

were aware of the systematic gross deficiecious [sic] and inadequate training and supervision of the inmate grievance program, for other prisoners also had problems with their grievances being filed and processed for many prisoners complained to the grievance supervisor as well as the superintendents and defendant Fischer, and nothing was done to ensure that my grievance filing process was not hindered, no corrective measures were taken."), 31 ("Defendants Artus, Lempke and Fischer, acting alone and/or in conjunction with each other were aware of there being a systematic, gross inadequacies in training as well [as] supervision of subordinates in the use of force, and further failed to take corrective as well as preventative measures, which caused the violation of plaintiff's rights."). Accordingly, I recommend that defendants' motion for summary judgment based on the lack of personal involvement of defendant Fischer be granted.

**6. *Defendant Johnson***

Plaintiff asserts only a deliberate medical indifference claim against defendant Johnson. Liberally construed, the claim is asserted against Johnson based both on her direct involvement in treating plaintiff, as well as based on her role as supervisor. Plaintiff's amended complaint references defendant Johnson in paragraphs numbered 76, 80, 102, 103, 106, and 108, as well as the nineteenth and twentieth identified causes of action. *Dkt. No. 45 at 19,* 20, 26, 27, 31. The allegations regarding the treatment received by defendant Johnson are sufficient to give rise to a dispute of material fact as to whether she was personally involved in the alleged deliberate medical indifference. *Dkt. No. 45 at 19,* 20. The allegations giving rise to the claim based on defendant Johnson's role as a supervisor, however, are vague and conclusory, *id.* at 26, 31, and no reasonable factfinder could conclude, based on the record, that defendant Johnson was personally involved in her role as a supervisor under *Colon.*Accordingly, I recommend that defendants' motion based on the personal involvement of defendant Johnson be granted with respect to the deliberate medical indifference claim asserted against that defendant based on her role as a supervisor.

**7. *Defendant Lempke***

 **\*14** Plaintiff asserts six claims against defendant Lempke, including (1) deliberate medical indifference, (2) retaliation, (3) violation of his free exercise and RLUIPA rights, (4) denial of access to the courts,(5) failure to protect plaintiff from harm, and (6) excessive force. Plaintiff asserts the deliberate medical indifference, retaliation, free exercise and RLUIPA, and denial of court access causes of action

based on defendant Lempke's capacity as a supervisor. The amended complaint references defendant Lempke in paragraphs numbered 3, 49, 86, 104, 105, 108, and 109, as well as in the fourth, seventh, sixteenth, seventeenth, twenty-eighth, and twenty-ninth identified causes of action. *Dkt. No. 45 at 2,* 11, 21–22, 27–8, 29, 31, 33.

Plaintiff's allegations giving rise to the denial of access to courts claim is sufficient to implicate defendant Lempke. Specifically, plaintiff alleges that he directly informed defendant Lempke that some of his legal paperwork became misplaced, but that Lempke did nothing to help plaintiff. *Dkt. No. 45 at 11*. Under *Colon,* this is enough to raise a dispute of fact regarding defendant Lempke's personal involvement in the denial of access to courts cause of action.

Similarly, the allegation that defendant Lempke did nothing to help plaintiff after he learned that plaintiff was continuously being denied adequate medical care, sexually assaulted, discriminated based on his religion, and retaliated against for filing grievances is sufficient to establish personal involvement in light of the record evidence. *Dkt. No. 45 at 21–22.*

As for the failure to protect claim, the only allegation in the amended complaint related to this cause of action states, "Defendants C.O. Whipple, superintendent Lempke, Sgt. Barber, Colvin, C.O. Bower as well as unidentified officials, failed to stop their subordinates from sexually molesting/ assaulting and harassing plaintiff as well [as] failing to ensure their subordinates were properly and adequately trained in pat frisk procedures."*Dkt. No. 45 at 29*. This type of vague and conclusory allegation, however, is not sufficient to satisfy the personal involvement requirement of a section 1983 claim. Moreover, there is nothing in the record, aside from this allegation, to suggest that defendant Lempke failed to protect plaintiff from any use of force. Accordingly, I recommend that defendants' motion be granted to the extent it seeks dismissal of plaintiff's failure to protect claim asserted against defendant Lempke.

## 8. *Sgt. Jones*

As was noted above, plaintiff asserts a deliberate medical indifference and failure to protect claim against defendant Sgt. Jones. With respect to the first cause of action, plaintiff alleges as follows:

> On or about 6/27/10, plaintiff was moved to UpState C.F., before leaving

Five Points and being placed on a bus, he spoke to defendant Sgt. Jones, requesting that his ACL right knee brace be returned to him, requesting the medical department be called, since it was medical who had my original ACL knee brace, I requested my back brace be returned and Sgt. Jones stated that, he was not calling medical for any brace.

**\*15** *Dkt. No. 45 at 22.* This allegation is sufficient to give rise to a dispute of material fact regarding whether defendant Sgt. Jones was personally involved in denying plaintiff adequate medical care.

Turning to plaintiff's allegation that defendant Sgt. Jones failed to protect him from harm, plaintiff alleges that, during the assault by defendants Prebalick, Cioffa, and Evans on or about May 6, 2010, defendant Sgt. Jones witnessed the incident and "did nothing to intervene or refrain his officers from assaulting [him]."*Dkt. No. 45 at 5*. This is sufficient to establish defendant Sgt. Jones' personal involvement in the alleged assault.

Accordingly, I recommend that defendants' motion be denied with respect to defendant Sgt Jones' personal involvement in the claims asserted against him.

## 9. *Defendant Rock*

Plaintiff asserts two claims against defendant Rock, alleging a violation of his free exercise and RULIPA rights and deliberate medical indifference. Both of these causes of action are asserted against defendant Rock based on his role as a supervisor. The amended complaint references defendant Rock in paragraphs numbered 31, 40, 73, 104, 108, and 109, as well as in the fourth cause of action. *Dkt. No. 45 at 2, 9, 18, 27, 28, 29.*

With respect to the free exercise and RULIPA claim, plaintiff contends that he informed defendant Rock about not receiving a single missed religious meal on or about October 7, 2010, and that Rock did not take any steps to remedy the issue. *Dkt. No. 45 at 9* . It is well settled that this type of allegation regarding a past constitutional violation is not sufficient to establish defendant Rock's personal involvement based on his role as a supervisor. See *Platt v. Inc. Vill. Southampton,* 391 F. A'ppx 62, 65 (2d Cir.2010) ("[A]n allegation that a supervisory official ignored a letter

protesting past unconstitutional conduct is, without more, [insufficient] to state a claim that the official was 'personally involved' in the unconstitutional conduct."). Plaintiff further alleges, however, that defendant Rock was notified on several occasions of ongoing violations regarding the denial of adequate medical care. *Dkt. No. 45 at 18*. Such an allegation, if proven, could suffice to establish liability on the part of defendant Rock. Accordingly, I recommend that defendants' motion be granted with respect to plaintiff's free exercise and RLUIPA claim against defendant Rock, but otherwise be denied.

**10. *Defendant Wright***

Plaintiff has asserted a deliberate medical indifference claim against defendant Wright based on his role as the DOCCS Deputy Commissioner. Defendant Wright is referenced in paragraphs numbered 6, 100, 101, and 108, as well as the twenty-eighth and twenty-ninth causes of action identified in the amended complaint. *Dkt. No. 45 at 3*, 26, 27, 33. Plaintiff alleges that he notified defendant Wright of the continuing denial of adequate medical care through "numerous complaints written from 2008, through 2010[.]"*Id.* at 26. In response, defendant Wright referred the matter to "his subordinates," who, plaintiff alleges, "did nothing more than advise [him] that the division of health services conducted an investigation[ ], and suggested that [he] continue to bring [his] medical concerns to the attention of the health care staff [.]"*Id.*Without more, these contentions do not establish defendant Wright's personal involvement in plaintiff's deliberate medical indifference cause of action. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (affirming the district court's grant of summary judgment where the defendant-commissioner referred the plaintiff's letter to the prison superintendent); *accord, Grullon v. City of New Haven,* 720 F.3d 133, 140–41 (2d Cir.2013). Similarly, plaintiff's other allegations, as well as the record evidence as a whole, do not reflect the personal involvement of defendant Wright in plaintiff's alleged inadequate medical care. Accordingly, I recommend defendants' motion with respect to defendant Wright be granted.

**F. *Denial of Access to the Courts***

 **\*16**  In their motion, defendants also seek dismissal of plaintiff's denial of access to the courts cause of action. *Dkt. No. 174–4 at 16–17*. Defendants contend that plaintiff has failed to establish either that he suffered any prejudice from the loss of his legal materials or the personal involvement of

the defendants alleged to be responsible for the loss of his materials. *Id.*

It is well-established that prison inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *accord, Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of access to the courts."(emphasis in original)). This right is implicated when prison officials "actively interfer [e] with inmates' attempts to prepare legal documents, or file them [.]"*Lewis,* 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim."*Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (quotation marks omitted). To establish a denial of access to courts claim, a plaintiff must satisfy two elements. First, he must show that the defendant acted deliberately and maliciously. *Davis,* 320 F.3d at 351. Second, plaintiff must demonstrate that he suffered an actual injury. *Id.*

In this instance, plaintiff has failed to adduce any evidence that defendant Prebalick was personally involved in the alleged loss of his legal papers. Personal involvement in the context of the court access claim, as with any other constitutional deprivation, is a prerequisite to the finding of liability. *See Livingston v. Escrow,* 08–CV–6576, 2013 WL 5603870, at *6 (W.D.N.Y. Oct.11, 2013) (dismissing the plaintiff's court access claim on summary judgment because the plaintiff had failed to establish the personal involvement of the defendant). Plaintiff alleges that, with respect to the incident in or about February 2010 regarding his missing papers, he informed defendant Prebalick "of the missing legal documents," and Prebalick responded by telling plaintiff "it would be hard for [him] to sue officers without legal documents, and plaintiff's law suit [sic] was in the garbage, along with his other documents."*Dkt. No. 45 at 11*. Even liberally construed, this allegation does not suggest that defendant Prebalick was responsible for discarding or otherwise losing plaintiff's legal papers. In his response to the pending motion, plaintiff admits that defendant Prebalick was only present when plaintiff was returned his property, and he does not contend that Prebalick was involved in the papers being misplaced in the first instance. Accordingly, I recommend dismissal of this claim against defendant Prebalick.

Turning to defendants Lempke and Colvin, plaintiff alleges that he informed those individuals that his legal papers were missing after the first incident in December 2009. *Dkt. No. 45 at 11.* Plaintiff contends that defendants Lempke and Colvin failed to address his complaints, but there is nothing in the record to suggest that they deliberately or maliciously ignored plaintiff. Instead, plaintiff merely states that he "requested Colvin and Lempke return the missing legal documents" and certain documents were never returned to him. *Id.; see also Dkt. No. 179–1 at 21–22* .Without more, the court determines that no reasonable factfinder could conclude that defendants Lempke and Colvin acted deliberately or maliciously in addressing plaintiff's complaint. Accordingly, I recommend dismissal of this claim against those individuals.

### G. *Deliberate Medical Indifference*

**\*17** A significant portion of plaintiff's amended complaint is dedicated to his complaints regarding the treatment he received for his medical conditions at the various prison facilities in which he was confined. In their motion, defendants contend plaintiff's medical records reveal that he consistently received extensive and proper care and treatment for his various conditions, and that plaintiff's medical indifference claim does not satisfy either the objective or subjective requirements for proving such cause of action under the Eighth Amendment. [25] *Dkt. No. 174–4 at 7–14.*

### 1. *Legal Standard*

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or which 'involve the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) and *Gregg v. Georgia,* 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, ... may actually produce physical torture or lingering death, [and] ... [i]n less serious cases, ... may result in pain and suffering no one suggests would serve any penological purpose." *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by neglecting to provide adequate medical care must satisfy both objective and subjective requirements. *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009); *Price v. Reilly,* 697 F.Supp.2d 344, 356 (E.D.N.Y.2010). To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care.... Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006) (citations omitted).

The second inquiry of the objective test requires a court to look at the seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment. *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003)."Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain ."*Salahuddin,* 467 F.3d at 280 (quotation marks and alterations omitted).

**\*18** If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin,* 467 F.3d at 280. "For example, if the prisoner is receiving ongoing treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or

interruption in treatment, rather than the prisoner's underlying medical condition alone." *Id.* (quotations marks omitted).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' " *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999). "In medical-treatment cases ..., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin,* 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer,* 511 U.S. at 837); *see also Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.); *Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839–40).

## 2. *Analysis*

### i. *Defendants Bellnier, Clemons, Colvin, Johnson, Lempke, Parmer, Perez, Prebalick, Rock, Roew, Smith, Thomas, Weinstock, and Weissman*

After carefully reviewing the record evidence, the court determines that no reasonable factfinder could conclude that defendants Bellnier, Clemons, Colvin, Johnson, Lempke, Parmer, Perez, Prebalick, Rock, Roew, Smith, Thomas, Weinstock, and Weissman acted with the requisite mental state while treating plaintiff to satisfy the subjective element of a deliberate indifference cause of action. Plaintiff's amended complaint does not allege that these defendants acted maliciously or sadistically with respect to their treatment or care of him. *See generallyDkt. No. 45.*Plaintiff alleges that defendants Johnson, Weissman, and Weinstock "knowingly provided me with less effciacious [sic] and effective medical care as well [as] providing a low standard of health care as this were the defendants named herein custom and practice."*Id.* at 26. Similarly, in the eighteenth identified cause of action, plaintiff contends that defendant Weissman "knowingly and intentionally" discontinued certain medications. *Id.* at 31. Even assuming that "knowingly" or "intentionally" suffices to satisfy the mental state required in an Eighth Amendment deliberate

medical indifference claim, those allegations are vague and conclusory, and plaintiff has not adduced any additional evidence to support them. Similarly, plaintiff's allegation that defendants Parmer, Johnson, and Weissman "falsified [his] medical records with malicious intent of providing a lower standard of care for [his] chronic ... back pain" is conclusory and does not give rise to a genuine dispute of fact regarding those defendants' mental states in connection with the treatment they provided plaintiff.[26] *Id.* at 27. In addressing this element of his claim in his opposition to the defendants' motion, plaintiff states that "[t]he record of competent evidence establishes that plaintiff suffered from callous, wanton deprivation of medical services."*Dkt. No. 179–1 at 18.* Fatally, however, plaintiff points to no record evidence to support this contention. Accordingly, because no reasonable factfinder could conclude, based on the record now before the court, that any of the above-listed defendants acted maliciously or sadistically with deliberate indifference to plaintiff's health and safety, I recommend plaintiff's deliberate medical indifference claim be dismissed as against those individuals.

### ii. *Defendants Atkinson, Chesbrough, Fairchild, and Holmes*

**\*19** Turning now to defendants Atkinson, Chesbrough, Fairchild, and Holmes, I find there is sufficient record evidence to give rise to a genuine dispute of fact with respect to whether those individuals acted maliciously and sadistically for the purpose of causing harm to plaintiff because he contends that these individuals provided him with inadequate care in retaliation for him filing grievances against them. *See, e.g., Dkt. No. 45 at 24,* 32. Thus, I now turn my attention to whether a reasonable factfinder could conclude defendants Atkinson, Chesbrough, Fairchild, and Holmes provided plaintiff with objectively inadequate care under the Eighth Amendment.

### a. *Defendant Atkinson*

Plaintiff's contentions with respect to defendant Atkinson are nonspecific. He alleges that defendant Atkinson returned plaintiff to his cell on August 17, 2010, without first permitting Shepherd to see his healthcare provider, defendant Parmer. *Dkt. No. 45 at 23.* Plaintiff does not, however, explain his reasons for needing to see defendant Parmer at that particular time, nor does he provide any indication that he was suffering from a sufficiently serious condition requiring treatment from defendant Parmer directly. *Id.*

Similarly, plaintiff contends that, on one occasion, defendant Atkinson came to plaintiff's cell to take his vital signs and directed him to "put [his] arm through the slot" to facilitate the process. *Dkt. No. 45 at 23*. Plaintiff alleges that, although he explained to defendant Atkinson that placing his arm in the slot causes him pain and back spasms because it requires him to bend over, Atkinson required him to comply with the order. *Id.* Plaintiff neglects to allege, and the record does not reflect, however, that he suffered any injury as a result of complying with defendant Atkinson's order, or that plaintiff, in fact, suffered pain or back spasms as a result of the incident. *Id.*

Finally, plaintiff generally contends that defendant Atkinson (1) denied him medical care "[n]umerous times from August 2010, until November 2010"; (2) aggravated his medical conditions; (3) permitted corrections officers to overhear his confidential medical complaints; (4) failed to document his complaints; (5) denied him access to his healthcare provider; and (6) falsified his medical records. *Dkt. No. 45 at 31; Dkt. No. 179–1 at 11–12; Dkt. No. 179–2 at 46*. Plaintiff fails, however, to adduce any evidentiary support for these allegations. Without more, the bare contentions are not sufficient to give rise to a dispute of material fact with respect to whether defendant Atkinson provided plaintiff inadequate medical care in violation of the Eighth Amendment. Accordingly, I recommend that defendants' motion be granted insofar as it seeks dismissal of the deliberate medical indifference claim against defendant Atkinson.

