**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSE QUEZADA,**

                        **Plaintiff,**

vs.                                           **9:13-cv-885**
                                               **(MAD/TWD)**

**GUTWEIN; RILEY; KING; BROWN;**
**CROSS; MONACELLI; LORDI; CHASE;**
**LAROQUE; BOUCHEY; STREETER;**
**BROUSSEAU; LEE; BEAUDETTE,**

                        **Defendants.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**JOSE QUEZADA**
**04-A-3690**
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**           **CHRISTOPHER J. HUMMEL, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### DECISION AND ORDER

        Plaintiff *pro se* Jose Quezada, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this civil rights action brought pursuant to 42 U.S.C. § 1983 asserting claims arising from a series of incidents that occurred in 2011 and 2012, when he was incarcerated at the Upstate and Clinton Correctional Facilities.

        On February 8, 2017, Defendants filed a motion seeking summary judgment on Plaintiff Quezada's First Amendment retaliation claims against Defendants Brousseau, Brown, Cross, Lee,

and Beaudette; Eighth Amendment excessive force claims against Defendants Monacelli, Laroque, Chase, King, Bouchey, and Streeter; Eighth Amendment medical indifference claim against Defendant Beaudette; Eighth Amendment conditions of confinement claim against Defendant Beaudette; Eighth Amendment sexual assault claim against Defendant Lee; Fourteenth Amendment procedural due process claim against Defendant Gutwein; and Americans with Disabilities ("ADA") and Rehabilitation ("RA") Acts claims against Defendant Cross. *See* Dkt. No. 190 at 2. Defendants argue that Plaintiff failed to exhaust all administrative remedies available to him under the Prison Litigation Reform Act ("PLRA"), and failed to comply with the procedural requirements of opposing a summary judgment motion according to Local Rule 7.1(a)(3). *See id.* at 5. Magistrate Judge Dancks recommended granting in part and denying in part Defendants' motion for summary judgment. *See* Dkt. No. 190.

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004).

Here, Defendants objected to Magistrate Judge Dancks's report and order-recommendation to the extent that it denied defendants' motion for summary judgment on the First Amendment claim against Defendant Brown. *See* Dkt. No. 193. The Court will therefore conduct a *de novo* review of the record pertaining to that claim.

A court may grant a motion for summary judgment only if "the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*,

43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *2 (S.D.N.Y. May 16, 2001)).

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)

3

(quotation and other citation omitted). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted). In making this determination, courts are to "bear in mind" that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (internal quotation marks and citations omitted). The "test is objective, not subjective, and must be so, since the very commencement of a lawsuit would otherwise be dispositive on the issue of chilling." *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 447 (S.D.N.Y. 2006) (citations omitted).

In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, factors to be considered include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Cole v. New York State Department of Correctional Services*, No. 9:10-CV-1098, 2012 WL 4491825, *11 (N.D.N.Y. Aug. 31, 2012) (citing *Colon*, 58 F.3d at 872-73).

Upon satisfying his initial burden, "the burden shifts to defendants to establish that the same adverse action would have been taken even in the absence of the plaintiff's protected conduct, *i.e.*, 'even if they had not been improperly motivated.'" *Davidson v. Desai*, 817 F. Supp.

4

2d 166, 194 (W.D.N.Y. 2011) (quoting *Graham*, 89 F.3d at 80). "At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail." *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999); *see also Murray v. Hulihan*, 436 Fed. Appx. 22, 23 (2d Cir. 2011) ("Defendants cannot be liable for First Amendment retaliation if they would have taken the adverse action even in the absence of the protected conduct").

In their objections, Defendants contend that Magistrate Judge Dancks erred in denying the motion for summary judgment as to Defendant Brown with respect to Plaintiff's First Amendment retaliation claim. *See* Dkt. No. 193 at 1. Specifically, Defendant Brown claims that Magistrate Judge Dancks erred in determining that Defendant Brown's alleged threat to prevent Plaintiff's transfer to a cell that would accommodate his disability was sufficient to constitute an adverse action. *See id.* Rather, Defendant Brown contends that this verbal harassment, absent any additional action, is insufficient to constitute an adverse action. *See id.* at 1-2 (citing cases).