**b.** *Defendant Chesbrough*

Plaintiff accuses defendant Chesbrough of permitting corrections officers to overhear his confidential medical complaints, falsifying medical records, and refusing to document his complaints. *Dkt. No. 45 at 17; Dkt. No. 179 at 5; Dkt. No. 179–2 at 48*. Plaintiff does not, however, explain the medical condition from which he was suffering at the times defendant Chesbrough allegedly failed to document his complaints or approximately when this occurred. Without this information, the court cannot make a determination regarding whether the failure to document a complaint was sufficiently serious or whether the condition itself was sufficiently serious such that it required documentation or treatment.

**\*20** Plaintiff alleges that, on February 5, 2009, defendant Chesbrough denied him access to his healthcare provider. *Dkt. No. 179 at 5*. Again, however, plaintiff does not explain

the conditions from which he was suffering at the time that required additional treatment from his healthcare provider. *Id.* Moreover, a review of the record reflects a letter written by plaintiff to defendant Weissman on February 27, 2009, regarding defendant Chesbrough's conduct, which repeats the allegations of permitting corrections officials to overhear his confidential medical complaints and falsifying medical records. *Dkt. No. 179–3 at 45*. The letter, however, does not explain how plaintiff suffered any harm as a result of defendant Chesbrough's conduct.

Even considering all of the record evidence in the light most favorable to plaintiff, I find that no reasonable factfinder could conclude that defendant Chesbrough provided plaintiff with inadequate medical treatment in violation of the Eighth Amendment. Accordingly, I recommend that defendants' motion be granted with respect to the deliberate medical indifference claim asserted against defendant Chesbrough.

**c.** *Defendant Fairchild*

Plaintiff accuses defendant Fairchild of ignoring his sick call request on July 8, 2010. *Dkt. No. 45 at 23*. The medical records provided in support of the defendants' motion, however, indicate that plaintiff was seen by medical staff on that date pursuant to an emergency sick call request by plaintiff. *Dkt. No. 175–1 at 6*. According to the medical note from that date, plaintiff complained of his chronic knee condition, but no swelling was noted. *Id.* The next day, plaintiff was again seen by medical staff, at which time he complained of falling on the previous day. *Id.* On that occasion, plaintiff was advised to increase compresses and provided pain medication. *Id.*

Plaintiff also generally complains that defendant Fairchild (1) aggravated his medical conditions; (2) permitted corrections officers to overhear his confidential medical complaints; (3) failed to document his complaints; and (4) falsified his medical records. *Id.* at 31; *Dkt. No. 179–2 at 46*. Plaintiff fails, however, to adduce any evidentiary support of these allegations. Without more, the bare contentions are not sufficient to give rise to a dispute of material fact with respect to whether defendant Fairchild provided plaintiff inadequate medical care in accordance with the Eighth Amendment. Accordingly, I recommend that defendants' motion be granted insofar as it seeks dismissal of the deliberate medical indifference claim against defendant Fairchild.

**d.** *Defendant Holmes*

Plaintiff alleges that, on or about August 25, 2008, while he was boarding a bus to be transferred to Upstate, he fell and injured his right knee and hip. *Dkt. No. 45 at 15*. Upon arriving at Upstate, he was interviewed by defendant Holmes, who, plaintiff alleges, neither documented plaintiff's complaint that he fell nor examined him. *Id.; see also Dkt. No. 179–2 at 44*. Plaintiff also contends that defendant Holmes confiscated his asthma medications and walking cane at that time. *Dkt. No. 45 at 15; Dkt. No. 179–2 at 44*. Plaintiff's medical records, however, reflect that defendant Holmes issued plaintiff a temporary permit for a knee brace and cane to be used outside of his cell, and she documented the issues plaintiff discussed with her regarding his right knee, left testicle, and asthma. Dkt. No.175–1 at 43–44, 46. In addition, she indicated plaintiff should be placed on a bottom bunk. *Id.* at 47.

**\*21** Plaintiff contends that on August 16, 2008, and August 17, 2008, defendant Holmes responded to his sick call requests but ultimately ignored his complaints concerning his knee. *Dkt. No. 45 at 15; Dkt. No. 179–2 at 44–45*. Plaintiff explains that he had "injur[ed][him]self," prompting him to make an emergency sick call, but does not give any indication of the seriousness of his injuries. *Id.* Plaintiff acknowledges that he was treated for his asthma on August 17, 2008, and his medical records reflect that, during an emergency sick call on that date, he was permitted to use his inhalers. *Id.; Dkt. No. 175–1 at 41*.

In light of the evidence now before the court, I have determined that no reasonable factfinder could conclude that defendant Holmes provided plaintiff inadequate treatment in violation of the Eighth Amendment. With respect to this claim, the record is comprised of plaintiff's allegations on the one hand, and his medical records on the other. The medical records reflect that defendant Holmes interviewed plaintiff on August 15, 2008, documented his complaints, issued him a permit for a knee brace and cane, and recommended he be housed on a bottom bunk. On August 17, 2008, defendant Holmes treated plaintiff for his asthma symptoms. Although plaintiff alleges that he complained to defendant Holmes on August 16, 2008, of an injury to his knee, he does not explain the seriousness of his injury, and there is nothing in his medical records to indicate that he suffered a serious injury to his knee at or about that time. Accordingly, I recommend that defendants' motion be granted with respect to the deliberate medical indifference claim asserted against defendant Holmes. [27]

**H. *Status of Plaintiff's Claims Against Unserved Defendants***

By text orders dated July 30, 2014, plaintiff was ordered to show cause why his claims against defendants Whipple, Jones, Basket, and Cusack should not be dismissed based upon the fact that those individuals were not timely served pursuant to Rule 4(m) of the Federal Rules of Civil Procedure and rule 4.1(b) of the local rules of practice for this court. Dkt. Nos. 186, 187. Plaintiff has responded that he "has no recollection of being advised and/or informed that [defendants Whipple, Jones, Basket, and Cusack] were not served with the summons and complaints within the required time frame." *Dkt. No. 188*.

Rule 4(m) of the Federal Rules of Civil Procedure requires that a party be served within one hundred twenty days of issuance of the summons, absent a court order extending that period. [28] Fed.R.Civ.P. 4(m). In the event that a party seeks an extension of that time period, "where good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended." *Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 340 (7th Cir.1996). "If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." *Panaras,* 94 F.3d at 340 (citing Fed.R.Civ.P. 4(m)); *see also Zapata v. City of N.Y.,* 502 F.3d 192, 196 (2d Cir.2007) ("[D]istrict courts have the discretion to grant extensions of the service period even where there is no good cause shown [.]"); *Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 311 (2d Cir.1986). When examining whether to extend the prescribed period for service, a district court is afforded ample discretion to weigh the "overlapping equitable considerations" involved in determining whether good cause exists, and whether an extension may be granted in its absence. *Zapata,* 502 F.3d at 197.

**\*22** A plaintiff's *pro se* status entitles him to a certain degree of leniency insofar as service of process is concerned, and courts generally favor resolution of a case on its merits rather than on the basis of a procedural technicality. *Poulakis v. Amtrak,* 139 F.R.D. 107, 109 (N.D.Ill.1991). When a plaintiff proceeds *in forma pauperis,* as is the case in this instance, the court is obligated to issue the plaintiff's process to the United States Marshal, who must, in turn, effect service upon the defendants, thereby relieving the plaintiff of the burden to serve once reasonable steps have been taken to identify the defendants named in the complaint. Fed.R.Civ.P. 4(c)(3); 28 U.S.C. § 1915(d); *see also Byrd v. Stone,* 94 F.3d 217,

219 (6th Cir.1996) ("[Section] 1915( [d] ) provides that the officers of the court 'shall issue and serve all process' when a plaintiff is proceeding in forma pauperis."). Of course, this does not mean that a *pro se* plaintiff may stand idle upon being notified that efforts by the U.S. Marshals Service to serve a particular defendant have been unsuccessful. *VanDiver v. Martin,* 304 F.Supp.2d 934, 938–43 (E.D.Mich.2004). A plaintiff who does so acts at his peril, and risks dismissal of his claims against an unserved defendant. As the Second Circuit has observed,

> [i]f a plaintiff proceeding IFP chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.

*Meilleur v. Strong,* 682 F.3d 56, 63 (2d Cir.2012). Accordingly, a district court must look at the facts and circumstances surrounding each case to determine whether good cause exists. *Meilleur,* 682 F.3d at 63.

The fact that defendants Whipple, Jones, Basket, and Cusack have not been served or otherwise appeared in the action within the appropriate time period is well documented in the court's docket sheet, which also plainly reflects the filing of unexecuted returns of service with respect to all four of those defendants. Dkt. Nos. 39, 57, 48, 63, 64, 151. There is nothing in the record to suggest plaintiff did not receive notice that service went unexecuted as to those individuals. Moreover, on February 4, 2013, the court sent plaintiff a courtesy copy of the docket sheet, which (again) reflects the failed service on defendants Whipple, Jones, Basket, and Cusack. *Dkt. No. 137.*It is not the court's obligation to affirmatively notify plaintiff of such circumstances and prod him into action. Instead it is the responsibility of plaintiff, who is an experienced litigator, to keep apprised of the status of his action.

Based upon a review of the record, I am unable to find good cause justifying plaintiff's failure to effectuate timely service, and find no sufficient basis presented to exercise my discretion in favor of extending the governing period of service. Accordingly, because this court has never acquired jurisdiction over them, the complaint should be dismissed as

against those defendants, without prejudice. *See Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S.Ct. 242, 90 L.Ed. 185 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."); *accord, Osrecovery, Inc. v. One Group Int'l, Inc.,* 234 F.R.D. 59, 60 (S.D.N.Y.2005).

**I.** *Status of the Doe Defendants*

**\*23** Plaintiff's amended complaint names John and Jane Does as defendants. *See generallyDkt. No. 45.*In his initial order addressing plaintiff's original complaint, Judge McAvoy instructed plaintiff to take reasonable steps through discovery to ascertain the names of the unidentified defendants. *Dkt. No. 5 at 22.* The court also warned plaintiff that the failure to ascertain the Doe defendants' identities "so as to permit the timely amendment of the Complaint and service of process" would result in dismissal of the claims asserted against those individuals. *Id.* at 22–23. Discovery is now closed, and plaintiff has not identified or timely served the Doe defendants. Accordingly, I recommend that plaintiff's claims asserted against those individuals be dismissed.

**IV.** *SUMMARY AND RECOMMENDATION*

The extensive allegations set forth in plaintiff's amended complaint give rise to a mixture of claims, some of which are potentially cognizable and others that are subject to dismissal at this juncture. Plaintiff's damage claims against the defendants in their official capacities are precluded by the Eleventh Amendment and should be dismissed. To the extent plaintiff's complaint asserts claims based solely upon verbal harassment and threats, those claims are also subject to dismissal. In addition, Plaintiff's denial of access to the court claims are similarly subject to dismissal based both upon his failure to establish that (1) one of the defendants was personally involved in the misplacement of his legal documents, and (2) the other two defendants acted with the requisite mental state. Further, plaintiff's claims against defendants Fischer and Wright are subject to dismissal based upon the lack of their personal involvement in the conduct forming the basis for plaintiff's claims against them. Additionally, plaintiff's deliberate medical indifference claims asserted against defendants Atkinson, Bellnier, Chesbrough, Clemons, Colvin, Fairchild, Holmes, Johnson, Lempke, Parmer, Perez, Prebalick, Rock, Roew, Smith, Thomas, Weinstock, and Weissman are subject to dismissal based upon plaintiff's failure to meet the governing standard. Plaintiff's claims against defendants Whipple,

Jones, Basket, and Cusack are subject to dismissal, without prejudice, based upon the fact that those defendants have not appeared in the action and were not served within the requisite time and plaintiff has failed to show good cause to why that time, should be extended. Finally, the claims against the John Doe defendants are now subject to dismissal based on plaintiff's failure to identify and timely serve them. Defendants are not, however, entitled to summary dismissal of plaintiff's procedural due process claims at this procedural juncture. Based upon the foregoing, is it hereby respectfully

RECOMMENDED that defendants' motion for partial summary judgment (*Dkt. No. 174* ), be GRANTED, in part, and that the following claims be dismissed, with prejudice:

> **\*24** (1) Plaintiff's damage claims against the defendants in their official capacities,
>
> (2) Any cause of action based solely upon verbal harassment and threats,
>
> (3) Plaintiff's denial of court access claims,
>
> (4) Plaintiff's free exercise and RLUIPA claim asserted against defendant Bellnier,
>
> (5) Plaintiff's failure to protect claim asserted against defendant Colvin,
>
> (6) Plaintiff's failure to protect claim asserted against defendant Lempke,
>
> (7) Plaintiff's deliberate medical indifference claims asserted against defendants Atkinson, Bellnier, Chesbrough, Clemons, Colvin, Fairchild, Holmes, Johnson, Lempke, Parmer, Perez, Prebalick, Rock, Roew, Smith, Thomas, Weinstock, and Weissman; and
>
> (8) Plaintiff's claims against all of the John Doe defendants; and it is further

RECOMMENDED that plaintiff's claims against Whipple, Jones, Basket, and Cusack be DISMISSED, without prejudice, based upon the fact that those defendants were not served with the summons and complaint within sixty days of the filing of plaintiff's complaint; and it is further hereby

RECOMMENDED that, except as to the foregoing, defendants' motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Slip Copy, 2015 WL 1246049

Footnotes

1   It now appears that the plaintiff was improvidently granted IFP status because, prior to commencing this action, he had accumulated three strikes for purposes of 28 U.S.C. § 1915(g). Specifically, the following three actions filed by the plaintiff while incarcerated were dismissed on initial review pursuant to 28 U.S.C. § 1915(d), which was amended and recodified in 1996 as 28 U.S.C. § 1915(e): (1) *Shepherd v. Conroy,* No. 95–CV–8385, *Dkt. No. 3* (S.D.N.Y. filed Oct. 2 1995); (2) *Shepherd v. Fraisher,* No. 96–CV–1525, *Dkt. No. 3* (S.D.N.Y. filed Mar. 4, 1996); and (3) *Shepherd v. Harwood,* No. 96–CV–6413, *Dkt. No. 3* (S.D.N.Y. filed Aug. 23, 1996). The issue, however, is now moot. Pursuant to the inmate authorization form signed by the plaintiff at the outset of the action, the full amount of the applicable filing fee has now been collected. Docket Entry Dated Aug. 30, 2011.

2   In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

3   Although defendants, through their pending motion, seek wholesale dismissal of certain of plaintiff's claims, they also request dismissal of other causes of action as against several defendants based on a lack of personal involvement. For that reason, the following recitation addresses all plaintiff's claims, rather than only those of which defendants seek dismissal.

4    Plaintiff's amended complaint names a "Corrections Officer Jones" and a "Sgt. Jones" as defendants. *See, e.g., Dkt. No. 45 at 1,* 2, 3–4, 5, 22, 29, 30. It is clear that plaintiff asserts only an excessive force claim against defendant Corrections Officer Jones (referred to as "defendant Jones" for purposes of this report) based on the alleged sexual assault during the pat frisk. *See id.* at 3–4, 29. Defendant Sergeant Jerry Jones (referred to as "defendant Sgt. Jones") is sued for his alleged failure to protect plaintiff from the alleged use of excessive force by defendants Prebalick, Cioffa, and Evans, as well as his involvement in providing alleged inadequate medical treatment to plaintiff. *Id.* at 5, 22, 30.

5    Plaintiff's amended complaint does not identify the correctional facility in which these alleged incidents occurred.

6    Plaintiff alleges that he informed defendant Bellnier about the missing meal, and that defendant Bellnier advised plaintiff that he would look into the matter. Plaintiff does not, however, allege that defendant Bellnier caused the meal to not be served or that he failed to take appropriate action in response to plaintiff's complaint. *Dkt. No. 45 at 6.*

7    Plaintiff asserts the excessive force claims against defendants Colvin and Lempke based on their roles as supervisors.

8    Plaintiff asserts the due process claims against defendants Bezio and Fischer based on their roles as supervisors.

9    Plaintiff asserts the deliberate medical indifference claims against defendants Bellnier, Rock, Lempke, Colvin, Bellamy, Fischer, Wright, and Artus based on their roles as supervisors. In addition, plaintiff asserts the deliberate medical indifference claims against defendants Johnson, Weinstock, Weissman, Hawthorne, and Smith based on their capacities as supervisors, as well as their direct role in treating plaintiff.

10   Plaintiff asserts the retaliation claims against defendants Lempke and Colvin based on their roles as supervisors.

11   Plaintiff asserts the free exercise and RLUIPA claims against defendants Artus, Rock, Bellnier, Fischer, Lempke, and Colvin based on their roles as supervisors.

12   Plaintiff asserts the denial of access to the courts claims against defendants Lempke and Colvin based on their capacities as supervisors.