In the Order and Report-Recommendation, Magistrate Judge Dancks found that Defendant Brown's threats to Plaintiff were both specific and vague. *See* Dkt. No. 190 at 51. The report found that Defendant "Brown's alleged threat was specific in the sense that Plaintiff was threatened with being unable to move to 4 Company unless his conduct met certain standards for six months." *Id.* The report found that the threats were "vague in the sense that Plaintiff was allegedly told generally that he would be required not to cause any more problems or file grievances for 'petty shit' for six months, without being given any specific guidance as to what would be considered a problem or a grievance for 'petty shit.'" *Id.* (quoting Dkt. No. 111 at ¶ 224).

Defendant Brown concedes that, under *Ford v. Palmer*, "vague verbal harassment may be sufficient to constitute adverse action," but argues that "such cases should be limited to those where the actual conduct threatened posed a serious risk to the safety of the inmate." Dkt. No. 193 at 2 (citing *Ford v. Palmer*, 539 Fed. Appx. 5, 5 (2d Cir. 2013)). According to Defendant

5

Brown, "[t]he threatened conduct in this case, preventing a cell transfer, is not nearly as serious as the conduct threatened in *Ford*, regardless of the threat's directness." *Id.*

In *Ford*, the court concluded that the district court "erred in reasoning, as a matter of law, that verbal threats must be more definite and specific than [the defendant's] alleged threat in order to constitute 'adverse action.'" *Ford*, 539 Fed. Appx. at 7. In that case, the plaintiff had submitted record evidence that the defendant had threatened to poison plaintiff by putting "'some kind of substance in plaintiff's hot water'" in retaliation for filing a grievance against him. *Id.* The Second Circuit noted that "the vague nature of the alleged threat — *i.e.*, not telling [the plaintiff] when or how [the defendant] planned to poison him — could have enhanced the effectiveness as a threat and increased the likelihood that a person of ordinary firmness would be deterred from filing additional grievances." *Id.*

In the present matter, the Court declines to limit the result reached in *Ford* to cases in which "the actual conduct threatened posed a serious risk to the safety of the inmate," as Defendant Brown urges. Generally, preventing a cell transfer would likely be insufficient to satisfy the objective test for a first amendment retaliation claim. Here, however, the cell transfer was related to medical necessity in light of Plaintiff's disability. Both the direct threat and the uncertainty created by the absence of any guidelines for Plaintiff's conduct might reasonably be found to deter a "similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Pidlypchak*, 389 F.3d at 381. As Magistrate Judge Dancks correctly determined, questions of fact preclude the Court from granting summary judgment as to the First Amendment retaliation claim against Defendant Brown.

Having reviewed the relevant papers herein, including Magistrate Judge Dancks' thorough and well-reasoned Order and Report-Recommendation, the Court finds no clear error. Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. Accordingly, the Order and Report-Recommendation is accepted and

adopted in its entirety for the reasons set forth therein.

Having carefully reviewed Magistrate Judge Dancks' Order and Report-Recommendation, the underlying papers and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Order and Report-Recommendation is **ADOPTED** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 157) is **GRANTED** in part and **DENIED** in part;[1] and the Court further

**ORDERS** that the Clerk of the Court shall terminate Defendants Gutwein, Lordi, Brousseau, Lee, and Beaudette as Defendants in this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 27, 2017
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[1] As a result of this Order, the following claims remain: (1) Plaintiff's Eighth Amendment excessive force claims against Defendants Monacelli, Laroque, Chase, King, Bouchey, and Streeter; (2) Plaintiff's Eighth Amendment failure to intervene claim against Defendant Riley; (3) Plaintiff's First Amendment retaliation claim against Defendant Brown; (4) Plaintiff's Eighth Amendment medical indifference claim against Defendant Cross; and (5) Plaintiff's ADA and RA claims against Defendant Cross in his official capacity relating to the denial of housing in 4 Company, forcing him to sit on the floor in the back of his cell to put on his knee brace, and denying him a shower chair.