13   Plaintiff's amended complaint explicitly sets forth twenty-nine causes of action. *Dkt. No. 45 at 29–33.* Those causes of action, however, are not organized in any meaningful or logical manner. Accordingly, the eight categories of claims listed above are intended to consolidate plaintiff's causes of action as they are asserted in the amended complaint. In addition, based on my review of the pleading, and mindful of my obligation to extend special solicitude to *pro se* litigants, I have construed the amended complaint to assert additional causes of action not expressly identified by the plaintiff. By way of example, although none of the twenty-nine listed causes of action assert an excessive force claim against defendants Cioffa and Evans, in the body of the complaint, specifically paragraph twenty, plaintiff alleges that defendants Prebalick, Cioffa, and Evans used force against him after he fell by slamming him on the ground, picking him up off of the ground, and throwing him into his cell. *Dkt. No. 45 at 5.*

14   There is no indication in the court's records that defendants Whipple, Jones, Basket, or Cusack were served with the summons and complaint or otherwise appeared in the action. For this reason, and as is discussed more completely below in Part III.H. of this report, I recommend that plaintiff's claims against those defendants be dismissed.

15   Plaintiff's opposition papers include a response to defendants' statement of material facts not in dispute, submitted pursuant to rule 7.1(a)(3) of the local rules of practice for this court. *Dkt. No. 179.* That response, however, fails to comply with the governing local rule because it contains only blanket denials of certain of the facts alleged by the defendants not to be controverted. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Each denial [in the non-moving party's response] shall set forth a specific citation to the record where the factual issue arises."). Under these circumstances, where plaintiff was notified both by the court and defendants of the consequences of failing to properly respond to defendants' motion, Dkt. Nos. 174–1, 176, the court could deem those facts that are only subject to a blanket denial to be admitted by the plaintiff. *Elgamil v. Syracuse Univ.,* No. 99–CV–611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn J.) (listing cases); *see also Monahan v. N.Y. City Dep't of Corrs.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing district courts' discretion to adopt local rule 7.1(a)(3); *Ketchuck v. Boyer,* No. 10–CV–0870, 2011 WL 5080404, at *2 (N.D.N.Y. Oct. 25, 2011) (McAvoy, J.) ("[T]he responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly."(listing cases)).

16   Plaintiff's complaint requests only monetary relief, and specifically does not seek declaratory or injunctive relief.

17   Some of the specific allegations set forth in the amended complaint regarding verbal harassment include the following: (1) defendant Bower told plaintiff he would be sexually harassed if he continued writing grievances, *Dkt. No. 45.* at 4; (2) defendant Prebalick told plaintiff that he was making things harder on himself by writing grievances, made a derogatory statement regarding his hair, and spread rumors throughout the prison that he was a child molester, *id.* at 5, 9–10; (3) defendant Maynard threatened to "beat [plaintiff] up" if he did not provide requested information, *id* at 7; (4) defendant Carlee used profane language toward plaintiff, *id.* at 8; (5) defendant Holmes threatened to issue a misbehavior report to plaintiff if he requested sick call for non-emergency purposes, *id.* at 15; and (6) defendant Atkinson told the plaintiff that he would receive minimal to no medical care, *id.* at 23.

18    The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Specifically, under *Wolff,* the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense.*Wolff v. McDonnell,* 418 U.S. 539, 564–69, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004). To pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner the support of at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Luna,* 356 F.3d at 487–88. In addition, the due process clause of the Fourteenth Amendment also guarantees that "[a]n inmate subject to a disciplinary hearing is entitled to ... an impartial hearing officer."*Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996) (citing *Wolff,* 418 U.S. at 570–71).

19    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

20    In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999).

21    Plaintiff's amended complaint also alleges that, as a result of the determination from the disciplinary hearing on April 26, 2008, defendant Cunningham, the hearing officer, recommended that plaintiff lose good time credits. *Dkt. No. 45 at 13.* Because there is no record evidence to suggest that the determination was reversed, it is not clear that plaintiff's due process claim is viable absent a waiver, pursuant to *Peralta v. Vasquez,* 467 F.3d 98 (2d Cir.2006), relinquishing any claims affecting the length of his confinement, including the loss of good time credits associated with the disciplinary hearing on April 26, 2008. Because defendants have not addressed this in their motion, however, plaintiff was not on notice of this issue and, consequently, not provided an opportunity to respond. Accordingly, I make no any finding with respect to whether plaintiff must first relinquish any claims affecting the length of his sentence before proceeding with his due process claim regarding the hearing on April 26, 2008.

22    In addition, in plaintiff's opposition to defendants' motion for summary judgment, he contends that, as a result of the disciplinary SHU confinement, he

> lost amenity in his living conditions, being confined 23 hhours [sic] a day, deprived of his personal property, the liberty to attend threaputic [sic] programs, work, attend out door [sic] recreation in a congreated [sic] setting with the ability to engage in recreational activities, attend religious services and family celebration, attend religious services as well [as] access the law library and unable to participate in the family reunion programs.

> *Dkt. No. 179–1 at 23.* These allegations, which describe the specific conditions of plaintiff's SHU confinement, only bolster those contained in plaintiff's amended complaint regarding whether plaintiff was deprived a sufficient liberty interest under *Sandin,* and defendants have not challenged them by way of a reply to plaintiff's opposition to the pending motion. Although the allegations are contained in plaintiff's unsworn memorandum of law in support of his opposition, courts in this circuit routinely consider such statements in connection with a motion for summary judgment where the proponent of the statements is a pro se litigant, mindful of the duty to extend special solicitude to those individuals. *See, e.g., Riehl v. Martin,* No. 13–CV–0439, 2014 WL 1289601, at *6 (N.D.N.Y. Mar.31, 2014) (Sharpe, J., *adopting report and recommendation by* Dancks, M.J.) (citing cases).

23    The correct spelling of this individual's name is unknown. Plaintiff's amended complaint refers to him as "Anuntic," "Annutice," "Annutcie," and "Annuci." *Dkt. No. 45 at 1,* 19, 26, 31. In their motion, defendants refer to this individual as "Amatucci." *Dkt. No. 174–4 at 18.* In his response to the defendants' motion, plaintiff also refers to this individual as "Amatucci." *Dkt. No. 179–1 at 23.* Because the parties apparently agree on this last spelling, I have adopted it for purposes of this report and recommendation.

24    The correct spelling of this individual's name is unknown. Plaintiff's amended complaint refers to him as "Bellinier," "Bellinuer," "Bellniuer," "Bellnuer," and "Bellinner." *Dkt. No. 45 at 1, 2,* 6, 8, 18, 27, 29, 33. In their motion, defendants refer to this individual as "Bellnier." *Dkt. No. 174–4 at 18.* In his response to the pending motion, plaintiff also refers to this individual as "Bellnier" and "Belliner." *Dkt. No. 179–1 at 23.* Because the parties apparently agree on "Bellnier," I have adopted it for purposes of this report and recommendation.

25    Defendants specifically seek dismissal of plaintiff's deliberate medical indifference claim as against defendants Atkinson, Bellnier, Chesbrough, Clemons, Colvin, Fairchild, Fischer, Holmes, Johnson, Lempke, Parmer, Perez, Prebalick, Rock,

Roew, Smith, Thomas, Weinstock, and Weissman. *Dkt. No. 174–4 at 7.* As was noted above in Part II. of this report, the court has construed plaintiff's amended complaint as asserting a deliberate medical indifference claim against all of the individuals identified by defendants in their motion, plus defendants Lashaway, Cusack, Sgt. Jones, Hawthorne, Wright, Amatucci, and Artus. In Part III.E., above, the court concluded that the record evidence does not disclose a genuine dispute of material fact regarding whether defendants Fischer and Wright were personally involved in the alleged inadequate treatment received by plaintiff. For this reason, I have not analyzed the merits of that claim as it relates to defendants Fischer and Wright. In addition, because defendants do not seek dismissal of the deliberate medical indifference claim asserted against defendants Lashaway, Cusack, Sgt. Jones, Hawthorne, Amatucci, and Artus, I have not analyzed the merits of that claim to the extent it is asserted against those individuals.

26    To the extent plaintiff intends to assert a separate cause of action for the alleged falsification of his medical records, in his decision and order issued on May 11, 2011, Judge McAvoy advised plaintiff that "a claim that medical records were falsified does not state a constitutional violation."*Dkt. No. 5 at 14* n. 5. Accordingly, insofar as plaintiff's amended complaint is construed as asserting an independent claim for falsifying medical records, I recommend it be dismissed.

27    Because I have recommended dismissal of the deliberate medical indifference claim as against defendants Atkinson, Bellnier, Chesbrough, Clemons, Colvin, Fairchild, Holmes, Johnson, Lempke, Parmer, Perez, Prebalick, Rock, Roew, Smith, Thomas, Weinstock, and Weissman, I have not addressed defendants' alternative argument that those individuals are entitled to qualified immunity from suit.

28    Specifically, Rule 4(m) provides that,

> [i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice ... or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period[.]

Fed.R.Civ.P. 4(m). The court's local rules of practice shorten the time for service from the 120–day period under Rule 4(m) to sixty days. N.D.N.Y. L.R. 4.1(b).

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Tirado v. Shutt,   S.D.N.Y.,   February 23, 2015

2005 WL 1026551
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Andre SMITH, Plaintiff,

v.

THE CITY OF NEW YORK, Captain Kennedy
# 425, Corrections Officer Bennett #
12929, Warden Mark Farsi, Defendants.

No. 03 Civ. 7576(NRB).
|
May 3, 2005.

**Attorneys and Law Firms**

Andre Smith, Southport Correctional Facility, Pine City, NY,
Plaintiff pro se.

Michael Chestnov, Assistant Corporation Counsel, New
York, NY, for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, J.

 *1  Plaintiff Andre Smith, presently incarcerated at
the Southport Correctional Facility in Pine City, New
York, brings this action *prose* under 42 U.S.C. § 1983
against the City of New York, Captain Anthony Kennedy
("Captain Kennedy"), Corrections Officer Dwayne Bennett
("C.O.Bennett"), and Warden Mark Farsi ("Warden Farsi").
Plaintiff claims that defendants destroyed his personal
property and legal papers in retaliation for his filing a federal
lawsuit against another corrections officer, thereby interfering
with his right of access to the courts and depriving him
of his property without due process. Plaintiff brings suit
under 42 U.S.C. § 1983 seeking compensatory and punitive
damages for violations of his First, Fourth, and Fourteenth
Amendments constitutional rights.

Plaintiff filed his initial complaint against defendants on
July 11, 2003, and an amended complaint ("Am.Compl.") on
September 28, 2003. On October 20, 2004, defendants moved

for summary judgment pursuant to Fed.R.Civ.P. 56. For the
reasons discussed below, defendants' motion is granted in part
and denied in part.

## BACKGROUND [1]

At all times relevant to this complaint, plaintiff was
incarcerated in the Central Punitive Segregation Unit at
the Otis Bantum Correction Center on Rikers Island. On
the morning of July 8, 2003, plaintiff left Rikers Island
for arraignment in a criminal proceeding. *See* Pl.'s Dep. at
86. When he returned to his housing area ("2-South") at
approximately 6:00 p.m., plaintiff's cell and locker were open
and C.O. Bennett informed plaintiff that his property had been
moved from Cell 14 to Cell 15. *Id.* at 91, 93.Plaintiff claims
that prison regulations required him to be present when his
property was moved. When plaintiff asked why his property
was taken, C.O. Bennett replied with something to the effect
of, "I don't like you, I'm pretty sure you know why."*Id.* at
94-95.

After learning that C.O. Bennett had moved his belongings,
plaintiff demanded to speak with Captain Kennedy, C.O.
Bennett's supervisor. When Captain Kennedy arrived, he
allegedly told plaintiff "things happen, this is our house."Am.
Compl. ¶ 19. [2] Eventually, plaintiff requested to see the
property removed from his cell and locker. Pl.'s Dep. at
113-14. When C.O. Bennett retrieved plaintiff's property,
several items were missing. *Id.* at 118.In addition to
approximately nine hundred dollars worth of personal
property, [3] plaintiff was missing a substantial amount of his
legal materials from his cell and locker. Am. Compl. ¶¶ 15-16.

At the time of the incident, plaintiff had one criminal case [4]
and two civil lawsuits pending in this district. Both of
plaintiff's civil lawsuits involved incidents at plaintiff's prison
facility, and both named Rikers Island corrections officers
as defendants. [5] One of plaintiff's cases named a corrections
officer Jordan ("C.O.Jordan"), another corrections officer
assigned to plaintiff's housing unit, as a defendant. Plaintiff's
complaint alleges that C.O. Jordan and C.O. Bennett are
friends from working together in 2-South, and that C.O.
Bennett's actions were in retaliation for plaintiff naming C.O.
Jordan in the lawsuit. All of the corrections officers named by
plaintiff in his two lawsuits were served copies of plaintiff's
complaints by U.S. Marshals on July 8, 2003, the date of the
current incident. [6]

**\*2** The specific legal materials allegedly destroyed varied for each case. In his criminal case, plaintiff lost his copies of numerous motions drafted by his lawyer, along with his copy of his grand jury minutes. Pl.'s Dep. at 119. Through his lawyer, plaintiff was able to secure replacement copies of the legal documents within approximately three weeks, well before the case went to trial in November of 2003. *Id.* at 120, 204-05.

In the two civil cases, both filed on June 2, 2003, the plaintiff lost copies of his complaints, docket sheets, a *prose* book, a jailhouse lawyer's manual, and different motions that he was "supposed to be looking over and studying because [he] was pro se."*Id.* at 121.In one case, No. 03 Civ. 3989, plaintiff was able to replace the destroyed documents within one week, but plaintiff complains that "instead of [the parties] settling the case at a specific time, [they] had to wait."*Id.* at 123-24.In the other case, No. 03 Civ. 3979, plaintiff allegedly lost copies of various documents sent by defendants' counsel. *Seeid.* at 124.Plaintiff does not elaborate how the loss has impacted that case, and concedes that he is not certain that he even possessed these documents on July 8, 2003, the date of the alleged incident. *Seeid.* at 128.As of the date of this opinion, case No. 03 Civ. 3979 remains pending before Chief Judge Mukasey.

### DISCUSSION

Between his complaint and deposition testimony, plaintiff has alleged three constitutional claims under § 1983:(1) retaliation for the exercise of a constitutionally protected right; (2) denial of access to the courts; and (3) deprivation of property without due process. [7] These claims are discussed in turn below.

### I. Standard for Summary Judgment

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The Federal Rules of Civil Procedure mandate the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ."*Celotex Corp. v. Catrett,* 477

U.S. 317 (1986). In reviewing the record, we must assess "the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party."*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944, 957 (2d Cir.1993).

In order to defeat such a motion, the nonmoving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, (1986). An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Id. at 248* (internal quotation marks omitted). In addition, when deciding a motion for summary judgment, a district court may only consider evidence that would be admissible at trial. *SeeNora Beverages v. Perrier Group of America, Inc.,* 269 F.3d 114, 123 (2d Cir.2001).

### II. First Amendment Retaliation

**\*3** Plaintiff alleges that the defendants deprived him of property in retaliation for his filing federal lawsuits against other corrections officers at Rikers Island. Such actions are prohibited under the Constitution because "retaliatory actions may tend to chill individuals' exercise of constitutional rights."*ACLU v. Wicomico County,* 999 F.2d 780, 785 (4th Cir.1993).

Courts approach such retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official-even those not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act."*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). To survive summary judgment, a plaintiff alleging retaliation must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."*Dawes,* 239 F.3d at 492. *SeealsoWinthrow v. Donnelly,* 356 F.Supp.2d 273, 275 (W.D.N.Y.2005) (applying *Dawes* standard to summary judgment motion); *Contes v.. Porr,* 345 F.Supp.2d 372, 377-78 (S.D.N.Y.2004) (same). Since access to the courts is an established constitutional right, *Bounds v. Smith,* 430 U.S. 817, 821 (1977), we turn to the second and third prongs of the retaliation test.

Adverse action is conduct "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes,* 239 F.3d at 493. What constitutes adverse action is context specific, and "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before [retaliatory] action taken against them is considered adverse." *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (2d Cir.1999).*De minimis* acts of retaliation do not chill the exercise of constitutional rights, and thus are insufficient to support a First Amendment retaliation claim. *See Davidson v. Chestnut,* 193 F .3d 144, 150-51 (2d Cir.1999).

The adverse action alleged by plaintiff involves the destruction of his legal papers and his personal property. This action was specifically directed against plaintiff, was in violation of prison regulations, and deprived him of a substantial amount of personal property. Such retaliatory destruction of a prisoner's personal property has previously been found substantial enough to qualify as an adverse action. *See Soto v. Iacavino,* No. 01 Civ. 5850, 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003). In addition, the retaliatory conduct alleged here involves more than just the destruction of personal property. Instead, the conduct appears designed specifically to deter plaintiff's exercise of his constitutional rights through the destruction of his legal papers. Accordingly, we find that plaintiff has established an adverse action substantial enough to satisfy the second prong of the retaliation test. *See Salahuddin v. Mead,* No. 95 Civ. 8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002).

**\*4** For the third prong, plaintiff must establish a casual connection between the filing of his lawsuits and the retaliatory event. "The causal connection must be sufficient to support the inference 'that the speech played a substantial part' [in the adverse action]." *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000) (quoting *Ezekwo v. NYC Health & Hosps. Corps.,* 940 F.2d 775, 780-81 (2d Cir.1991). With respect to C.O. Bennett, plaintiff has provided direct evidence of the connection between the two events as well as a temporal connection. First, plaintiff alleges that C.O. Bennett's statement "I don't like you, I'm pretty sure you know why" is evidence that plaintiff's property was destroyed because of his lawsuit against C.O. Bennett's co-worker, C.O. Jordan. Taken alone, this statement might not provide sufficient evidence to survive summary judgment, as C.O. Bennett has provided an affidavit that he had no knowledge of plaintiff's lawsuit against Officer Jordan. *See* Defs.' Notice of Motion for Summ. J., Ex. F (Aff. of Dwayne Bennett).

However, when this alleged statement is combined with circumstantial evidence regarding the timing of the incident, plaintiff has established genuine issues of material fact regarding the reason for the destruction of his property. *See Colon v. Coughlin,* 58 F.3d 865, 872-73 (2d Cir.1995) ("In light of the combination of circumstantial and direct evidence of retaliation that [plaintiff] presents, we conclude that his claim, however valid it may ultimately prove to be, is sufficiently strong to defeat the motion for summary judgment.").

First, plaintiff has established that his property was destroyed on the very same day that the other Rikers Island corrections officers were served with the plaintiff's complaints in his civil suits. Defs.' Ex. C, D. [8] Although plaintiff had filed his lawsuits in early June, it is quite likely that July 8, 2003, is the first date that the individual corrections officers learned they had been named in plaintiff's lawsuits. Second, plaintiff alleges that C .O. Jordan had been working in 2-South immediately prior to C.O. Bennett's shift on the day of the incident, providing C.O. Jordan with an opportunity to discuss with C.O. Bennett plaintiff's lawsuits. Pl.'s Dep. at 95. In light of this highly suspicious timing and C.O. Bennett's alleged statement, a reasonable jury could find a causal connection between the destruction of plaintiff's property and plaintiff's protected action. Accordingly, defendants' motion for summary judgment on the retaliation claim is denied as to C.O. Bennett.

With respect to the other named individual defendants, Captain Kennedy and Warden Farsi, plaintiff must establish their personal involvement in the retaliation in order to sustain a claim under section 1983. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). The Second Circuit has described the personal involvement of a supervisory defendant that is required to sustain a claim under section 1983:

> **\*5** The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Plaintiff does not claim either defendant actually destroyed his property. Instead, plaintiff cites two statements by Captain Kennedy and Warden Farsi as evidence of their complicity in the retaliatory action, implying either that they directly ordered the retaliation, or at least were aware of it and failed to act as C.O. Bennett committed the constitutional violation. With respect to Captain Kennedy, plaintiff alleges in his complaint that Captain Kennedy told him "things happen, this is our house" after the incident. Am. Compl. ¶ 19. During his deposition, plaintiff further argued that "[Captain Kennedy] is a supervisor, he had-has to know everything that's going on," and reasoned it was "possible" that Captain Kennedy ordered the retaliation. Pl.'s Dep. at 134. As for Warden Farsi, plaintiff states that C.O. Bennett told plaintiff that Warden Farsi had said to C.O. Bennett "this inmate has been bringing too much attention to this jail. Eventually he's going to find out whose house this is." Am. Comp. ¶ 20. At his deposition, plaintiff further stated that "one of his officers is being sued; you would think that this warden would know about it."*Id.* at 163.

Plaintiff's evidence of both defendants personal involvement is minimal, and it is quite possible that plaintiff merely assumes Captain Kennedy's and Warden Farsi's involvement based on their respective positions within the prison. If so, plaintiff's claim against the defendants will ultimately be unsuccessful. *SeeColon,* 58 F.3d at 874. When ruling on a summary judgment motion, however, the Court must view the evidence in the light most favorable to the nonmovant. Given the alleged statements as well as the circumstantial evidence, a reasonable jury could believe that the defendants were personally involved in the violation. Moreover, the defendants have not submitted any evidence that Captain Kennedy and Warden Farsi were not involved in the incident, failing to obtain affidavits from either regarding their alleged involvement. As we have stated before, "[t]he Court is not so sanguine about its ability to identify a plaintiff's false assertions that it will grant summary judgement to defendants who are unwilling to swear that they did not make the incriminating statements alleged."*Allah v. Greiner,* No. 03

Civ. 3789, 2004 WL 1713811, at * 5 (S.D .N.Y. July 29, 2004).

**\*6** Accordingly, the motion for summary judgment on plaintiff's retaliation claim against Captain Kennedy and Warden Farsi is also denied. If the defendants can present the Court with affidavits or other evidence refuting plaintiff's allegations, the Court will consider another summary judgment motion on these claims.

We caution plaintiff that our denial of defendants' summary judgment motion does not reflect an opinion about the ultimate merits of plaintiff's case. At trial, plaintiff will likely be faced with direct testimony from C.O. Bennett denying any knowledge of plaintiff's lawsuits, and from Captain Kennedy and Warden Farsi denying any personal involvement in the alleged retaliation.[9] A reasonable jury might chose to believe such testimony rather than the primarily circumstantial evidence of retaliation that plaintiff has provided so far. Unlike the present motion, plaintiff's evidence will not be viewed in its most favorable light at trial, and the burden will be on him to prove his case against the defendants. Weighed equally against defendants' evidence, plaintiff's retaliation claim might very well fail.

Whether or not plaintiff will be ultimately be successful in convincing a jury, however, is not for this Court to decide by motion. *Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 54 (2d Cir.1998) ("[S]ummary judgment may not be granted simply because the court believes the plaintiff will be unable to meet his or her burden of persuasion at trial."). Based on the current record viewed in the light most favorable to the plaintiff, a reasonable jury could find that the defendants retaliated against him for the filing of lawsuits against Rikers Island corrections officers. Accordingly, defendants' motion for summary judgment on plaintiff's claim of retaliation is denied.

### III. Denial of Access to the Courts

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts."*Bounds v. Smith,* 430 U.S. 817, 821 (1977). Prisoners must have a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."*Id.* at 825.The active interference of prison officials in the preparation or filing of legal documents may constitute denial of access to the courts. *SeeLewis v. Casey,* 518 U.S. 343, 350 (1996). However, a prisoner must show an actual injury

in order to sustain a claim for denial of access to the courts. *Id.* at 349.Actual injury occurs only when "the loss of [plaintiff's] materials prejudiced his ability to pursue a legal claim."*Santiago v. N.Y.C. Dep't of Corr.,* No. 97 Civ. 9190, 2003 WL 1563773, at *5 (S.D.N.Y. Mar. 6, 2003); *seealsoDavis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003). Accordingly, to survive summary judgment, plaintiff must introduce evidence to establish that his ability to pursue his criminal and civil cases was hindered by the destruction of his legal papers. *See, e.g.,Thomas v. Thomas,* No. 97 Civ. 4541, 2000 WL 307391, at *3 (S.D.N.Y. Mar. 23, 2000).

## A. The Criminal Case

 *7 A prisoner who is represented by counsel on criminal charges suffers no actual injury to his access to the courts if he is able to present his legal claims through his attorney. *SeePerez v. Metro. Corr. Ctr. Warden,* 5 F.Supp.2d 208, 211-12 (S.D.N.Y.1998); *Santiago,* 2003 WL 1563773, at *5; *Shepherd v. Fraisher,* No. 96 Civ. 3283, 1999 WL 713839, at *5 (S.D.N.Y. Sept. 14, 1999). Despite the loss of plaintiff's personal copies of his criminal papers, plaintiff's was afforded a full opportunity to pursue his criminal defense through his legal representative. Plaintiff's counsel was able to move on plaintiff's behalf and ultimately took plaintiff's case to trial in November of 2003. Pl.'s Dep. at 205. Plaintiff has not alleged that his attorney's ability to present his claims was fundamentally impeded by the loss of plaintiff's copies of the documents, just that it was an "inconvenience" to replace them. Pl.'s Dep. at 120. Accordingly, plaintiff had a reasonably adequate opportunity to present his claim via counsel, and has not established any actual impact on his defense in his criminal case from the destruction of his legal documents. *Perez,* 5 F.Supp.2d at 211.

## B. The Civil Cases

With respect to his civil cases, plaintiff has also failed to establish any actual injury from the destruction of his papers. First, both cases were only in their initial stages when plaintiff's legal mail was destroyed. As discussed above, plaintiff's complaints had just been served on defendants on the day of the incident. As such, it is highly unlikely in either case that there were any documents, either from the court or from defendants, that required plaintiff's response or immediate consideration when his legal papers were destroyed. Second, plaintiff was able to replace most of the documents within a relatively short period, and has articulated nothing more than minor delays from the loss of the documents. In case No. 03 Civ. 3989, plaintiff received

a favorable settlement, and claims only that the case might have settled earlier if not for the destruction of the documents. Plaintiff's other case alleging assault by a corrections officer, No. 03 Civ. 3979, is still active and awaiting disposition nearly two years after the alleged incident.

The constitutional right of reasonable access to the courts is not violated by "[i]nterferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts."*Jermosen v. Coughlin,* No. 89 Civ. 1866, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995). Plaintiff has not established any injury to his legal claims from the destruction of his papers other than the alleged delays. Accordingly, there are no genuine issues of material fact regarding plaintiff's claim of denial of access to the courts, and we grant summary judgment to the defendants on this issue.

## IV. Deprivation of Property Without Due Process

A quintessential aspect of due process is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)). However, when the deprivation is based upon the "random and unauthorized" act of a state employee, an adequate post-deprivation remedy is sufficient to satisfy due process. *Parratt v. Taylor,* 451 U.S. 527, 541 (1981), *overruled on other grounds,Daniels v. Williams,* 474 U.S. 327 (1986); *see alsoHudson v. Palmer,* 468 U.S. 517, 533 (1984) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of procedural requirements of Due Process Clause if a meaningful postdeprivation remedy for the loss is available"); *Hellenic American Neighborhood Action Comm. v. The City of New York,* 101 F.3d 877, 880 (2d Cir.1996). In *Parratt,* the Court recognized the impracticability of providing predeprivation hearings for tortious deprivations of property as "the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place."*Id.* Accordingly, "[w]here a pre-deprivation hearing is impractical and a post-deprivation hearing meaningful, the State satisfies its constitutional obligations by providing the latter."*Giglio v. Dunn,* 732 F.2d 1133, 1135 (2d Cir.1984).

 *8 However, not all unauthorized deprivations of property can be remedied by postdeprivation hearings. The Second Circuit has distinguished between the random

and unauthorized acts of low-level state employees and certain unauthorized deprivations caused by high-level state officials. *Dwyer v. Regan,* 777 F.2d 825, 832-33 (2d Cir.1985). Recognizing that high-level policymakers have "final authority over the decision-making process," a high-ranking official's "ability to anticipate the actions that he intended [is] ... fairly attributable to the State itself."*Id.* at 833.As such, the acts of high-ranking officials, even if in violation of state procedures, are not "random and unauthorized" withing the meaning of *Parratt* and *Hudson.*Because the State can reasonably be expected to foresee the actions of its high-ranking senior officials, due process will not be satisfied by postdeprivation remedies for their actions. *Id.*

In the instant case, it is difficult to imagine how the State could have anticipated defendants' actions, or what type of predeprivation hearing the State could have provided plaintiff. Moreover, plaintiff has offered no evidence that the actions was anything other than "random and unauthorized" within the meaning of both *Parratt* and *Hudson.*Even assuming *arguendo* that Captain Kennedy and Warden Farsi were somehow involved in the deprivation, they are not the type of high-level policymakers whose actions are fully attributable to the State. *Mejia v. New York City Dep't of Corr.,* No. 96 Civ 2396, 1999 WL 138306, at *2 (E.D.N .Y. Mar. 5, 1999) (assistant warden and captain named in action do not qualify as policymakers). Accordingly, the availability of postdeprivation remedies is a defense to plaintiff's due process claim.

It is well established that New York provides inmates with the opportunity for a meaningful postdeprivation hearing by way of state law causes of action for "negligence, replevin, or conversion which could fully compensate [the plaintiff] for his alleged property loss ."*Cook v. City of New York,* 607 F.Supp. 702, 704 (S.D.N.Y.1985); *see also Dove v. City of New York,* No. 99 Civ. 3020, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000); *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995)."[P]laintiff's failure to take advantage of the state [law] does not convert his cause of action into a constitutional due process claim."*Smith,* 901 F.Supp. at 647;*see also Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987) ("[S]ection 1983[can]not be made a vehicle for transforming mere civil tort claims into constitutional injuries.").

Because the deprivation of plaintiff's property was random and unauthorized and plaintiff had access to meaningful postdeprivation remedies, due process was not violated. As such, defendants are entitled to summary judgment on this claim.

**V. Plaintiff's Claims Against the City of New York**

**\*9** In order to hold a municipality liable as a "person" under section 1983, the plaintiff must "first prove the existence of a municipal policy or custom to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection-an 'affirmative link'-between the policy and the deprivation of his constitutional rights."*Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985).

Plaintiff has failed to establish that the alleged constitutional violations were a result of any city policy or practice. Plaintiff's complaint alleges only that the city "hired unqualified people and failed to adequately train them."Am. Compl. ¶ 25. First, plaintiff has offered no evidence to show that the City of New York has a policy of hiring unqualified individuals, nor has he identified any specific deficiencies in its supervision or training of its corrections officers. *See Board of the County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 409-10 (1997) (liability may attach if "violation of federal rights may be a highly predictable consequence of a [municipality's] failure [to train officers] ... to handle recurring situations"). Second, such a theory can only be the basis of section 1983 liability if the municipality's deficient conduct was the cause of plaintiff's injury. *See Morrissey v. City of New York,* 963 F.Supp. 270, 273-74 (S.D.N.Y.1997). As plaintiff has not established that any "identified deficiency in a city's [training or hiring] program" caused the his injury, *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391 (1989), we grant the defendants' motion for summary judgment on all of plaintiff's claim against the City of New York.

**CONCLUSION**

For the aforementioned reasons, defendants' motion for summary judgment is denied with respect to the plaintiff's First Amendment retaliation claim against C.O. Bennett, Captain Kennedy, and Warden Farsi, and granted with respect to the other claims against the individual defendants, and granted with respect to all claims against the City of New York.

IT IS SO ORDERED.

All Citations

Not Reported in F.Supp.2d, 2005 WL 1026551

Footnotes

1    This factual statement is based on the plaintiff's amended complaint and deposition testimony except where noted.

2    At his deposition, however, plaintiff testified that Captain Kennedy stated that he did not know where plaintiff's belongings were because C.O. Bennett had packed them. Pl.'s Dep. at 132.

3    The missing personal property included personal photographs, hygiene products, clothing, books and magazines. *See* *id.* at 192-93.

4    It is unclear from the record where the criminal case against plaintiff was filed.

5    Plaintiff's lawsuits concerned an alleged assault by a corrections officer, and an earlier incident of destruction of plaintiff's property by corrections officers. *See* *Smith v. Benston, et al.,* No. 03 Civ 3979(MBM) (S.D.N.Y. filed June 2, 2003)("No. 03 Civ 3979"); *Smith v. Robertson,* No. 03 Civ. 3989(KMW) (S.D.N.Y. Oct. 16, 2003)(order dismissing the action with prejudice due to settlement) ("No. 03 Civ 3989").

6    While it does not appear that the individual defendants were served directly by U.S. Marshals, other corrections officers at Rikers Island accepted service on their behalf on the morning of July 8, 2003. Defs.' Exs. C, D.

7    To the extent plaintiff makes a claim for violation of his Fourth Amendment rights, plaintiff's claim fails because he does not have a right to be free from searches and seizures of the property in his cell. *See* *Hudson v. Palmer,* 468 U.S. 517, 525-27, 528 n. 8 (1984) (; *Bell v. Wolfish,* 441 U.S. 520, 537 (1979)("Loss of freedom of choice and privacy are inherent incidents of confinement...."); *Salahuddin v. Mead,* No. 95 Civ. 8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002).

8    While a U.S. Marshal did not directly serve C.O. Jordan, the proof of service filed by plaintiff establishes that another corrections officer at Rikers Island, C.O. Houston, accepted service on C.O. Jordan's behalf on the morning of July 8, 2003.

9    Assuming that these defendants are not successful in any renewed motion for summary judgment they might make after submission of the required affidavits.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.    7

2015 WL 403133
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael TOLIVER, Plaintiff,

v.

Brian FISCHER, et al., Defendants.

No. 9:12–CV–00077 (MAD/ATB).
|
Signed Jan. 29, 2015.

**Attorneys and Law Firms**

Michael Toliver Wallkill, NY, Plaintiff pro se.

Office of the New York, State Attorney General, Cathy Y. Sheehan, AAG Albany, NY, Attorneys for Defendants (except Defendant North).

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

**\*1** On January 17, 2012, Plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that twenty employees of the New York State Department of Corrections and Community Supervision ("DOCCS") violated his constitutional rights during his confinement at the Shawangunk Correctional Facility ("Shawangunk"). Dkt. No. 1. By Decision and Order dated May 3, 2012, this Court dismissed, *sua sponte,* Defendants Schneiderman, Bellamy, and Prack from the action because the complaint did not state facts suggesting their personal involvement in the alleged violations of Plaintiff's constitutional rights. Dkt. No. 9 at 8–10.

On June 28, 2012, Plaintiff filed an amended complaint (Dkt. No. 27), which, by Decision and Order dated December 6, 2012 (Dkt. No. 85), this Court accepted for filing against seventeen of the original Defendants, as well as Correction Officer ("C.O.") North, who was not named in the original complaint. Liberally construed, the surviving claims in Plaintiff's amended complaint include (1) a First Amendment claim, based on Defendants' alleged filing of false misbehavior reports against Plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; (2) an equal protection claim based on alleged discrimination against Plaintiff because of his race, disability, and/or sexual orientation; (3) a conspiracy claim related to the retaliation and discrimination claims; (4) a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and (5) an Eighth Amendment claim for failure to provide adequate medical care. Dkt. No. 27 at 8–9, 35. Plaintiff seeks both monetary and injunctive relief. Dkt. No. 27 at 14.

Defendants filed a motion, pursuant to Fed.R.Civ.P. 12(b)(6), seeking dismissal of Plaintiff's amended complaint in its entirety, on behalf of all but one of the remaining Defendants. *See* Dkt. No. 134.[1] Plaintiff responded to the motion to dismiss, and defense counsel chose not to file a reply. Dkt. No. 145; Dkt. No. 150. On November 17, 2014, Magistrate Judge Baxter issued a Report–Recommendation recommending that the Court grant-in-part and deny-in-part Defendants' motion to dismiss. Dkt. No. 155.

Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's Report–Recommendation. Dkt. No. 159. Also before the Court are Plaintiff's requests for a temporary restraining order, requests for sanctions, and an order against further retaliation resulting from the current lawsuit. Dkt. Nos. 161, 163, 167 & 168. Defendants have opposed Plaintiff's motions. Dkt. No. 166.

**II. BACKGROUND**

**A. Facts and Contentions**

For an overview of the facts and contentions, refer to Magistrate Judge Baxter's Report–Recommendation. *See* Dkt. No. 155 at 3–5.

**B. Magistrate Judge Baxter's November 17, 2014 Report–Recommendation**

In his Report–Recommendation, Magistrate Judge Baxter recommended that the Court should grant Defendants' motion to dismiss in regard to Defendants Fischer, Maly, and LeClaire, and as to Plaintiff's conspiracy claim. *See* Dkt. No. 155. Magistrate Judge Baxter further recommended that the remainder of the motion to dismiss be denied. *See id.*

**\*2** Specifically, Magistrate Judge Baxter recommended that Defendants Fischer, LeClaire, and Maly should be dismissed "because [P]laintiff has not adequately alleged that they were personally involved in any constitutional violations. However, the allegations of personal involvement with respect to [D]efendants Smith and Pingott are adequate ...." Dkt. No. 155 at 6–7. Next, Magistrate Judge Baxter recommends that the retaliation charge involving Defendant Budziszewski stand, because "[t]he allegations ... state a plausible claim of retaliation that cannot be dismissed under Rule 12(b)(6)." *Id.* at 18. The Report–Recommendation did not address the retaliation charge against Defendant North, because "[D]efendant North has not appeared in this case and is not a party to the pending Rule 12(b)(6) motions ...." *Id.* at 18 n. 17.

Additionally, Magistrate Judge Baxter found that Plaintiff's equal protection claim is adequate to survive a Rule 12(b)(6) motion because Plaintiff's allegations "are sufficient to state a 'class of one' equal protection claim, and perhaps a discrimination claim based on race and/or sexual orientation."*Id.* at 22. Magistrate Judge Baxter recommended that the conspiracy claim be dismissed under the "intracorporate conspiracy doctrine," because conclusory allegations by Plaintiff of Defendants' ' 'personal' agenda" are not sufficient to plausibly suggest that Defendants acted outside the scope of their employment. *Id.* at 25.

Due to Plaintiff's allegations, including that the hearing officer said to Plaintiff "[e]very time you get a ticket you will be found guilty regardless.... I ain't fair and impartial[,]" Magistrate Judge Baxter found Plaintiff has stated a plausible denial of procedural due process claim. *Id.* at 27; Dkt. No. 27 at 57. Finally, Magistrate Judge Baxter recommended that the Court deny the motion to dismiss in regard to Plaintiff's deliberate indifference claim because, at this stage, Plaintiff's allegation "that he suffered extreme pain for approximately 30 minutes before the identified defendants allowed him to get medical attention[,]" is sufficient to survive the motion. Dkt. No. 155 at 31.

## C. Plaintiff's objections
Plaintiff first objects to the dismissal of Defendant Maly from the lawsuit. Dkt. No. 159 at 2. He "seeks to supplement the complaint to detail [additional] constitutional deprivations."*Id.* According to the Report–Recommendation, "[t]he only specific allegation in the amended complaint regarding [D]efendant Maly is that, as Acting Superintendent, he denied one of [P]laintiff's grievances...."*Id.* at 9. Plaintiff

wishes to add that "Defendant [Maly] sent plaintiff to 'S.H.U.' for *90 days* in direct retaliation to this lawsuit .... " Dkt. No. 159 at 2.

Plaintiff next objects to the dismissal of Defendant Fischer from the lawsuit. *Id.* at 3. Plaintiff has not introduced any new arguments and simply repeats arguments Magistrate Judge Baxter's Report–Recommendation has already addressed. *Id.* This includes "allowing a pattern o[f] retaliation and discrimination by ignoring plaintiff's various grievances and Article 78 proceedings."*Id.*

**\*3** Third, Plaintiff objects to the dismissal of Defendant LeClaire from the lawsuit. Dkt. No. 159 at 4. Plaintiff alleges Defendant LeClaire condoned the retaliatory conduct of officers under his command, and that he "knew or should have known of the continued constitutional violations...."*Id.*

Finally, Plaintiff objects to the dismissal of the conspiracy claim, and alleges that Defendants "had a meeting of the minds in their individual capacities for a common goal."*Id.* at 5. Plaintiff further claims that "Defendants ... conspire[d] with each other to hurt plaintiff, to keeplock plaintiff, to place plaintiff in SHU, [and] to take all privileges away from plaintiff ...." *Id.*

## D. Plaintiff's December 22, 2014, and December 29, 2014 requests for preliminary injunctive relief and sanctions
Plaintiff requests a preliminary injunction to place him in protective custody, and he requests sanctions against Defendants for each day he remains outside protective custody. Dkt. No. 161 at 3–4. Plaintiff claims he "is in danger [and he has] been forced to live in general population where [his] enemies are."*Id.* at 3. He also claims that Defendants refused to place Plaintiff back in protective custody so that he "can get physically assaulted." *Id.* at 2. Finally, Plaintiff seeks an order against further retaliation resulting from this lawsuit. *Id.* at 4.

In a submission filed seven days later, Plaintiff again requests sanctions, a temporary restraining order, and an order against further retaliation due to the current proceedings. Dkt. No. 163 at 1. Plaintiff states that on December 18, 2014, "Defendants Keys, Sarkowicz, Korines, and co-working 'friends' " came to his cell and threatened his life, continued to file false misbehavior reports, and threatened to break his neck due to his participation in a hunger strike. *Id.* at 2. Plaintiff also claims that inmates who remember him from before his placement in protective custody "reminded [him]

that 'the first opportunity to get [him] for snitching [he] will be "done off." ' " *Id.* at 3.

Defendants oppose Plaintiff's requests injunctive relief. Specifically, Defendants argue that "Plaintiff's request should be denied because the requested relief does not relate to any of the allegations of the underlying amended complaint or the proposed second amended complaint."Dkt. No. 166 at 1. Defendants further argue that Plaintiff's allegations are entirely speculative, and that these complaints "should be addressed through administrative channels at Shawangunk Correctional Facility ...." *Id.* at 2.

### E. Plaintiff's January 5 and 11, 2015 requests for sanctions and injunctive relief

In a letter request dated January 5, 2015, Plaintiff requests "additional sanctions for "further" retaliation ... as [he] was thrown out of [his] wheelchair[,] punched in the face and slapped and kicked by C.O. Stokes on December 22, 2014."Dkt. No. 167 at 2. Plaintiff also requests that the Court order his transfer from his current facility due to the alleged assault by C.O. Stokes, who is not a Defendant in this matter. *Id.* at 3. Plaintiff notes that Defendant Gardner "has recently issued a disposition placing [him] in keeplock with 30 days loss of all privileg[es] without" the required procedural due process. *Id.* at 4. Finally, Plaintiff alleges that the prison medical personnel refuse to examine him, and he "is in pain-sick call is being denied to [him] by medical staff when [they] make their tours."*Id.* at 5.

 **\*4** In a letter dated January 11, 2015, Plaintiff cites a Supreme Court case for the proposition that an inmate "may seek injunctive relief based on the claim that defendant corrections officials are knowingly and unreasonably disregarding an objectively intolerable risk of harm and will continue absent a court order directing otherwise."Dkt. No. 168 at 8. Finally, Plaintiff objects to his current placement in the general prison population due to his status as "victim prone" of being victimized by other inmates, as defined under 7 N.Y.C.R.R. § 1701.5(c)(4)(i).

### III. DISCUSSION

### A. Standard of Review

### *1. Review of a report-recommendation*

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo*

determination of those portions of the report or specified proposed findings or recommendations to which objection is made."28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

### *2. Motion to dismiss standard*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark,* 508 F.3d 106, 111–12 (2d Cir.2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398

(2d Cir.2006) (quoting *Chambers v. Time Warner, Inc .,* 282 F.3d 147, 152–53 (2d Cir.2002)).

**\*5** To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim,"*see*Fed.R.Civ.P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *[Twombly,* 550 U.S.] at 557, 127* S.Ct.1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quotation omitted). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to " 'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' " *Weixel v. Bd. of Educ.,* 287 F.3d 138, 146 (2d Cir.2002) (quotation omitted); *Lopez v. Jet Blue Airways,* 662 F.3d 593, 596 (2d Cir.2011) (citation omitted).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ."*Id.* (citation omitted).

### *3. 42 U.S.C. § 1983*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of

a right secured by the Constitution and laws."*Rizzo v. Goode,* 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,*445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.*(citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

### B. Plaintiff's motion to amend and supplement the amended complaint

**\*6** On December 18, 2014, the Court received a motion from Plaintiff seeking to supplement the amended complaint, which included the proposed supplemental amended pleading. *See* Dkt. No. 158. The motion seeks to add additional claims and Defendants, several of whom are employed at Upstate Correction Facility. *See* Dkt. No. 158–2.

"Federal Rule of Civil Procedure 15(a) provides that any time after a responsive pleading is served a party must seek leave from the court to amend a pleading. Rule 15(a) specifically states that leave shall be freely given when justice so requires."*LaBarbera v. Audax Const. Corp.,* 971 F.Supp.2d 273, 284 (E.D.N.Y.2013) (citing Fed.R.Civ.P. 15(a))."However, in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that denial of a Rule 15(a) motion may be appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.' " *Id.* The decision to grant or deny a Rule 15(a) motion to amend is committed to the sound discretion of the district court. *See id.*

"Federal Rule of Civil Procedure 15(d) provides that a party must obtain leave from the court to supplement a pleading setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented. Rule 15(d) allows a party to supplement the complaint in order to present subsequent

material that is related to the claims presented in the original complaint."*LaBarbera,* 971 F.Supp.2d at 284 (citing *Argus, Inc. v. Eastman Kodak Co.,* 552 F.Supp. 589, 602 (S.D.N.Y.1982); 3 Moore's Federal Practice ¶ 15.16[1], at 15176 (2d ed.1982)). Matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading. *See id.*(citing 3 Moore's Federal Practice ¶ 15.16[3], at 15183 (2d ed.1989)). As with Rule 15(a), the decision to grant or deny a Rule 15(d) motion is within the sound discretion of the district court. *See id.*

In the present matter, the Court finds that Plaintiff should not be permitted to supplement and amend his amended complaint. Plaintiff commenced this action on January 17, 2012, alleging violations that occurred exclusively at Shawangunk C.F. *See* Dkt. No. 1. Then, on June 28, 2012, the Court received Plaintiff's eighty-one (81) page amended complaint. *See* Dkt. No. 27. Thereafter, Plaintiff submitted several additional motions to amend and supplement his complaint. In a Decision and Order dated February 13, 2013, this Court denied the motions on several grounds. *See* Dkt. No. 98. First, the Court noted that the motions failed to comply with Local Rule 7.1(a)(4) in that it was not a complete, cohesive pleading, but rather a piecemeal compilation of prior submissions. *See id.* at 7–8. The Court found it to be an unreasonable task to ask the Court and Defendants to attempt to interpret and respond to such a pleading. *See id.*Additionally, the Court noted that the proposed amended pleading sought to add claims relating to events that occurred at Upstate C.F. and were unrelated to the claims and Defendants in this action.

**\*7** For many of the same reasons discussed in its February 13, 2013 Decision and Order, the Court finds Plaintiff's motion to amend and supplement his amended complaint must be denied. First, the proposed supplemental amended complaint is not a complete submission. In fact, in a letter dated January 11, 2015, Plaintiff indicates that he "merely submitted the 'supplemental' amended complaint as to be attached" to the amended complaint and admits that he *"did not* submit the *'supplemental amended complaint'* to supercede the ... amended complaint; but, to be an added attachment to the ... amended complaint."Dkt. No. 168 at 2–3 (emphasis in original).

Additionally, permitting supplementation and amendment at this point, nearly three years after Plaintiff commenced this action, would be unduly prejudicial and would cause undue delay in the resolution of this action. *See Lopez v. Smiley,* 375 F.Supp.2d 19, 30 (D.Conn.2005). Finally, permitting amendment Plaintiff to amend and supplement to add claims and Defendants entirely unrelated to the claims in this case would be inappropriate. *See Klos v. Haskell,* 835 F.Supp. 710, 715–16 (W.D.N.Y.1993), *aff'd,*48 F .3d 81 (2d Cir.1995) (denying motion to supplement the complaint to include claims occurring at subsequent correctional facility).

## C. Personal involvement
" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted). " '[W]hen monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.' " *Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.)).

Courts have repeatedly found personal involvement is not established when a supervisory official receives letters regarding a plaintiff's grievances and simply refers that grievance to other personnel for investigation. *See Vega v. Artus,* 610 F.Supp.2d 185, 199 (N.D.N.Y.2009); *see also Sealy v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). Rather, personal involvement must be established by either proving (1) the defendant directly participated in the alleged conduct; (2) the defendant knew of the circumstances establishing the complaint and failed to remedy the situation; (3) the defendant created a policy that allowed the unconstitutional practice; (4) the defendant acted grossly negligent; or (5) the defendant demonstrated deliberate indifference to the rights of the plaintiff by not acting on the plaintiff's complaints. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

In his Report–Recommendation, Magistrate Judge Baxter found that Plaintiff has not adequately alleged that Defendants Fischer, LeClaire, and Maly should be dismissed because Plaintiff failed to adequately allege that they were personally involved in any constitutional violations. *See* Dkt. No. 155 at 6–11. In his objections, Plaintiff simply repeats arguments that he made in response to Defendants' motion to dismiss and which were properly rejected by Magistrate Judge Baxter. *See Harnett v. Barr,* 538 F.Supp.2d 511, 524 (N.D.N.Y.2008); *Burton v. Lynch,* 664 F.Supp.2d 349, 360 (S.D.N.Y.2009).

**\*8** Having reviewed the Report–Recommendation and Plaintiff's submissions, the Court finds that Magistrate

Judge Baxter correctly determined that Plaintiff failed to allege facts plausibly suggesting that Defendants Fischer, Maly and LeClaire were personally involved in the alleged constitutional deprivations.

## D. Conspiracy

The amended complaint alleges that Defendants conspired to "discriminate, harass, and retaliate" against Plaintiff by pursuing false disciplinary charges against him over a period of more than one year. *See* Dkt. No. 27 at 8. Magistrate Judge Baxter agreed with Defendants that this claim should be dismissed under the "intracorporate conspiracy doctrine." Dkt. No. 155 at 22–25.

The intra-corporate conspiracy doctrine, which applies to conspiracy claims pursuant to both 42 U.S.C. § 1983, *see Dilworth v. Goldberg,* No. 10 Civ. 2224, 2012 WL 4017789, *30 (S.D.N.Y. Sept. 13, 2012); *Anemone v. Metropolitan Transportation Authority,* 419 F.Supp.2d 602, 603–04 (S.D.N.Y.2006), and 42 U.S.C. § 1985, *see Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978), "posits that officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."*Jefferson v. Rose,* 869 F.Supp.2d 312, 317–18 (E.D.N.Y.2012) (quotations and citations omitted); *see also Smith v. Town of Hempstead Department of Sanitation Sanitary District No. 2,* 798 F.Supp.2d 443, 461 (E.D.N.Y.2011) (citation omitted). The intra-corporate conspiracy doctrine "extends to public corporate bodies, including municipalities."*Nimkoff v. Dollhausen,* 751 F.Supp.2d 455, 466 (E.D.N.Y.2011) (citation omitted); *see also Michael v. County of Nassau,* No. 09–cv–5200, 2010 WL 3237143, *5 (E.D.N.Y. Aug. 11, 2010) (holding that the intra-corporate conspiracy doctrine applies to municipalities).

Contrary to Plaintiff's conclusory objections, Magistrate Judge Baxter correctly determined that the intra-corporate conspiracy doctrine mandates dismissal of Plaintiff's conspiracy claims. The allegations in the amended complaint and Plaintiff's objections make clear that all Defendants were employed by the same public entity and that they were working in the scope of their public employment during the alleged unconstitutional conduct. *See Richard v. Fischer,* —— F.Supp.2d ——, 2014 WL 3974158, *8– *9 (W.D.N.Y.2014) (applying the intracorporate conspiracy doctrine to bar the plaintiff's conspiracy claims brought against DOCCS employees who were acting within the

scope of their employment during the alleged unconstitutional conduct).

Having reviewed this claim and Magistrate Judge Baxter's Report–Recommendation, the Court finds that Magistrate Judge Baxter correctly determined that Defendants' motion to dismiss as to Plaintiff's conspiracy claims should be granted.

## E. Preliminary injunctive relief

### 1. Governing Legal Standard

**\*9** A party seeking injunctive relief must demonstrate 1) irreparable harm; and 2) either a) a likelihood of success on the merits of the claims, or b) existence of serious questions going to the merits of the claims, and a balance of hardships tipping decidedly in the moving party's favor. *See D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted)."The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* No. 00–CV–012E, 2006 WL 618576, *3 (W.D.N.Y. Mar. 10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir.1994) (per curiam)).

A higher standard than ordinarily required must be met "where an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act ."*Phillip v. Fairfield Univ.,* 118 F.3d 131, 133 (2d Cir.1997) (citation omitted). To meet such a higher standard, the moving party must "show[ ] 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from a denial of the injunction."*Id.* at 133 (other citations omitted). Additionally, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons."*Fisher v. Goord,* 981 F.Supp. 140, 167 (W.D.N.Y.1997) (citing *Farmer v. Brennan,* 511 U.S. 825, 846–47, 114 S.Ct. 1970, 1983–84, 128 L.Ed.2d 811 (1994)) (other citations omitted).

Finally, when a party seeks preliminary injunctive relief, "the relief ... must relate to the allegations contained in the underlying complaint."*McAllister v. Goord,* No. 9:06–CV– 0442, 2009 WL 5216953, *2 (N.D.N.Y. Dec. 30, 2009) (internal citations omitted).

" 'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'

" *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.,* 437 Fed. Appx. 57, 58 (2d Cir.2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir.2009)). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that " 'absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm .' " *Bisnews AFE (Thailand),* 437 Fed. Appx. at 58 (quoting *Faiveley,* 559 F.3d at 118).

### 2. Analysis

In the first request, Plaintiff contends that "Defendants are refusing [to place him in protective custody] so that [he] can get physically assaulted [,]" and that he "is in danger" and has "been forced to live ... where enemies are."Dkt. No. 161 at 3. However, these claims are entirely speculative and relate to possible future injury, and therefore are not sufficient to show irreparable harm. [2] *Salvatierra v. Connolly,* No. 09 Civ. 3722, 2010 WL 5480756, *24 (S.D.N.Y. Sept. 1, 2010) ("Plaintiff's general fear of future retaliation by Defendants is too speculative to warrant injunctive relief") (citation omitted), report and recommendation adopted by 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Ward v. LeClaire,* No. 9:07–CV–0026, 2007 WL 1532067, *2 (N.D.N.Y. May 24, 2007) ("Plaintiff's request for injunctive relief against future threats or harassment by inmates and/or prison officials is too speculative to meet the irreparable harm requirement. Although Plaintiff claims that he will face future threats and harassment, Plaintiff cannot claim with any certainty how, when, or where he will be retaliated against, or that the retaliation will result in irreparable harm to Plaintiff") (citation omitted).

**\*10** In his second request, Plaintiff alleges "Defendants Keys, Sarkowicz, Korines, and co-working 'friends' " threatened his life and threatened to break his neck. Dkt. No. 163 at 2. There are no Defendants by the names of Sarkowicz and Korines in this lawsuit, and therefore this Court has no power to enforce an injunction based on their conduct. Fed.R.Civ.P. 65(d). In regard to Defendant Keys, "allegations of future injury without more do not establish a real threat of injury." *Slacks v. Gray,* No. 9:07–CV–0510, 2008 WL 2522075, *1 (N.D.N.Y. June 25, 2008) (citation omitted). Plaintiff has not alleged a real threat of injury, and any future threats should be reported to prison staff, so as not

to "immerse the federal judiciary in the management of state prisons." *Fischer,* 981 F.Supp. at 167.

Plaintiff also seeks an order against "further retaliation resulting from this lawsuit."Dkt. No. 163 at 1. Plaintiff's repeated requests for this type of relief are entirely conclusory and far too speculative to meet the irreparable harm standard. *See Ward v. LeClaire,* No. 9:07–cv–26, 2007 WL 1532067, *2 (N.D.N.Y. May 24, 2007) ("Although Plaintiff claims that he will face future threats and harassment, Plaintiff cannot claim with any certainty how, when, or where he will be retaliated against, or that the retaliation will result in irreparable harm to Plaintiff").

In his third request for injunctive relief and sanctions, Plaintiff again asks the Court to order Defendants to transfer him to a different facility because of Defendants' alleged conduct. *See* Dkt. No. 164. Plaintiff alleges that, absent a transfer, he will suffer physical harm but claims that he does not feel comfortable providing more detail because he fears that his letter will be intercepted and not reach the Court. *See id.* at 2–3. Again, these conclusory assertions regarding speculative future threats and injury are insufficient to establish irreparable harm. *See Fischer,* 981 F.Supp. at 167. [3]

Plaintiff requests additional sanctions and restates his request for a TRO based on the alleged conduct of C.O. Stokes, who Plaintiff claims threw him out of his wheelchair, and then proceeded to punch and slap him in the face. Dkt. Nos. 167 & 168. Plaintiff claims that "nearby Defendants" witnessed C.O. Stokes engage in this conduct. *See id.* at 7. Again, any sought after relief against C.O. stokes must fail because he is not a party to this action. Further, Plaintiff's conclusory assertion that "nearby Defendants" witnessed this conduct is insufficient to warrant the Court granting the requested relief for this alleged past harm.

Finally, the Court also finds that Plaintiff is not entitled to the requested relief because he has made no showing that he is likely to succeed on the merits of his underlying claims.

Based on the foregoing, the Court denies Plaintiff's motions for preliminary injunctive relief (Dkt. Nos. 161, 163, 164, 167 & 168).

### F. Request for sanctions against Defendants

 **\*11** Included in his motions seeking injunctive relief, Plaintiff "request [s] that [Defendants] are sanctioned $10,000.00 a day" for failing to place Plaintiff in protective custody. *See, e.g.,* Dkt. No. 161 at 4. Plaintiff has not specified the legal basis for the motion for sanctions.

Sanctions may be imposed against a party to an action under Fed.R.Civ.P. 11 ("Rule 11") or 37 ("Rule 37"), 28 U.S.C. § 1927, or the Court's inherent power, none of which are applicable here. In particular, Rule 11, by its terms, is the vehicle by which sanctions may be obtained in connection with the filing in court of pleadings, motion papers, or other documents that are baseless, filed in bad faith, or intended to harass, unnecessarily delay, or needlessly increase the cost of litigation. *See* Fed.R.Civ.P. 11(b)-(c). Since Plaintiff does not seek sanctions based on any pleadings, motion papers, or other documents filed by Defendants in this action, Rule 11 provides no basis for the requested sanctions.

Sanctions against a party are also available under Rule 37(b) for failing to comply with a court order or to respond to discovery. *See* Fed.R.Civ.P. 37(b). Again, this rule provides no basis for the requested relief. Sanctions may also be ordered under 28 U.S .C. § 1927 against "an[y] attorney or other party admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously [ .]" Accordingly, by its terms, section 1927 applies to attorneys and parties "admitted to conduct cases" in a federal court. Since they are not attorneys, sanctions under section1927 are not available as against Defendants.

Finally, the Court finds that there is no basis to support invoking the Court's inherent power to sanction Defendants based on the alleged conduct. Rather, a careful reading of Plaintiff's requests for sanctions establishes that Plaintiff, rather than seeking true sanctions, offers argument in support of what may become Plaintiff's damages should he ultimately succeed in this action.

Based on the foregoing, Plaintiff's motions for sanctions are denied.

## G. Plaintiff's appeals

Plaintiff has appealed several orders issued by Magistrate Judge Baxter. *See* Dkt. Nos. 144, 149, 153 and 154. In first appeal, Plaintiff argues that Magistrate Judge Baxter should have sanctioned Defendants for failing to submit a responsive pleading by a certain date and that a motion to dismiss is not

a responsive pleading. *See* Dkt. No. 144 at 2–3. Contrary to Plaintiff's assertions, the Rule 12(a)(4) of the Federal Rules of Civil Procedure, a motion to dismiss resets the time for filing the defendant's responsive pleading as follows: "if the court denies the motion ..., the responsive pleading must be served within 14 days after notice of the court's action [.]" Since the Court had not acted on Defendants' motion to dismiss until the filing of this Memorandum–Decision and Order, Defendants were in compliance with Magistrate Judge Baxter's order. Moreover, Magistrate Judge Baxter was well within his authority to rescind his previous order requiring Defendants to respond to Plaintiff's motion for sanctions and to *sua sponte* deny that motion as frivolous, which it was.

 **\*12** Next, Plaintiff appeals Magistrate Judge Baxter's May 27, 2014 Decision and Order in which he denied Plaintiff's fifth motion to amend the amended complaint. *See* Dkt. Nos. 147 & 149. Magistrate Judge Baxter properly denied that motion based on Plaintiff's failure to attached a proposed amended pleading or to include any factual support for the claims and defendants Plaintiff was seeking to add. *See* N.D.N.Y. L.R. 7.1(a)(4).

In a submission dated August 9, 2014, Plaintiff appeals Magistrate Judge Baxter's Text Order denying his motion to preserve and compel Defendants to turn over a video tape of an incident unrelated to the facts of this case. *See* Dkt. Nos. 152 & 153. As Magistrate Judge Baxter correctly determined, the video in question is entirely unrelated to the present matter as it allegedly captures the actions of a non-defendant on June 26, 2014, long after this action was filed. Moreover, the video tape in question allegedly depicts the actions of a corrections officer at Five Points C.F., while the conduct relevant to this case allegedly occurred at Shawangunk C.F. [4]

Finally, in a letter dated October 1, 2014, Plaintiff again asks the Court to sanction Defendants for their failure to file a responsive pleading. *See* Dkt. No. 154. For the reasons discussed above, Plaintiff's appeal is denied as frivolous.

Based on the foregoing, the Court denies Plaintiff's appeals (Dkt. Nos. 144, 149, 153 and 154).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, Magistrate Judge Baxter's Report–Recommendation and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Baxter's November 17, 2014 Report–Recommendation is **Adopted** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 134) is **GRANTED** in part and DENIED in part; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED** as to Defendants Fischer, Maly, and LeClaire, and as to Plaintiff's conspiracy claim; and the Court further

**ORDERS** that Defendants' motion to dismiss is otherwise **DENIED;** and the Court further

**ORDERS** that Plaintiff's motions for injunctive relief and for sanctions (Dkt. Nos. 161, 163, 164 & 167) are **DENIED;** and the Court further

**ORDERS** that Plaintiff's appeals (Dkt. Nos. 144, 149, 153 & 154) are **DENIED;** and the Court further

**ORDERS** that Plaintiff's motion to amend/supplement his amended complaint (Dkt. No. 158) is **DENIED;** and the Court further

**ORDERS** that all future pretrial matters are referred to Magistrate Judge Baxter; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

## REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

**\*13** On January 17, 2012, plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that 20 employees of the New York State Department of Correctional and Community Services ("DOCCS") violated his constitutional rights during his confinement at the Shawangunk Correctional Facility ("Shawangunk"). (Compl., Dkt. No. 1). By Decision and Order dated May 3, 2012, the Honorable Mae A. D'Agostino, United States District Judge, dismissed, *sua sponte*, defendants Schneiderman, Bellamy, and Prack from the action because the complaint did not state facts suggesting their personal involvement in the alleged violations of plaintiff's constitutional rights. (Dkt. No. 9 at 8–10).

On June 28, 2012, plaintiff filed an amended complaint (Dkt. No. 27), which, by Decision and Order dated December 6, 2012 (Dkt. No. 85), Judge D'Agostino accepted for filing against 17 of the original defendants, as well as Correction Officer ("C.O.") North, who was not named in the original complaint. [1] Liberally construed, the surviving claims in plaintiff's amended complaint include a First Amendment claim, based on the defendants' alleged filing of false misbehavior reports against plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; an equal protection claim based on alleged discrimination against plaintiff because of his race, disability, and/or sexual orientation; a conspiracy claim related to the retaliation and discrimination claims; a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and an Eighth Amendment claim for failure to provide adequate medical attention. (Dkt. No. 27 at 8–9, 35). [2] Plaintiff seeks both monetary and injunctive relief. (Dkt. No. 27 at 14).

The Attorney General's Office has filed a motion, pursuant to Fed.R.Civ.P. 12(b)(6), seeking dismissal of plaintiff's amended complaint in its entirety, on behalf of all but one of the remaining defendants. [3] (Dkt. No. 134). Plaintiff has responded to the motion to dismiss (Dkt. No. 145), and defense counsel chose not to file a reply (Dkt. No. 150). The motion to dismiss has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by Judge D'Agostino.

## I. *Facts and Contentions*

When plaintiff was transferred to Shawangunk in February of 2011, he required the assistance of a walker when inside his cell, and otherwise needed a wheelchair to ambulate, because of back problems. (Am. Compl., Dkt. No. 27 at 17). [4] He was assigned to a housing unit that was not wheelchair accessible so that he could attend a mandatory program available only in that cell block. (Dkt. No. 27 at 19). Plaintiff was told that his wheelchair had to be kept in a bin in a storage room and retrieved from that location whenever he required it to move around the facility. (Dkt. No. 27 at 17). Plaintiff alleges that he suffered substantial pain, and was injured on several occasions while attempting to store or retrieve his wheelchair,

and that the defendants ignored these serious medical issues and delayed his referral for treatment. (Dkt. No. 27 at 17–18, 21–24). Plaintiff further claims that his repeated requests for inmate assistance with storing and retrieving his wheelchair were denied. (Dkt. No. 27 at 17–20).

**\*14** Plaintiff alleges that, between March 2011 and May 2012, he filed a number of grievances, implicating various defendants, regarding the conditions of his confinement, including issues relating to the storage and retrieval of his wheelchair and his ability to take extended showers because of his medical issues. (Dkt. No. 27 at 11–13, 40–41, 72–81). Plaintiff claims that defendants filed numerous false misbehavior reports against him in retaliation for pursuing grievances (Dkt. No. 27 at 24–26, 41–59), and because of his race and sexual orientation (as overtly gay) (Dkt. No. 27 at 35, 58–59). Plaintiff further alleges that he was denied due process in connection with the disciplinary hearings against him because he was found guilty by a biased hearing officer on many misbehavior reports, despite overwhelming evidence of his innocence or other mitigating circumstances. (Dkt. No. 27 at 25, 42, 49, 51–52).

Defendants contend that defendants Fischer, Smith, Maly, Pingott, and LeClaire should be dismissed because the amended complaint does not adequately allege their personal involvement in any constitutional violation. (Def.s' Mem. of Law at 5–6, Dkt. No. 134–1). Defense counsel argues that plaintiff does not plausibly allege a causal connection between plaintiff's grievances and the misbehavior reports filed against him by various defendants, as required to support a retaliation claim. (*Id.* at 13–15). The defendants further assert that plaintiff's claim of discrimination fails because it is based on allegations of verbal harassment that are not actionable. (*Id.* at 6–7). Plaintiff's conspiracy claim is barred, according to defense counsel, by the intracorporate conspiracy doctrine. (*Id.* at 7–8). The defendants contend that plaintiff's conclusory assertion that the disciplinary hearing officer was biased do not support a due process claim. (*Id.* at 11–13). Finally, defense counsel argues that plaintiff's medical care claim does not adequately allege facts satisfying the subjective and objective elements of an Eighth Amendment violation. (*Id.* at 9–11).

For the reasons set forth below, this court recommends that the defendants' motion to dismiss be granted in part and denied in part. In particular, this court recommends that defendants Fischer, Maly, and LeClaire be dismissed based on a lack of personal involvement, and that plaintiff's

conspiracy claim be dismissed pursuant to the intracorporate conspiracy doctrine. This court otherwise recommends that defendants' motion be denied.

## II. *Motion to Dismiss*
To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007))."[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (*citing Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " ' fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

**\*15** When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999). In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.*Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

## III. *Personal Involvement*
For the reasons set forth below, plaintiff's claims against defendants Fischer, LeClaire, and Maly may be dismissed because plaintiff has not adequately alleged that they were personally involved in any constitutional violations. However, the allegations of personal involvement with respect to defendants Smith and Pingott are adequate, at least in the context of a Rule 12(b)(6) motion.

### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003)."The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (*citing, inter alia, Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [5]

### B. Analysis

### 1. Defendants Fischer and LeClaire

The only specific allegation in the amended complaint suggesting the personal involvement of former DOCCS Commissioner Fischer andDep. Com. LeClaire relates to the latter's April 26, 2011 letter to plaintiff. (Dkt. No. 27 at 29, 31, 63, 64, 67). In the letter, defendant LeClaire states that defendant Fischer asked him to respond to plaintiff's letter regarding misbehavior reports. Defendant LeClaire then advises that he was referring plaintiff's letter to Supt. Smith for investigation and any appropriate action because there was no basis for review of the Tier II disciplinary proceeding against plaintiff above the level of the facility superintendent. (Dkt. No. 27 at 63). The personal involvement of a supervisory official cannot be established if his only involvement is to refer an inmate's complaint to the appropriate staff for investigation.*Harnett v. Barr,* 538 F.Supp.2d 511, 524 (N.D.N .Y.2008); *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoners to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official).

**\*16** Plaintiff also makes conclusory claims about the failure of defendants Smith and LeClaire to oversee subordinate DOCCS employees, and the role of these two defendants

in allowing a pattern or retaliation and discrimination by ignoring plaintiff's various grievances and Article 78 proceedings. Such unsupported allegations are not adequate to establish their personal involvement. *See Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006) (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement); *Pagan v. Correctional Medical Services,* No. 11–CV–1357, 2012 WL 2036041, at *6–7 (S.D.N.Y. June 6, 2012) (courts in this district have repeatedly held that affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983). [6]

### 2. Defendant Maly

The only specific allegation in the amended complaint regarding defendant Maly is that, as Acting Superintendent, he denied one of plaintiff's grievances claiming that plaintiff had been denied several physical therapy appointments because of discrimination in October 2011. (Dkt. No. 27 at 12, 30, 31). According to the plaintiff, Mr. Maly's letter denying the grievance stated that Sgt. Lutz had spoken with the plaintiff and the physical therapist and determined that the plaintiff had missed several physical therapy appointments. (Dkt. No. 27 at 30).

In *McKenna v. Wright,* 386 F.3d 432, 437–38 (2d Cir.2004), the Second Circuit noted that it was "questionable [as to] whether an adjudicator's rejection of a grievance would make him liable for the conduct" of which the inmate complained. [7] The district courts within this Circuit "are divided regarding whether review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act."*Burton v. Lynch,* 664 F.Supp.2d 349, 360 (S.D.N.Y.2009) (collecting cases). The *Burton* court noted that district courts have found personal involvement based on denying a grievance where (1) the official undertakes some kind of investigation into the initial denial; (2) the official provides a detailed and specific response to the grievance rather than a *pro forma* denial; or (3) the grievance involves an ongoing violation "such that the 'supervisory official who reviews the grievance can remedy it directly.' " *Id.* (quoting *Vega v. Artus,* 610 F.Supp.2d 185, 198 (N.D.N.Y.2009)); *Young v. Choinski,* 15 F.Supp.3d 172, No. 3:10–CV–606, 2014 WL 962237, at *15 (D.Conn. Mar. 13, 2014) (a supervisory official confronted with an "ongoing" constitutional violation who reviews a grievance or appeal

regarding that violation, is "personally involved" if he or she can remedy the violation directly).

By delegating the investigation of this grievance to Sgt. Lutz, and merely reporting Sgt. Lutz's findings in his letter to plaintiff, defendant Maly did not become personally involved in any alleged constitutional violation.*Sealey v. Gilmer,* 116 F.3d at 51. Moreover, the amended complaint does not suggest that, despite his many complaints and grievances, plaintiff had any further problems with respect to physical therapy appointments. Absent allegations of an ongoing violation that Mr. Maly could have remedied, his denial of this one grievance is not sufficient to establish his personal involvement in any alleged infringement of plaintiff's constitutional rights. [8]

### 3. Defendant Smith

**\*17** With respect to Shawangunk Superintendent Smith, plaintiff alleges that he affirmed the denial of at least one grievance, filed on May 6, 2011, relating to staff denials of plaintiff's requests for assistance in moving his wheelchair. (Dkt. No. 27 at 20). Plaintiff alleges that various defendants continued to engage in retaliatory and discriminatory conduct relating to the storage and retrieval of plaintiff's wheelchair. [9] Based on the authority cited immediately above, plaintiff's allegations adequately allege that the Superintendent was personally involved, in that he failed to remedy an ongoing violation that was within his power to address.

Moreover, defendant Smith affirmed guilty dispositions on a number of misbehavior reports against plaintiff, despite plaintiff's allegations that hearing officer Gardner was biased and that he ignored evidence establishing plaintiff's innocence. (Dkt. No. 27 at 45–46, 49, 57). [10] In the context of a Rule 12(b)(6) motion, these allegations are sufficient to support a claim that defendant Smith was personally involved in the retaliation and due process violations alleged against defendant Gardner. *See, e.g., Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (concluding that the plaintiff had "sufficiently alleged that Superintendent Smith was personally involved in depriving him of his due process right to call witnesses" at the disciplinary hearing when Smith affirmed the guilty finding on appeal); *Friedland v. Otero,* No. 3:11cv606, 2014 WL 1247992, at \*10–11 (D.Conn. Mar. 25, 2014) (defendant Choinski's review of plaintiff's due process claims in connection with the appeal of the disciplinary proceeding report constituted sufficient personal involvement, in that he failed to remedy the underlying procedural defects associated with the disciplinary hearing) (collecting cases).

### 4. Defendant Pingott

Plaintiff documents that Capt. Pingott investigated and denied at least one of his grievances about the storage and retrieval of plaintiff's wheelchair and related injuries sustained in March 2011. (Dkt. No. 27 at 11–12, 45, 61). Plaintiff further alleges that he filed a grievance about defendant Pingott's response. (Dkt. No. 27 at 11–12). Finally, plaintiff claims that Capt. Pingott told his subordinates to "write [plaintiff's] ass up" on misbehavior reports in retaliation for his grievances. (Dkt. No. 27 at 65). Plaintiff's amended complaint adequately alleges Capt. Pingott's personal involvement in constitutional violations, at least in the context of a Rule 12(b)(6) motion.

## IV. *Retaliation*

### A. Legal Standards

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380.

**\*18** A prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if the defendant initiated false disciplinary charges against plaintiff in retaliation for his exercise of a constitutionally protected right, plaintiff's First Amendment rights are implicated even if the plaintiff was entitled to, and did receive, full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). Filing prison grievances and lawsuits are clearly constitutionally protected activities in the context of a retaliation claim. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996).

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* In the context of a disciplinary hearing, the type of evidence required to establish a causal connection between plaintiff's protected activity and the defendant's alleged adverse action includes: temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing, and statements from the defendants regarding their motives. *Santiago v. Whidden,* No. 3:10–CV–1839, 2012 WL 668996, at *7 (D.Conn. Feb. 29, 2012) (citing *Barclay v. New York,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007)).

**B. Analysis**

Defense counsel argues that plaintiff's "conclusory" allegations that various defendants retaliated against him, for pursuing various grievances, by filing numerous misbehavior reports against him during the same time period are insufficient to state a "plausible" claim of retaliation. (Def.s' Mem. of Law at 14–15). Defendants contend that plaintiff fails to allege, with specificity, that the defendants who filed misbehavior reports against him had knowledge of prior grievances, or other facts suggesting a causal link between plaintiff's protected activities and the defendants' alleged adverse actions. (*Id.*) While many of plaintiff's allegations of retaliation may not withstand a well-documented motion for summary judgment, they are adequate to survive a motion to dismiss under Rule 12(b)(6).

Plaintiff alleges that, on March 9 and 10, 2011, he "circulated ... to the above-named defendants" his first grievances against defendant Kane, and perhaps also against defendants Peterson and Keys, relating to their orders that plaintiff store and retrieve his wheelchair. (Dkt. No. 27 at 11, 33–34). [11] Plaintiff claims that five false misbehavior reports, relating to his problems with moving his wheelchair and related physical limitations, were then filed against him in retaliation for those first grievances. On March 10th, two misbehavior reports were filed against plaintiff-one issued by defendant Peterson and witnessed by his "partner," defendant Kane, and one issued by defendant Keys-defendant Kane's "friend." (Dkt. No. 27 at 33–34, 43–44). On March 13, 2011, defendant Kane's "partner," defendant Stefinik filed disciplinary charges relating to plaintiff's failure to properly store his wheelchair. (Dkt. No. 27 at 32, 45–46). Defendant

Cutler filed a misbehavior report against plaintiff on March 14th, because he would not get up to go get his medications, purportedly because plaintiff could not move due to back pain and spasms. (Dkt. No. 27 at 24, 47) . [12] On March 25, 2011, defendant DeGraff charged plaintiff with having contraband-two Motrin pills for which plaintiff had a prescription-charges on which plaintiff was ultimately found not guilty by hearing officer Gardner. (Dkt. No. 27 at 24, 34–35, 48). [13]

**\*19** A well-documented summary judgment motion might well establish that the March 10 misbehavior reports were filed **before** plaintiff submitted his first grievances. The defendants who filed the misbehavior reports in the days following plaintiff's first grievance(s) might be in a position to file affidavits documenting that they were not then aware of the grievances, notwithstanding plaintiff's claim that he "circulated" them to the defendants. Moreover, a summary judgment motion might clarify who was named in plaintiff's first grievances and persuade the court that no rational fact finder would conclude that correction officers not implicated in the grievances had any cause to retaliate against plaintiff. *See, e.g., Hare v. Hayden,* 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer); *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 369 (S.D.N.Y.2011) (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in). However, the court cannot, based solely on the amended complaint, liberally construed, find that these allegations of retaliation should be dismissed under Rule 12(b)(6).

Plaintiff alleges that defendant Stone issued a misbehavior report against him on October 3, 2011, relating to plaintiff's refusal to use a filthy towel provided by C.O. Bucci, [14] even though C.O. Stone was not present for the incident. (Dkt. No. 27 at 51). During the disciplinary hearing, plaintiff asked C.O. Stone why he constantly called plaintiff a "Homo Niggerette." Plaintiff alleges that C.O. Stone retaliated against plaintiff, for his question during the hearing and for filing unspecified "grievances of discrimination based on plaintiff's race and sexual orientation" (Dkt. No. 27 at 35), by issuing another misbehavior report relating to plaintiff's use of his wheelchair, on October 14, 2011. (Dkt. No. 27 at 25–26, 35–36, 52–54). Plaintiff claims that, at some point,

C .O. Stone "promised to 'make up for his mistakes at the previous hearing' " and told plaintiff" "[i]f I have to write your ass up every day I will—so prepare."(Dkt. No. 27 at 53). While plaintiff's allegations are conclusory in some respects, his amended complaint adequately alleges retaliation by C.O. Stone in connection with this sequence of events.

On July 25, 2011, defendant Budziszewski filed a misbehavior report against plaintiff for disobeying an order to get off the phone and return to his cell. Plaintiff alleges that he was found guilty notwithstanding the fact that phone records showed that he made no call at the relevant time. (Dkt. No. 27 at 25, 49). Ultimately, the disposition was expunged as a result of an Article 78 proceeding plaintiff pursued in state court. (Dkt. No. 145–1 at 14–16). Plaintiff alleges that, on October 17, 2011, he filed a grievance against defendant Budziszewski, who retaliated by filing misbehavior reports against plaintiff relating to the duration of his showers on December 12, 2011, February 6, 2012, and March 7, 2012. [15] Plaintiff was convicted on the disciplinary charges although he purported to have a medical pass for an extended, 25–minute shower. (Dkt. No. 27 at 55–59). Plaintiff claims that, at the time of one of the disciplinary hearings, defendant Gardner told him "keep poking the Bear with these ... grievances ... and watch what happens to your ass. Every time you get a ticket you will be found guilty regardless."(Dkt. No. 27 at 57). [16] Ultimately, at least one of the disciplinary dispositions was reversed as a result of an Article 78 proceeding. (Dkt. No. 145–1 at 24). The allegations regarding defendant Budziszewski state a plausible claim of retaliation that cannot be dismissed under Rule 12(b)(6). [17]

### V. *Discrimination/Equal Protection*

 *\*20* The amended complaint alleges that defendants discriminated against plaintiff on the basis of his disability, sexual orientation, and/or race. (Dkt. No. 27 at 9, 35–36, 52, 56, 58–59). Defendants argue that verbal harassment of the plaintiff, including the use of the term "Homo Niggerette" by defendants Stone and Budziszewski to taunt plaintiff, does not constitute actionable discrimination under Section 1983. (Def.s' Mem. of Law at 6–7). While verbal harassment alone does not support a claim of unconstitutional discrimination, the amended complaint alleges an adequate equal protection claim.

### A. Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (*citing City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). A plaintiff alleging a violation of his equal protection rights must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination, typically against an identifiable or suspect class, such as race or religion. *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005). Then, the plaintiff must establish that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

" 'In applying the Equal Protection Clause to most forms of state action, [courts] ... seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.' " *Pedersen v. Office of Personnel Management,* 881 F.Supp.2d 294, 309 (D.Conn.2012) (*quoting Plyler v. Doe,* 457 U.S. 202, 216 (1982)). Courts apply heightened equal protection scrutiny to those laws that burden a fundamental right or target a suspect class, such as those based on race, national origin, or sex. *Id.* (citing, inter alia, *Romer v. Evans,* 517 U.S. 620, 629, 631 (1996)).

Certain "suspect" classifications, including those based on race, are subject to strict judicial scrutiny, and must further a compelling state interest and be narrowly tailored to accomplish the purpose. *Pyke v. Cuomo,* 567 F.3d 74, 77 (2d Cir.2009). The Second Circuit has held that homosexuality is "quasi-suspect (rather than suspect)" category, that is subject to heightened or intermediate judicial scrutiny, [18] but not strict scrutiny. *Windsor v. U.S.,* 699 F.3d 169, 185 (2d Cir.2012), *judgment aff'd, U.S. v. Windsor,* —— U.S. ——, 133 S.Ct. 2675 (2013). [19] "The Equal Protection Clause permits distinctions which are based on a person's disability, if they are rational and serve a legitimate end."*Wiggins v. N.Y. City Dep' of Corr.,* No. 06 Civ.1946, 2008 WL 3447573 at *8 (S.D.N.Y. Aug. 12, 2008) (*citing Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F.3d 98, 109 (2d Cir.2001)).

Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). The Equal Protection Clause "secure[s] every person .... against intentional and arbitrary discrimination" by state officials. *Willowbrook v. Olech,* 528 U .S. 562, 564, (2000). Thus, in a "class of one" claim, the

Equal Protection Clause requires a "rational basis for the difference in treatment."*Id.*

**\*21** Mere verbal harassment, profanity, or even racial epithets, " 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."*See, e.g., Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) (collecting cases); *Webster v. Fischer,* 694 F.Supp.2d 163, 187 (N.D.N.Y.2010). However, when alleged harassment amounts to more than verbal taunts and includes other more serious, ongoing constitutional deprivations, a plaintiff should be given an opportunity to pursue his constitutional claims. *Toliver v. City of New York,* 530 F. App'x 90, 92–93 (2d Cir.2013) (reversing district court's granting of defendants' Rule 12(b)(6) based on the lower court's erroneous conclusion that plaintiff alleged mere verbal harassment which did not support an actionable constitutional deprivation).

**B. Analysis**

Plaintiff alleges that, unlike four other handicapped inmates who were allowed to take extended showers with impunity, he was disciplined for trying to take longer showers, despite having medical authorization. (Dkt. No. 27 at 13, 58–59). Plaintiff also claims that defendant Budziszewski, who filed multiple, retaliatory misbehavior reports against plaintiff relating to the length of his showers, was one of the correction officers who consistently referred to plaintiff as "The Homo Niggerette." (Dkt. No. 27 at 59). Based on the authority cited above, plaintiff's allegations of racist taunts, combined with the more serious, related claims of unconstitutional retaliation, are sufficient to state a "class of one" equal protection claim, and perhaps a discrimination claim based on race and/or sexual orientation. In the context of a summary judgment motion, defendants may be able to document a rational, or even compelling penological interest in how they treated plaintiff vis à vis other handicapped inmates in connection with use of the shower. However, the equal protection claim in the amended complaint is adequate to withstand a Rule 12(b)(6) motion. [20]

**VI.** *Conspiracy*

The amended complaint alleges that all of the defendants conspired to "discriminate, harass, and retaliate" against plaintiff by pursuing false disciplinary charges against him over a period of more than one year. (Dkt. No. 27 at

8). Defense counsel argues that plaintiff's conspiracy claim should be dismissed under the "intracorporate conspiracy doctrine." This court agrees, and recommends that the duplicative and conclusory conspiracy claim in the amended complaint be dismissed.

**A. Legal Standards**

"To survive a motion to dismiss, a conspiracy claim under 42 U.S .C. § 1983 must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal.... Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed."*Vega v. Artus,* 610 F.Supp.2d 185, 202–03 (N.D.N.Y.2009) (citing, inter alia, *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002)).

**\*22** "The intracorporate conspiracy doctrine provides that 'if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... employees, each acting within the scope of his employment[,] there can be no actionable conspiracy.'...The intracorporate conspiracy doctrine 'bars conspiracy claims against employees of entities such as [DOCCS] (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's 'scope of employment' exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed."*Richard v. Fischer,* No. 11–CV–6013, 2014 WL 3974158, at \*8 (W.D.N.Y. Aug. 7, 2014) (collecting cases).

**B. Analysis**

The Second Circuit has not yet validated the "intracorporate conspiracy doctrine" in the context of a section 1983 action. *Rahman v. Fischer,* No. 9:10–CV–1496 (LEK/TWD), 2012 WL 4492010, at \*13 (N.D.N.Y. Sept. 28, 2012) ("[t]he Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985, ... but has not extended its application of the doctrine to conspiracy claims under § 1983) (citations omitted). However, numerous district courts have applied the doctrine to dismiss conspiracy charges, under Rule 12(b)(6), relating to Section 1983 claims of retaliation and discrimination similar to those raised in this case. *See, e.g ., Vega v. Artus,*610 F.Supp. at 193, 205–06 (dismissing intracorporate conspiracy claim relating to allegations that defendants harassed, discriminated against, and retaliated

against plaintiff (*inter alia,* by filing false misbehavior reports), because of plaintiff's perceived sexual orientation); *Graham v. Peters,* No. 13–CV–705JTC, 2013 WL 5924727, at *1, 5 (W.D.N.Y. Oct. 31, 2013) (dismissing, under intracorporate conspiracy doctrine claim that defendants conspired to retaliate against plaintiff for exercising his First Amendment rights, by subjecting him to excessive force and false disciplinary charges); *Richard v. Fischer,* 2014 WL 3974158. at *8–9 (dismissing conspiracy claim under intracorporate conspiracy doctrine based on allegations that the defendants discriminated in making inmate work assignments based on race and religion); *Rahman v. Fischer,* 2012 WL 4492010, at *1, 13 (dismissing, based on the intracorporate conspiracy doctrine, claims that defendants conspired to retaliate against plaintiff, by denying him access to classes and a locker, to punish him for pursuing his First Amendment rights to exercise his religion and access the courts).

Some district courts in this Circuit have declined to apply the intracorporate conspiracy doctrine to dismiss conspiracy claims based on more egregious constitutional violations, such as unprovoked assaults, finding there was at least an issue of fact as to whether defendant correction officers were acting, not in the scope of their employment, but for purely personal reasons.[21] However, given the nature of the underlying alleged constitution claims in this case, plaintiff's conclusory allegations that the defendants were clearly pursuing a "personal" agenda (Dkt. No. 145–1 at 74), are not enough to state a plausible claim that the defendants were not acting within the scope of their employment. *See, e.g., Vega v. Artus,* 610 F.Supp. at 205 ("in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff"). Based on the authority above, this court recommends that plaintiff's conspiracy claim be dismissed under the intracorporate conspiracy doctrine.[22]

## VII. *Due Process*

### A. Legal Standards

**\*23** To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[23]

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (*citing, inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (*citing, inter alia, Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

### B. Analysis

Liberally construed, the amended complaint alleges that defendant Gardner, who presided at most of plaintiff's disciplinary hearings, was not fair and impartial and found plaintiff guilty in the absence of even "some" evidence. For example, plaintiff alleges that he was found guilty by defendant Gardner of disobeying an order to get off the telephone, even though records indicated that plaintiff was not using the phone during the relevant time period; the disposition was later expunged in an Article 78 proceeding. (Dkt. No. 27 at 25, 49; Dkt. No. 145–1 at 14–16). Similarly, plaintiff was found guilty on several misbehavior reports relating to the duration of his showers despite having medical orders allowing extended showers; at least one of those dispositions was allegedly reversed in an Article 78 proceeding. (Dkt. No. 27 at 5559; Dkt. No. 145–1 at 24). Plaintiff claims that, on one occasion, hearing officer Gardner told plaintiff "Every time you get a ticket you will be found guilty regardless.... I ain't fair and impartial."(Dkt. No. 27 at 57).

The allegations in the amended complaint are sufficient to state a plausible claim that plaintiff was denied procedural

due process in connection with at least some of his disciplinary proceedings because the hearing officer was not impartial and/or because of the lack of "some" supporting evidence. The court does not decide whether this due process claim could withstand a summary judgment motion, properly-documented with hearing transcripts and supporting documents and affidavits.

## VIII. *Denial of Medical Care*

### A. Legal Standards

**\*24** In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (*citing, inter alia, Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange,* 248 F. App'x 232, 236 (2d Cir.2007) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the inmate's underlying medical condition alone." *Id.* at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange,* 248 F. App'x at 236 (*citing, inter alia, Chance v. Armstrong,* 143 F.3d at 702).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a

substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id.* at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan,* 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord,* 467 F.3d at 281.

### B. Analysis

**\*25** Because of back injuries, plaintiff used a walker to ambulate short distances and needed a wheelchair otherwise. (Dkt. No. 27 at 17). He allegedly complained to various defendants, including Aube, Peterson, Kane, Stefinik, Gaye, Keys, and Cutler that storing and retrieving his wheelchair was causing him pain; but they denied him the assistance of other inmates. (Dkt. No. 27 at 18–20). On May 9, 2011, while trying to move his wheelchair, plaintiff "felt a ... 'needle sharp' pain" in his spine and leg, collapsed on the floor, and could not move. (Dkt. No. 27 at 21). [24] Plaintiff was treated in the hospital and, upon his return to his housing unit, defendants Peterson and Kane continued to require that plaintiff move his wheelchair without assistance, notwithstanding his protests that he could not do so, given his pain. (Dkt. No. 27 at 22). As plaintiff struggled to store his wheelchair, he again collapsed on the floor. Plaintiff claims that C.O. Stefinik told the nurse "Nothing's wrong with him, he just ... laid down on the floor[,]" and Sgt. Aube stated "leave his ass on the floor."(Dkt. No. 27 at 23). The defendants did not allow plaintiff to be taken for medical attention for "approximately half an hour" by which time, plaintiff's pain was so intense that he cried. (Dkt. No. 27 at 23). [25]

Plaintiff does not state that the delay in his treatment following his "second" collapse (Dkt. No. 27 at 45) resulted in any substantial deterioration of his medical condition. However, the amended complaint, liberally construed, alleges

that he suffered extreme pain for approximately 30 minutes before the identified defendants allowed him to get medical attention. While a summary judgment motion, supported by plaintiff's medical records, may well establish that the one, relatively brief delay in allowing plaintiff medical attention was not sufficiently "serious" to satisfy the objective prong of the Eighth Amendment standard, this court cannot make that determination in the context of a Rule 12(b)(6) motion. Similarly, while the court concludes that plaintiff has adequately alleged that the named corrections officers were deliberately indifferent to plaintiff's medical needs on at least one occasion, a summary judgment motion supported by affidavits from the defendant may establish that no rational fact finder could conclude that plaintiff satisfied the subjective prong necessary to establish an unconstitutional delay in medical care.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 134) be **GRANTED** as to defendants Fischer, Maly, and LeClaire, and as to plaintiff's conspiracy claim, and it is further

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 134) be otherwise **DENIED,** and it is further

**ORDERED,** that if the District Court adopts this recommendation, she shall return the case to me to set a schedule for discovery and any further substantive motions with respect to the surviving claims and defendants.

**\*26** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (*citing Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Filed Nov. 17, 2014.

**All Citations**

Slip Copy, 2015 WL 403133

Footnotes

1    C.O. North, who is no longer an active DOCCS employee (Dkt. No. 91), has not been served with the amended complaint and is not currently represented in this action.

2    The Court agrees with Defendants' response to Plaintiffs request that "Plaintiff's allegations in all three motions are purely speculative [,]" and that his "issues ... should be addressed through administrative channels ...." Dkt. No. 166 at 2.

3    Throughout the course of this litigation, Plaintiff has filed no less than eighteen (18) separate applications seeking injunctive relief. *See* Dkt. Nos. 7, 54, 64, 67, 71, 80, 83, 95, 101, 112, 121, 122, 123, 132, 161, 163, 164, & 167. The vast majority of these applications discuss the same conclusory allegations and speculation regarding threats to his physical safety. Noticeably lacking from these applications, which span almost three years, is any indication that Plaintiff has actually been subjected to any physical violence during his time at Shawangunk, that in any way relates to this litigation.

4    Plaintiff claims that he is seeking this video because he is concerned that Defendants and other corrections officers are tampering with his mail and that it is not reaching the Court. *See* Dkt. No. 151 at 1–2. One need only glance at the docket in this matter and in the numerous other cases Plaintiff has commenced to know that the vast majority, if not all of Plaintiff's submissions to the Court, have actually been mailed to the Court. Despite the fact that this case has not yet progressed beyond the motion to dismiss stage, there are nearly 170 docket entries in this matter, the vast majority of which are submissions by Plaintiff.

1    Judge D'Agostino again dismissed all claims against defendants Schneiderman, Bellamy, and Prack because the amended complaint did not adequately allege their personal involvement. (Dkt. No. 85 at 3–5).

2    Plaintiff has subsequently attempted to file two motions to further amend or supplement his complaint (Dkt.Nos.77, 146); but this court has denied both motions because of plaintiff's failure to support his motions with a proposed amended pleading, and because his submissions were " 'exceedingly confusing,' piecemeal, and lengthy." (Dkt. No. 147 at 4 (citing Dkt. No. 98 at 7–8), 7).

3    C.O. North, who is no longer an active DOCCS employee (Dkt. No. 91), has not been served with the amended complaint and is not currently represented in this action. The Attorney General's Office represents former DOCCS Commissioner Brian Fischer, Supt. Joseph T. Smith, Dep. Supt. W. Maly, C.O. J. Stefinik, Lt. J. Gardner, C.O. Stone, Dep. Com. Lucien

LeClaire, Sgt. Aube, C.O. Gaye (John Doe), C.O. Keys, Cpt. L. Pingott, C.O. D. DeGraff, Sgt. Preston, C.O. R. Cutler, C.O. Budziszewski, C.O. R. Kane, and C.O. J. Peterson. (Def .s' Mem. of Law at 1, Dkt. No. 134–1). Plaintiff apparently misspelled the names of defendants Pingott and Peterson in his papers; the court will use the spellings from defense counsel's papers.

4    Because the pages of the amended complaint are not all consecutively numbered, the court will refer to the pages in the header added, upon filing, by the court's CM–ECF system.

5    Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon,* are still viable after *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).*See, e.g., Conklin v. County of Suffolk,* 859 F.Supp.2d 415, 439 (E.D.N.Y.2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.,* 811 F.Supp.2d 803, 815 (S.D.N.Y.2011)). See also *Young v. Choinski,* 15 F.Supp.3d 172, No. 3:10–CV–606, 2014 WL 962237, at *10–12 (D.Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

6    In his response to the Rule 12(b)(6) motion, plaintiff attempts to bolster his claim that former Com. Fischer was "personally involved" in violations of plaintiff's constitutional rights. Plaintiff claims that, while the Commissioner was visiting Shawangunk "during this period," plaintiff overheard him comment "Oh, that's Toliver[;] good job with him."(Dkt. No. 145–1 at 58–59). While it is not clear when plaintiff claims defendant Fischer made this remark, it is recounted in the context of plaintiff's discussion about incidents in late 2013, well after his filing of the amended complaint. This ambiguous remark, if it was indeed made by defendant Fischer, would not seem probative of his personal involvement in the alleged constitutional violations recounted in the amended complaint. In any event, generally one cannot amend a complaint in a response to a motion to dismiss. *Chamberlain v. City of White Plains,* 986 F.Supp.2d 363, 390 n. 19, (S.D.N.Y.2013) (*citing Wright v. Ernst & Young, LLP,* 152 F .3d 169, 178 (2d Cir.1998)).

7    The Second Circuit concluded, however, that "[w]hen allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility."386 F.3d at 438.

8    In his response to the motion to dismiss, plaintiff tried to bolster his showing of personal involvement of Dep. Supt. Maly by making allegations about his oversight of a disciplinary hearing in July 2012, after Maly had been served with the amended complaint in this action. (Dkt. No. 145–1 at 61–62). Based on the authority stated above, the court cannot decide the pending motion to dismiss based on plaintiff's attempt to rely on new allegations outside of the time frame of the operative amended complaint, without making a proper motion to supplement.

9    For example, plaintiff alleges that after denying plaintiff's grievance in July 2011 (Dkt. No. 27 at 20), the Superintendent affirmed the guilty disposition on a misbehavior report issued by C.O. Stone in October 2011 alleging that plaintiff failed to obey an order with respect to getting out of his wheelchair and storing it (Dkt. No. 27 at 52–54).

10    *See* section VII B, below.

11    Plaintiff's 81–page amended complaint is disorganized and often unclear about significant factual details. The court has construed plaintiff's pro se pleading liberally, as required by Second Circuit authority.

12    In plaintiff's response to the Rule 12(b)(6) motion, he asserted that defendant Cutler was another "co-worker and friend" who worked on the same housing unit as the other defendants. (Dkt. No. 145–1 at 11–12).

13    Plaintiff asserted, in his response to the Rule 12(b)(6) motion, that defendant DeGraff was a "friend of Defendants Stef[i]nik, Pet[ ]erson, K[ ]ane, Cutler and Keys."(Dkt. No. 145–1 at 13). The amended complaint also alleges that plaintiff filed another grievance, on March 22, 2011, alleging, *inter alia,* that unspecified officers tampered with his food. (Dkt. No. 27 at 11). Plaintiff alleges that he filed additional 2011 grievances on March 25, March 30, April 22, and May 6 implicating defendants Pingott, DeGraff, and unspecified others, the last of which was denied by Supt. Smith. (Dkt. No. 27 at 11–12, 20–21, 29).

14    C.O. Bucci is not named as a defendant in the amended complaint.

15    Plaintiff alleges he filed another grievance with respect to the duration of his showers on December 12, 2011, but the amended complaint does not specify whether defendant Budziszewski was named in that grievance. (Dkt. No. 27 at 12–13).

16    Plaintiff, in his response to the Rule 12(b)(6) motion, claimed that, at some point before the February 6, 2012 misbehavior report was filed, defendant Budziszewski, promised to " 'get plaintiff again' for the grievances."(Dkt. No. 145–1 at 22).

17    Because defendant North has not appeared in this case and is not a party to the pending Rule 12(b)(6) motion, the court will not address the allegations of retaliation against C.O. North.

18    "To withstand intermediate scrutiny, a classification must be 'substantially related to an important government interest.' ...'Substantially related' means that the explanation must be 'exceedingly persuasive.' " 699 F.3d 185 (citations omitted).

19    The Supreme Court in *Windsor* did not consider whether homosexuals constitute a suspect class. 133 S.Ct. at 2695–96.

20    In his response to the Rule 12(b)(6) motion, plaintiff also argues that he was denied equal protection because, by requiring him to store and retrieve his wheelchair under physically difficult circumstances, the defendants treated plaintiff differently from "similarly situated inmates using wheelchairs and/or walkers."(Dkt. No. 145–1 at 19). While this equal protection claim is more difficult to discern from the amended complaint, the court will not preclude plaintiff from pursuing this claim, without prejudice to the defendants challenging it in a subsequent summary judgment motion.

21    *See, e.g., Medina v. Hunt,* No. 9:05–CV–1460, 2008 WL 4426748, at *8–10 (N.D.N.Y. Sept. 25, 2008) (a triable issue of fact exists regarding whether officers acted pursuant to their personal interests where a prisoner alleged that officers assaulted him in retaliation for participating in a federal lawsuit); *Hill v. City of New York,* No. 03 CV 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding that the personal interest exception applies, and allowing conspiracy claims to proceed, where it was alleged that officers conspired to cover up their use of excessive force); *Randle v. Alexander,* 960 F.Supp.2d 457, 475 (S.D.N.Y.2013) (there is no fair interpretation of plaintiff's allegations that suggests that the defendants were acting within the scope of their responsibilities as prison guards when they forced plaintiff and another inmate to fight each other in the mantrap area, and then tried to cover up the fight).

22    The courts notes that, as in *Rahman v. Fischer,* 2012 WL 4492010, at *13 n. 18, plaintiff's conspiracy claim "appears largely duplicative of many of the other claims raised in his [Amended] Complaint."

23    Most, if not all, of the disciplinary proceedings against plaintiff involved "Tier II" hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock. *See* N.Y. Comp.Codes R. & Regs. tit. 7 § 253.7(a)(1)(iii). The federal district courts in New York, applying *Sandin,* have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore,* 9:08–CV–085, 2010 WL 980233, at *5 (N.D.N.Y. Mar. 15, 2010) (collecting cases); *Pilgrim v. Bruce,* 9:05–CV–198 (GLS/GHL), 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (plaintiff's conclusory allegations, which notably do not include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subjected to more severe conditions than in normal restrictive confinement); *Holland v. Goord,* 05–CV–6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest). However, defendants' pending motion does not challenged plaintiff's due process claim on the basis that he was not deprived of a liberty interest (perhaps because he received multiple, sequential disciplinary sentences); so the court will not address that issue.

24    Elsewhere in the amended complaint, plaintiff seems to allege that his physical collapses while storing or retrieving his wheelchair happened in March 2011, not May 2011. (Dkt. No. 27 at 45).

25    The amended complaint seems to allege that plaintiff collapsed under similar circumstances on at least one subsequent occasion. (Dkt. No. 27 at 23–24).

---

**End of Document**                                                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.